

NEW YORK
LOS ANGELES
DETROIT

Henry Kelston
Direct Dial: 646-733-5747
hkelston@milberg.com

March 11, 2013

VIA ECF

Hon. Roslynn R. Mauskopf
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, N.Y. 11201

      Re: *Frito-Lay North America, Inc. "All Natural" Litigation*, No. 1:12-MD-02413-RRM-RLM (E.D.N.Y.)

Dear Judge Mauskopf,

      We represent Plaintiffs as Interim Class Counsel in the above-captioned action. Pursuant to the Court's order of March 7, 2013, we write in response to the letter submitted by Defendants Frito-Lay North America, Inc. and PepsiCo, Inc. on March 5. 2013, requesting a pre-motion conference in anticipation of a motion to dismiss. Plaintiffs believe that a pre-motion conference would be beneficial and request that the agenda for the conference be expanded to include the conduct of discovery during the pendency of Defendants' proposed motion.

      Defendants assert in their letter to the Court that Plaintiffs' claims should be dismissed on various grounds. However, recent caselaw demonstrates that a well-pleaded case challenging the labeling of foods claiming to be "all natural" or "100% natural" should survive a motion to dismiss. *See, e.g., In re ConAgra Foods Inc.*, 2012 WL 5995454 (C.D. Cal. Nov. 15, 2012). The legal and factual bases on which Plaintiffs intend to rely in opposition to the defendants' proposed motion are summarized below.

      Notwithstanding the minimal chance that Defendants' motion to dismiss will result in the termination of this litigation, Defendants have taken the position during meet-and-confer discussions between the parties that the scope of discovery should be severely restricted until any motion to dismiss is decided. Plaintiffs contend that such a restriction is neither justified by the Federal Rules of Civil Procedure nor warranted by the circumstances in this case. Defendants have tacitly raised this issue by stating in their letter to the Court that the parties "conferred and agreed to" the briefing schedule Defendants' have proposed for the anticipated motion to dismiss. In fact, Plaintiffs' consent to the proposed briefing schedule was conditioned on "the understanding that discovery will proceed during the briefing period and while the motion is pending." Plaintiffs believe that an airing of this issue at the pre-motion conference may prevent needless and wasteful motion practice in the near future.

One Pennsylvania Plaza · New York, New York 10119 · T 212.594.5300 · F 212.868.1229 · milberg.com

March 11, 2013
Page 2

      The legal and factual bases on which Plaintiffs intend to rely in opposition to the Defendants' proposed motion to dismiss are as follows:

### A. **Standing**

      The allegations in the Consolidated Complaint ("CC") clearly establish Plaintiffs' Article III standing. Plaintiffs allege that they suffered a concrete and particularized injury when they bought products mislabeled as "all natural" that, in fact, contained non-natural, genetically modified organisms ("GMOs"). Plaintiffs claim that they were deceived by Defendants' misrepresentations and that they paid money they would not otherwise have paid had they known the truth about the products. *See In re Bayer Corp. Combination Aspirin Products Mktg. & Sales Practices Litig.*, 701 F. Supp. 2d 356, 377-78 (E.D.N.Y. 2010) ("[P]laintiffs' allegations that they were misled into purchasing a product that was less than what they bargained for are sufficient for Article III standing.").

      To the extent Defendants may assert that Plaintiffs lack standing to bring claims related to varieties of the deceptively-labeled products that they did not personally purchase, Defendants are mistaken in this regard. Plaintiffs have standing with regard to conduct that implicates "the same set of concerns" as the conduct alleged to have personally caused them injury. *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 162 (2d Cir. 2012). The fact that Plaintiffs did not purchase every variety of the product does not defeat standing where the claims as to each product are the same, the products are closely related, and the defendants are the same. *Stewart v. Smart Balance Inc.*, 2012 WL 4168584 (D.N.J. June 26, 2012); *Brown v. Hain Celestial Group, Inc.*, 2012 WL 6697670 (N.D. Cal. Dec. 22, 2012). Each of the products challenged in the Consolidated Complaint contained the identical "all natural" claim on its packaging. Each of the challenged chips products lists corn – the ingredient alleged by plaintiffs to be non-natural – as its primary ingredient; each bean dip product includes corn oil allegedly made from genetically modified corn. Thus, the challenged products are sufficiently similar to support Plaintiffs' standing.

