**MILBERG LLP**
Ariana J. Tadler
Henry J. Kelston
One Pennsylvania Plaza
New York, New York 10119
Telephone:    (212) 594-5300
Facsimile:    (212) 868-1229
Email:        *atadler@milberg.com*
              *hkelston@milberg.com*

**REESE RICHMAN LLP**
Michael R. Reese
Kim E. Richman
Jason C. Hardy
875 Avenue of Americas, 18th Floor
New York, New York 10001
Telephone:    (212) 643-0500
Facsimile:    (212) 253-4272
Email:        *mreese@reeserichman.com*
              *krichman@reeserichman.com*
              *jhardy@reeserichman.com*


*Interim Lead Class Counsel*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| ) | Case No. 1:12-CV-408-RRM-RLM |
| ) | |
| ) | **MEMORANDUM OF LAW IN** |
| *Frito-Lay North America, Inc. "All Natural"* ) | **OPPOSITION TO DEFENDANTS'** |
| *Litigation* ) | **MOTION TO DISMISS PLAINTIFFS'** |
| ) | **COMPLAINT** |
| ) | |
| ) | ECF Case |
| ) | |
| ) | ORAL ARGUMENT REQUESTED |
| ) | |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. ii

I.    INTRODUCTION AND STATEMENT OF RELEVANT FACTS ................................1

II.   RELEVANT STATUTORY AND REGULATORY BACKGROUND............................4

III.  LEGAL STANDARDS ................................................................5

IV.   ARGUMENT ..........................................................................6

      A.   PLAINTIFFS' ALLEGATIONS ARE PLAUSIBLE ...........................6

      B.   FEDERAL LAW DOES NOT PREEMPT PLAINTIFFS'
           CLAIMS ............................................................................9

           *1. Plaintiffs' Claims Do Not Conflict with Federal Law or Regulations* .................9

           *2. The Primary Jurisdiction Doctrine Should Not be Invoked* .............................12

      C.   THE MAGNUSON-MOSS ACT CLAIM IS SUFFICIENTLY
           PLED............................................................................14

      D.   PLAINTIFFS' STATE LAW CLAIMS ARE NOT SUBJECT TO
           THE PROTECTION OF A SAFE HARBOR .......................................17

      E.   PLAINTIFFS STATE CLAIMS FOR BREACH OF EXPRESS
           WARRANTY..................................................................21

      F.   PLAINTIFFS' CLAIMS ARE SUFFICIENTLY PLED ....................................25

      G.   EQUITABLE RELIEF IS PROPERLY PLED IN THE
           ALTERNATIVE ...............................................................30

      H.   PLAINTIFFS' NEW YORK CLAIMS CAN BE APPLIED
           NATIONWIDE.................................................................31

      I.   PLAINTIFFS HAVE STANDING .....................................................32

      J.   THE COMPLAINT SUFFICIENTLY STATES CLAIMS
           AGAINST PEPSICO .............................................................34

V.    CONCLUSION.................................................................................35

# TABLE OF AUTHORITIES

## <u>FEDERAL CASES</u>

*Ackerman v. Coca-Cola Co.*, No. CV-09-0395(JG), 2010 WL 2925955
(E.D.N.Y. July 21, 2010) ................................................................*passim*

*Alvaraz v. Chevron Corp.*, 656 F.3d 925 (9th Cir. 2011) ........................................20

*Anderson v. Bungee Int'l Mfg. Corp.*, 44 F. Supp. 2d 534 (S.D.N.Y. 1999) ..............22

*Anderson v. Jamba Juice*, 888 F. Supp. 2d 1000 (N.D. Cal. 2012) ...........................33

*Andrade v. J.P. Morgan Chase Bank, N.A.*, No. 08-cv-3703 (RRM)(RLM),
2009 WL 2899874 (E.D.N.Y. Sept. 4, 2009) .....................................................5

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009) ...........................................5

*Astiana v. Dreyer's Grand Ice Cream, Inc.*, No. 11-cv-2910 EMC,
2012 WL 2990766 (N.D. Cal. July 20, 2012) ...................................................33

*Astiana v. Hain Celestial Grp., Inc.*, No. C 11-6342 PJH,
2012 WL 5873585 (N.D. Cal. Nov. 19, 2012) ...................................................13

*Board of Educ. of Pawling Sch. Dist. v. Schutz*, 290 F.3d 476 (2d Cir. 2002) ............5

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .................................................5

*Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris, Inc.*,
133 F. Supp. 2d 162 (E.D.N.Y. 2001) ..............................................................18

*Brown v. Hain Celestial Group, Inc.*, No. 11–cv–03082 LB,
2012 WL 6697670 (N.D. Cal. Dec. 22, 2012) ...................................................33

*Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524 (2011) .....................................33

*Cardenas v. NBTY, Inc.*, 870 F. Supp. 2d 984 (E.D. Cal. 2012) ................................33

*Eastern Air Lines, Inc. v. McDonnell Douglas Corp.*, 532 F.2d 957 (5th Cir. 1976) ...23

*Friends of the Earth, Inc. v. Laidlaw Envtl. Srvcs. (TOC), Inc.*, 528 U.S. 167 (2000) ...32

*Hairston v. South Beach Beverage Co., Inc.*, No. CV 12-1429-JFW,
2012 WL 1893818 (C.D. Cal. May 18, 2012) ..............................................14, 15

*Hitt v. Ariz. Beverage Co., LLC*, No. 08–cv–809,
2009 WL 449190 (S.D. Cal. Feb.4, 2009) ......................................................6, 11

*Holk v. Snapple Beverage Corp.*, 575 F.3d 329 (3d Cir. 2009) ...........................*passim*

*Hughes v. Ester C Co.*, No. 12–CV–0041 JFB,
2013 WL 1080533 (E.D.N.Y. Mar. 15, 2013) ....................................................3

*In re ConAgra Foods*, No. CV 11-05379 MMM,
2012 WL 5995454 (C.D. Cal. Nov. 15, 2012).........................................passim

*Int'l Motor Sports Group, Inc. v. Gordon*, No. 82709,
98 CIV 5611(MBM), 1999 WL 619633 (S.D.N.Y. Aug. 16, 1999)..............................27

*Janney v. Gen. Mills, Inc*., No. C 12-3919 PJH,
2013 WL 1962360 (N.D. Cal. May 10, 2013) ..............................................13

*Jones v. ConAgra Foods, Inc.*, No. C 12–01633 CRB,
2012 WL 6569393 (N.D. Cal. Dec. 17, 2012) ........................................ 10, 13

*Keegan v. Am. Honda Motor Co.*, 838 F. Supp. 2d 929 (N.D. Cal. 2012)...................16

*Krzykwa v. Campbell Soup Co.*, No. 12-62058-CIV,
2013 WL 2319330 (S.D. Fl. May 28, 2013) .............................................passim

*Liberty Mut. Ins. Co. v. WAWA Tours, Inc.*, No. CV-07-0880 (CPS),
2007 WL 2743500 (E.D.N.Y. Sept. 18, 2007)..............................................29

*Lockwood v. ConAgra Foods, Inc.*, 597 F. Supp. 2d 1028 (N.D. Cal. 2009)................10

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)...................................32

*Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106 (2d Cir. 2013) .......25

*Martorella v. Deutsche Bank Nat'l Trust Co.*, No. 12–80372–CIV,
2013 WL 1137514 (S.D. Fla. Mar. 18, 2013) ............................................30

*N.Y. State Rest. Ass'n v. New York City Bd. of Health*, 556 F.3d 114 (2d Cir. 2009) ....4

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145 (2d Cir. 2012) ...33

*Ortiz v. Fibreboard Corporation*, 527 U.S. 815 (1999)..................................33

*Peters v. Keyes Co.*, No. 10-60162-CIV, 2010 WL 1645095 (S.D. Fla. Apr. 21, 2010)........ 17, 18

*Plumley v. Mass.*, 155 U.S. 461 (1894).................................................9

*Scientific Components Corp. v. Sirenza Microdevices, Inc.*, No. 03-CV-
1851 NGG, 2006 WL 2524187 (E.D.N.Y. Aug 30, 2006).............................14

*Sclafani v. Barilla Am., Inc.*, 796 N.Y.S.2d 548 (2005) ..............................18, 20

*Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 130 S. Ct. 1431 (2010)....................31

*Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124 (2d Cir. 1994) .........................26, 28

iii

*State of Fla., Office of Atty. Gen., Dep't of Legal Affairs v. Tenet Healthcare Corp.*,
 420 F. Supp. 2d 1288 (S.D. Fla. 2005) ...................................................17

*Syntek Semiconductor Co., Ltd. v. Microchip Technology Inc.*,
 307 F.3d 775 (9th Cir. 2002)......................................................................12

*Ultimax, Inc. v. Mercedes-Benz USA, LLC,* No. 2:06-CV-951,
 2008 WL 974036 (S.D. Ohio Apr. 8, 2008) ...............................................14

*Vicuna v. Alexia Foods, Inc.*, No. C 11-6119 PJH,
 2012 WL 1497507 (N.D. Cal. Apr. 27, 2012) .............................................21

*Von Koenig v. Snapple Beverage Corp.,* 713 F. Supp. 2d 1066 (E.D. Cal. 2010) .........................6

*Werbel ex rel. v. Pepsico, Inc.*, No. C 09-04456 SBA,
 2010 WL 2673860 (N.D. Cal. July 2, 2010)...............................................22

*Williams v. Gerber Prods, Inc.*, 552 F.3d 934 (9th Cir. 2008).......................................3

*Wright v. Gen. Mills, Inc.*, No. 08-cv-1532,
 2009 WL 3247148 (S.D. Cal. Sept. 30, 2009) ............................................11

*Wyeth v. Levine*, 555 U.S. 555 (2009) ...........................................................9

### STATE CASES

*Berenguer v. Warner-Lambert Co.*, No. 02-05242,
 2003 WL 24299241 (Fla. Cir. Ct. July 31, 2003) .......................................18

*Ellen v. Heacock*, 247 A.D. 476 (N.Y. App. Div. 1936)...............................................21

*Hoskins v. Jackson Grain Co.*, 63 So.2d 514 (Fla. 1953) .............................................24

*Lopez v. Nissan N. Am., Inc.*, 201 Cal. App. 4th 572 (Cal. Ct. App. 2011) ...............................20

*Morris v. N.Y. State Dep't of Taxation & Fin.*, 82 N.Y.2d 135 (1993).......................................34

*Olszewski v. Scripps Health*, 30 Cal. 4th 798 (2003)......................................................20