### B. **Plausibility**

      Plaintiffs' claims are plausible on their face, as demonstrated by the fact that a court has concluded that similar claims regarding GMOs and a "natural" label were indeed plausible. *In re ConAgra Foods*, 2012 WL 5995454, at *5 n.32. Furthermore, Plaintiffs' have pled in significant detail why GMOs are not "natural." CC at ¶¶ 42-48 (alleging that the leading purveyor of GMO seeds, Monsanto, defines GMOs as plants "altered to exhibit traits that are not naturally theirs" and the World Health Organization defines GMOs as "organisms in which the genetic material (DNA) has been altered in a way that does not occur naturally.").

### C. **Preemption**

      Numerous courts have held that FDA guidance regarding the term "natural" is not entitled to preemptive effect or even deference under the primary jurisdiction doctrine. *See, e.g., Holk v. Snapple Beverage Corp.*, 575 F.3d 329, 340 (3d Cir. 2009) ("We conclude that the FDA's policy statement regarding use of the term 'natural' is not entitled to preemptive effect."); *Jones v. ConAgra Foods, Inc.*, 2012 WL 6569393 at *6 (N.D. Cal. Dec. 17, 2012) ("[C]ourts need not refer ["natural"] claims to the FDA pursuant to the primary jurisdiction doctrine.");

**Milberg LLP**

March 11, 2013
Page 3

*Lockwood v. ConAgra Foods, Inc.*, 597 F. Supp. 2d 1028, 1031, 1034 (N.D. Cal. 2009) (rejecting both express preemption and field preemption with respect to the use of the term "all natural" because the FDA's decision *not* to adopt a regulation regarding the use of the term "natural" indicates "an intent *not* to occupy the field.").

### D. Particularity under Federal Rule of Civil Procedure 9(b)

Rule 9(b)'s heightened pleading requirements do not apply to all of Plaintiffs' causes of action because they do not all allege fraud or mistake. *See*, e.g., *Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005) (Actions under N.Y. GBL § 349 "need only meet the bare-bones notice-pleading requirements of Rule 8(a)."). In any case, Plaintiffs have adequately pled the who, what, when, where, and how required by Rule 9(b): the "who" is PepsiCo, Inc. and Frito-Lay North America, Inc; the "what" is the representation "all natural," as well as similar representations, such as "just three natural ingredients" and "Naturally Delicious;" the "when" is from January 1, 2010, through the present; the "where" is on each package of the identified products, on the Frito-Lay website, and in print and television advertisements; the "how" is that the products were not natural because they contained unnatural, genetically-modified organisms. *See In re ConAgra Foods Inc.*, 2012 WL 5995454 (C.D. Cal. Nov. 15, 2012) (where plaintiffs "adequately alleged that they understood that the phrase '100% Natural' meant that Wesson Oil was not made from genetically modified organisms, and that they purchased the product based on this false understanding…. the court cannot conclude the complaint as a whole lacks the particularity required by Rule 9(b).").

### E. Magnuson-Moss and state law breach of warranty claims

Plaintiffs have alleged that Defendants promised that the products at issue were natural when, in fact, they were not; that Plaintiffs relied on that promise in deciding to purchase the products; and that the promise was false. CC at ¶¶ 1, 5-6, 42-48. "To state a claim for breach of express warranty, the plaintiff must show that there was an 'affirmation of fact or promise by the seller, the natural tendency of which [was] to induce the buyer to purchase, and that the warranty was relied upon.'" *Prue v. Fiber Composites, LLC*, 2012 WL 1314114 (E.D.N.Y. Apr. 17, 2012) (quoting *Gelber v Stryker Corp.*, 788 F. Supp. 2d 145, 165 (S.D.N.Y. 2011). Numerous courts have held that the type of misrepresentation alleged here constitutes an express warranty. *See, e.g.*, *Vicuna v. Alexia Foods, Inc.*, C 11-6119 PJH, 2012 WL 1497507 (N.D. Cal. Apr. 27, 2012) ("Here, plaintiffs have adequately stated a claim that the designation 'All Natural' constituted a description of the potato products, or a statement of fact about the potato products, and that the warranty was breached by the inclusion of an ingredient that was arguably synthetic."). Regarding the Magnuson-Moss Warranty Act, Plaintiffs have alleged why a written warranty of naturalness is a promise that the products at issue are "defect free." CC at ¶ 89. Clearly, unnatural ingredients in a product are a defect in a product represented as completely natural. Thus, Plaintiffs' warranty claims are adequately pled.

Respectfully submitted,

Henry J. Kelston

cc: All counsel of record (via ECF)

**Milberg LLP**