*People ex rel. Spitzer v. Gen. Elec. Co., Inc.*, 756 N.Y.S.2d 520 (2003)......................................18

*Smith v. Wm. Wrigley Jr. Co.*, 663 F. Supp. 2d 1336 (S.D. Fla. 2009)........................................24

<u>FEDERAL STATUTES</u>

15 U.S.C. § 2052 ..................................................................................................16

15 U.S.C. § 2301 ..................................................................................................16

15 U.S.C. § 2311 ..................................................................................................16

21 U.S.C. § 101.22 ..................................................................................................4

21 U.S.C. § 343-1(a) ...............................................................................................4

Nutrition Labeling and Education Act (codified as amended at 21 U.S.C. §§ 301 *et seq.*)............4

<u>FEDERAL RULES AND REGULATIONS</u>

Fed. R. Civ. P. 8(d)(2)-(3) ...................................................................................30

Fed. R. Civ. P. 12(b)(6) ..........................................................................................5

Fed. R. Civ. P. 15(a)(2) .........................................................................................35

Fed. R. Civ. P. 23 ...........................................................................................31, 33

21 C.F.R. § 10.85(j) ..............................................................................................18

<u>STATE STATUTES</u>

California Business and Professions Code § 17200 *et seq.*........................................2

California Business and Professions Code § 17500 *et seq.*........................................2

California Civil Code § 1750 *et seq.*........................................................................2

Florida Statutes § 501.201 .......................................................................................2

Florida Statutes § 501.212 .....................................................................................16

Florida Statutes § 672.31 .......................................................................................21

Nebraska Revised Statutes § 59–1671 ...................................................................20

New York Civil Practice Law § 901 ........................................................................31

New York General Business Law § 349 ..................................................................16

New York General Business Law § 350 ....................................................................2

OTHER AUTHORITIES

FDA, *Food Labeling: Nutrient Content Claims, General Principles,*
*Petitions, Definition of Terms*, 58 Fed. Reg. 2,302 (Jan. 6, 1993)......................................5

FDA, *What is the meaning of "natural" on the*
*label of food?, available at* http://www.fda.gov/AboutFDA/
Transparency/Basics/ ucm214868.htm............................................................................5

Plaintiffs Chris Shake, Julio Gengo, Valerie Zuro, and Lisa Summerlin (collectively, "Plaintiffs") respectfully submit the following in opposition to the motion to dismiss Plaintiffs' Consolidated Complaint ("Motion") and memorandum in support thereof ("Def. Mem.") filed by defendants Frito-Lay North America, Inc. ("Frito-Lay") and PepsiCo, Inc. ("PepsiCo") (collectively, "Defendants"). For the reasons stated below, Defendants' Motion must be denied.

## I.        INTRODUCTION AND STATEMENT OF RELEVANT FACTS

Consumers care deeply about what constitutes the food they purchase and eat. Accordingly, consumers rely on the information provided on food packaging in deciding whether to purchase a particular food. Consumers trust the information provided on food packaging, particularly information that is prominently displayed on the product. This action is about Defendants' betrayal of that trust by misleading consumers and deceptively labeling certain of its food products[1] as "ALL NATURAL," when, in fact, they are not.

As alleged in Plaintiffs' Consolidated Complaint (the "Complaint"), Defendants know that a "natural" claim on a food product is a purchase motivator for consumers. *See* ¶¶ 2, 31-32.[2] As stated by PepsiCo's former CEO, John Compton, at a 2010 food industry conference:

> We have talked extensively to consumers about this idea, and they come back and tell us the number one motivation for purchase is products that claim to be ***all natural***.

¶ 2. Accordingly, starting in 2010, Defendants placed the following designation in bold on the front of each of the Products (*see* ¶ 37):

---

[1] The products at issue here are those sold under the brand names "SunChips," "Tostitos," and "Frito-Lay Bean Dip" (collectively, the "Products"). All these Products bear the same exact "ALL NATURAL" stamp on the face of their packaging.

[2] All "¶ __" are references to paragraphs in the Complaint.



Unfortunately for consumers, Defendants' representation that the Products are "ALL NATURAL" is untrue. As laboratory results show, Defendants' Products are made from ingredients that contain genetically modified organisms ("GMOs"). ¶ 50.

GMOs are organisms in which the DNA is altered in a way that does not occur naturally, allowing the organism to have traits that do not appear in nature. Simply put, they are not natural. Monsanto – a large producer of GMO seed – defines GMOs as being "[p]lants or animals that have had their genetic makeup altered to exhibit traits that are not naturally theirs." ¶ 43. Likewise, the World Health Organization defines GMOs as "organisms in which the genetic material (DNA) has been altered in a way that does not occur naturally." ¶ 45.

Plaintiffs assert claims for violations of the consumer protection laws of New York, California, and Florida, as well as for violation of the federal Magnuson-Moss Warranty Act. ¶¶ 83-190.[3] In support of these claims, Plaintiffs allege they were misled by Defendants' "natural" claims relating to the Products and that they would not have purchased the Products had they known the truth about the Products containing GMOs. *See, e.g.*, ¶¶ 19-21, 36-67. Notwithstanding these facts and other detailed allegations in the Complaint, Defendants have moved to dismiss.

---

[3] The claims asserted are as follows: violation of New York General Business Law ("GBL") §§ 349 and 350; California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 *et seq.*, Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*, and Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq.*; and Florida's Deceptive and Unfair Trade Practices Act (Fla. Stat. § 501.201); breach of express warranty under New York, California, and Florida law; intentional misrepresentation under New York, California, and Florida law; and violation of the Magnuson-Moss Warranty Act.

Defendants first argue that Plaintiffs' allegations are implausible — that no reasonable consumer could interpret Defendants' prominent "ALL NATURAL" representation to mean that the Products do not contain GMOs. Defendants are wrong. The factual allegations of the Complaint, which must be construed in Plaintiffs' favor, belie this assertion; each Plaintiff alleges that he or she interpreted the phrase "ALL NATURAL" to indicate the Products did not contain GMOs. *See* ¶¶ 17-20. Logic suggests that such an interpretation is not only plausible but rational. Plaintiffs allege that the use of the phrase had the desired effect — it was an incentive for consumers to buy the product. Indeed, PepsiCo's former CEO admitted as much. ¶ 2.

Moreover, on this Motion, where Defendants proffer their own subjective and self-serving interpretation of the term "natural,"[4] Plaintiffs' interpretation is neither disproven nor discounted as implausible; at best, an issue of fact exists that should not be determined on a motion to dismiss. *See Williams v. Gerber Prods, Inc.*, 552 F.3d 934, 938 (9th Cir. 2008); *Ackerman v. Coca-Cola Co.*, No. CV-09-0395(JG), 2010 WL 2925955, at *17 (E.D.N.Y. July 21, 2010) (Gleeson, J.); *see also Hughes v. Ester C Co.*, No. 12–CV–0041 (JFB), 2013 WL 1080533, at *17 (E.D.N.Y. Mar. 15, 2013).

Defendants next claim that Plaintiffs' state law claims are preempted by federal law. However, it is well-settled that food claims such as those asserted here can only be preempted if they are "expressly preempted" by federal statute. Here, there is no federal statute or regulation that expressly preempts claims based upon Defendants' allegedly misleading use of the term "ALL NATURAL." As seen below, this point has been well established in a number of judicial decisions.

---

[4] In support of their "implausibility" argument, Defendants improperly rely on a variety of documents that do not support Defendants' proposition in the least. *See Plaintiffs' Opposition to Request for Judicial Notice*, filed concurrently herewith. Moreover, they raise issues of fact to be determined at trial.

Defendants also argue that Plaintiffs' 54-page Complaint, which is chock full of facts, is insufficiently pled. A simple review of the Complaint reveals that it provides more than sufficient detail for Defendants to be able to answer — all that the Complaint must do. Accordingly, it more than meets the applicable pleading standards.

Defendants' remaining arguments, none of which would result in dismissal of the Complaint in its entirety, must also be rejected, for reasons explained below.

## II.      RELEVANT STATUTORY AND REGULATORY BACKGROUND

Congress enacted the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 343 *et seq.* (the "FDCA"), the first comprehensive federal legislation designed to protect consumers from fraud or misrepresentation in the sale of food and drugs, in 1938. *Ackerman*, 2010 WL 2925955, at *2. In 1990, Congress amended the FDCA by enacting the Nutrition Labeling and Education Act ("NLEA") (codified as amended at 21 U.S.C. §§ 301 *et seq.*). *Id.* at *3.

Significant for purposes of Defendants' motion, "the NLEA is clear on preemption, stating that it 'shall not be construed to preempt any provision of State law, unless such provision is ***expressly preempted*** under [21 U.S.C. § 343-1(a) ] of the [FDCA].'" *N.Y. State Rest. Ass'n v. New York City Bd. of Health*, 556 F.3d 114, 123 (2d Cir. 2009) (emphasis in original) (quoting 21 U.S.C. § 343–1 note). Thus, because state regulation of "natural" food labeling is not expressly preempted by § 343-1(a), it is not preempted here. *Id.*

Nor has the FDA established a final rule with regard to a definition of the term "natural" in the context of food labeling. Quite the opposite — the FDA has repeatedly declined to do so.[5] For example, in a 1993 rulemaking, the agency wrote that "[a]lthough the use of the term 'natural' on the food label is of considerable interest to consumers and industry, ***FDA's intent was not to establish a definition for 'natural' in this rulemaking***." FDA, *Food Labeling:*

---

[5] In contrast, the FDA has defined the term "natural flavor" or "natural flavoring." 21 U.S.C. § 101.22(a)(3).

*Nutrient Content Claims, General Principles, Petitions, Definition of Terms*, 58 Fed. Reg. 2,302,

2,407 (Jan. 6, 1993) (page 3 of Defendants' Ex. L).  The agency went on to explain:

> After reviewing and considering the comments, the agency continues to believe that if the term "natural" is adequately defined, the ambiguity surrounding use of this term that results in misleading claims could be abated. However, as the comments reflect, ***there are many facets of this issue that the agency will have to carefully consider if it undertakes a rulemaking to define the term "natural."  Because of resource limitations and other agency priorities, FDA is not undertaking rulemaking to establish a definition for 'natural' at this time.***

58 Fed. Reg. at 2,407; *see also* FDA, *What is the meaning of "natural" on the*

*label of food?*, *available at* http://www.fda.gov/AboutFDA/Transparency/Basics/

ucm214868htm (last visited May 16, 2013) ("FDA has not developed a definition for use of the

term natural or its derivatives.").

## III.  LEGAL STANDARDS

In considering a Rule 12(b)(6) motion to dismiss, a court "must accept as true the

[factual] allegations contained in the complaint, and all reasonable inferences must be drawn in

favor of the non-movant." *Bd. of Educ. of Pawling Cent. Sch. Dist. v. Schutz*, 290 F.3d 476, 479

(2d Cir. 2002).  To survive the motion to dismiss pursuant to Rule 12(b)(6), the complaint "must

contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009); *Andrade v. J.P. Morgan*

*Chase Bank, N.A.*, No. 08-cv-3703 (RRM)(RLM), 2009 WL 2899874, at *1 (E.D.N.Y. Sept. 4,

2009) (applying standard stated in *Iqbal* and denying motion to dismiss).  However, "[t]he

plausibility standard is not akin to a 'probability requirement . . . .'" *Iqbal*, 129 S. Ct. at 1946; *see*

*also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) ("[A] well-pleaded complaint

may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and

'that a recovery is very remote and unlikely.'" (quotation omitted)).

# IV.    ARGUMENT

## A.    PLAINTIFFS' ALLEGATIONS ARE PLAUSIBLE

Defendants argue that Plaintiffs' allegations regarding Defendants' misrepresentations about the nature of the Products — *i.e.*, as "ALL NATURAL" — should be dismissed as implausible. *See* Def. Mem. at 16-17.  However, courts have repeatedly held it improper to determine as a matter of law on a motion to dismiss the plausibility of consumers' interpretations of food labeling. *See, e.g.*, *Ackerman*, 2010 WL 2925955, at *17 ("'[W]hether a practice is deceptive, fraudulent, or unfair is generally a question of fact which requires consideration and weighing of evidence from both sides and therefore usually cannot be resolved through a motion to dismiss.'" (quoting *Gerber*, 552 F.3d at 938)).  Even more to the point, numerous courts have found allegations that consumers were misled by the term "all natural" in connection with food products to be a sufficient basis for a cause of action. *See Von Koenig v. Snapple Beverage Corp.,* 713 F. Supp. 2d 1066, 1080 (E.D. Cal. 2010) ("[P]laintiffs allege that they were deceived by the labeling of defendant's drink products as "All Natural".... [P]laintiffs have stated a plausible claim that a reasonable consumer would be deceived by defendant's labeling."); *Hitt v. Ariz. Beverage Co., LLC*, No. 08–cv–809, 2009 WL 449190 (S.D. Cal. Feb.4, 2009) (same); *Gerber*, 552 F.3d at 939 ("Further, the statement that Fruit Juice Snacks [were] made with 'fruit juice and other all natural ingredients' could easily be interpreted by consumers as a claim that all the ingredients in the product were natural, which appears to be false.").

The one court that has, to date, considered the plausibility of allegations virtually identical to those at issue here — that plaintiffs were misled by a "natural" label into believing the product to be free of GMOs — concluded that the plaintiffs' claims were plausible and sufficiently pled. *See In re ConAgra Foods*, No. CV 11-05379 MMM, 2012 WL 5995454, at *5 (C.D. Cal. Nov. 15, 2012).  Plaintiffs in the *ConAgra* case "contend[ed] that ConAgra's

representations are deceptive because 'Wesson Oils are made with GMO-plants whose genes have been altered by scientists in a lab for the express purpose of causing those plants to exhibit traits that are not naturally their own.'" *Id.* at *1 (quoting the plaintiffs' complaint).  Plaintiffs' allegations here are nearly identical. *See* ¶¶ 42-48.[6]

Based on these allegations, the *ConAgra* court held that the complaint "provided a plausible explanation as to why consumers would not consider genetically modified foods 'natural.'" *ConAgra*, 2012 WL 5995454, at *5 n.32.  Therefore, "[d]rawing all inferences in favor of plaintiffs, as it must, the court conclude[d] that they have adequately alleged they understood that the phrase '100% Natural' meant that Wesson Oil was not made from genetically modified organisms [GMOS] . . . ." *Id.* at *5.  Like the *ConAgra* plaintiffs, Plaintiffs here have plausibly alleged that they were misled by the "natural" labeling on Defendants' Products.

In addition to alleging that each plaintiff believed that the phrase "ALL NATURAL" meant the Products would not contain GMOs, ¶¶ 17-20, the Complaint here provides additional facts that support the plausibility of Plaintiffs' claims.  In particular, Plaintiffs have alleged that Monsanto, "the world's largest producer of genetically modified seeds. . . defines GMOs as '[p]lants or animals that ***have had their genetic makeup altered to exhibit traits that are not***

_____

[6] Defendants attempt to distinguish the *ConAgra* decision by arguing that the defendant did not make an argument that the plaintiff's case was premised on a theory of "natural" that conflicted with the FDA's informal statements regarding genetically modified crops. Def. Memo. at 19 n.5.  This argument misses the mark, though, because the defendant in *ConAgra* did, indeed, make such an argument.  In a previous order addressing this argument, the court noted as follows:  "ConAgra reads too much into the [FDA] guidance . . . when it argues that '[p]laintiff in essence seeks to create a distinction – between "natural" oils and those made from bioengineered plants – whe[n] the FDA has determined that no such distinction exists.' . . . If anything, the [FDA's] guidance reinforces the view that a food producer's statement as to whether a product contains genetically modified ingredients can be misleading, and supports [plaintiff's] assertion that there is a distinction between affirmatively representing that a product is 100% Natural and omitting the fact that the product contains bioengineered foods from its label." Declaration of Michael R. Reese ("Reese Decl."), Exhibit A (Nov. 23, 2011, order in *Briseno v. ConAgra Foods, Inc.*) at 11 (citing FDA, *Guidance for Industry: Voluntary Labeling Indicating Whether Foods Have or Have Not Been Developed Using Bioengineering; Draft Guidance*, at 1, *available at* http://www.fda.gov/Food/GuidanceRegulation/ GuidanceDocumentsRegulatoryInformation/LabelingNutrition/ucm059098.htm); *see also In re ConAgra*, 2012 WL 5995454, at *1 (noting that the claims dismissed in the *Briseno* Nov. 23, 2011, order were consolidated into the complaint under consideration in the *In re ConAgra* decision).

*naturally theirs*.'" ¶ 24 (quoting Monsanto Glossary).  The Complaint also refers to several other industry, government, and health organizations, such as the World Health Organization and the U.S. Environmental Protection Agency, to support Plaintiffs' allegations that genetically engineered foods are — *by an objective standard* — not natural.  *See* ¶¶ 44-47.

Faced with Plaintiffs' detailed and highly credible allegations, Defendants argue that the Court should ignore the expertise of the industry, government, and health organizations cited in Plaintiffs' Complaint (as well as the named Plaintiffs' own experiences in purchasing Defendants' Products) because those organizations were not addressing the "commonly understood meaning [of the term 'natural'] in the food-labeling context." Def. Mem. at 17, 21. In other words, Defendants urge the Court to find that the term "natural" has a radically different meaning for consumers when it appears on food labels compared to its use in any other context. This argument, however, is belied both by the allegations in the Complaint and relevant case law. Moreover, the argument is premature, as it asks this Court to rule on the meaning of "natural" to a reasonable consumer, a question of fact inappropriate for resolution on a motion to dismiss. *See Ackerman*, 2010 WL 2925955, at *17.

Furthermore, as alleged in the Complaint, PepsiCo's own CEO appears to agree with the meaning of "ALL NATURAL" that the Complaint alleges consumers attribute to the phrase:

> "Now, you may ask, what does it mean to be all natural? Well, it means just that – no artificial colors, no preservatives, no artificial flavors, *and* made with all-natural ingredients."

¶ 32 (emphasis added).[7]

---

[7] This statement, along with the Complaint's other allegations, belies Defendants' attempt to distort the issue of plausibility by referencing other purported representations on the packaging. *See* Def. Mem. at 19.  The most prominent representation on the front packaging was "ALL NATURAL." *See* ¶¶ 17-22.  In any event, to the extent that Defendants attempt to rely on additional, less prominent representations to somehow refute their own highly promoted representations, they only serve to highlight issues of fact that may not be resolved here. *See Ackerman*, 2010 WL 2925955, at *17 (denying motion to dismiss in part, holding that the court could not decide as a matter of law on a motion to dismiss that no consumer could reasonably be misled by the defendants' alleged

For the foregoing reasons, Defendants' plausibility argument must fail.

## B. <u>FEDERAL LAW DOES NOT PREEMPT PLAINTIFFS' CLAIMS</u>

### 1. Plaintiffs' Claims Do Not Conflict with Federal Law or Regulations

Defendants argue the FDA's "natural" policy conflicts with and, therefore, preempts Plaintiffs' claims. Def. Mem. at 21-23. Defendants are wrong.

The United States Supreme Court has instructed that there is a strong presumption against preemption. *See Wyeth v. Levine*, 555 U.S. 555 (2009). Moreover, "[i]n areas of traditional state regulation, [a court must] assume that a federal statute has not supplanted state law unless Congress has made such an intention clear and manifest." *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 449 (2005). The regulation of food labeling, in particular, has traditionally fallen within the province of state regulation. *See Holk v. Snapple Beverage Corp.*, 575 F.3d 329, 334-35 (3d Cir. 2009) ("'If there be any subject over which it would seem the states ought to have plenary control ... it is the protection of the people against fraud and deception in the sale of food products.'" (quoting *Plumley v. Mass.*, 155 U.S. 461, 472 (1894)).

With respect to claims made regarding food, preemption only exists if it is ***expressly preempted*** by federal statute. *N.Y. State Rest. Ass'n*, 556 F.3d at 123. "Congress has explicitly stated that it does not intend to occupy the field of food and beverage nutritional labeling; instead, it permits states to regulate subject matters covered by the NLEA and its regulations provided that such state laws do not fall within the FDCA's express preemption provisions." *Lockwood v. ConAgra Foods, Inc.*, 597 F. Supp. 2d 1028, 1032 (N.D. Cal. 2009). Here, Defendants do not — and could not — claim express preemption, as they can point to no federal

---

misrepresentations); *Hughes*, 2013 WL 1080533, at *17 (denying motion to dismiss, holding that, "[a]t this early stage of the litigation, it cannot be determined whether a disclaimer on the back of Ester–C's products . . . eliminates the possibility of a reasonable consumer being misled . . . [by] Ester–C's claims of being the 'Better Vitamin C'").

regulation expressly preempting Plaintiffs' claims. For this reason alone, Defendants' preemption argument must be denied.[8]

In spite of this statutory provision foreclosing preemption claims on theories other than express preemption, Defendants advance a claim of "obstacle preemption." *See* Def. Mem. at 21-23. This argument fails, though, as it is based solely on an FDA document issued in 1993, *see* Def. Mem. at 22, that expressly states: "FDA's intent was **not to establish a definition for 'natural'** in this rulemaking," 58 Fed. Reg. 2,407 (in particular, the non-highlighted text in Defendants' Exhibit L). Moreover, the precise policy expressed in that document and arguments for preemption made based on it have been considered and rejected as a basis for preemption. *See Holk*, 575 F.3d at 340.

The Third Circuit Court of Appeals in *Holk* squarely addressed the issue and ruled that claims concerning food labeled as "natural" are not preempted by federal law, federal regulation, FDA warning letters, FDA advisory opinions, and/or FDA guidance — precisely the sorts of authority Defendants rely on here. *See id.* The *Holk* court held that "the FDA's policy statement regarding use of the term 'natural' is not entitled to preemptive effect" because "the FDA declined to adopt a formal definition of the term 'natural.'" *Id.* Moreover, FDA enforcement of its informal "natural" policy was held not to have preemptive effect because "the deficiencies inherent in the process by which the FDA arrived at its policy on the use of the term 'natural' are simply too substantial to be overcome by isolated instances of enforcement." *Id.* at 342[9]; *see also*

---

[8] In fact, the FDA has declined to regulate the term "natural" in the food labeling context, and, thus, there are no federal requirements related to use of the term "natural" to preempt state law. *See* Reese Decl., Ex. A (*Briseno* Nov. 23, 2011, order) at 6–12; *see also Holk*, 575 F.3d at 339–42; *Jones v. ConAgra Foods, Inc.*, No. C 12–01633 CRB, 2012 WL 6569393 (N.D. Cal. Dec. 17, 2012); *Lockwood*, 597 F. Supp. 2d at 1028. And courts have held, with good reason, that the NLEA does *not* preempt state consumer protection claims in circumstances identical to the circumstances here. *See, e.g.,* Reese Decl., Ex. A at 6–12.

[9] Defendants' attempt to distinguish *Holk* on the theory that high fructose corn syrup is "arguably" artificial or synthetic, while bioengineered ingredients are not, is misplaced. *See* Def. Mem. at 23 n.6. The Third Circuit Court

*Wright v. Gen. Mills, Inc.*, No. 08-cv-1532, 2009 WL 3247148, at *3 (S.D. Cal. Sept. 30, 2009) (where plaintiffs alleged that the defendant's "100% Natural" claims were deceptive because the products contained artificial ingredients, the court rejected the defendant's obstacle preemption argument, holding that "[b]ecause the FDA has deferred taking regulatory action with respect to the term 'natural,' plaintiff's state law claims do not stand as an obstacle to accomplishing Congress's objectives of uniformity and consistency in regulating labeling"); *Hitt v. Arizona Beverage Co., LLC*, No. 08cv809 WQH (POR), 2009 WL 449190, at *5 (S.D. Cal. Feb. 4, 2009) (claim that defendants deceptively promoted drinks as "natural" when they contained high fructose corn syrup was not preempted).

As recently as this week, the court in *Krzykwa v. Campbell Soup Co.*, No. 12-62058-CIV, 2013 WL 2319330 (S.D. Fl. May 28, 2013) ("*Campbell Soup*"), rejected an analogous preemption argument. *Campbell Soup* dealt with claims that its soups were misleadingly labeled as "100% natural" because they contained GMO ingredients. *Id.* at *2. The defendant argued that "the FDA and USDA have developed similar policies that govern the labeling of food products with 'natural' claims, and both have determined there is nothing material about bioengineered foods." *Id.* at *3. The plaintiff contended that the "[d]efendant's argument that USDA approval of [certain soups no longer claimed in the lawsuit] amounts to FDA approval of the 100% Natural label on the soup containing genetically modified corn, is completely amiss." *Id.* The court agreed and expressly held that the plaintiff's state consumer protection law claims were not preempted by federal regulations. *Id.* at *6.

Finally, Defendants claim that "obstacle preemption" should apply here because Plaintiffs' theory of the case directly contradicts the section of the FDA's policy providing that

---

of Appeals based its obstacle preemption holding in *Holk* on the fact that the FDA's informal "natural" policy "*is not entitled to preemptive effect*." *Holk*, 575 F.3d at 340 (emphasis added). This is still the case today.

the only artificial and synthetic additives that would make a food non-natural are those that "would not normally be expected to be in the food." Def. Mem. at 22. Defendants assert that consumers now *normally expect* any corn product they purchase to be bioengineered because, "[a]s the FDA has explained, '[m]ost, if not all cultivated food crops have been genetically modified' using modern bioengineering techniques." *Id.* (citing FDA, Guidance for Industry).

Defendants blatantly distort the facts. The cited document actually says that most crops have been "genetically modified" either by bioengineering **_OR_** traditional plant breeding methods, not by bioengineering alone. *See* Defendants' Ex. V. The document goes on to state, in direct contradiction to Defendants' argument, that "data indicate that **_consumers do not have a good understanding that essentially all food crops have been genetically modified._**" *Id.* (emphasis added). If anything, Defendants' argument underscores that this is an intensive factual inquiry not properly resolved on a motion to dismiss.

For all of the foregoing reasons, Defendants' conflict preemption argument fails.[10]

### 2. The Primary Jurisdiction Doctrine Should Not be Invoked

Defendants argue this Court should dismiss Plaintiffs' action under the primary jurisdiction doctrine. *See* Def. Mem. at 24. However, the primary jurisdiction doctrine is not "intended to secure expert advice for the courts from regulatory agencies every time a court is presented with an issue conceivably within the agency's ambit." *Syntek Semiconductor Co., Ltd. v. Microchip Technology Inc.*, 307 F.3d 775, 780 (9th Cir. 2002).

---

[10] Defendants also advance a novel theory: that Plaintiffs' allegations are implausible, and their claims preempted, because the genetic modifications that Plaintiffs claim render the "natural" label misleading occur prior to the harvesting of the corn. *See* Def. Mem. at 6, 22. Plaintiffs are unaware of this theory having been advanced, much less accepted, in any case in any court. (Defendants themselves did not offer this theory in their pre-motion letter to the Court setting out the grounds for their Motion.) Defendants trumpet the fact that the agency documents they cite – many issued years or decades before bioengineered foods entered the U.S. food supply – discuss only post-harvest processing impacting a product's "natural" status. Despite Defendants' valiant effort to create something from nothing, the fact remains that no agency has ever endorsed the argument that Defendants seek to make – *i.e.*, that pre-harvest activity cannot render a "natural" label on food misleading. In any case, Defendants' theory, at best, raises issues of fact regarding the meaning of "natural" labels.

With respect to food labeling claims, courts have repeatedly rejected the argument made by Defendants here.  As explained by Judge Gleeson in *Ackerman*:

> The question whether defendants have violated FDA regulations and marketed a product that could mislead a reasonable consumer is one courts are well-equipped [sic] to handle, and is not an appropriate basis for invoking the primary jurisdiction doctrine.

*Ackerman*, 2010 WL 2925955, at *14 (citing *Lockwood*, 597 F. Supp. 2d at 1035); *see also Campbell Soup*, 2013 WL 2319330, at *4 (court found that "Defendant's arguments that the claims should be dismissed under the primary jurisdiction doctrine [was] misplaced because the FDA has repeatedly declined to adopt formal rule-making that would define the word 'natural.'"); *Janney v. Gen. Mills, Inc.*, No. C 12-3919 PJH, 2013 WL 1962360, at *4, 6 (N.D. Cal. May 10, 2013) (same); Reese Decl., Ex. A, at 13–14 (explaining that the FDA has declined to regulate the term "natural" and that "there is no indication that the FDA intends to provide guidance on use of the term 'natural' in the immediate future"); *Lockwood*, 597 F. Supp. 2d at 1034–35 ("Further, when the FDA considered the term 'natural,' 'it was aware of and had reviewed state regulation of the use of the term, yet it made no mention of the need for uniformity.'"); *Jones*, 2012 WL 6569393, at *6 ("The FDA's inaction with respect to the term 'natural' implies that the FDA does not believe that the term 'natural' requires 'uniformity in administration. . . .  Accordingly, courts need not refer such claims to the FDA pursuant to the primary jurisdiction doctrine." (quotations omitted)).[11]

---

[11] Defendants cite *Astiana v. Hain Celestial Grp., Inc.*, No. C 11-6342 PJH, 2012 WL 5873585 (N.D. Cal. Nov. 19, 2012), arguing that, unless the Court dismisses Plaintiffs' action under the primary jurisdiction doctrine, the Court will "undermine, through private litigation, the FDA's considered judgments" concerning the term "natural." Def. Mem. at 24.  However, as explained by the court that decided *Astiana*, the term "natural" in the cosmetics context (as was at issue in *Astiana*) is significantly different, for purposes of primary jurisdiction analysis, from use of the term "natural" in the food context. *See Janney*, 2013 WL 1962360, at *6-7 (distinguishing *Astiana* and declining to dismiss under the primary jurisdiction doctrine, noting that "any referral to the FDA would likely prove futile").

## C. **THE MAGNUSON-MOSS ACT CLAIM IS SUFFICIENTLY PLED**

Defendants contest Plaintiffs' claim under the Magnuson-Moss Warranty Act ("MMWA"), arguing that "ALL NATURAL" cannot be subject to an MMWA suit because such a statement cannot be interpreted by a consumer to mean the product is defect free or that it otherwise guarantees a specific performance level. *See* Def. Mem. at 25. This argument is wrong for two reasons.

First, it asks the Court to rule as a matter of law what actually is an issue of fact for the jury — *i.e.*, whether the presence of GMOs in the product can be said to be a defect, thereby violating the warranty that the Products are "ALL NATURAL." *See, e.g., Ultimax, Inc. v. Mercedes-Benz USA, LLC,* No. 2:06-CV-951, 2008 WL 974036 (S.D. Ohio Apr. 8, 2008) (denying motion for summary judgment, holding "whether the Vehicle was warranted to be free of vibration is a question of fact"); *Scientific Components Corp. v. Sirenza Microdevices, Inc.*, No. 03-CV-1851 NGG, 2006 WL 2524187 (E.D.N.Y. Aug 30, 2006) (court determined that what constituted a "defect" under a written warranty was a question of fact).

Defendants rely here on a single sentence in *dicta* from *Hairston v. South Beach Beverage Co., Inc.*, No. CV 12-1429-JFW DTBX, 2012 WL 1893818 (C.D. Cal. May 18, 2012), *appeal dismissed* (July 12, 2012), a case that is distinguishable on its facts, as well as cases that merely follow *Hairston*. Contrary to the interpretation of Defendants and some courts, the *Hairston* court did not hold that a "natural" label could not constitute a written warranty under the MMWA.

The plaintiff in *Hairston* challenged several elements of the labeling on the defendants' beverages, including the use of fruit names and common vitamin names, subjects that are expressly regulated by the FDA. *Id.* at *1. As a result, the plaintiff's challenges to these label elements were held to be preempted by federal regulation. *Id.* at *3 (citing *Dvora v. Gen. Mills,*

14

*Inc.*, No. CV 11–1074–GW(PLAx), 2011 WL 1897349 (C.D. Cal. May 6, 2011); *McKinnis v. Gen. Mills, Inc.*, No. CV 07-2521 GAF (FMOx), 2007 WL 4762172 (C.D. Cal. Sept. 18, 2007)). Consequently, the *Hairston* plaintiffs' MMWA claims were dismissed because those claims were "otherwise governed by Federal law." *Hairston*, 2012 WL 1893818, at *5 (citing 15 U.S.C. § 2311(d)). In *dicta*, the court observed that "[t]he challenged statements — 'all natural with vitamins' and the names of various [] flavors — are 'product descriptions' rather than promises that the product is defect-free." *Id.* at *6. However, the court had previously held that the plaintiff could not state a claim regarding the defendants' "all natural" labeling "because once the preempted statements regarding fruit names and vitamin labeling are removed, [the] [p]laintiff's claim is based on a single out-of-context phrase found in one component of [the product's] label." *Id.* at *4. Moreover, the court noted that the product's label "does not simply state that it is 'all natural' without elaboration or explanation . . . in a vacuum, and, thus, it will be impossible for [the] [p]laintiff to allege how the 'all natural' language is deceptive without relying on the preempted statements regarding fruit names and vitamins." *Id.*

In stark contrast, here, Plaintiffs' claims regarding "ALL NATURAL" do not rely on any preempted claims here. Importantly, the *Hairston* court did not rule, even in dicta, that an "all natural" claim, standing on its own, cannot constitute a warranty under the MMWA. Thus, *Hairston* is simply inapposite for that issue.

Defendants also argue that the FDA's purview under the FDCA precludes application of the MMWA's governance of consumer warranties over food. *See* Def. Mem. at 25. As explained above, though, the use of the term "ALL NATURAL" is not governed by any federal law. Indeed, the FDA has refused invitation to even define what "natural" means, let alone govern the claim. Moreover, if Congress intended the MMWA to exclude warranties made on food from its purview, Congress would have stated so explicitly, as it did in the Federal Seed Act. *See* 15

U.S.C. § 2311(a). It would have excluded it from the definition of "consumer products" as it did with the Consumer Product Safety Act. *Compare* 15 U.S.C. § 2052 (I), *with* 15 U.S.C. § 2301. It would not exempt the most ubiquitous of all "consumer products" — food — from the MMWA's purview without explicit reference, instead leaving such an intent to be extracted from a savings clause directed to other federal laws on "written warranties."

Defendants also claim that Plaintiffs were required to give them a "reasonable opportunity to cure such failure to comply" with their warranty." Def. Mem. at 25. As Defendants concede, though, they did receive notice. *Id*. at 26. This is sufficient. To the extent Defendants argue otherwise, that is a factual question to be determined at a later time.[12]

Finally, Defendants' argument that Plaintiffs are required to plead individual claims exceeding $25 is mistaken, as the jurisdictional requirements required by MMWA have been superseded by CAFA. *See Keegan v. Am. Honda Motor Co.*, 838 F. Supp. 2d 929, 954 (N.D. Cal. 2012) (collecting cases). Defendants do not dispute that Plaintiffs have met the CAFA jurisdiction requisites. In any event, the Complaint states that each of the Plaintiffs has bought Defendants' Products on a monthly basis for over a period of two years, *see* ¶¶ 17-20, which establishes a sum that far exceeds $25.

---

[12] Defendants do not dispute, nor could they dispute, the allegation that they did not correct the misrepresentations identified in the pre-suit letter they received. *See* ¶ 128.

## D. PLAINTIFFS' STATE LAW CLAIMS ARE NOT SUBJECT TO THE PROTECTION OF A SAFE HARBOR

Defendants argue that Plaintiffs' state law claims are protected by various safe harbor provisions under Florida, New York, and California law. Def. Mem. at 26-28.[13]  Defendants misconstrue the express confines of those safe harbors.  As set forth below, a simple review of the applicable laws makes clear that they do not apply to Plaintiffs' claims.

Significantly, with respect to Florida law, the very argument made here was rejected with respect to Florida claims premised on GMOs in Campbell's soup products that had been represented as "100% Natural." *See Campbell Soup*, 2013 WL 2319330, at *5 ("Plaintiff's claims are not preempted. Accordingly, Defendant's argument that Plaintiff's claims fall under FDUPTA's safe harbor provision correspondingly fails.").  This is because, in determining whether Florida's safe harbor provision applies, "the relevant analysis…is whether…the moving party[] has demonstrated that a specific federal or state law *affirmatively authorized* it to engage in the conduct alleged…not whether [the plaintiffs] have demonstrated that [the defendant's] conduct violates a specific rule or regulation." *State of Fla., Office of Atty. Gen., Dep't of Legal Affairs v. Tenet Healthcare Corp.*, 420 F. Supp. 2d 1288, 1310 (S.D. Fla. 2005) (emphasis added).  To succeed, Defendant must demonstrate that federal or state law permits *the specific practice* at issue; it is not sufficient for the defendant merely to show that the federal or state government, or an agency thereof, has regulated generally in the area. *See Peters v. Keyes Co.*, No. 10-60162-CIV, 2010 WL 1645095, at *4 (S.D. Fla. Apr. 21, 2010).

As discussed above, the FDA has declined to establish any legal requirements concerning, or a definition for, the term "natural" when used on food labeling.  As in *Peters*, the fact that the government has generally regulated in an area — here, food labeling — is not

---

[13] In addition to California common law, the statutes at issues are Fla. Stat. § 501.212 and N.Y. GBL § 349(d).

enough to establish that federal or state law affirmatively authorizes Defendants' alleged actions, *i.e.*, the labeling of the Products as "ALL NATURAL" when they are not. The only legal requirements Defendants have pointed to are generalized requirements related to food labeling. *See* 21 C.F.R. § 10.85(j) (advisory opinions are not legal requirements). This is not sufficient to invoke the operation of Florida's safe harbor. *Peters*, 2010 WL 1645095, at *4.[14]

Similarly, Defendants argue the New York claims must be dismissed because Defendants' conduct "complies with the rules and regulations of" the federal agencies, such as the FDA. Def. Mem. at 26. However, "making deceptive statements cannot be considered compliance with federal rules, regulations, and statutes, as required by [GBL] § 349(d)." *People ex rel. Spitzer v. Gen. Elec. Co., Inc.*, 756 N.Y.S.2d 520, 524 (2003). Defendants' statements that the Products are "natural" are deceptive and, therefore, cannot comply with federal rules, regulations, and statutes.

"Compliance with regulations does not immunize misconduct outside the regulatory scope." *Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris, Inc.*, 133 F. Supp. 2d 162, 175 (E.D.N.Y. 2001); *accord Sclafani v. Barilla Am., Inc.*, 796 N.Y.S.2d 548 (2005). Here, as in *Sclafani*, "some of the elements of the relevant packaging alleged by the plaintiff to be deceptive fall outside the scope of the applicable federal regulations." *Id.* Again, the FDA has declined to regulate the term "natural" on food labeling. Therefore, GBL § 349(d) does not protect Defendants' conduct.[15]

_____

[14] *Berenguer v. Warner-Lambert Co.*, No. 02-05242, 2003 WL 24299241 (Fla. Cir. Ct. July 31, 2003), relied upon by Defendants, *see* Def. Mem. at 26, is distinguishable. There, the FDA specifically required certain language to appear on the defendants' product labeling. *Berenguer*, 2003 WL 24299241, at *3. The court held that the statements the plaintiffs challenged in the defendants' advertisements were "indistinguishable" from the language mandated by the FDA, and, thus, the challenged statements were protected by the FDUTPA safe harbor. *Id.* Here, by contrast, the FDA has neither required nor affirmatively authorized the use of the "natural" representation on Defendants' Product labels.

[15] Defendants' reliance on *American Home Products Corp. v. Johnson & Johnson*, 672 F. Supp. 135 (S.D.N.Y.

18

The California common law safe harbor does not protect Defendants either. There is no legal requirement in federal law to provide a safe harbor for Plaintiffs' state law claims that Defendants' Products are misleadingly and deceptively labeled "natural" due to the presence of non-natural ingredients. Indeed, this very argument regarding California's narrow safe harbor and allegations that the term "natural" is misleading under California's consumer protection laws has been rejected before. *See Holk*, 713 F. Supp. 2d at 1073. In *Holk*, the plaintiffs challenged as misleading the defendants' use of the term "natural" to describe their Snapple beverage product. *Id.* Defendants claimed the labeling was protected by California's safe harbor. In denying defendant's motion to dismiss, the court rejected that argument, holding:

> [California's] safe harbor rule ***applies only where there is a law that expressly authorizes the activity***. Where such a law exists, it, in essence, preempts broader consumer protection claims. . . . Because the court concludes that the FDA's policy cannot be accorded the weight of federal law for purposes of the safe harbor rule, there is no law which expressly authorizes defendant's [use of the term "natural"]. Accordingly, defendant's motion to dismiss plaintiffs' complaint on this basis is without merit.

713 F. Supp. 2d at 1077 (emphasis added). For the same reasons, Defendants' argument here should be rejected as well.

Defendants' citation to California Health and Safety Code § 110885 does not save them, as that provision only governs use of the term "organic." *See* Cal. Health & Safety Code § 110885. It does not expressly permit use of the term "ALL NATURAL" at issue here. Indeed, the statute specifically states that: "This article shall not apply to the term 'natural' when used in

---

1987), is misplaced. In *American Home Products*, McNeilab, Inc. brought a counterclaim against the plaintiff, American Home Products Corporation ("AHP"), under GBL §§ 349 and 350, alleging that the labels on AHP's over-the-counter internal aspirin products failed to warn that children with viral diseases who took such products incurred a significant risk of contracting Reye Syndrome. *Id.* at 136. In 1986, the FDA had mandated warning labels on aspirin preparations advising that children should not use such medicines for flu symptoms before consulting a doctor about Reye Syndrome. *Id.* at 141. In connection with requiring the warning labels, "the FDA expressly found that there was a need for uniformity in [Reye Syndrome] warnings on the labels of aspirin-containing products and expressly preempted all conflicting regulations." *Id.* at 141. Here, by contrast, the FDA has expressly *declined* to regulate or define the term "natural" when used in the food labeling context.

the labeling or advertising of a product." *Id.*[16]  Accordingly, California's very narrow safe harbor does not apply to Defendants' use of the phrase "ALL NATURAL."

Finally, Defendants' reliance on the *ConAgra* court's examination of the statutory safe harbor provision in Nebraska's Consumer Protection Act ("NCPA"), Neb. Rev. Stat. § 59–1671(1) is misplaced.  The NCPA's safe harbor is not at issue here, as no claims are brought under Nebraska law.  Moreover, Nebraska's safe harbor is much broader than the safe harbor of Florida, New York, or California law.  Specifically, Nebraska's Section 59–1671(1) provides that the NCPA "shall not apply to actions or transactions otherwise permitted, prohibited, *or regulated* under laws administered by…any…regulatory body or officer acting under statutory authority of this state or the United States." Neb. Rev. Stat. § 59–1671(1).  As the *ConAgra* court explained, the relevant question in analyzing whether the NCPA safe harbor bars a cause of action is "whether the challenged practice is regulated." *In re ConAgra*, 2012 WL 5995454, at *7.  The *ConAgra* court concluded that the NCPA safe harbor applied because "[i]t is clear that the labeling and advertising of food products like the Wesson Oils is extensively regulated by the FDA[.]"  *In re ConAgra*, 2012 WL 5995454, at *9.

In sum, Defendants' conduct does not warrant protection under any of the safe harbor provisions of Florida, New York, or California law on which Defendants seek to rely. *See, e.g.*, *Campbell Soup*, 2013 WL 2319330, at *5 (denying Florida safe harbor argument regarding

---

[16] Furthermore, even assuming the FDA's "natural" policy did constitute a legal requirement (which it does not), Defendants do not comply with the "natural" policy because the Products include artificial ingredients such as genetically engineered corn.  The cases Defendants cite are inapposite in that they involve a federal or state legal requirement with which the defendant *had* complied.  *See Alvarez v. Chevron Corp.*, 656 F.3d 925, 935 (9th Cir. 2011) (corrective disclosure sought by plaintiff was preempted by the Petroleum Marketing Practices Act because it was not the same as the federal requirement); *Lopez v. Nissan N. Am., Inc.*, 201 Cal. App. 4th 572, 590–92 (Cal. Ct. App. 2011) (defendants' odometers, though possibly slightly inaccurate, were legally "correct" under terms of governing California statutory provision and thus could not be challenged via UCL claims for misleading consumers by failing to disclose the inaccuracy); *Olszewski v. Scripps Health*, 30 Cal. 4th 798, 828 (2003) (explaining that California Welfare and Institutions Code §§ 14124.74 and 14124.791 "expressly permitted the liens filed by defendant" that the plaintiff asserted violated California state law and thus the liens were protected by the California safe harbor).

"natural" claim); *Barilla*, 796 N.Y.S.2d at 548 (same for New York law regarding food packaging); *Holk*, 713 F. Supp. 2d at 1073 (same for California law).

### E. PLAINTIFFS STATE CLAIMS FOR BREACH OF EXPRESS WARRANTY

"To state a claim for breach of express warranty, a plaintiff must allege facts sufficient to show that (1) the seller's statements constitute an affirmation of fact or promise or a description of the goods; (2) the statement was part of the basis of the bargain; and (3) the warranty was breached." *Vicuna v. Alexia Foods, Inc.*, No. C 11-6119 PJH, 2012 WL 1497507, at *2 (N.D. Cal. Apr. 27, 2012) ("Here, plaintiffs have adequately stated a claim that the designation 'All Natural' constituted a description of the potato products, or a statement of fact about the potato products, and that the warranty was breached by the inclusion of an ingredient that was arguably synthetic."). The elements for breach of express warranty claims under California, New York, and Florida law are materially the same. *Compare Vicuna*, 2012 WL 1497507, *with, e.g.*, *Ellen v. Heacock*, 247 A.D. 476, 477 (N.Y. App. Div. 1936) ("To constitute an 'express warranty,' [under New York law] two elements must be present: (1) There must be either an affirmation of fact or a promise by the seller relating to the subject of the sale, the natural tendency of which was to induce the purchaser to buy the goods: (2) the buyer must rely upon such statement or promise in making the purchase."), *and* Fla. Stat. § 672.31 ("(1) Express warranties by the seller are created as follows: (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise; (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.").

Here, Plaintiffs allege that the "all natural" representation on the Products constituted a description of the Products that was part of the basis of the bargain and that the warranty was

breached by the inclusion of non-natural genetically engineered ingredients in the Products. *See* ¶¶ 155, 158. This constitutes an express warranty under California, Florida, and New York law.

Defendants cite *Werbel ex rel. v. Pepsico, Inc.* in support of an argument that the Products' "all natural" label "does not provide any 'exact' terms of a 'warranty,' but is mere labeling on a package." Def. Mem. at 28 (citing *Werbel ex rel. v. Pepsico, Inc.*, No. C 09-04456 SBA, 2010 WL 2673860, at *5 (N.D. Cal. July 2, 2010)). But in *Pepsico*, the court made explicit that the alleged "contains berries" claim was nowhere in the product packaging or marketing. *Pepsico*, 2010 WL 2673860, at *5 ("No such claim is made expressly or impliedly anywhere on the Cap'n Crunch packaging or marketing material cited by Plaintiff."). Here, by contrast, the "ALL NATURAL" claim is on every Product label. *See, e.g.*, ¶ 4.[17]

Defendants also argue that Plaintiffs' Florida and New York warranty claims must be dismissed because Plaintiffs Summerlin and Shake did not provide Defendants with pre-litigation notice and an opportunity to cure. However, Plaintiffs did provide Defendants with sufficient notice that they were unsatisfied with their purchases of the Products. On October 14, 2011, prior to commencing the first-filed case in the instant litigation, counsel for Plaintiffs sent Defendants a letter explaining that Defendants' "ALL NATURAL" labels are deceptive because the Products "are not '100% natural,' but instead are made from…genetically modified organisms." ¶ 128; Complaint, Ex. A, at 39–41. This constitutes sufficient notice.

"[T]he rule of requiring notification is designed to defeat commercial bad faith, not to deprive a good faith consumer of his remedy." *E. Air Lines, Inc. v. McDonnell Douglas Corp.*, 532 F.2d 957, 976 (5th Cir. 1976). The "notice under [Fla. Stat. Ann. § 672.607(3)(a)] need not

---

[17] *Anderson v. Bungee Int'l Mfg. Corp.*, 44 F. Supp. 2d 534, 541 (S.D.N.Y. 1999), also cited by Defendants, is easily distinguishable because there the plaintiff had "not made a showing that the statements 'Premium Quality' and 'Made in the USA,' *to the extent they connote superior quality*, are descriptions of the goods and were a part of the basis of the bargain." 44. F. Supp. 2d at 541 (emphasis added) (holding that such statements, to the extent they connote superior quality, were puffery).

be a specific claim for damages or an assertion of legal rights." *Id.*. However, "a buyer's conduct under [Fla. Stat. Ann. § 672.607(3)(a)] must satisfy the Code's standard of commercial good faith. Thus, while the buyer must inform the seller that the transaction is 'still troublesome,' Comment 4 [to Fla. Stat. Ann. § 672.607] requires that the notification 'be such as informs the seller that the transaction is claimed to involve a breach, and thus opens the way for normal settlement through negotiation.'" *Id.*; *see also Cliffstar Corp. v. Elmar Indus., Inc.*, 254 A.D.2d 723, 724, 678 N.Y.S.2d 222, 223 (1998) ("[T]he notice given by plaintiff [under N.Y. U.C.C. Law § 2-607] had only to 'alert [defendant] that the transaction [was] troublesome and [did] not need to include a claim for damages or threat of future litigation.'").

Here, Plaintiffs provide more than sufficient notice of the breach — not only did they inform Defendants that their conduct was "still troublesome," they informed Defendants that they had acted illegally, specified why, and informed them they may be subject to damages. *See* Complaint, Ex. A. While Plaintiffs did not specifically mention the New York or Florida Uniform Commercial Code in the notice, neither New York law nor Florida law requires that level of specificity. And, Defendants were, of course, on notice of Defendants' problematic language upon receipt of the notice. Tellingly, the same problematic language used by Defendants is the same for all of the Plaintiffs' claims, regardless of which state they reside in.

Finally, Defendants argue Plaintiffs' Florida express warranty claims must be dismissed because Plaintiffs were not in privity with Defendants when they purchased the Products, since Plaintiffs purchased the Products from third-party supermarkets rather than directly from Defendants. *See* Def. Mem. at 29. However, under Florida law, if the retailer knows no more about the product than the plaintiff purchaser, then the courts hold that no privity is required in express warranty cases. For example, in *Hoskins v. Jackson Grain Co.*, 63 So.2d 514 (Fla. 1953), the Florida Supreme Court found "it would be utterly unsound and unfair" to hold that the

plaintiff "could not recover from the one who knew the origin and history of the seed [*i.e.*, the products at issue], simply because the [plaintiff] got them direct from retailer who knew no more about them than he." *Id.* at 515-516; *see also Smith v. Wm. Wrigley Jr. Co.*, 663 F. Supp. 2d 1336, 1343 (S.D. Fla. 2009) (no privity needed with manufacturer regarding mislabeled chewing gum).[18]

Here, as in *Wrigley*, it defies common sense to argue that purchasers of the Products presumed the supermarkets or bodegas were knowledgeable whether the Products contained GMOs. Further, the warranty Defendants breached is contained on the Product packaging, and Plaintiffs allege they relied on the warranty when purchasing the Products. *See* ¶¶ 4, 17–20, 163. Accordingly, Defendants' privity argument must be denied. *Wrigley*, 663 F. Supp. 2d at 1343.

---

[18] In *Smith v. Wm. Wrigley Jr. Co.*, the plaintiff alleged the defendant warranted that its Eclipse gum brand was "'scientifically proven to help kill the germs that cause bad breath' as a result of the 'natural ingredient,' Magnolia Bark Extract ('MBE')." *Wrigley*, 663 F. Supp. 2d at 1337. The defendant argued the plaintiff was not in privity with the defendant because the plaintiff had purchased the gum from a retailer rather than the defendant. *Id.* at 1341. Denying the defendant's argument, the court stated that "it defies common sense to argue that purchasers of Eclipse gum presumed that the cashier at the local convenience store is familiar with the scientific properties of MBE. Second, it is significant that the express warranty the manufacturer allegedly breached is contained on the packaging of Eclipse gum." *Id.* at 1343. The court continued on to state, "[m]oreover, the Complaint allege[d] that Plaintiff relied on the warranty when purchasing the gum." *Id.*

## F. PLAINTIFFS' CLAIMS ARE SUFFICIENTLY PLED

Defendants move to dismiss some, but not all, of Plaintiffs' claims on the premise that the allegations do not meet the pleading standard of Rule 9(b).[19] This argument is incorrect as, in fact, Plaintiffs have satisfied Rule 9(b)'s requirements by adequately pleading the who, what, when, where, and how of the alleged fraudulent conduct. *See Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 119 (2d Cir. 2013) ("As to particularity, the complaint must adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements." (quotation omitted)).[20]

The *Holk* case is on point. As stated above, *Holk* involved claims under California law that the defendant's Snapple beverages had been misleadingly labeled as "Natural." The defendant moved to dismiss on various grounds, including that the complaint did not meet the pleading standard established by Rule 9(b). The court rejected this argument, holding that:

> Plaintiffs allege that between March 4, 2005 and March 4, 2009, defendant used terms such as "All Natural" and other similar terms in labeling its drink products. Plaintiffs have submitted examples of the labels from a bottle of Acai Blackberry juice drink, from a bottle of Peach iced tea and from a bottle of Raspberry iced tea, all of which contain the term "All Natural." Plaintiffs allege that this labeling deceived consumers because the drink products contained HFCS, which they assert is not a natural product. Plaintiffs further allege that if they had not been deceived by the labels on the products, they would not have purchased defendant's product, but would have purchased alternative drink products. These allegations are sufficient to establish the "time, place, and specific content" requirements of Rule 9(b).

---

[19] Defendants do not move to dismiss, pursuant to Rule 9(b), Plaintiffs MMWA claim or New York statutory claims (GBL §§ 349 or 350) or warranty claims. *See* Def. Mem. at 29-31.

[20] In the Second Circuit, even for the claims where Rule 9(b) applies, the rule's requirements must be read in conjunction with and "harmonized with the general directives . . . of Rule 8 that the pleadings should contain a 'short and plain' statement of the claim or defense and with each averment should be 'simple, concise and direct.'" *Ross v. A. H. Robins Co.*, 607 F.2d 545, 557 (2d Cir. 1979).

*Holk*, 713 F. Supp. 2d at 1077.

The same is true here.  The "who" is PepsiCo, Inc. and Frito-Lay North America, Inc. ¶ 1.  The "what" is the representation "ALL NATURAL." ¶¶ 1, 37-40.  The "when" is from January 1, 2010, through the present. ¶ 1.  The "where" is on each package for the Products, pictures of which are included in the Complaint. ¶¶ 4, 37.  The "how" or "why" is that the products were not natural because they contained unnatural GMOs. ¶¶ 1, 42-48.

No more detail is necessary at this stage. *See In re ConAgra*, 2012 WL 5995454, at *5 (noting that, where plaintiffs had "adequately alleged that they understood that the phrase '100% Natural' meant that Wesson Oil was not made from genetically modified organisms, and that they purchased the product based on this false understanding…. the court cannot conclude the complaint as a whole lacks the particularity required by Rule 9(b).").

To the extent Defendants contend that the Complaint is deficient, they are wrong.  First, Defendants contend that Plaintiff Shake has not alleged what products he purchased. *See Def. Mem.* at 30.  The Complaint, however, states that Plaintiff Shake purchased each of the three types of Products at issue — Tostitos, SunChips, and Defendants' Bean Dip — labeled with the "ALL NATURAL" representation. ¶ 17.  The "ALL NATURAL" representation appears uniformly on the label for each type of product — regardless of the particular flavor. *See* Complaint at 17-22 (pictures).  Rule 9(b) does not require that Plaintiffs plead the specific *flavors* they purchased. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("Rule 9(b) is intended to provide a defendant with fair notice of a plaintiff's claim, to safeguard a defendant's reputation from improvident charges of wrongdoing, and to protect a defendant against the institution of a strike suit." (quotation and citation omitted)).  Doing so would provide

no additional notice to Defendants than they already have regarding the circumstances of the alleged fraud relating to ***their own Products.***

Next, Defendants contend that Plaintiffs Gengo and Zuro "provide no detail about where they purchased Frito-Lay products." Def. Mem. at 30. The exact location of the purchase of the Products, however, is not required by Rule 9(b). Rather, the "where" requirement of Rule 9(b) may be satisfied by alleging with particularity where the allegedly fraudulent statement appeared on the consumer packaging — *e.g.*, on the front label. *See In re ConAgra*, 2012 WL 599545, at *5 ("A number of courts have concluded that a plaintiff complies with Rule 9(b) if he or she asserts that allegedly misleading statements appeared on the label or packaging of a consumer product."). Plaintiffs Gengo and Zuro have done this. *See ¶¶* 18-19. This is sufficient to satisfy the "where" requirement of Rule 9(b) and provide Defendants the ability to prepare a defense, particularly because Plaintiffs have also provided pictures of representative labels. *See In re ConAgra*, 2012 WL 599545, at *5.

Similarly, Defendants' contention regarding the "when" component of Rule 9(b)'s requirement asks for more than is required. *See, e.g.*, *Int'l Motor Sports Group, Inc. v. Gordon*, No. 82709, 98 CIV 5611(MBM), 1999 WL 619633, at *4 (S.D.N.Y. Aug. 16, 1999) ("Rule 9(b) does not require that a complaint plead fraud with the detail of a desk calendar or a street map."). In a case like the instant one, where the alleged fraud occurred consistently over a period of time, courts have regularly found that Rule 9(b)'s "where" component is satisfied by alleging a period of time during which the representation at issue appeared on the product label – particularly when the complaint alleges a frequency with which the plaintiffs saw the representations. *See, e.g.*, *In re ConAgra*, 2012 WL 599545, at *5 (citations omitted). Here, the Complaint alleges that the "all natural" representations were made from January 1, 2010, to the present, ¶ 1, and that the "all natural" marketing and advertising for the Products were consistent

and systematic, ¶ 41. The Complaint also specifies the frequency with which Plaintiffs viewed the representations. ¶ 17 (Plaintiff Shake was exposed to them "approximately once per month in stores and more frequently in his home."); ¶ 18 (Plaintiff Gengo was exposed to them "approximately once per week in stores and more frequently in her home."); ¶ 19 (Plaintiff Zuro was exposed to them "approximately once per week."); ¶ 20 (Plaintiff Summerlin was exposed to them "approximately once per month at Publix [supermarkets in Orange Park and Jacksonville, Florida,] and on an ongoing basis in her home."). This satisfied the "where" requirement of Rule 9(b). *See In re ConAgra*, 2012 WL 599545, at *5. (***"Given this level of detail, the court does not believe that requiring that plaintiffs allege specific dates on which they saw the representations is necessary or realistic.*"** (emphasis added)).

Defendants also contend that Plaintiffs do not provide any details about the price they paid for the Products. The Complaint, however, provides detailed allegations of the approximate retail price of each of the three types of Products. *See* ¶ 66 (alleging Tostitos, SunChips, and Frito-Lay's Bean Dip cost approximately 33.1 cents, 31.2 cents, and 33 cents per ounce, respectively).

Defendants also incorrectly contend that Plaintiffs have not alleged sufficient facts to give rise to a strong inference of fraudulent intent in connection with their intentional misrepresentation claims that constitute Counts XI, XII, and XIII of the Complaint. Def. Mem. at 30. "The requisite 'strong inference' of fraud may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Shields* 25 F.3d at 1128. Here, Plaintiffs have done both.

First, Plaintiffs have alleged that both Defendants had motive and opportunity to fraudulently market unnatural, genetically modified foods as "natural." The motive was

increased sales and increased revenue due to premium pricing. *See, e.g.*, ¶ 32 ("'Consumers have consistently told us they are looking for . . . more all natural snacks. And they are voting with their wallets.'" (quoting CEO of PepsiCo Americas Foods in 2010)); ¶ 65-66 (detailing premium price for the Products compared to products for which no "all natural" representations were made); *see also* ¶¶ 51-59. Opportunity is indicated by the fact that Defendants knew consumers would rely on representations that a food product was "all natural." *See, e.g.*, ¶ 2 ("'We have talked extensively to consumers . . . , and they . . . tell us the number one motivation for purchase is products that claim to be all natural.'"); ¶¶ 51-59. Plaintiffs have also cited to an FTC report indicating that 86% of consumers "expect a 'natural' label to mean processed foods do not contain any artificial ingredients." ¶ 61 (quotation omitted). Clearly, this is more than just a bare-bones, conclusory allegation that Defendants engaged in fraud.

Second, Plaintiffs have alleged sufficient facts to establish that Defendants either knew that their "natural" claims were misleading and fraudulent due to the presence of genetically modified ingredients or Defendants should have known but had a reckless disregard for the truth. Plaintiffs have explained in detail why "'unnatural' is a defining characteristic of genetically modified foods." ¶ 42; *see also* ¶¶ 43-48. Plaintiffs have also alleged that tests conducted by an independent laboratory on the Products confirmed the presence of GMOs in Tostitos and SunChips. *See* ¶ 50. Making all reasonable inferences in favor of Plaintiffs, it stands to reason that, if Plaintiffs tested Defendants' Products for GMOs, Defendants could have easily had their Products or ingredients tested for GMOs (if they had wanted to know the truth about whether their Products contained GMOs). Thus, the allegations here are not like those in the case cited by Defendants, *see* Def. Mem. at 31 (citing *Liberty Mut. Ins. Co. v. WAWA Tours, Inc.*), where the plaintiffs only made conclusory allegations and provided no particularized facts to support the inference that the defendants acted recklessly or with fraudulent intent, *See Liberty Mut. Ins.*

*Co. v. WAWA Tours, Inc.*, No. CV-07-0880 (CPS), 2007 WL 2743500, at *7 (E.D.N.Y. Sept. 18, 2007). For that reason, the Complaint satisfies Rule 9(b) with respect to the scienter element.

## G. <u>EQUITABLE RELIEF IS PROPERLY PLEADED IN THE ALTERNATIVE</u>

Defendants' contention that Plaintiffs' claims seeking equitable relief must be dismissed, *see* Def. Mem. at 31-32, is completely misguided. "Federal Rules of Civil Procedure 8(a) and 8(d)(2) specifically authorize a plaintiff to plead causes of action in the alternative." *Martorella v. Deutsche Bank Nat'l Trust Co.*, No. 12–80372–CIV, 2013 WL 1137514, at *8 (S.D. Fla. Mar. 18, 2013) ("[a]lthough equitable relief ultimately may not be awarded where there exists an adequate remedy at law, Plaintiff certainly may plead alternative equitable relief" (quotation omitted)). Such alternative and inconsistent pleading is specifically authorized by the Federal Rules of Civil Procedure:

> **Alternative Statements of a Claim or Defense.**
>
> A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient
>
> **Inconsistent Claims or Defenses.**
>
> A party may state as many separate claims or defenses as it has, regardless of consistency.

Fed. R. Civ. P. 8(d)(2)-(3)

Second, Defendants' assertion that Plaintiffs only seek equitable relief under their GBL § 349, GBL § 350, FAL, UCL, and CLRA claims, *see* Def. Mem. at 32, is wholly without merit. Plaintiffs specifically seek restitution of monies wrongfully obtained and disgorgement of ill-gotten revenues and/or profits. *See* ¶¶ 98, 106, 115, 124, 127. Additionally, Plaintiffs' CLRA claim clearly states, "[t]his cause of action seeks monetary damages . . . ." ¶ 127.

Third, Defendants' position that Plaintiffs appear to seek no relief at all for their New York, California, and Florida intentional misrepresentation claims is a misreading of Plaintiffs' Complaint. The various forms of alternative relief pleaded in the "Request For Relief" section of Plaintiffs' Complaint relate to all causes of action pleaded, as applicable

In sum, Plaintiffs have properly pled both equitable and legal relief, as alternative forms of relief. Because the adequacy of Plaintiffs' remedies at law is still in dispute, it is premature to dismiss Plaintiffs' request for equitable relief at this time, and, in any event, the issue is one of fact that is not proper for resolution at this stage of the proceedings.

## H. PLAINTIFFS' NEW YORK CLAIMS CAN BE APPLIED NATIONWIDE

Defendants contend that New York law cannot apply to the claims of consumers that made their purchases outside the state of New York. *See* Def. Mem. at 32. This is incorrect for two reasons: (1) it is a premature class certification issue going directly to issue of the scope of the class (*i.e.*, should the class under New York's consumer protection laws include consumers throughout the United States?), and (2) it fails to take into account recent United States Supreme Court authority on the issue, *see Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 130 S. Ct. 1431, 1437 (2010); ("[I]f Rule 23 answers the question in dispute, 'it governs – [state] law notwithstanding....The question in dispute is whether [the plaintiff's] suit may proceed as a class action. Rule 23 provides an answer.'").

While it is true that New York state law limits the application of New York consumer protection laws to purchases made within the state of New York, that rule is trumped by federal law, specifically Fed. R. Civ. P. 23, when the case is pending in federal court. *See Shady Grove*, 130 S. Ct. at 1448. *Shady Grove* is on point here because it involved a state law (N.Y. Civ. Prac. L. § 901(b)) that precluded a suit from proceeding as a class action. *Shady Grove*, 130 S. Ct. at 1437. The Supreme Court held that:

Rule 23 unambiguously authorizes any plaintiff, in any federal civil proceeding, to maintain a class action if the Rule's prerequisites are met. We cannot contort its text, even to avert a collision with state law that might render it invalid.

*Id.* at 1442 (citations omitted). And as further explained by the Supreme Court:

[T]he substantive nature of New York's law, or its substantive purpose, makes no difference. A Federal Rule of Procedure is not valid in some jurisdictions and invalid in others—or valid in some cases and invalid in others— depending upon whether its effect is to frustrate a state substantive law (or a state procedural law enacted for substantive purposes).

*Id.* at 1444.

Here, given that this action is pending in federal court, Fed. R. Civ. P. 23 controls here. Nothing in Rule 23 prohibits the application on a nationwide basis of a state's consumer protection law. Accordingly, pursuant to *Shady Grove*, Defendants' argument must be denied.

## I. **PLAINTIFFS HAVE STANDING**

It is uncontested that Plaintiffs purchased at least one Product from each product line at issue here (Tostitos, SunChips, and Frito-Lay Bean Dip). It is also uncontested that Plaintiffs have standing for the Products they purchased. It is also uncontested that each of these product lines contained the exact same language on the front of the packaging – "ALL NATURAL" – that is challenged as being misleading.

There is no question that Plaintiffs have Article III standing to pursue claims regarding the Products they did purchase, as they have established a legally cognizable injury to themselves that is a result of Defendants' alleged conduct and is likely to be redressed by a decision in their favor. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servcs. (TOC), Inc.*, 528 U.S. 167 (2000); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). Despite the uncontested facts, Defendants argue that Plaintiffs do not have "standing" to pursue claims relating to products that they did not purchase. Def. Mem. at 33. Defendants, though, confuse

the issue of Article III standing with the issue of "class standing," where factors such as the plaintiff's adequacy for representing a particular class of individuals are taken into account. *See NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 158 n.9 (2d Cir. 2012) ("What the district court thought was a 'standing' issue was in reality a class certification issue."); *Cardenas v. NBTY, Inc.*, 870 F. Supp. 2d 984, 992 (E.D. Cal. 2012) ("[T]reatises and the vast majority of persuasive authority indicate that . . . the issue of whether a class representative may be allowed to present claims on behalf of others who have similar, but not identical, interests depends not on standing, but on an assessment of typicality and adequacy of representation.").

Although the Court need not reach this issue now on a motion to dismiss, it needs be noted that several courts have concluded that, where a plaintiff has Article III standing for products that she purchased, she can also bring claims regarding substantially similar products and representations if "that Plaintiff['s] injury is sufficiently similar to that suffered by class members who purchased other accused products." *Brown v. Hain Celestial Group, Inc.*, No. 11–cv-03082 LB, 2012 WL 6697670, at *7 (N.D. Cal. Dec. 22, 2012); *Astiana v. Dreyer's Grand Ice Cream, Inc.*, No. 11-cv-2910 EMC, 2012 WL 2990766, at *11 (N.D. Cal. July 20, 2012); *Anderson v. Jamba Juice*, 888 F. Supp. 2d 1000, 1005-06 (N.D. Cal. 2012); *Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524, 530-31 (2011).

Defendants' real issue here is whether Plaintiffs' injuries are sufficiently similar to absent class members who purchased other Products such that Plaintiffs are adequate and typical representatives on their behalf. At this stage, prior to discovery regarding class certification issues and prior to a motion for class certification, the Court should decline to evaluate whether Plaintiffs have satisfied the adequacy and typicality factors under Fed. R. Civ. P. 23. *See Ortiz v. Fibreboard Corporation*, 527 U.S. 815 (1999) ("the class certification issues are…"logically

antecedent" to Article III concerns and themselves pertain to statutory standing, which may properly be treated before Article III standing.  Thus, the issue about Rule 23 certification should be treated first.").

### J.  THE COMPLAINT SUFFICIENTLY STATES CLAIMS AGAINST PEPSICO

Under New York law, which applies to Defendant PepsiCo (as a New York entity, ¶ 22), holding a parent corporation liable for acts of its subsidiary "requires a showing that: (1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or  wrong against the plaintiff  which resulted in plaintiff's injury." *Morris v. N.Y. State Dep't of Taxation & Fin.*, 82 N.Y.2d 135, 141 (1993) (citations omitted).  In addition to indirect liability for the acts of its subsidiaries, a parent corporation may also be directly liable for its own misconduct, of course.

Plaintiffs have adequately pled both.  With regard to direct liability, the Complaint is replete with allegations that Defendant PepsiCo was and is directly involved in the decisions to label and market the Products as being "ALL NATURAL." *See, e.g.*, ¶ 2 (quoting PepsiCo's CEO John Compton regarding the important and use of the phrase "all natural" regarding PepsiCo's products); ¶ 31 (PepsiCo announcing launch of All-Natural Tostitos and SunChips on the PepsiCo website).  Indeed, the Complaint directly quotes PepsiCo CEO speaking about the reasons why the "ALL NATURAL" representations were placed on the Products:

> Consumers have consistently told us [PepsiCo] they are looking for more whole grains, and more all natural snacks.  And they are voting with their wallets….[W]e will take that all-natural look to every piece of that permanent equipment that you see around the stores, and all our temporary displays will showcase and romance the all-natural look.  We have talked extensively to consumers about this idea, and they come back and tell us the number one motivation for purchase is products that claim to be all natural.

¶ 32 (quoting transcript located on PepsiCo's website).

The Complaint also adequately pleads an alter-ego theory of liability. As alleged in the Complaint, several key officers of PepsiCo are also officers at Frito-Lay. *See ¶ 34.* Additionally, the Complaint also details several facts demonstrating that PepsiCo and Frito-Lay are inextricably intertwined. *See ¶ 30* (discussing the fact that PepsiCo created the "Power of One – Americas Counsel" to bring together its top Frito-Lay and PepsiCo food executives). Accordingly, it is appropriate here to pierce the corporate veil and hold PepsiCo liable for the misleading and deceptive use of the phrase "ALL NATURAL" on Frito-Lay Products containing GMOs.

## V. CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that the Court deny Defendants' motion to dismiss in its entirety.[21]

Dated: May 31, 2013

REESE RICHMAN LLP
  */s/ Michael R. Reese*
Michael R. Reese
Kim E. Richman
Jason C. Hardy
875 Avenue of Americas, 18th Floor
New York, New York 10001

MILBERG LLP
Ariana J. Tadler
Henry J. Kelston
One Pennsylvania Plaza
New York, New York 10119

*Interim Co-Lead Class Counsel*

---

[21] If the Court does not deny Defendants' motion to dismiss in its entirety, Plaintiffs hereby respectfully request leave to amend their Complaint pursuant to Federal Rule of Civil Procedure 15(a). *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires.").

## Certificate of Service

I, Michael R. Reese, hereby certify that on May 31, 2013, the foregoing document and accompanying exhibits were served by electronic mail upon counsel for Defendants PepsiCo, Inc. and Frito-Lay North America, Inc.

Dated: May 31, 2013                                **REESE RICHMAN LLP**
                                                    */s/ Michael R. Reese*
                                                    Michael R. Reese