

NEW YORK
LOS ANGELES
DETROIT

Henry J. Kelston
Direct Dial: 646-733-5747
hkelston@milberg.com

January 28, 2014

<u>VIA ECF FILING</u>

The Honorable Roanne L. Mann
U.S. District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY  11201

> **Re:**   ***Frito-Lay North America, Inc. "All Natural" Litigation**, No. 1:12-MD-02413-
> **RRM-RLM (E.D.N.Y.)**

Dear Judge Mann:

We represent Plaintiffs as Interim Co-Lead Counsel in this action, in which Plaintiffs challenge Defendant Frito-Lay's use of the words "all natural" on the labels of certain products that are made from genetically modified ingredients.  This letter is submitted pursuant to Local Rule 37.3(c) because the parties have reached impasse in a dispute concerning the adequacy of the search protocol Defendant Frito-Lay has used, and is using, to locate documents for possible production in response to Plaintiffs' Request for Production of Documents (Appendix A).

Throughout a meet-and-confer process that has principally extended over more than five months, during which Plaintiffs have provided Frito-Lay a virtual roadmap to an adequate search protocol, *see infra*, Defendant has repeatedly proposed search terms that are designed to retrieve only a limited subset of documents related to the fundamental issues in the case, while also retrieving far more irrelevant documents than necessary.  Whether Defendant's search efforts are simply inept, or part of a purposeful strategy to avoid producing certain documents, may become clear as discovery proceeds.  In either case, to avoid further costs and delays, Plaintiffs seek the Court's intervention to compel Frito-Lay to conduct an adequate search and produce relevant and responsive documents to which Plaintiffs are entitled.

Early in this litigation, Plaintiffs made a purposeful request to meet and confer *before* discovery was underway to discuss not only the forms of production and search terms, but also the possible use of current search tools, with which Plaintiffs' counsel is familiar.  Defendant's Responses to Plaintiffs' Request for Production (App. B) contained boilerplate requests to meet-and-confer, but no specific meeting times were ever proposed.  Then, on July 3, 2013, Plaintiffs were informed that Frito-Lay had collected documents from selected custodians, run them against a list of search terms, was in the process of reviewing the documents, and expected to make production by the end of July. (App. C).  A list of 84 search terms was attached, along with a custodian list.[1]  The letter requested that Plaintiffs communicate "as soon as possible" any

---

[1] Throughout this process, Frito-Lay has emphasized the number of search terms it has employed, as if quantity implies quality.  However, Defendant's list of 84 terms could easily be expressed as 6 terms by the simple use of the Boolean term "or", which Defendant appears to eschew in order to inflate the number of terms.  Each of Defendant's lists of search terms reflects the same stratagem.

The Honorable Roanne L. Mann
January 28, 2014
Page 2

questions or concerns regarding the custodians or search terms, but also made clear that the search protocol had already been executed and completed.  Plaintiffs planned to assess the protocol after receiving the documents in late July, the only realistic option given Defendant's unilateral implementation of its plan.

On August 17, 2013, having not received the production, despite Defendant's prior agreement to make rolling productions in advance of the Court-ordered production deadline of August 31st, Plaintiffs inquired as to when production would be made, and requested a meet-and-confer to discuss, *inter alia*, "the omission of many highly relevant search terms" from Defendant's list.  (App. D).  During a meet-and-confer call with Defendant on August 28, 2013, Plaintiffs explained the two most significant flaws in Defendant's search terms.

First, Defendant's terms were severely under-inclusive.  Each of Defendant's 84 terms consisted of: (i) one of 14 conceptual keywords selected by Defendant (*e.g.*, natural, label, genetic modif*, genome, or complain*), (ii) the Boolean connector "w/40", and (iii) one of six specific product category names (*e.g.*, Tostitos, SunChips or Bean Dip).  Thus, each of the fourteen conceptual keywords chosen by Defendant appeared in exactly six search terms, each designed to find the conceptual keyword *only* where it appeared in proximity to one of the six product names.  Conversely, Defendant's search term list *excluded* all occurrences of the conceptual keywords that were not "w/40" of one of the product names, regardless of frequency or context of their occurrence.  Thus, Defendant's search would exclude key documents – such as an email discussing whether a "natural" claim on genetically modified products misleads consumers; or research about consumers' understanding of "natural" claims; or a report on consumers' willingness to pay premium prices for "natural" products -- if those documents did not include one of the 14 conceptual keywords in proximity to one of the six product names.

The second major flaw in Frito-Lay's search protocol was the absence of many highly relevant keywords, such as "corn" and "premium" and "consumer," and many commonly used variants and words closely related to the conceptual keywords on the list. For example, Defendant included "genome" and "Genetic* modif*" and "GM*" (to include GMO), but not "biotech*" or "DNA" or "transgenetic."  Defendant included "study" and "survey" in certain terms, but not "research", "report", "result" or "analysis".

On September 30, 2013, Defendant informed Plaintiffs that it would add sixteen search terms to its original list of 84 terms, purportedly to address Plaintiffs' concerns. (App. E). Plaintiffs responded on October 1st, stating that the proposed additional terms were grossly inadequate to address the issues (App. F), and followed with a letter on October 7th providing concrete examples of the unsolved problems. (App. G).  Plaintiffs provided further descriptions and examples of the problems in a letter on October 25, 2013 (App. H), again during a meet-and-confer that same day, and, in response to Defendant's request for yet more explication, in another letter on October 30, 2013. (App. I). Throughout this process, Plaintiffs expended substantial time and effort on quantitative and qualitative analyses of Defendant's inadequate search terms.

On November 14, 2013, Frito-Lay sent a list of 127 proposed additional search terms. (App. J). Plaintiffs informed Defendant, on November 21, 2013, that the November 14th terms did not address many of the issues and urged Defendant not to proceed with the search process until the parties agreed on an acceptable search protocol. (App. K).  On November 26th, Plaintiffs again

**Milberg LLP**

The Honorable Roanne L. Mann
January 28, 2014
Page 3

provided examples and explanations of the search term defects. (App. L).  The problems had not changed: many terms were still unreasonably restricted by requiring product names and certain important keywords were omitted, as were common variants of the keywords used.  In a telephone conference on November 27th, the parties agreed that, if the issues surrounding Defendant's search protocol were not resolved by January 15, 2014, motion practice would follow.

On December 16th, Defendant offered to include a few more terms but rejected most of Plaintiffs' suggestions. (App. M).  Some of Frito-Lay's positions appear either arbitrary or overly calculated: for example, although it had already agreed to include the term "Natural w/40 Study" (with no other conditions), it refused to search for documents including "Natural w/40" of "Report," "Research" or "Survey" unless the document also included one of the six product names.  On December 31, 2013, Plaintiffs responded that the cumulative list of proposed search terms remained inadequate. (App. N)  To illustrate, Plaintiff used three passages from one of Defendant's documents (App. O), none of which would be retrieved by Defendant's search terms, although their relevance to central issues in this case is obvious.[2]  Every one of the quoted passages would have been found by the search terms Plaintiffs suggested on October 30, 2013.

The cited document was produced by Defendant only because a fourth passage in it was found by one of the search terms added by Defendant in response to the concerns Plaintiffs raised in the August 28, 2013 meet-and-confer.  Defendant's claim, in its letter of January 21, 2014 (App. P), that the production of this document demonstrates the adequacy of Frito-Lay's search protocol, is wrong.  Any one of the passages cited in Plaintiffs' December 31st letter would make a document highly relevant.  A search protocol that would fail to locate a document consisting of all three quotations, like Frito Lay's, is clearly inadequate.

Had Frito-Lay engaged in an open and transparent dialogue from the outset to achieve agreement on its search protocol and search terms, discovery would be much further along.[3]  Frito-Lay has failed to conduct a reasonable search, while trying to maintain the appearance of doing so.  Plaintiffs have been substantially prejudiced by Defendant's failure and seek the Court's permission to file a motion to compel Defendant to fulfill its discovery obligations and reimburse Plaintiffs' costs and fees incurred in the bringing of this motion.

---

[2]  Also on January 21st, Frito-Lay, for the first time, provided a "hit count" list, purportedly showing that search terms "proposed by plaintiffs" are unduly burdensome.  However, only nine of the 151 listed terms returned more than 10,000 documents, and many of the terms returning high hit counts were selected by Defendant, not Plaintiffs.  Moreover, as Plaintiffs explained when requesting the hit count list back on November 27, 2013, the purpose of the request was to enable the parties to work cooperatively to narrow any terms returning excessive hits.  Frito-Lay did not allow that process to occur, instead choosing to withhold the list until January 21, 2014, and then attach it to a letter declaring the parties to be at impasse if Plaintiffs refused to accept a minimally revised search term list.

[3]  Despite this dispute, and Defendant's still-incomplete production of documents retrieved by its original (July 3, 2013) search term list, Plaintiffs intend to proceed with depositions scheduled to begin in nine days, on February 6, 2014, in Dallas, TX.  Plaintiffs have reserved the right to recall witnesses if deprived of a reasonable opportunity to review relevant documents in advance of the depositions.

**Milberg LLP**

The Honorable Roanne L. Mann
January 28, 2014
Page 4

Respectfully submitted,

Henry J. Kelston

**Milberg LLP**

# APPENDIX A

**MILBERG LLP**
ARIANA J. TADLER
HENRY J. KELSTON
One Pennsylvania Plaza
New York, NY 10119
Telephone:    (212) 594-5300
Facsimile:    (212) 868-1229
atadler@milberg.com
hkelston@milberg.com

**REESE RICHMAN LLP**
MICHAEL R. REESE
KIM E. RICHMAN
875 Avenue of Americas, 18th Floor
New York, NY 10001
Telephone:    (212) 643-0500
Facsimile:    (212) 253-4272
mreese@reeserichman.com
krichman@reeserichman.com

*Interim Class Counsel*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| *Frito-Lay North America, Inc. "All Natural" Litigation* | CASE NO. 1:12-MD-02413-RRM-RLM<br><br>**FIRST SET OF REQUESTS FOR ADMISSION TO DEFENDANT PEPSICO, INC.** |

Pursuant to Rules 26 and 36 of the Federal Rules of Civil Procedure, Plaintiffs Chris Shake, Julie Gengo, Lisa Summerlin and Valarie Zuro request that Defendant PepsiCo, Inc. answer the following Requests for Admission in writing within 30 days of service.

## DEFINITIONS

The following definitions are incorporated into each request for admissions.

1.      The term "GMOs" means genetically modified organisms.

2.      The term "bioengineering" refers to techniques used by scientists to modify deoxyribonucleic acid (DNA) or the genetic material of a microorganism, plant, or animal in order to achieve a desired trait.

3.      The term "GMO Corn" refers to corn grown from seed whose DNA has been altered through the use of bioengineering.

4.      The terms "Product" or "Products" means Tostitos Restaurant Style Tortilla Chips, Tostitos Bite Size Rounds Tortilla Chips, Tostitos Crispy Rounds Tortilla Chips, Tostitos Multigrain Tortilla Chips, Tostitos Scoops Tortilla Chips, Tostitos Multigrain Scoops Tortilla Chips, Tostitos Restaurant Style with a Hint of Lime Flavored Tortilla Chips, Tostitos Restaurant Style with a Hint of Jalapeno Flavored Tortilla Chips, Tostitos Restaurant Style with a Hint of Pepper Jack Flavored Tortilla Chips, Tostitos Artisan Recipes Fire-Roasted Chipotle Flavored Tortilla Chips, Tostitos Artisan Recipes Baked Three Cheese Queso Flavored Tortilla Chips, Tostitos Artisan Recipes Roasted Garlic and Black Bean Flavored Tortilla Chips, Tostitos Artisan Recipes Toasted Southwestern Spices Flavored Tortilla Chips, SunChips Original Flavored Multigrain Snacks, SunChips Garden Salsa Flavored Multigrain Snacks, SunChips French Onion

2

Flavored Multigrain Snacks, SunChips Harvest Cheddar Flavored Multigrain Snacks, SunChips Jalapeno Jack Flavored Multigrain Snacks, Fritos Bean Dip and/or Fritos Hot Bean Dip.

## REQUESTS FOR ADMISSION

### Request No. 1

With regard to Tostitos Chips:

### Request No. 1(a)

Admit that during all or part of the period January 1, 2010 to the present, Tostitos Restaurant Style Tortilla Chips produced by Frito-Lay North America, Inc. ("Frito-Lay") for retail sale in the United States contained GMOs.

### Request No. 1(b)

Admit that during all or part of the period January 1, 2010 to the present, Tostitos Bite Size Rounds Tortilla Chips produced by Frito-Lay for retail sale in the United States contained GMOs.

### Request No. 1(c)

Admit that during all or part of the period January 1, 2010 to the present, Tostitos Crispy Rounds Tortilla Chips produced by Frito-Lay for retail sale in the United States contained GMOs.

### Request No. 1(d)

Admit that during all or part of the period January 1, 2010 to the present, Tostitos Multigrain Tortilla Chips produced by Frito-Lay for retail sale in the United States contained GMOs.

**Request No. 1(e)**

Admit that during all or part of the period January 1, 2010 to the present, Tostitos Scoops Tortilla Chips produced by Frito-Lay for retail sale in the United States contained GMOs.

**Request No. 1(f)**

Admit that during all or part of the period January 1, 2010 to the present, Tostitos Multigrain Scoops Tortilla Chips produced by Frito-Lay for retail sale in the United States contained GMOs.

**Request No. 1(g)**

Admit that during all or part of the period January 1, 2010 to the present, Tostitos Restaurant Style with a Hint of Lime Flavored Tortilla Chips produced by Frito-Lay for retail sale in the United States contained GMOs.

**Request No. 1(h)**

Admit that during all or part of the period January 1, 2010 to the present, Tostitos Restaurant Style with a Hint of Jalapeno Flavored Tortilla Chips produced by Frito-Lay for retail sale in the United States contained GMOs.

**Request No. 1(i)**

Admit that during all or part of the period January 1, 2010 to the present, Tostitos Restaurant Style with a Hint of Pepper Jack Flavored Tortilla Chips produced by Frito-Lay for retail sale in the United States contained GMOs.

**Request No. 1(j)**

Admit that during all or part of the period January 1, 2010 to the present, Tostitos Artisan Recipes Fire-Roasted Chipotle Flavored Tortilla Chips produced by Frito-Lay for retail sale in the United States contained GMOs.

**Request No. 1(k)**

Admit that during all or part of the period January 1, 2010 to the present, Tostitos Artisan Recipes Baked Three Cheese Queso Flavored Tortilla Chips produced by Frito-Lay for retail sale in the United States contained GMOs.

**Request No. 1(l)**

Admit that during all or part of the period January 1, 2010 to the present, Tostitos Artisan Recipes Roasted Garlic and Black Bean Flavored Tortilla Chips produced by Frito-Lay for retail sale in the United States contained GMOs.

**Request No. 1(m)**

Admit that during all or part of the period January 1, 2010 to the present, Tostitos Artisan Recipes Toasted Southwestern Spices Flavored Tortilla Chips produced by Frito-Lay for retail sale in the United States contained GMOs.

**Request No. 1(n)**

Admit that during all or part of the period January 1, 2010 to the present, SunChips Original Flavored Multigrain Snacks produced by Frito-Lay for retail sale in the United States contained GMOs.

### Request No. 1(o)

Admit that during all or part of the period January 1, 2010 to the present, SunChips Garden Salsa Flavored Multigrain Snacks produced by Frito-Lay for retail sale in the United States contained GMOs.

### Request No. 1(p)

Admit that during all or part of the period January 1, 2010 to the present, SunChips French Onion Flavored Multigrain Snacks produced by Frito-Lay for retail sale in the United States contained GMOs.

### Request No. 1(q)

Admit that during all or part of the period January 1, 2010 to the present, SunChips Harvest Cheddar Flavored Multigrain Snacks produced by Frito-Lay for retail sale in the United States contained GMOs.

### Request No. 1(r)

Admit that during all or part of the period January 1, 2010 to the present, SunChips Jalapeno Jack Flavored Multigrain Snacks produced by Frito-Lay for retail sale in the United States contained GMOs.

### REQUEST NO. 2

With regard to Tostitos Chips:

### Request No. 2(a)

Admit that during all or part of the period January 1, 2010 to the present, Tostitos Restaurant Style Tortilla Chips produced by Frito-Lay for retail sale in the United States contained at least one ingredient whose DNA was altered through bioengineering.

6

**Request No. 2(b)**

Admit that during all or part of the period January 1, 2010 to the present, Tostitos Bite Size Rounds Tortilla Chips produced by Frito-Lay for retail sale in the United States contained at least one ingredient whose DNA was altered through bioengineering.

**Request No. 2(c)**

Admit that during all or part of the period January 1, 2010 to the present, Tostitos Crispy Rounds Tortilla Chips produced by Frito-Lay for retail sale in the United States contained at least one ingredient whose DNA was altered through bioengineering.

**Request No. 2(d)**

Admit that during all or part of the period January 1, 2010 to the present, Tostitos Multigrain Tortilla Chips produced by Frito-Lay for retail sale in the United States contained at least one ingredient whose DNA was altered through bioengineering.

**Request No. 2(e)**

Admit that during all or part of the period January 1, 2010 to the present, Tostitos Scoops Tortilla Chips produced by Frito-Lay for retail sale in the United States contained at least one ingredient whose DNA was altered through bioengineering.

**Request No. 2(f)**

Admit that during all or part of the period January 1, 2010 to the present, Tostitos Multigrain Scoops Tortilla Chips produced by Frito-Lay for retail sale in the United States contained at least one ingredient whose DNA was altered through bioengineering.

**Request No. 2(g)**

Admit that during all or part of the period January 1, 2010 to the present, Tostitos Restaurant Style with a Hint of Lime Flavored Tortilla Chips produced by Frito-Lay for

retail sale in the United States contained at least one ingredient whose DNA was altered through bioengineering.

### Request No. 2(h)

Admit that during all or part of the period January 1, 2010 to the present, Tostitos Restaurant Style with a Hint of Jalapeno Flavored Tortilla Chips produced by Frito-Lay for retail sale in the United States contained at least one ingredient whose DNA was altered through bioengineering.

### Request No. 2(i)

Admit that during all or part of the period January 1, 2010 to the present, Tostitos Restaurant Style with a Hint of Pepper Jack Flavored Tortilla Chips produced by Frito-Lay for retail sale in the United States contained at least one ingredient whose DNA was altered through bioengineering.

### Request No. 2(j)

Admit that during all or part of the period January 1, 2010 to the present, Tostitos Artisan Recipes Fire-Roasted Chipotle Flavored Tortilla Chips produced by Frito-Lay for retail sale in the United States contained at least one ingredient whose DNA was altered through bioengineering.

### Request No. 2(k)

Admit that during all or part of the period January 1, 2010 to the present, Tostitos Artisan Recipes Baked Three Cheese Queso Flavored Tortilla Chips produced by Frito-Lay for retail sale in the United States contained at least one ingredient whose DNA was altered through bioengineering.

**Request No. 2(l)**

Admit that during all or part of the period January 1, 2010 to the present, Tostitos Artisan Recipes Roasted Garlic and Black Bean Flavored Tortilla Chips produced by Frito-Lay for retail sale in the United States contained at least one ingredient whose DNA was altered through bioengineering.

**Request No. 2(m)**

Admit that during all or part of the period January 1, 2010 to the present, Tostitos Artisan Recipes Toasted Southwestern Spices Flavored Tortilla Chips produced by Frito-Lay for retail sale in the United States contained at least one ingredient whose DNA was altered through bioengineering.

**Request No. 2(n)**

Admit that during all or part of the period January 1, 2010 to the present, SunChips Original Flavored Multigrain Snacks produced by Frito-Lay for retail sale in the United States contained at least one ingredient whose DNA was altered through bioengineering.

**Request No. 2(o)**

Admit that during all or part of the period January 1, 2010 to the present, SunChips Garden Salsa Flavored Multigrain Snacks produced by Frito-Lay for retail sale in the United States contained at least one ingredient whose DNA was altered through bioengineering.

**Request No. 2(p)**

Admit that during all or part of the period January 1, 2010 to the present, SunChips French Onion Flavored Multigrain Snacks produced by Frito-Lay for retail sale

in the United States contained at least one ingredient whose DNA was altered through bioengineering.

### Request No. 2(q)

Admit that during all or part of the period January 1, 2010 to the present, SunChips Harvest Cheddar Flavored Multigrain Snacks produced by Frito-Lay for retail sale in the United States contained at least one ingredient whose DNA was altered through bioengineering.

### Request No. 2(r)

Admit that during all or part of the period January 1, 2010 to the present, SunChips Jalapeno Jack Flavored Multigrain Snacks produced by Frito-Lay for retail sale in the United States contained at least one ingredient whose DNA was altered through bioengineering.

### REQUEST NO. 3

With regard to Tostitos Chips:

### Request No. 3(a)

Admit that during all or part of the period January 1, 2010 to the present, the words "All Natural" appeared on all packages of Tostitos Restaurant Style Tortilla Chips produced by Frito-Lay for retail sale in the United States.

### Request No. 3(b)

Admit that during all or part of the period January 1, 2010 to the present, the words "All Natural" appeared on all packages of Tostitos Bite Size Rounds Tortilla Chips produced by Frito-Lay for retail sale in the United States.

**Request No. 3(c)**

Admit that during all or part of the period January 1, 2010 to the present, the words "All Natural" appeared on all packages of Tostitos Crispy Rounds Tortilla Chips produced by Frito-Lay for retail sale in the United States.

**Request No. 3(d)**

Admit that during all or part of the period January 1, 2010 to the present, the words "All Natural" appeared on all packages of Tostitos Multigrain Tortilla Chips produced by Frito-Lay for retail sale in the United States.

**Request No. 3(e)**

Admit that during all or part of the period January 1, 2010 to the present, the words "All Natural" appeared on all packages of Tostitos Scoops Tortilla Chips produced by Frito-Lay for retail sale in the United States.

**Request No. 3(f)**

Admit that during all or part of the period January 1, 2010 to the present, the words "All Natural" appeared on all packages of Tostitos Multigrain Scoops Tortilla Chips produced by Frito-Lay for retail sale in the United States.

**Request No. 3(g)**

Admit that during all or part of the period January 1, 2010 to the present, the words "All Natural" appeared on all packages of Tostitos Restaurant Style with a Hint of Lime Flavored Tortilla Chips produced by Frito-Lay for retail sale in the United States.

**Request No. 3(h)**

Admit that during all or part of the period January 1, 2010 to the present, the words "All Natural" appeared on all packages of Tostitos Restaurant Style with a Hint of

Jalapeno Flavored Tortilla Chips produced by Frito-Lay for retail sale in the United States.

**Request No. 3(i)**

Admit that during all or part of the period January 1, 2010 to the present, the words "All Natural" appeared on all packages of Tostitos Restaurant Style with a Hint of Pepper Jack Flavored Tortilla Chips produced by Frito-Lay for retail sale in the United States.

**Request No. 3(j)**

Admit that during all or part of the period January 1, 2010 to the present, the words "All Natural" appeared on all packages of Tostitos Artisan Recipes Fire-Roasted Chipotle Flavored Tortilla Chips produced by Frito-Lay for retail sale in the United States.

**Request No. 3(k)**

Admit that during all or part of the period January 1, 2010 to the present, the words "All Natural" appeared on all packages of Tostitos Artisan Recipes Baked Three Cheese Queso Flavored Tortilla Chips produced by Frito-Lay for retail sale in the United States.

**Request No. 3(l)**

Admit that during all or part of the period January 1, 2010 to the present, the words "All Natural" appeared on all packages of Tostitos Artisan Recipes Roasted Garlic and Black Bean Flavored Tortilla Chips produced by Frito-Lay for retail sale in the United States.

### Request No. 3(m)

Admit that during all or part of the period January 1, 2010 to the present, the words "All Natural" appeared on all packages of Tostitos Artisan Recipes Toasted Southwestern Spices Flavored Tortilla Chips produced by Frito-Lay for retail sale in the United States.

### Request No. 3(n)

Admit that during all or part of the period January 1, 2010 to the present, the words "All Natural" appeared on all packages of SunChips Original Flavored Multigrain Snacks produced by Frito-Lay for retail sale in the United States.

### Request No. 3(o)

Admit that during all or part of the period January 1, 2010 to the present, the words "All Natural" appeared on all packages of SunChips Garden Salsa Flavored Multigrain Snacks produced by Frito-Lay for retail sale in the United States.

### Request No. 3(p)

Admit that during all or part of the period January 1, 2010 to the present, the words "All Natural" appeared on all packages of SunChips French Onion Flavored Multigrain Snacks produced by Frito-Lay for retail sale in the United States.

### Request No. 3(q)

Admit that during all or part of the period January 1, 2010 to the present, the words "All Natural" appeared on all packages of SunChips Harvest Cheddar Flavored Multigrain Snacks produced by Frito-Lay for retail sale in the United States.

### Request No. 3(r)

Admit that during all or part of the period January 1, 2010 to the present, the words "All Natural" appeared on all packages of SunChips Jalapeno Jack Flavored Multigrain Snacks produced by Frito-Lay for retail sale in the United States.

## REQUEST NO. 4

With regard to Tostitos Chips:

### Request No. 4(a)

Admit that during all or part of the period January 1, 2010 to the present, the phrase "Made With All Natural Ingredients" appeared on all packages of Tostitos Restaurant Style Tortilla Chips produced by Frito-Lay for retail sale in the United States.

### Request No. 4(b)

Admit that during all or part of the period January 1, 2010 to the present, the phrase "Made With All Natural Ingredients" appeared on all packages of Tostitos Bite Size Rounds Tortilla Chips produced by Frito-Lay for retail sale in the United States.

### Request No. 4(c)

Admit that during all or part of the period January 1, 2010 to the present, the phrase "Made With All Natural Ingredients" appeared on all packages of Tostitos Crispy Rounds Tortilla Chips produced by Frito-Lay for retail sale in the United States.

### Request No. 4(d)

Admit that during all or part of the period January 1, 2010 to the present, the phrase "Made With All Natural Ingredients" appeared on all packages of Tostitos Multigrain Tortilla Chips produced by Frito-Lay for retail sale in the United States.

### Request No. 4(e)

Admit that during all or part of the period January 1, 2010 to the present, the phrase "Made With All Natural Ingredients" appeared on all packages of Tostitos Scoops Tortilla Chips produced by Frito-Lay for retail sale in the United States.

### Request No. 4(f)

Admit that during all or part of the period January 1, 2010 to the present, the phrase "Made With All Natural Ingredients" appeared on all packages of Tostitos Multigrain Scoops Tortilla Chips produced by Frito-Lay for retail sale in the United States.

### Request No. 4(g)

Admit that during all or part of the period January 1, 2010 to the present, the phrase "Made With All Natural Ingredients" appeared on all packages of Tostitos Restaurant Style with a Hint of Lime Flavored Tortilla Chips produced by Frito-Lay for retail sale in the United States.

### Request No. 4(h)

Admit that during all or part of the period January 1, 2010 to the present, the phrase "Made With All Natural Ingredients" appeared on all packages of Tostitos Restaurant Style with a Hint of Jalapeno Flavored Tortilla Chips produced by Frito-Lay for retail sale in the United States.

### Request No. 4(i)

Admit that during all or part of the period January 1, 2010 to the present, the phrase "Made With All Natural Ingredients" appeared on all packages of Tostitos

Restaurant Style with a Hint of Pepper Jack Flavored Tortilla Chips produced by Frito-Lay for retail sale in the United States.

### Request No. 4(j)

Admit that during all or part of the period January 1, 2010 to the present, the phrase "Made With All Natural Ingredients" appeared on all packages of Tostitos Artisan Recipes Fire-Roasted Chipotle Flavored Tortilla Chips produced by Frito-Lay for retail sale in the United States.

### Request No. 4(k)

Admit that during all or part of the period January 1, 2010 to the present, the phrase "Made With All Natural Ingredients" appeared on all packages of Tostitos Artisan Recipes Baked Three Cheese Queso Flavored Tortilla Chips produced by Frito-Lay for retail sale in the United States.

### Request No. 4(l)

Admit that during all or part of the period January 1, 2010 to the present, the phrase "Made With All Natural Ingredients" appeared on all packages of Tostitos Artisan Recipes Roasted Garlic and Black Bean Flavored Tortilla Chips produced by Frito-Lay for retail sale in the United States.

### Request No. 4(m)

Admit that during all or part of the period January 1, 2010 to the present, the phrase "Made With All Natural Ingredients" appeared on all packages of Tostitos Artisan Recipes Toasted Southwestern Spices Flavored Tortilla Chips produced by Frito-Lay for retail sale in the United States.

**Request No. 4(n)**

Admit that during all or part of the period January 1, 2010 to the present, the phrase "Made With All Natural Ingredients" appeared on all packages of SunChips Original Flavored Multigrain Snacks produced by Frito-Lay for retail sale in the United States.

**Request No. 4(o)**

Admit that during all or part of the period January 1, 2010 to the present, the phrase "Made With All Natural Ingredients" appeared on all packages of SunChips Garden Salsa Flavored Multigrain Snacks produced by Frito-Lay for retail sale in the United States.

**Request No. 4(p)**

Admit that during all or part of the period January 1, 2010 to the present, the phrase "Made With All Natural Ingredients" appeared on all packages of SunChips French Onion Flavored Multigrain Snacks produced by Frito-Lay for retail sale in the United States.

**Request No. 4(q)**

Admit that during all or part of the period January 1, 2010 to the present, the phrase "Made With All Natural Ingredients" appeared on all packages of SunChips Harvest Cheddar Flavored Multigrain Snacks produced by Frito-Lay for retail sale in the United States.

**Request No. 4(r)**

Admit that during all or part of the period January 1, 2010 to the present, the phrase "Made With All Natural Ingredients" appeared on all packages of SunChips

Jalapeno Jack Flavored Multigrain Snacks produced by Frito-Lay for retail sale in the United States.

## REQUEST NO. 5

With regard to Fritos Bean Dip:

### Request No. 5(a)

Admit that during all or part of the period January 1, 2010 to the present, Fritos Bean Dip produced by Frito-Lay for retail sale in the United States contained GMOs.

### Request No. 5(b)

Admit that during all or part of the period January 1, 2010 to the present, Fritos Hot Bean Dip produced by Frito-Lay for retail sale in the United States contained GMOs.

## REQUEST NO. 6

With regard to Fritos Bean Dip:

### Request No. 6(a)

Admit that during all or part of the period January 1, 2010 to the present, Fritos Bean Dip produced by Frito-Lay for retail sale in the United States contained at least one ingredient whose DNA was altered through bioengineering.

### Request No. 6(b)

Admit that during all or part of the period January 1, 2010 to the present, Fritos Hot Bean Dip produced by Frito-Lay for retail sale in the United States contained at least one ingredient whose DNA was altered through bioengineering.

## REQUEST NO. 7

With regard to Fritos Bean Dip:

### Request No. 7(a)

Admit that during all or part of the period January 1, 2010 to the present, the words "All Natural" appeared on all packages of Fritos Bean Dip produced by Frito-Lay for retail sale in the United States.

### Request No. 7(b)

Admit that during all or part of the period January 1, 2010 to the present, the words "All Natural" appeared on all packages of Fritos Hot Bean Dip produced by Frito-Lay for retail sale in the United States.

## REQUEST NO. 8

With regard to Fritos Bean Dip:

### Request No. 8(a)

Admit that during all or part of the period January 1, 2010 to the present, the phrase "Made With All Natural Ingredients" appeared on all packages of Fritos Bean Dip produced by Frito-Lay for retail sale in the United States.

### Request No. 8(b)

Admit that during all or part of the period January 1, 2010 to the present, the phrase "Made With All Natural Ingredients" appeared on all packages of Fritos Hot Bean Dip produced by Frito-Lay for retail sale in the United States.

## REQUEST NO. 9

Admit that during all or part of the period January 1, 2010 to the present, corn used to make the Products contained one or more genes from the microorganism Bacillus Thuringiensis that was inserted into the corn genome.

**REQUEST NO. 10**

Admit that the gene(s) from the microorganism Bacillus thuringiensis inserted

into the corn genome used in the Products do not naturally appear in corn.

**REQUEST NO. 11**

Admit that GMO Corn is not natural.

Dated: February 22, 2013

                                     **MILBERG LLP**

                                     HENRY J. KELSTON
                                     hkelston@milberg.com
                                     ARIANA J.TADLER
                                     atadler@milberg.com

                                     One Pennsylvania Plaza
                                     New York, New York 10119
                                     Telephone: (212) 594-5300
                                     Facsimile: (212) 868-1229

                                    **REESE RICHMAN LLP**

                                   MICHAEL R. REESE
                                   mreese@reeserichman.com
                                   KIM E. RICHMAN
                                   krichman@reeserichman.com

                                   875 Avenue of the Americas
                                   Eighteenth Floor
                                   New York, NY 10001
                                   Telephone: (212) 579-4625
                                   Facsimile: (212) 253-4272

                                   *INTERIM CLASS COUNSEL*

# APPENDIX B

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------ x
                                  :

                                  :

FRITO-LAY NORTH AMERICA, INC.      :    CASE NO. 1:12-CV-408-RRM-RLM; 1:12-
"ALL NATURAL" LITIGATION         :    MD-02413-RRM-RLM

                                  :

                                  :

------------------------------------------------ x

## DEFENDANTS' RESPONSES AND OBJECTIONS TO PLAINTIFFS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Defendants Frito-Lay North America, Inc. ("Frito-Lay") and PepsiCo, Inc. ("PepsiCo") (together "Defendants"), by and through their undersigned counsel, hereby respond to Plaintiffs' First Request for Production of Documents (the "Requests") as follows.

### PRELIMINARY STATEMENT

1.      Prior to the production of any documents, Defendants request an opportunity to meet and confer with Plaintiffs regarding the entry of an appropriate Confidentiality and Protective Order to protect confidential, proprietary, and trade secret materials.

2.      Defendants' responses to the Requests are made to the best of Defendants' current knowledge, information and belief. Defendants reserve the right to supplement or amend any responses should future investigation indicate that such supplementation or amendment is necessary or appropriate.

3.     Defendants' responses to the Requests are made solely for the purpose of and in relation to this action.  Each response is given subject to all appropriate evidentiary objections (including, but not limited to, objections concerning privilege, competency, relevancy, materiality, propriety and admissibility).  All objections are reserved and may be interposed at any time.

4.     Defendants' responses are premised on Defendants' understanding that Plaintiffs seek only those documents that are within Defendants' possession, custody, and control.

5.     Defendants incorporate by reference the General Objections into each response.  From time to time, a specific response may repeat a general objection for emphasis or some other reason.  The failure to include any general objection in any specific response shall not be interpreted as a waiver of any general objection to that response.

6.     By indicating that Defendants will produce non-privileged responsive documents, Defendants do not make a representation that such documents exist or are in Defendants' possession, but only that Defendants will conduct reasonable searches for the documents requested or the documents Defendants specify they will search for and produce.  Furthermore, where Defendants respond that they will produce "responsive non-privileged documents" for a specific Request, Defendants will conduct a reasonable search of the files of custodians most likely to have such documents and produce the non-privileged documents located during that search.  The limitation on the scope of Defendants' search is necessary because searching all the files of all of Defendants' employees would be unduly burdensome and oppressive.

2

## GENERAL OBJECTIONS

1.　　Defendants object to each Request, including the Definitions therein on the ground and to the extent that they purport to impose obligations beyond those imposed by the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the Eastern District of New York, any previous agreements between the parties, Court orders, judicial decisions, and/or other applicable authority.

2.　　Defendants object to each Request as overly broad and unduly burdensome on the ground and to the extent that it: (a) calls for the production of "all" documents concerning a particular subject matter; and/or (b) does not reasonably limit the scope of the search to be conducted by Defendants.  For example, many Requests ask for "all documents," and many of those Requests seek broad and vaguely-defined categories of materials that are not reasonably tailored to the subject matter of this action.  The lack of specificity in these Requests could potentially require Defendants to search the files of several hundred employees who are not reasonably believed to possess any relevant evidence.  Defendants' search will be limited to those persons, locations, and files where Defendants believe it is reasonably likely that responsive documents will be found.

3.　　Defendants object to each Request on the ground and to the extent that it purports to request documents from an unlimited time period, as such Requests are overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.  Unless otherwise stated in its specific responses to these Requests, to the extent Defendants agree to produce documents in response to any Request, Defendants will produce only documents generated between January 1, 2010, the beginning of the proposed class period, and December 14, 2011, the filing of the first complaint in this action by plaintiff Julie Gengo.

4.      Defendants object to each Request to the extent it purports to seek information that is confidential, proprietary, trade secret information, personal confidential information, or otherwise protected from disclosure, absent a governing protective order.  To the extent that Frito-Lay agrees to produce confidential documents in response to the Requests, such documents will be produced pursuant to the terms of a mutually agreeable, stipulated protective order entered by the Court in this action (or reasonable interim agreement).

5.      Defendants object to each Request to the extent it purports to request the identification and disclosure of documents that were prepared in anticipation of litigation, constitute attorney work product, reveal privileged attorney-client communications, or are otherwise protected from disclosure under any applicable privileges, laws or rules.  Defendants hereby assert all such applicable privileges and protections, and exclude privileged and protected information from their responses to each Request. *See generally* Fed. R. Evid. 502.  Inadvertent production of any information or documents which are privileged or otherwise immune from discovery shall not constitute a waiver of any privilege or of any other ground for objecting to the discovery with respect to such information or documents or the subject matter thereof, or the right of Defendants to object to the use of any such information or documents or the subject matter thereof during these or any other proceedings.  In the event of inadvertent disclosure of any information or inadvertent production or identification of documents or communications that are privileged or otherwise immune from discovery, Plaintiffs will return the information and documents to Defendants and will be precluded from disclosing or relying upon such information or documents in any way.  Prior to the production of any documents, Defendants will meet and confer with Plaintiffs regarding an agreement that the production of documents in advance of a privilege log does not waive any privileges or protections.

4

6.      Defendants object to each Request on the ground and to the extent that it seeks documents that are neither relevant to the claims or defenses in this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence.

## OBJECTIONS TO INSTRUCTIONS

1.      Defendants object to Plaintiffs' instruction No. 1 "to produce all Documents or things in Your possession, custody, or control, regardless of whether such Documents or materials are possessed directly by You or Your officers, directors, employees, partners, corporate parent, subsidiaries or affiliates, including, without limitation, documents prepared by advertising or marketing agencies or consultants working at Your request or on Your behalf" as overly broad and unduly burdensome to the extent it seeks information not relevant to the claims or defenses of any party in this litigation and it applies to entities (such as third-party "partners") that are not properly subject to Plaintiffs' Requests under Rule 34.

2.      Defendants object to Plaintiffs' Instruction No. 3 to the extent it calls for the production of all original documents.  Frito-Lay will produce copies of hard-copy documents.  In the event Plaintiffs request access to original materials, Frito-Lay will meet-and-confer with Plaintiffs to make sure issues such as legibility can be resolved.

3.      Defendants object to Plaintiffs' Instructions, 5 and 6 as overly broad and unduly burdensome on the ground and to the extent that they purport to impose obligations beyond those imposed by the Federal Rules of Civil Procedure.  Frito-Lay will produce documents in compliance with the Federal and Local Rules and as kept in the usual course of its business.

4.      Defendants object to Plaintiffs' Instruction No. 8 and the Technical Specifications For Production included in Appendix A to the Requests as unduly burdensome to the extent that they purport to impose obligations beyond those required by the Federal Rules.  Defendants will

meet and confer with Plaintiffs on the format for the production of paper documents and have proposed reasonable specifications for the production of electronically stored information. *See* Exhibit A attached hereto. To the extent Frito-Lay agrees to produce documents in response to the Requests, such documents will be produced after the parties have reached an agreement on acceptable document production formats.

5.      Defendants object to Plaintiffs' Instruction No. 9 as overly broad and unduly burdensome on the ground and to the extent that it purports to impose obligations beyond those imposed by the Federal Rules of Civil Procedure. Frito-Lay will produce documents in compliance with the Federal and Local Rules and as kept in the usual course of its business.

6.      Defendants object to Plaintiffs' Instruction No. 10 to the extent that it purports to impose obligations beyond those required by the Federal Rules of Civil Procedure. Defendants further object to this instruction as overly broad and unduly burdensome to the extent that it seeks to impose an obligation on Defendants to acquire knowledge of documents outside of their possession, custody, and control.

7.      Defendants object to Plaintiffs' Instruction No. 11 to the extent that it purports to impose obligations beyond those required by the Federal Rules. Defendants further object to this instruction as unduly burdensome on the ground and to the extent that it seeks to impose an obligation on Defendants to include in a privilege log: persons "who prepared or participated in the preparation of the Document," the "date on which" each recipient received the documents, "all other persons to whom the contents of the document have been disclosed" and the date and means of that disclosure, the "present location" each document, and each and every person having custody or control of the document or any copy.

## OBJECTIONS TO DEFINITIONS

A.     Defendants object to Plaintiffs' definitions of "You" or "Your" on the ground and to the extent they purport to request documents in the possession of PepsiCo and other entities (e.g., "partners") which are not properly subject to Plaintiffs' Requests under Rule 34.

B.     Defendants object to Plaintiffs' definition of "Document" on the ground and to the extent it purports to request the identification and disclosure of documents that were prepared in anticipation of litigation, constitute attorney work product, reveal privileged attorney-client communications, or are otherwise protected from disclosure under any applicable privileges, laws or rules. Defendants hereby assert all such applicable privileges and protections, and exclude privileged and protected information from its responses to the Requests. Defendants further object to the definition of Document to the extent that it purports to impose obligations beyond those imposed by the Federal Rules of Civil Procedure, including, but not limited to, requesting that Defendants identify and describe documents that do not exist in Defendants' possession, custody or control.

C.     Defendants object to Plaintiffs' definition and use of the terms "Person" as vague, ambiguous, overly broad, and unduly burdensome on the ground and to the extent that the term "Person" is meant to include "any natural person or any legal entity, including, without limitation, any business or governmental entity or association" over whom Defendants exercise no control.

D.     Defendants object to the Plaintiffs' definition of "Marketing Material" as overly broad, unduly burdensome, and vague and ambiguous to the extent it purports to encompass an "attempt, effort or process that conveys information, invitation, or offer to any person to purchase any of the Products."

E.      Defendants object to Plaintiffs' definitions of "Product" and "Product" on the grounds and to the extent that they include products not purchased by any named plaintiff and that Plaintiffs lack standing to challenge.

Each and every response below incorporates by reference the foregoing General Objections.  Subject to and without waiver of the foregoing Preliminary Statement, General Objections, and the Objections to Plaintiffs' Definitions and Instructions, Defendants state as follows:

## SPECIFIC RESPONSES AND OBJECTIONS

### REQUEST FOR PRODUCTION NO. 1:

Documents sufficient to show any package labeling used for each of the Products from January 1, 2010 to the present.

### RESPONSE TO REQUEST FOR PRODUCTION NO. 1:

Defendants restate and incorporate their Preliminary Statement, General Objections, and Objections to Instructions and Definitions as though fully set forth in this Response.

Subject to and without waiving any of the foregoing objections, Frito-Lay will conduct a reasonable, good faith search for and produce non-privileged documents responsive to this request, that constitute package labeling for the Products.

### REQUEST FOR PRODUCTION NO. 2:

Documents sufficient to identify the time period during which, and geographic area where, each package label reflected in any Document produced in response to Request for Production No. 1 was or is used.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

Defendants restate and incorporate their Preliminary Statement, General Objections, and Objections to Instructions and Definitions as though fully set forth in this Response.

Subject to and without waiving any of the foregoing objections, Frito-Lay will meet and confer with Plaintiffs to determine the proper scope of this request. Frito-Lay respectfully suggests that this information could be supplied in the form of a chart or table (or similar writing) that supplies the information sought in the request.

**REQUEST FOR PRODUCTION NO. 3:**

Documents concerning Defendants' decision(s) to place the words "All Natural" or the phrase "Made With All Natural Ingredients" on the packaging of the Products, any Marketing Material and/or Websites.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**

Defendants restate and incorporate their Preliminary Statement, General Objections, and Objections to Instructions and Definitions as though fully set forth in this Response. Defendants further object to this Request as overly broad and unduly burdensome to the extent it purports to seek documents regarding words used on "any Marketing Material and/or Websites," regardless of their relevance to the claims or defenses of any party in this action. For example, Plaintiffs do not allege in the Complaint that they viewed any internet materials, nor do they allege with any particularity what general advertising or marketing material they saw and relied upon.

Subject to and without waiving any of the foregoing objections, Frito-Lay will conduct a reasonable, good faith search for and produce non-privileged documents responsive to this request, and respectfully requests to meet and confer with Plaintiffs to determine the appropriate scope of this request.

**REQUEST FOR PRODUCTION NO. 4:**

All Documents concerning correspondence among Your employees or between You and any third party regarding the use of the terms "natural" or "All Natural," or the phrase "Made with All Natural Ingredients" or any variations thereof in connection with the Products.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

Defendants restate and incorporate their Preliminary Statement, General Objections, and Objections to Instructions and Definitions as though fully set forth in this Response.

Subject to and without waiving any of the foregoing objections, Frito-Lay will conduct a reasonable, good faith search for and produce non-privileged documents responsive to this request, and respectfully requests to meet and confer with Plaintiffs to determine the appropriate scope of this request.

**REQUEST FOR PRODUCTION NO. 5:**

All Documents concerning Defendants' reason(s) or the basis for placing the words "All Natural" or the phrase "Made With All Natural Ingredients" on the packaging of the Products, any Marketing Material and/or Websites relating to the Products.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

Defendants restate and incorporate their Preliminary Statement, General Objections, and Objections to Instructions and Definitions as though fully set forth in this Response. Defendants further object to this Request as overly broad and unduly burdensome to the extent it purports to seek documents regarding words used on "any Marketing Material and/or Websites," regardless of their relevance to the claims or defenses of any party in this action. For example, Plaintiffs do not allege in the Complaint that they viewed any internet materials, nor do they allege with any particularity what general advertising or marketing material they saw and relied upon.

Subject to and without waiving any of the foregoing objections, Frito-Lay will conduct a reasonable, good faith search for and produce non-privileged documents responsive to this request, and respectfully requests to meet and confer with Plaintiffs to determine the appropriate scope of this request.

**REQUEST FOR PRODUCTION NO. 6:**

All Documents concerning any anticipated or actual benefits derived or to be derived from the placement of the words "All Natural" or the phrase "Made With All Natural Ingredients" on the Products, any Marketing Material or Websites.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

Defendants restate and incorporate their Preliminary Statement, General Objections, and Objections to Instructions and Definitions as though fully set forth in this Response. Defendants object to this request on the ground that it is vague and ambiguous insofar as it uses the terms "anticipated or actual benefits." Defendants further object to this Request as overly broad and unduly burdensome to the extent it purports to seek documents regarding words used on "any Marketing Material and/or Websites," regardless of their relevance to the claims or defenses of any party in this action. For example, Plaintiffs do not allege in the Complaint that they viewed any internet materials, nor do they allege with any particularity what general advertising or marketing material they saw and relied upon.

Subject to and without waiving any of the foregoing objections, Frito-Lay will conduct a reasonable, good faith search for and produce non-privileged documents, if any, that evaluate whether the use of the words "All Natural" or the phrase "Made With All Natural Ingredients" on the Products were expected to or did increase sales of the Products. In order to conduct this

search, Defendants respectfully request to meet and confer with Plaintiffs to determine the appropriate scope of this request.

**REQUEST FOR PRODUCTION NO. 7:**

All Documents concerning consumer understanding of or response to the terms "natural" or "All Natural" or the phrase "Made with All Natural Products," including, but not limited to, consumer surveys, whether prepared by You, on your behalf or by third parties.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

Defendants restate and incorporate their Preliminary Statement, General Objections, and Objections to Instructions and Definitions as though fully set forth in this Response.

Subject to and without waiving any of the foregoing objections, Frito-Lay will conduct a reasonable, good faith search for and produce non-privileged documents responsive to this request, if any, and respectfully requests to meet and confer with Plaintiffs to determine the appropriate scope of this request.

**REQUEST FOR PRODUCTION NO. 8:**

All Documents concerning any marketing study or analysis either: (a) with respect to use of the terms "natural" or "All Natural" or the phrase "Made with All Natural Ingredients," or (b) with respect to the use of GMOs.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**

Defendants restate and incorporate their Preliminary Statement, General Objections, and Objections to Instructions and Definitions as though fully set forth in this Response. Defendants further object to this request as vague and ambiguous with respect to the term "marketing . . . analysis . . . with respect to the use of GMOs."

Subject to and without waiving any of the foregoing objections, Frito-Lay will conduct a reasonable, good faith search for and produce non-privileged documents responsive to this request, if any, and respectfully requests to meet and confer with Plaintiffs to determine the appropriate scope of this request.

**REQUEST FOR PRODUCTION NO. 9:**

All Documents concerning any consumer complaints, questions or confusion regarding the words "All Natural" or the phrase "Made With All Natural Ingredients" on the Products, any Marketing Material or Websites, and any response(s) by You thereto.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 9:**

Defendants restate and incorporate their Preliminary Statement, General Objections, and Objections to Instructions and Definitions as though fully set forth in this Response. Defendants further object to this Request as overly broad and unduly burdensome to the extent it purports to seek documents regarding words used on "any Marketing Material and/or Websites," regardless of their relevance to the claims or defenses of any party in this action.

Subject to and without waiving any of the foregoing objections, Frito-Lay will conduct a reasonable, good faith search for and produce non-privileged documents, if any, consisting of consumer complaints about the Products.

**REQUEST FOR PRODUCTION NO. 10:**

All Documents concerning the presence or absence of GMOs in the Products including, but not limited to, all Documents concerning any testing revealing the presence or absence of GMOs in the Products.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

Defendants restate and incorporate their Preliminary Statement, General Objections, and Objections to Instructions and Definitions as though fully set forth in this Response.

Subject to and without waiving any of the foregoing objections, Frito-Lay will conduct a reasonable, good faith search for and produce non-privileged documents sufficient to show the corn products purchased by Frito-Lay relating to the Products, as well as non-privileged documents concerning testing for the presence or absence of GMOs, if any, and request to meet and confer with Plaintiffs to determine the appropriate scope of this request.

**REQUEST FOR PRODUCTION NO. 11:**

All Documents concerning any communication with any person from whom you purchased corn for use in the Products from January 1, 2010, to the present, which concern or in any way refer to GMOs.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 11:**

Defendants restate and incorporate their Preliminary Statement, General Objections, and Objections to Instructions and Definitions as though fully set forth in this Response. Defendants further object to this request as overly broad and unduly burdensome, as this request by its terms sweeps in every mention of GMOs, which will impose a significant search burden on Frito-Lay. Frito-Lay respectfully submits that it can provide information to the Plaintiffs showing what type of corn was purchased for the Products, and can meet and confer with Plaintiffs to the extent they want additional information about communications with farmers to agree upon an appropriate scope for this request.

**REQUEST FOR PRODUCTION NO. 12:**

Documents sufficient to identify all suppliers of corn used to make the Products at any time from January 1, 2010, until the present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 12:**

Defendants restate and incorporate their Preliminary Statement, General Objections, and Objections to Instructions and Definitions as though fully set forth in this Response.

Subject to and without waiving any of the foregoing objections, Frito-Lay will conduct a reasonable, good faith search for and produce non-privileged documents responsive to this request, and respectfully requests to meet and confer with Plaintiffs to determine the appropriate scope of this request.

**REQUEST FOR PRODUCTION NO. 13:**

All Documents concerning consumer understanding or opinion of GMOs or the use of GMOs in food products, including, but not limited to, consumer surveys, whether prepared by You, on your behalf, or by third parties.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 13:**

Defendants restate and incorporate their Preliminary Statement, General Objections, and Objections to Instructions and Definitions as though fully set forth in this Response.

Subject to and without waiving any of the foregoing objections, Frito-Lay will conduct a reasonable, good faith search for and produce non-privileged documents responsive to this request, and respectfully requests to meet and confer with Plaintiffs to determine the appropriate scope of this request.

**REQUEST FOR PRODUCTION NO. 14:**

All Documents concerning any communication to and from any health organizations or governmental agencies concerning the presence of GMOs in the Products.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 14:**

Defendants restate and incorporate their Preliminary Statement, General Objections, and Objections to Instructions and Definitions as though fully set forth in this Response.

Subject to and without waiving any of the foregoing objections, Frito-Lay will conduct a reasonable, good faith search for and produce non-privileged documents responsive to this request, if any.

**REQUEST FOR PRODUCTION NO. 15:**

All Documents concerning possible legislative or regulatory action, state or federal, that would require the disclosure to consumers of the presence of GMOs in food products, including but not limited to documents submitted to the U.S. Food and Drug Administration.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 15:**

Defendants restate and incorporate their Preliminary Statement, General Objections, and Objections to Instructions and Definitions as though fully set forth in this Response.  Defendants further object to this request to the extent that it purports to seek information not relevant to the claims or defenses of any party in this litigation.  This request seeks information relating to potential affirmative labeling requirements for foods made with bioengineered ingredients, which are not at issue in this case and which the U.S. Food and Drug Administration has specifically rejected.

Subject to and without waiving any of the foregoing objections, Frito-Lay will conduct a reasonable, good faith search for and produce non-privileged documents responsive to this

request that concern the U.S. Food and Drug Administration, and respectfully requests to meet and confer with Plaintiffs to determine the proper scope of this request.

**REQUEST FOR PRODUCTION NO. 16:**

All Documents concerning or prepared in connection with a January 2013 in Washington, D.C., convened by the Meridian Institute.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 16:**

Defendants restate and incorporate their Preliminary Statement, General Objections, and Objections to Instructions and Definitions as though fully set forth in this Response.  Defendants further object to this to the extent that it purports to seek information not relevant to the claims or defenses of any party in this litigation.  This request relates to potential <u>affirmative</u> labeling requirements for foods made with bioengineered ingredients, which are not at issue in this case and which the Food and Drug Administration has specifically rejected.

Subject to and without waiving any of the foregoing objections, Frito-Lay respectfully requests to meet and confer with Plaintiffs to determine the proper scope of this request.

**REQUEST FOR PRODUCTION NO. 17:**

Documents sufficient to identify, for each individual Product, the monthly unit sales volume, gross sales amount, net sales amount, revenues, profits, and losses relating to the Products in the United States for each year from January 1, 2010, to the present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 17:**

Defendants restate and incorporate their Preliminary Statement, General Objections, and Objections to Instructions and Definitions as though fully set forth in this Response.

Subject to and without waiving any of the foregoing objections, Frito-Lay will conduct a reasonable, good faith search for and produce the requested financial information as kept in the ordinary course of business.

**REQUEST FOR PRODUCTION NO. 18:**

Documents sufficient to identify, for each individual Product, the monthly unit sales volume, gross sales amount, net sales amount, revenues, profits, and losses, by state, for each year from January 1, 2010, to the present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 18:**

Defendants restate and incorporate their Preliminary Statement, General Objections, and Objections to Instructions and Definitions as though fully set forth in this Response.

Subject to and without waiving any of the foregoing objections, Frito-Lay will conduct a reasonable, good faith search for and produce the requested financial information as kept in the ordinary course of business.

**REQUEST FOR PRODUCTION NO. 19:**

All Documents concerning how use of the words "All Natural" or the phrase "Made With All Natural Ingredients" affected, or were expected to affect, the prices charged by Defendants or by retailers for the Products.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 19:**

Defendants restate and incorporate their Preliminary Statement, General Objections, and Objections to Instructions and Definitions as though fully set forth in this Response.

Subject to and without waiving any of the foregoing objections, Frito-Lay will conduct a reasonable, good faith search for and produce non-privileged documents responsive to this request, if any.

**REQUEST FOR PRODUCTION NO. 20:**

All Documents concerning the demographic characteristics of consumers who purchased the Products from January 1, 2010, to the present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 20:**

Defendants restate and incorporate their Preliminary Statement, General Objections, and Objections to Instructions and Definitions as though fully set forth in this Response.

Subject to and without waiving any of the foregoing objections, Frito-Lay will conduct a reasonable, good faith search for and produce non-privileged documents responsive to this request, and respectfully requests to meet and confer with Plaintiffs to determine the appropriate scope of this request.

**REQUEST FOR PRODUCTION NO. 21:**

All Documents concerning the purchasing patterns of consumers who purchased the Products from January 1, 2010, to the present.  This request is intended to cover documents concerning consumers' purchases of the Products (e.g., number of Product purchases over time, amount spent on Product purchases over time), not documents concerning consumers' purchases of other products.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 21:**

Defendants restate and incorporate their Preliminary Statement, General Objections, and Objections to Instructions and Definitions as though fully set forth in this Response.

Subject to and without waiving any of the foregoing objections, Frito-Lay will conduct a reasonable, good faith search for and produce non-privileged documents responsive to this request, and respectfully requests to meet and confer with Plaintiffs to determine the appropriate scope of this request.

**REQUEST FOR PRODUCTION NO. 22:**

Organizational charts identifying any of Defendants' employees involved in the marketing of the Products from January 1, 2010, to the present, including, but not limited to, any employees involved in the decision-making processes that resulted in Defendants' decisions to place the words "All Natural" or the phrase "Made With All Natural Ingredients" on the packaging of the Products, any Marketing Material or Websites.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 22:**

Defendants restate and incorporate their Preliminary Statement, General Objections, and Objections to Instructions and Definitions as though fully set forth in this Response. Defendants further object to this Request as overly broad and unduly burdensome to the extent it purports to seek documents regarding words used on "any Marketing Material and/or Websites," regardless of their relevance to the claims or defenses of any party in this action.

Subject to and without waiving any of the foregoing objections, Frito-Lay will conduct a reasonable, good faith search for and produce non-privileged documents responsive to this request, and respectfully requests to meet and confer with Plaintiffs to determine the appropriate scope of this request.

**REQUEST FOR PRODUCTION NO. 23:**

Documents identifying any person or entity other than Your employees, including, but not limited to, advertising agencies, public relations firms, and marketing consultants, involved in the marketing, advertising or branding of the Products from January 1, 2010, to the present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 23:**

Defendants restate and incorporate their Preliminary Statement, General Objections, and Objections to Instructions and Definitions as though fully set forth in this Response.

Subject to and without waiving any of the foregoing objections, Frito-Lay will conduct a reasonable, good faith search for and produce non-privileged documents sufficient to show the third-party advertising agencies involved in the "Made With All Natural Ingredients" campaign.

**REQUEST FOR PRODUCTION NO. 24:**

Documents sufficient to show any policy, procedure, or practice of document preservation by Defendants and their compliance (or lack thereof).

**RESPONSE TO REQUEST FOR PRODUCTION NO. 24:**

Defendants restate and incorporate their Preliminary Statement, General Objections, and Objections to Instructions and Definitions as though fully set forth in this Response.

Subject to and without waiving any of the foregoing objections, Frito-Lay will conduct a reasonable, good faith search for and produce non-privileged documents sufficient to show its document retention policies.

**REQUEST FOR PRODUCTION NO. 25:**

All Documents constituting postings, blogs or comments in which You used the words "All Natural" or the phrase "Made With All Natural Ingredients" to describe the Products on social networking websites, including, but not limited, to Facebook, Twitter, and MySpace.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 25:**

Defendants restate and incorporate their Preliminary Statement, General Objections, and Objections to Instructions and Definitions as though fully set forth in this Response. Defendants further object to this Request as overly broad and unduly burdensome to the extent it purports to seek documents regarding "postings, blogs, social networking websites, including, but not limited to, Facebook, Twitter, and MySpace," regardless of their relevance to the claims or defenses of any party in this action. For example, Plaintiffs do not allege in the Complaint that

21

they viewed any internet materials, nor do they allege with any particularity what general

advertising or marketing material they saw and relied upon.

Subject to and without waiving any of the foregoing objections, Frito-Lay will conduct a

reasonable, good faith search for and produce non-privileged documents responsive to this

request, and respectfully requests to meet and confer with Plaintiffs to determine the appropriate

scope of this request.


Dated:  April 19, 2013                          GIBSON DUNN & CRUTCHER LLP

                                                By: _____

                                                Andrew S. Tulumello
                                                atulumello@gibsondunn.com
                                                Jason R. Meltzer
                                                jmeltzer@gibsondunn.com
                                                1050 Connecticut Avenue, N.W.
                                                Washington, D.C.  20036
                                                Telephone:  (202) 955-8500
                                                Fax:  (202) 530-4238

                                                *Attorneys for Defendants Frito-Lay North America,
                                                Inc. and PepsiCo, Inc.*

# APPENDIX C

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Tel 202.955.8500
www.gibsondunn.com

Jason R. Meltzer
Direct: +1 202.955.8676
Fax: +1 202.530.9514
JMeltzer@gibsondunn.com

July 3, 2013

VIA UPS AND ELECTRONIC MAIL

Michael R. Reese, Esq.
Reese Richman LLP
875 Avenue of the Americas, 18th Floor
New York, NY 10001

Ariana J. Tadler, Esq.
Milberg LLP
One Pennsylvania Plaza
New York, NY 10119

Re:     Frito-Lay North America, Inc. "All Natural" Litigation, No. 12-MD-2413-RRM-
        RLM (E.D.N.Y.)

Dear Counsel:

We write on behalf of Defendants Frito-Lay North America, Inc. and PepsiCo, Inc.
regarding Defendants' Responses and Objections to Plaintiffs' First Request for Production
of Documents (the "Responses"). The responses to various document requests agree to
search for and produce non-privileged responsive documents, and/or request to meet and
confer with Plaintiffs regarding the appropriate scope of the requests. These include
Response numbers: 3, 4, 5, 6, 7, 8, 9, 10, 13, 14, 15, 19, 20, 21, and 23.

We have analyzed the Consolidated Complaint in the action and Plaintiffs' First
Request for Production of Documents (the "Requests"), and initially identified twenty-seven
custodians who may possess documents potentially responsive to the Requests identified
above, subject to the Responses. A list of those custodians and brief description of their roles
is attached as Exhibit A. We are continuing to identify additional custodians who may
possess potentially responsive documents.

We have collected documents from the custodians listed in Exhibit A, and run them
against the list of search terms included in Exhibit B hereto. We are in the process of
reviewing the resulting document population for production in accordance with the
Responses, and expect to make another document production to Plaintiffs at end of this
month.

# GIBSON DUNN

Michael R. Reese, Esq.
Ariana J. Tadler, Esq.
July 3, 2013
Page 2

        To maximize efficiency and expedience in document production, please let us know
as soon as possible if Plaintiffs have any questions or concerns regarding the custodians
identified thus far, or the search terms used to cull the documents collected for review.
Please also continue to treat all documents produced in the action as confidential until a
protective order is finalized and entered by the Court.

        Thank you for your continued cooperation in this litigation.

                        Sincerely,

                        Jason R. Meltzer

cc: Andrew S. Tulumello

**Exhibit A**

1. Ram Krishnan – Vice President, Marketing, Frito-Lay.

2. Christina Menendez – Senior Director, Marketing, Frito-Lay.

3. Abby Powell – Fmr. Marketing Director, Dips, Frito-Lay.

4. Dee Dee Bryant – Marketing Manager, Dips, Frito-Lay.

5. Katy DeCoursey – Fmr. Manager, Marketing, Frito-Lay.

6. Jeremy Tucker – Fmr. Senior Director, Marketing, Frito-Lay.

7. Tony Matta – Fmr. Vice President, Marketing, Frito-Lay.

8. Ann Mukherjee – Senior Vice President and Chief Marketing Officer, Frito-Lay.

9. John Compton – Fmr. CEO, PepsiCo Americas Foods, Fmr. Vice Chairman and President, NA Salty Snacks Division, Frito-Lay, Fmr. Chief Marketing Officer, Frito-Lay.

10. Pamela Forbus – Vice President, Insights, Frito-Lay.

11. Padmini Sharma – Fmr. Director, Insights, Frito-Lay.

12. Cathy Dial – Senior Director, Consumer Relations, Frito-Lay.

13. Kristin Walsh – Director, Public Affairs, Frito-Lay.

14. David Baumgardner – Director, Commodity Purchasing, Frito-Lay.

15. Ken Bayless – Commodity Purchasing, Frito-Lay.

16. David Sanchez – Vice President, Sourcing, Frito-Lay.

17. April Brickey – Sourcing, Frito-Lay.

18. Azeem Ansari – Vice President, Finance, Frito-Lay.

19. Christine Jacoby – Vice President, Finance, Frito-Lay.

20. Kevin O'Sullivan – Vice President, Research & Development, Frito-Lay.

21. Tim Fink – Senior Director, Research & Development, Frito-Lay.

22. Rick Dellaporta – Senior Principal Scientist, Research and Development, Frito-Lay.

23. Ann Robarge – Senior Principal Scientist, Research & Development, Frito-Lay.

24. Kari Ryan – Fmr. Director, Regulatory, Frito-Lay.

25. <u>Danielle Dalheim</u> – Principal Nutrition Scientist/Dietician, Regulatory, Frito-Lay.

26. <u>Susan Smith</u> – Senior Analyst, Regulatory, Frito-Lay.

27. <u>Bob Brown</u> – Director, Nutrition and Regulatory, Frito-Lay.

**Exhibit B**

1. Genetic* Modif* W/40 Tostitos
2. Genetic* Modif* W/40 SunChips
3. Genetic* Modif* W/40 Sun Chips
4. Genetic* Modif* W/40 Bean Dip
5. Genetic* Modif* W/40 Scoops
6. Genetic* Modif* W/40 Artisan
7. (GM* NOT W/0 (GMT OR gmail OR GMAS)) W/40 Tostitos
8. (GM* NOT W/0 (GMT OR gmail OR GMAS)) W/40 SunChips
9. (GM* NOT W/0 (GMT OR gmail OR GMAS)) W/40 Sun Chips
10. (GM* NOT W/0 (GMT OR gmail OR GMAS)) W/40 Bean Dip
11. (GM* NOT W/0 (GMT OR gmail OR GMAS)) W/40 Scoops
12. (GM* NOT W/0 (GMT OR gmail OR GMAS)) W/40 Artisan
13. Natural W/40 Tostitos
14. Natural W/40 SunChips
15. Natural W/40 Sun Chips
16. Natural W/40 Bean Dip
17. Natural W/40 Scoops
18. Natural W/40 Artisan
19. Label W/40 Tostitos
20. Label W/40 SunChips
21. Label W/40 Sun Chips
22. Label W/40 Bean Dip
23. Label W/40 Scoops
24. Label W/40 Artisan
25. Bacillus Thuringiensis W/40 Tostitos
26. Bacillus Thuringiensis W/40 SunChips
27. Bacillus Thuringiensis W/40 Sun Chips
28. Bacillus Thuringiensis W/40 Bean Dip
29. Bacillus Thuringiensis W/40 Scoops
30. Bacillus Thuringiensis W/40 Artisan
31. BT W/40 Tostitos
32. BT W/40 SunChips
33. BT W/40 Sun Chips
34. BT W/40 Bean Dip
35. BT W/40 Scoops
36. BT W/40 Artisan
37. Complain* W/40 Tostitos
38. Complain* W/40 SunChips
39. Complain* W/40 Sun Chips

40. Complain* W/40 Bean Dip
41. Complain* W/40 Scoops
42. Complain* W/40 Artisan
43. *Engineer* W/40 Tostitos
44. *Engineer* W/40 SunChips
45. *Engineer* W/40 Sun Chips
46. *Engineer* W/40 Bean Dip
47. *Engineer* W/40 Scoops
48. *Engineer* W/40 Artisan
49. FDA W/40 Tostitos
50. FDA W/40 SunChips
51. FDA W/40 Sun Chips
52. FDA W/40 Bean Dip
53. FDA W/40 Scoops
54. FDA W/40 Artisan
55. Food and Drug Administration W/40 Tostitos
56. Food and Drug Administration W/40 SunChips
57. Food and Drug Administration W/40 Sun Chips
58. Food and Drug Administration W/40 Bean Dip
59. Food and Drug Administration W/40 Scoops
60. Food and Drug Administration W/40 Artisan
61. Genome W/40 Tostitos
62. Genome W/40 SunChips
63. Genome W/40 Sun Chips
64. Genome W/40 Bean Dip
65. Genome W/40 Scoops
66. Genome W/40 Artisan
67. Reformulat* W/40 Tostitos
68. Reformulat* W/40 SunChips
69. Reformulat* W/40 Sun Chips
70. Reformulat* W/40 Bean Dip
71. Reformulat* W/40 Scoops
72. Reformulat* W/40 Artisan
73. Study W/40 Tostitos
74. Study W/40 SunChips
75. Study W/40 Sun Chips
76. Study W/40 Bean Dip
77. Study W/40 Scoops
78. Study W/40 Artisan
79. Survey W/40 Tostitos

80. Survey W/40 SunChips
81. Survey W/40 Sun Chips
82. Survey W/40 Bean Dip
83. Survey W/40 Scoops
84. Survey W/40 Artisan

# APPENDIX D



Henry Kelston
Direct Dial: 646-733-5747
hkelston@milberg.com

August 17, 2013

<u>VIA E-MAIL</u>

Jason Meltzer
Gibson, Dunn & Crutcher
1050 Connecticut Avenue, N.W.
Washington, DC  20036-5306

**Re:     Frito-Lay North America, Inc. "All Natural" Litigation,
Case No. 12-CV-408 (RRM)(RLM)**

Dear Jason,

        In your letter of July 3, 2013, you wrote that Defendants were in the process of reviewing documents and expected to make a production to Plaintiffs at the end of July.  Please advise as to when that production will be made and its estimated volume.

        We were surprised to learn from your July 3 letter that Defendants had identified custodians and executed searches for potentially relevant information without first conferring with Plaintiffs on these subjects.  Cooperation between parties in designing search protocols is well-known to be a best practice, increasing both the efficiency and effectiveness of the search process, and such cooperation is routinely required by courts.  Defendants' decision to design and unilaterally implement a search protocol will almost certainly result in the need for Defendants to repeat the process, with the attendant waste of both time and money.

        Plaintiffs request that a meet-and-confer session be scheduled promptly on the subject of Defendants' search protocols.  Among the topics to be discussed are: (i) Defendants' failure to identify any custodians at PepsiCo; (ii) Defendants' failure to utilize technologies widely considered to be more effective than search terms in identifying potentially relevant documents; (iii) the omission of many highly relevant search terms from the implemented list of terms; and (iv) which repositiories or media containing potentially relevant information have and have not been searched.

        If you are not sufficiently familiar with Defendants' systems and/or the tools and protocols used to identify and collect documents for production in this case, we request that

August 17, 2013
Page 2

technical personnel (either from Defendants or their vendors) be made available to participate in the those portions of the meet-and-confer session.

Please advise as to your availability to meet and confer on August 21, 22 and 23.

Sincerely,

Henry J. Kelston

cc:   Ariana J. Tadler
      Michael Reese
      Andrew Tulumello

**Milberg LLP**

# APPENDIX E

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Tel 202.955.8500
www.gibsondunn.com

Jason R. Meltzer
Direct: +1 202.955.8676
Fax: +1 202.530.9514
JMeltzer@gibsondunn.com

September 30, 2013

<u>VIA EMAIL AND UPS OVERNIGHT MAIL</u>

Henry Kelston
Ariana J. Tadler
Milberg LLP
One Pennsylvania Plaza
New York, NY 10119

Michael R. Reese
Reese Richman LLP
875 Avenue of Americas, 18th Floor
New York, NY 10001

Re:  *Frito-Lay North America, Inc. "All Natural" Litigation*, No. 1:12-md-02413-RRM-RLM (E.D.N.Y.)

Dear Counsel:

We write further to the parties' meet-and-confer held by telephone on August 28, 2013. During the meet-and-confer, the parties discussed Frito-Lay North America, Inc.'s document collection, review and production efforts in the above-captioned matter. Interim Class Counsel Henry Kelston and Megan Keenan from Milberg LLP, and George Granada from Reese Richman LLP, participated on behalf of Plaintiffs. Andrew Tulumello, Jason Meltzer and Bess Wilson from Gibson, Dunn & Crutcher LLP participated on behalf of Frito-Lay.

At the beginning of the August 28, 2013 call, Frito-Lay asked Plaintiffs why they waited for more than six weeks after receiving Frito-Lay's July 3, 2013 list of search terms before raising any concerns regarding their collection and review efforts. Frito-Lay noted that it had spent hundreds of thousands of dollars in the interim reviewing documents for production. Plaintiffs had no substantive response, other than to say that they did not believe it was too late to challenge the search term or custodian lists, and that they could appropriately do so after they received Frito-Lay's document production.

Beijing · Brussels · Century City · Dallas · Denver · Dubai · Hong Kong · London · Los Angeles · Munich
New York · Orange County · Palo Alto · Paris · San Francisco · São Paulo · Singapore · Washington, D.C.

# GIBSON DUNN

September 30, 2013
Page 2

Frito-Lay next asked Plaintiffs what additional terms they believed should have been included in the search term list. In response, Plaintiffs' counsel stated that they did not have specific additional terms to propose and that "Defendants were in a better position to develop search terms." Plaintiffs' counsel instead said that they had "general concepts" that they were concerned were not included. The parties then proceeded to discuss these "general concepts."

1.   **Studies or Surveys Related to "Natural," "Genetically Modified Organisms," and "Bioengineering"**

Plaintiffs first stated that the search terms did not capture any studies or surveys relating to "natural," "genetically modified organisms," or "bioengineering." In response, Frito-Lay pointed to: search term numbers 73 through 84 in the July 3, 2013 search term list, which specifically include "Survey" or "Study" within 40 words of the challenged product lines (i.e., "Tostitos," "SunChips," "Bean Dip," "Scoops," or "Artisan"); search term numbers 13 through 18, which specifically include "Natural" within 40 words of the challenged product lines; search term numbers 1 through 12, which specifically include "Genetic* Modif*" and "GM" within 40 words of the challenged product lines; and search term numbers 43 through 48, which specifically include "*Engineer*" within 40 words of the challenged product lines.

Plaintiffs' counsel then paused, went back to the list, and agreed that the terms were not missing. Plaintiffs' counsel then said that the concept that was missing related to theoretical general studies about "natural" and "bioengineering" unrelated to the specific products. Frito-Lay said that it would consider Plaintiffs' concern.

2.   **Documents Relating to "Bacillus Thuringiensis," "BT," "Round Up Ready" or "Monsanto"**

Plaintiffs' counsel also stated that the search term list did not capture documents relating to BT or Bacillus Thuringiensis. In response, Defendants pointed to search term numbers 25 through 36, which specifically include "Bacillus Thuringiensis" and "BT" within 40 words of the challenged product lines. Plaintiffs responded that that the concept should not be limited to the challenged product lines and that the terms "Round-Up Ready" and "Monsanto" were also missing from the list. Frito-Lay said that it would consider Plaintiffs' concern.

# GIBSON DUNN

September 30, 2013
Page 3

### 3.    Consumer Complaints, Inquiries, or Confusion About Genetically Modified Organisms or Bioengineering

Plaintiffs' counsel also stated that the search term list did not capture documents relating to consumer complaints or confusion about genetically modified organisms or bioengineering. Plaintiffs' counsel acknowledged that search term numbers 37 through 42 specifically include "Complain*" within 40 words of the challenged product lines, and that other search terms specifically included "Natural," "GM" "Genetic* Modif*," and "*Engineer*" within 40 words of the challenged product lines, but stated that the concept should not be limited to the challenged product lines. Frito-Lay said that it would consider Plaintiffs' concern.

### 4.    Frito-Lay Policies Related to "Natural" Labeling

Plaintiffs' counsel also stated that the search term list did not capture general policies that Frito-Lay may have related to labeling and its process for evaluating and approving labeling claims such as "Made With All Natural Ingredients." Frito-Lay disagreed and stated that it believed these types of documents would be captured by the existing search terms list. Plaintiffs again responded that the concept should not be limited to the challenged product lines. Frito-Lay said that it would consider Plaintiffs' concern.

While Frito-Lay maintains the position that its initial search terms included in Exhibit B to its July 3, 2013 letter comprehensively responded to Plaintiffs' First Request for Production of Documents, subject to Frito-Lay's Responses and Objections to Plaintiffs' First Request for Production of Documents (the "Responses"), Frito-Lay has taken Plaintiffs' so-called "additional concepts" into consideration and developed additional search terms, in order to avoid any dispute or question regarding the comprehensiveness of Frito-Lay's document collection and review efforts. Accordingly, Frito-Lay plans to run the additional search terms included at the end of Exhibit A hereto against documents collected from the custodians identified in Exhibit B hereto. Frito-Lay will review the resulting document population for production subject to the Objections and other specifications set forth in its Responses.

To avoid any further delays in document production or unnecessary drain of Frito-Lay's resources, please let us know immediately if Plaintiffs have any questions or concerns regarding the search terms listed in Exhibit A hereto.

# GIBSON DUNN

September 30, 2013
Page 4


Sincerely,

Jason R. Meltzer


cc: Andrew Tulumello
    Ariana Tadler

**Exhibit A**

1. Genetic* Modif* W/40 Tostitos
2. Genetic* Modif* W/40 SunChips
3. Genetic* Modif* W/40 Sun Chips
4. Genetic* Modif* W/40 Bean Dip
5. Genetic* Modif* W/40 Scoops
6. Genetic* Modif* W/40 Artisan
7. (GM* NOT W/0 (GMT OR gmail OR GMAS)) W/40 Tostitos
8. (GM* NOT W/0 (GMT OR gmail OR GMAS)) W/40 SunChips
9. (GM* NOT W/0 (GMT OR gmail OR GMAS)) W/40 Sun Chips
10. (GM* NOT W/0 (GMT OR gmail OR GMAS)) W/40 Bean Dip
11. (GM* NOT W/0 (GMT OR gmail OR GMAS)) W/40 Scoops
12. (GM* NOT W/0 (GMT OR gmail OR GMAS)) W/40 Artisan
13. Natural W/40 Tostitos
14. Natural W/40 SunChips
15. Natural W/40 Sun Chips
16. Natural W/40 Bean Dip
17. Natural W/40 Scoops
18. Natural W/40 Artisan
19. Label W/40 Tostitos
20. Label W/40 SunChips
21. Label W/40 Sun Chips
22. Label W/40 Bean Dip
23. Label W/40 Scoops
24. Label W/40 Artisan
25. Bacillus Thuringiensis W/40 Tostitos
26. Bacillus Thuringiensis W/40 SunChips
27. Bacillus Thuringiensis W/40 Sun Chips
28. Bacillus Thuringiensis W/40 Bean Dip
29. Bacillus Thuringiensis W/40 Scoops
30. Bacillus Thuringiensis W/40 Artisan
31. BT W/40 Tostitos
32. BT W/40 SunChips
33. BT W/40 Sun Chips
34. BT W/40 Bean Dip
35. BT W/40 Scoops
36. BT W/40 Artisan
37. Complain* W/40 Tostitos
38. Complain* W/40 SunChips
39. Complain* W/40 Sun Chips

40. Complain* W/40 Bean Dip
41. Complain* W/40 Scoops
42. Complain* W/40 Artisan
43. *Engineer* W/40 Tostitos
44. *Engineer* W/40 SunChips
45. *Engineer* W/40 Sun Chips
46. *Engineer* W/40 Bean Dip
47. *Engineer* W/40 Scoops
48. *Engineer* W/40 Artisan
49. FDA W/40 Tostitos
50. FDA W/40 SunChips
51. FDA W/40 Sun Chips
52. FDA W/40 Bean Dip
53. FDA W/40 Scoops
54. FDA W/40 Artisan
55. Food and Drug Administration W/40 Tostitos
56. Food and Drug Administration W/40 SunChips
57. Food and Drug Administration W/40 Sun Chips
58. Food and Drug Administration W/40 Bean Dip
59. Food and Drug Administration W/40 Scoops
60. Food and Drug Administration W/40 Artisan
61. Genome W/40 Tostitos
62. Genome W/40 SunChips
63. Genome W/40 Sun Chips
64. Genome W/40 Bean Dip
65. Genome W/40 Scoops
66. Genome W/40 Artisan
67. Reformulat* W/40 Tostitos
68. Reformulat* W/40 SunChips
69. Reformulat* W/40 Sun Chips
70. Reformulat* W/40 Bean Dip
71. Reformulat* W/40 Scoops
72. Reformulat* W/40 Artisan
73. Study W/40 Tostitos
74. Study W/40 SunChips
75. Study W/40 Sun Chips
76. Study W/40 Bean Dip
77. Study W/40 Scoops
78. Study W/40 Artisan
79. Survey W/40 Tostitos

80. Survey W/40 SunChips
81. Survey W/40 Sun Chips
82. Survey W/40 Bean Dip
83. Survey W/40 Scoops
84. Survey W/40 Artisan

**Additional Search Terms**
85. Bioengineering AND Study
86. GM W/40 Study
87. Genetic* Modif* W/40 Study
88. Natural AND Bioengineer
89. Natural W/40 Engineer
90. Natural W/40 Study
91. Inquir* W/40 GM
92. Inquir* W/40 Natural
93. Monsanto
94. Round-up Ready
95. Bacillus Thuringiensis
96. BT W/40 Natural
97. Complain* W/40 GM
98. Complain* W/40 Natural
99. Confus* W/40 GM
100. Confus* W/40 Natural

**Exhibit B**

1.  Ram Krishnan – Vice President, Marketing, Frito-Lay.

2.  Christina Menendez – Senior Director, Marketing, Frito-Lay.

3.  Abby Powell – Fmr. Marketing Director, Dips, Frito-Lay.

4.  Dee Dee Bryant – Marketing Manager, Dips, Frito-Lay.

5.  Katy DeCoursey – Fmr. Manager, Marketing, Frito-Lay.

6.  Jeremy Tucker – Fmr. Senior Director, Marketing, Frito-Lay.

7.  Tony Matta – Fmr. Vice President, Marketing, Frito-Lay.

8.  Ann Mukherjee – Senior Vice President and Chief Marketing Officer, Frito-Lay.

9.  Pamela Forbus – Vice President, Insights, Frito-Lay.

10. Padmini Sharma – Fmr. Director, Insights, Frito-Lay.

11. Cathy Dial – Senior Director, Consumer Relations, Frito-Lay.

12. Kristin Walsh – Director, Public Affairs, Frito-Lay.

13. David Baumgardner – Director, Commodity Purchasing, Frito-Lay.

14. Ken Bayless – Commodity Purchasing, Frito-Lay.

15. David Sanchez – Vice President, Sourcing, Frito-Lay.

16. April Brickey – Sourcing, Frito-Lay.

17. Azeem Ansari – Vice President, Finance, Frito-Lay.

18. Christine Jacoby – Vice President, Finance, Frito-Lay.

19. Kevin O'Sullivan – Vice President, Research & Development, Frito-Lay.

20. Tim Fink – Senior Director, Research & Development, Frito-Lay.

21. Rick Dellaporta – Senior Principal Scientist, Research and Development, Frito-Lay.

22. Ann Robarge – Senior Principal Scientist, Research & Development, Frito-Lay.

23. Kari Ryan – Fmr. Director, Regulatory, Frito-Lay.

24. Danielle Dalheim – Principal Nutrition Scientist/Dietician, Regulatory, Frito-Lay.

25. <u>Susan Smith</u> – Senior Analyst, Regulatory, Frito-Lay.

26. <u>Bob Brown</u> – Director, Nutrition and Regulatory, Frito-Lay.

27. <u>Jim Meier</u> – Senior Director, Marketing, Frito-Lay.

28. <u>Christine Allen</u> – Senior Director, Marketing, Frito-Lay.

29. <u>Janelle Anderson</u> – Senior Director, Marketing, Frito-Lay.

30. <u>Brandi Ray</u> – Manager, Marketing, Frito-Lay.

31. <u>Justin Lambeth</u> – Fmr. Vice President, Marketing, Frito-Lay.

32. <u>Gannon Jones</u> – Fmr. Vice President, Marketing, Frito-Lay.

33. <u>Pablo Merheb</u> – Senior Manager, Marketing, Frito-Lay.

34. <u>George Eapen</u> – Fmr. Manager, Marketing, Frito-Lay.

35. <u>Mike Quintana</u> – Director, Insights, Frito-Lay.

36. <u>Christopher Friend</u> – Senior Director, Research & Development, Frito-Lay.

37. <u>Jonathan Licker</u> – Senior Manager, Research & Development, Frito-Lay.

38. <u>Martha Brown</u> – Principal Scientist, Research & Development, Frito-Lay.

39. <u>Dick Metivier</u> – Senior Principal Scientist, Research & Development, Frito-Lay.

40. <u>Kathy Riggs</u> – Senior Manager, Research & Development, Frito-Lay.

41. <u>Carey Baldwin</u> – Director, Strategic Supply & Planning, Frito-Lay.

42. <u>Aurora Gonzalez</u> – Fmr. Director, Communications, Frito-Lay.

43. <u>Harry True</u> – Fmr. Director, Commodity Purchasing, Frito-Lay.

# APPENDIX F



NEW YORK
LOS ANGELES
DETROIT

Henry Kelston
Direct Dial: 646-733-5747
hkelston@milberg.com

October 1, 2013

<u>VIA E-MAIL</u>

Andrew Tulumello
Gibson, Dunn & Crutcher
1050 Connecticut Avenue, N.W.
Washington, DC  20036-5306

Re:    Frito-Lay North America, Inc. "All Natural" Litigation,
Case No. 12-CV-408 (RRM)(RLM)

Drew,

During our meet-and-confer call last Friday, September 27, 2013, Plaintiffs proposed that the parties stipulate to a three month extension of the case management schedule entered by Judge Mann on May 2, 2013.. You indicated that Defendant was amenable to some extension of the schedule, but that three months might be too long. You undertook to consult with your client and respond to our proposal early this week. We have not yet received that response.

At no time during the meet-and-confer call did you indicate that Frito-Lay was planning to produce additional documents. In fact, although Defendant left open the possibility of future productions to address what Plaintiffs believe (and Defendant denies) are deficiencies in Defendant's production to date, you stated that it was Defendant's position that its document production had been *substantially completed by August 31, 2013*, as required by Judge Mann's case management schedule.

Yesterday, with no advance notice, Plaintiffs received a production of 41,905 pages from Frito-Lay. Had we known on Friday that this production would be forthcoming, we would have modified our proposal for an extension of the case schedule. We also would have inquired whether Frito-Lay is planning any other productions, notwithstanding the fact that the August 31 deadline has passed.

To be clear, yesterday's production was not made in an effort to address the concerns Plaintiffs have raised about the adequacy of Frito-Lay's prior document productions. Although the cover letter accompanying the production seems purposefully obtuse, it appears that Frito-Lay simply decided to make a late production of documents from seventeen additional custodians. *See* September 30, 2013 letter from Jason Meltzer to Michael R. Reese and Ariana J. Tadler.

One Pennsylvania Plaza · New York, New York 10119 · T 212.594.5300 · F 212.868.1229 · milberg.com

October 1, 2013
Page 2

Yesterday, in addition to the unanticipated document production, we received a letter from Jason Meltzer regarding additional search terms that Frito-Lay has developed, ostensibly to address the deficiencies that Plaintiffs believe were inherent in the search terms Frito-Lay used to collect the 110,739 pages of documents it produced on August 28, 2013. (Apparently, the same set of deficient search terms was used to gather the documents produced yesterday.)

The proposed search terms are grossly inadequate to address the concerns Plaintiffs raised about Frito-Lay's original search protocol. The two sets of search terms developed by Defendant to identify documents potentially relevant to this litigation (attached as exhibits to July 3, 2013 and September 30, 2013 letters from Jason Meltzer to Michael R. Reese and Ariana J. Tadler) fail to meet the most basic standard of competence required of a party in discovery under the Federal Rules of Civil Procedure and applicable case law.

For all of the above reasons, Plaintiffs withdraw their proposal for a three-month extension of the case management schedule.

Plaintiffs intend to file a motion to compel Defendant to design and implement a search protocol that satisfies Defendant's legal obligation to conduct a reasonably diligent search for documents potentially relevant to this litigation, with the input of a person qualified in search and retrieval techniques. *Pursuant to Local Civil Rule 37.3, Plaintiffs hereby request an immediate conference in person or by telephone to attempt to resolve this dispute.* We are available to confer at any time today, tomorrow or Thursday.

Plaintiffs also intend to file a letter with the Court tomorrow requesting a temporary postponement of the deadlines in the case management schedule, pending resolution of this dispute, either by agreement of the parties or by Court order on a motion to compel. If the parties are able to resolve this dispute without Court intervention, the resolution is to include a joint stipulation regarding a new case management schedule.

Please inform us by 10:00 a.m. tomorrow: (a) whether Defendant consents to Plaintiffs' request for a temporary postponement of the case management deadlines pending resolution of this dispute; and (b) if not, the reason for Defendant's refusal to consent. Please also contact us with proposed dates and times to confer about this dispute.

Sincerely,

Henry J. Kelston

cc:   Ariana J. Tadler
      Michael R. Reese

**Milberg LLP**

# APPENDIX G



Henry Kelston
Direct Dial: 646-733-5747
hkelston@milberg.com

October 7, 2013

<u>VIA E-MAIL</u>

Andrew Tulumello
Gibson, Dunn & Crutcher
1050 Connecticut Avenue, N.W.
Washington, DC  20036-5306

> **Re:    Frito-Lay North America, Inc. "All Natural" Litigation,
> Case No. 12-CV-408 (RRM)(RLM)**

Dear Drew,

  We write in reply to your letter of October 2, 2013, responding to mine of October 1, 2013.

  In the interest of comity, we will not respond to your accounts of prior communications between the parties, except as they may directly affect the resolution of current issues.  Suffice it to say that we disagree in many respects with your versions of the facts as well as your interpretations of them.  Regarding the timing of Plaintiffs' objections to Defendants' search protocol, we have explained in detail why we did not respond to Defendant's letter of July 3, 2013 as promptly as you believe we should have.  Rehashing that issue is not likely to move the parties closer to resolving the problem.

  Of great concern, however, is your statement that Defendant is "in the process of moving forward" with additional document collection based on the "proposal" conveyed in Jason Meltzer's letter of September 30, 2013, despite the fact that, in a letter the following day, we objected that the proposal fails to meet the standards for a reasonably diligent search under the Federal Rules of Civil Procedure.  We requested to meet and confer on this issue and remain ready and willing to do so.

  Notwithstanding the clear objection we conveyed on October 1, your letter of October 2 letter asks that if we have any concerns with the new terms, we specify them promptly; thus, we reiterate that we have concerns with the Additional Search Terms proposed on September 30. Specifically, we believe that the proposed terms evidence insufficient familiarity with both search methodologies and with the language commonly used in documents relevant to the issues in the case.

October 7, 2013
Page 2

To provide just a few examples: (i) several of the Additional Search Terms include the word "study" but not "survey" or "report" or "research" or other similar terms; (ii) the Additional Search Terms include "Natural and Bioengineer" and "Natural w/40 Engineer," but not "natural" in proximity to "bioengineered" or "bioengineering" or "biotech*" or "GM" or "GMO" or "genetic*"; and (iii) the term "biotech*" is not included in either the original search terms or the Additional Search Terms, despite that fact that it is a term used interchangeably with GMO, genetically engineered, genetically modified and bioengineered, both inside and outside of Frito-Lay.

We understand that Defendant also wishes to meet and confer regarding certain aspects of discovery.  To expedite the resolution of outstanding issues, we suggest that the parties commit to meeting at least once per week, beginning this week, until the the issues described in recent correspondence have been resolved or impasse is reached on specific, clearly drawn issues..

Sincerely,

Henry J. Kelston

cc:    Ariana J. Tadler
       Michael R. Reese

**Milberg LLP**

# APPENDIX H

 **MILBERG** LLP

NEW YORK<br>LOS ANGELES<br>DETROIT

October 25, 2013

Andrew Tulumello, Esq.
Gibson, Dunn & Crutcher, LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306

Re:   *Frito-Lay North America, Inc. "All Natural" Litigation,*
      Case No. 1:12-MD-02413-RRM-RLM (E.D.N.Y.)

Dear Counsel,

        We write to highlight certain issues with Defendant's production and search protocols. We provide this information to facilitate our discussion at 2:30 pm.

        As discussed in Henry Kelston's letter to you on October 7, 2013, we believe that your proposed terms will inadequately identify documents that are responsive to our Requests for Production and relevant to issues in this litigation. In addition to our continued concern with Defendant's reliance on the use of search terms when more sophisticated technology exists, Plaintiffs' most immediate concern is that some obvious terms have been omitted from your lists of Search Terms. We do not intend to provide an exhaustive list to Defendant, but some of the more glaring omissions include:

- natural w/40 GM*
- natural w/40 bioengineer*
- natural w/40 genetic*
- natural w/40 biotech*
- genetic* w/40 engineer*

Again, these are examples representative of the concepts we have been trying to address.

        In addition, several terms which you have proposed are not constructed in a way that would deliver meaningful results. Some examples include:

- #85: "Bioengineering" limits documents more successfully found with the stem keyword "bioengineer*"

October 25, 2013
Page 2

- #85-87, 90: these terms exclude any market reports, third party research and consumer surveys which do not have the word "study" in them
- #91, 92, 97-100: Inquir*, Complian*, and Confus* are listed w/40 of "Natural" and "GM", but not "GMO", "genetic* modif*", or "bioengineer*"
- #95: "Bacillus Thuringiensis" is included; we suggest just "Bacillus" so as not to eliminate documents where the phrase may be misspelled

Furthermore, we have identified that over ten percent of the documents produced to date by Defendant -- 937 documents of your production of 8,626 documents from August 28, 2013 and September 30, 2013 -- do not include a single search term on your list. Please be prepared to explain how you found these documents, and if any measures were taken by Defendant to identify similar documents or adjust the search process in light of this fact.

Finally, it appears that Defendant has failed to respond to a number of Plaintiffs' Requests for Production, including but not limited to Plaintiffs' requests:

(i)     for documents sufficient to identify all suppliers of corn used to make the Products, and for communications with those suppliers that relate to or concern GMOs (Requests 11 and 12);

(ii)    for documents sufficient to identify, for each individual Product, monthly sales information in the United States for each year from January 1, 2010, to the present (Requests17 and 18);

(iii)   for information about document preservation procedures (Request 24); and

(iv)    for organizational charts (Request 22), without which Plaintiffs cannot engage in a meaningful discussion with you about the cast of employees you have named as custodians and whether other individuals should be chosen.

We expect that you will be prepared to discuss these issues today during our meet-and-confer and look forward to a meaningful resolution of them.

Sincerely,

Meagan Keenan
Associate

MILBERG LLP

DOCS\673303v1

# APPENDIX I

 **MILBERG** LLP

NEW YORK
LOS ANGELES
DETROIT

Ariana J. Tadler
Direct Dial: 212-946-9453
atadler@milberg.com

October 30, 2013

**VIA EMAIL**

Andrew Tulumello, Esq.
Gibson, Dunn & Crutcher, LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306

Re:   *Frito-Lay North America, Inc. "All Natural" Litigation,*
Case No. 1:12-MD-02413-RRM-RLM (E.D.N.Y.)
Follow up on October 25, 2013 Meet and Confer

Dear Drew,

We write to follow up from our meet-and-confer on Friday, October 25th in which we agreed to provide more detail about Plaintiffs' concerns regarding the adequacy of the search protocol Defendant employed to identify documents relevant to the above-captioned litigation.

This letter is intended to clarify those concerns and offer suggestions as to how Defendant may address them. Please understand, as we articulated on Friday, we believe that documents that are responsive to Plaintiffs' discovery requests but were not identified through the application of search terms should be produced to the extent they are reasonably identifiable through other means (e.g., shared repositories, files that exist for the purpose of or related to the requested topic, files from custodians, departments or committees that by their very job description or purpose demonstrate likely responsiveness, etc.). Similarly, we believe that Defendant in good faith must supplement search terms suggested by Plaintiffs with any variants of those terms that are knowingly used by people within Frito Lay and/or consistent with the culture at Frito Lay. By way of example, if the corn used in the challenged products is referred to by a supplier designation (e.g., Bunge 24356 or Cargill Degermed #4), any search term including the word "corn" should include that supplier designation as an alternative to "corn."

Andrew Tulumello, Esq.
October 30, 2013
Page 2

For ease of reference, we address topics of concern by category below:

**Issue 1:  Search Terms Omit Variants**

Many of the search terms used by Defendant do not include variants of the included terms. Plaintiffs suggest the following changes, which should be supplemented by changes based on Defendant's knowledge of terms actually used within the company:

- Every term including any variant of GMO should include all variants:  [GMO, genetic*, bioengin*, biotech*, DNA, transgen*, (gm* not w/__ (GMT or GMAIL))]

- Every term including a variant of "study" should include all variants: [study, report, research, survey, result, analy*]

- Every term including BT, bacillus, Roundup, Round-up or Monsanto should include all variants

- Every term including a variant of "opinion" should include all variants [opinion, inquir* complain*, confus*, analy*, result*, expect*, perce*, belie*]

**Issue 2: Specific Terms Omitted**

Plaintiffs propose the following additional search terms:

- (Consumer OR shopper OR purchaser OR user) w/40 natural

- Premium w/40 natural

- Corn w/40 BT *(with variants)*

- Corn w/40 GMO *(with variants)*

- Corn w/20 (specify or specification)

- (Polic* OR standard* OR guideline* OR practice* OR plan*) w/40 GMO *(with variants)*

- (Polic* OR standard* OR guideline* OR practice* OR plan*) AND natural AND label

- ("willingness to pay" OR prefer* OR expect*) AND (natural OR organic)

MILBERG LLP

Andrew Tulumello, Esq.
October 30, 2013
Page 3

**Issue 3: Categories of Documents Not Produced or for which Production Appears To Be Incomplete**

- Sales and financial data (Requests 17-18)[1]

- Market reports, consumer surveys, third party research (e.g., GMA, IFIC studies)[2]

- Documents identifying the time period and geographic area in which each package label was used during the class period (Request 2)

- Documents concerning any communications with health organizations or government agencies regarding GMOs (Request 14)

- Documents concerning possible legislative or regulatory action, either at the state or federal level, that would require disclosure to consumers about the presence of GMOs in food products (Request 15) - *see* fn. 3.

- Documents concerning or prepared in connection with a January 2013 conference in Washington, D.C., convened by the Meridian Institute (Request 16)[3]

**Issue 4: Relevant Documents Not "Hit" By Search Terms**

Over 10% of the documents in Defendant's productions do not contain any of Defendant's search terms and are not attached to a document containing a search term. Examples of such documents include:

- 21304
- 52594

---

[1]  I believe you advised on Friday, October 25, 2013 that you are preparing a report to reflect certain responsive data in this category, extracted from Frito Lay's data sources. We look forward to receiving same. We also reserve the right to seek clarification about the report and its contents as well as the production of the underlying data.

[2]  Although we have identified some information in the production that might be considered partially responsive to the relevant requests, we do not believe that the production of information for this category is complete. We would appreciate your reviewing this category and ask that you confirm whether you believe that the production is complete. If you do not believe it is complete, please advise as to when you anticipate completing production and explain the process by which you will be identifying additional responsive documents. We ask that you do so to avoid any disputes in the future.

[3]  It may well be that we need to discuss this and the prior delineated item (i.e. these relate to Request Nos. 15 and 16 as categorized above) based on certain objections that Defendant has posed with which Plaintiffs take issue. Specifically, Defendant speaks of "affirmative labeling requirements, which are [according to Defendant] not at issue in this case."

MILBERG LLP

Andrew Tulumello, Esq.
October 30, 2013
Page 4

- 111107
- 120803
- 125629
- 34085

Defendant's search protocol should be designed to retrieve such documents from all custodians. We request that Defendant advise how these documents were identified and whether Defendant did or intends to tailor its search to discovery of similar documents relevant and responsive to Plaintiffs' discovery requests.

*********************

Finally, we again reiterate that Plaintiffs have not yet been provided with organizational charts, without which we cannot engage in a meaningful assessment of the custodians chosen for collection and/or the extent to which we believe the pool of custodians should be expanded. We understood from our conversation that you would be providing those organizational charts this week. We ask that you please confirm that responsive documents in this category will be produced by Friday.

Plaintiffs reserve their rights to challenge the adequacy of Defendant's production and search protocol; however, we hope that by outlining the foregoing and working together towards solutions, we can complete the discovery phase of this case efficiently and effectively. In that spirit, Plaintiffs propose that the parties continue their mutual and constructive efforts to work through these issues with a follow up meet and confer. We are available on November 5 at 2:30 p.m. If this time is not workable for you, please offer alternative dates and times.

Sincerely,

*Ariana Tadler*

Ariana J. Tadler

cc:   Michael Reese, Esq.
      Henry Kelston, Esq.
      Meagan Keenan, Esq.

MILBERG LLP

# APPENDIX J

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Tel 202.955.8500
www.gibsondunn.com

Jason R. Meltzer
Direct: +1 202.955.8676
Fax: +1 202.530.9514
JMeltzer@gibsondunn.com

November 14, 2013

VIA UPS AND ELECTRONIC MAIL

Ariana J. Tadler, Esq.
Milberg LLP
One Pennsylvania Plaza
New York, NY 10119

Michael R. Reese, Esq.
Reese Richman LLP
875 Avenue of the Americas, 18th Floor
New York, NY 10001

Re:  *Frito-Lay North America, Inc. "All Natural" Litigation*, 12-MD-2413-RRM-RLM (E.D.N.Y.)

Dear Counsel:

We write on behalf of Frito-Lay North America, Inc. ("Frito-Lay") further to the meet & confer held by telephone on October 25, 2013 at 2:30 p.m. and in response to the Letter from Ariana Tadler to Andrew Tulumello dated October 30, 2013 (the "October 30 Letter").

## 1. Plaintiff Delays Leading Up To The October 25, 2013 Meet & Confer

In a letter dated October 23, 2013 from Andrew Tulumello to Henry Kelston, we documented the history of Frito-Lay's efforts to confer with plaintiffs regarding the scope of their document requests and the search terms Frito-Lay used to produce responsive documents, and plaintiffs' repeated failures to respond. *See* Exhibit A (hereto).

Our October 23, 2013 letter also noted plaintiffs' failures during the parties' meet & confer on August 28, 2013, to propose additional search terms and plaintiffs' general unfamiliarity with the terms that Frito-Lay had proposed on July 3, 2013. We also noted plaintiffs' continued failure in their October 7, 2013 letter to provide a complete list of concepts or proposed additional search terms for Frito-Lay to consider. Finally, we asked that plaintiffs send any additional proposed terms in advance of the October 25, 2013 meet & confer.

On October 25, 2013 at 1:21 p.m. ET, one hour before our scheduled meet & confer, we received a letter from Meagan Keenan laying out additional proposed search terms from plaintiffs. That list included five additional search terms, and four suggestions for

# GIBSON DUNN

November 14, 2013
Page 2

modifications to the nine of the additional terms that Frito-Lay had proposed using on
September 30, 2013 in response to the concepts plaintiffs mentioned on August 28, 2013.

## 2.   October 25, 2013 Meet & Confer

During the October 25, 2013 meet & confer, plaintiffs indicated that Interim Class
Counsel would send Frito-Lay a letter on Monday, October 28, 2013, or Tuesday, October
29, 2013, noting a few additional search terms.  We explained that if the terms were
reasonable, Frito-Lay would consider them, but Frito-Lay reserved its rights to object given
the significant delay between Interim Class Counsel's new terms and Frito-Lay's July 3,
2013 search term letter.  Frito-Lay also noted that the inclusion of any additional search
terms necessarily would push back the December 4, 2013 discovery deadline.  Plaintiffs
indicated that that they would agree to move the document production deadline in light of the
additional late-requested terms.

## 3.   Plaintiffs' October 30, 2013 Letter

On October 30, 2013, four months after Frito-Lay sent its original search term list,
and seven months after Frito-Lay requested to meet & confer regarding the scope of
plaintiffs' document requests, Frito-Lay received plaintiffs' October 30 Letter, which
proposed more than 150 additional search term variants, most of which have no connection
with or limitations relating to the products or even the product lines at issue in this case.

Plaintiffs' belated request to significantly expand the search terms in this case is
inefficient, unfair, and completely counter to the front-end cooperative approach to e-
discovery that we had hoped plaintiffs would follow.  These discussions should have
occurred seven months ago.  Plaintiffs have repeatedly failed to respond on discovery issues
for many months, only at the last minute (when plaintiffs' deadlines approach) to raise issues
about the discovery process that do nothing but impose more costs on Frito-Lay's already
extensive, expensive and time-consuming discovery efforts.  This process has to stop.

Frito-Lay believes this case, at its very core, has no merit:  the named plaintiff
depositions only confirm, in multiple ways, that consumers were not harmed or deceived by
eating Tostitos, SunChips, and Bean Dip.  The Company wants to stay focused on the merits
of this case because it wants to prevail on the merits of this case, without letting document
disputes become a distraction.  Therefore, notwithstanding plaintiffs' delays, in the interest
of working to complete the discovery process to plaintiffs' satisfaction and to dispel any
question regarding the extensiveness of Frito-Lay's collection and production efforts, Frito-
Lay has reviewed and considered the additional terms proposed in plaintiffs' October 30
Letter.

# GIBSON DUNN

November 14, 2013
Page 3


To put an end to these issues once and for all, Frito-Lay will agree to run the additional search terms listed in Exhibit B upon entry of a case management stipulation and order extending the case schedule for three months to enable the search to be completed. These additional terms will bring the total number of search terms Frito-Lay has run to 227 separate terms.  While the additional terms are still extraordinarily overbroad and in most instances will result in Frito-Lay reviewing many documents completely unrelated to any issue in this case, once a new schedule is entered, Frito-Lay will nevertheless run the terms against the documents collected from the custodians listed in Exhibit B to its September 30, 2013 letter and review the resulting population for production in accordance with its Responses.  This effort will likely result in Frito-Lay spending hundreds of thousands of dollars in additional discovery costs.

Please be advised that Frito-Lay reserves its rights to seek to recoup these unnecessary expenses from plaintiffs and their counsel to the maximum extent permitted by law.


Sincerely,

Jason R. Meltzer


cc: Henry J. Kelston, Esq.
    Andrew S. Tulumello, Esq.

# Exhibit A

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Tel 202.955.8500
www.gibsondunn.com

Andrew S. Tulumello
Direct: +1 202.955.8657
Fax: +1 202.530.9678
ATulumello@gibsondunn.com

October 23, 2013

VIA EMAIL AND OVERNIGHT DELIVERY

Henry J. Kelston, Esq.
Milberg LLP
One Pennsylvania Plaza
New York, NY 10119

Re:    *Frito-Lay North America, Inc. "All Natural" Litigation*, No. 12-MD-2413-RRM-
       RLM (E.D.N.Y.)

Dear Mr. Kelston:

      We write on behalf of Frito-Lay North America, Inc. ("Frito-Lay") in response to
your letter dated October 7, 2013.  In your letter, you state that you believe the additional
terms we proposed on September 30, 2013 "evidence insufficient familiarity with both
search methodologies and with the language commonly used in documents relevant to the
issues in the case," and you purport to "provide just a few examples" of additional search
terms you suggest should be included.  It is long past the time for Plaintiffs to be providing
"just a few examples" of additional search terms that they propose.

      As laid out in our previous correspondence, we originally asked Plaintiffs to meet and
confer regarding the scope of Plaintiffs' document requests on April 19, 2013, but never
received any response.  *See* Letter from Andrew Tulumello to Henry Kelston dated October
2, 2013, Exhibit A.  We then sent Plaintiffs an extensive list of search terms on July 3, 2013
and asked them to immediately contact us if they had any concerns about our method of
proceeding, but did not receive any response for six weeks.  *See id.*, Exhibits A, B.  During
that time, Frito-Lay engaged in a substantial collection and review process at the cost of
hundreds of thousands of dollars, and Plaintiffs affirmatively asked Frito-Lay on July 12,
2013 to confirm that they were proceeding with document review and production.  *Id.*,
Exhibit A.

      Plaintiffs sent us a letter on August 17, 2013 raising (for the first time) issues
regarding Frito-Lay's search terms.  We promptly conferred with you on August 28, 2013,
and you seemed generally unaware of the terms we had sent.  *Id.*, Exhibits A, C.  As you
were unable to propose additional specific search terms, you instead proceeded to propose
"concepts" that you felt were not captured by the list of 84 terms.  *Id.*  You also agreed that
defendants were entitled to use search terms to collect and promote documents for review,

# GIBSON DUNN

October 23, 2013
Page 2

consistent with Frito-Lay's statements to Plaintiffs on April 22, 2013 and July 3, 2013 of its intention to do so. *Id.* On September 30, 2013, we sent you additional search terms to address the "concepts" you mentioned on August 28, 2013, even though virtually all of those concepts were already captured by Frito-Lay's prior search term list. *Id.*, Exhibit C.

Now, your October 7, 2013 letter purports to provide "just a few examples" of what Plaintiffs claim is missing from Frito-Lay's search terms. The day is late and the time is far past for Plaintiffs to be providing "concepts" or "just a few examples" of what they think should be included. Frito-Lay has spent more than $1 million reviewing documents for production and has produced more than 150,000 pages from more than 40 custodians. Plaintiffs have also had more than six months since receiving Frito-Lay's objections and responses, and four months since receiving Frito-Lay's comprehensive list of search terms on July 3, 2013, to identify and propose additional search terms. If Plaintiffs have any additional terms that they believe should be implemented, they must propose them now, prior to our next meet and confer. We can then discuss them and whether they are relevant to any claim or defense and not duplicative of the terms Frito-Lay agreed to and implemented months ago for collection, review and production. The Court's October 4, 2013 scheduling order provides that Frito-Lay's document production is to be substantially completed by December 4, 2013, and nebulous "concepts" and "a few examples" will not stand at this late date in the discovery process.

As we did not hear from you in response to our email last Wednesday, October 16, 2013 asking if Plaintiffs were available to confer on October 22 or October 23, until 6:49 p.m. yesterday, we are no longer available to confer at 3 p.m. today. We are available, however, on Friday, October 25, 2013, from 2:30 to 3:30. Please let us know if this time works for Plaintiffs. We will also expect to receive any additional terms that Plaintiffs propose for inclusion in Frito-Lay's search term list by Thursday, October 24, 2013 at 1:00 p.m., so that the parties can have a productive conversation on Friday and Frito-Lay can complete its document production by the Court's deadline.

In addition to conferring about the foregoing issues, please be prepared to discuss your position regarding why all claims under Florida law should not be dismissed in light of Plaintiff Summerlin's decision to withdraw from the case. We intend to move to dismiss those claims and will request a pre-motion conference with the Court in the event we are unable to agree on an approach going forward.

Separately, please be prepared to confer regarding our letter sent yesterday, October 22, 2013, on the named plaintiffs' document productions in light of the depositions scheduled for next week.

# GIBSON DUNN

October 23, 2013
Page 3

Sincerely,

Andrew S. Tulumello

cc: Michael R. Reese
    Ariana J. Tadler
    Jason R. Meltzer

# Exhibit B

**Exhibit B**

<u>Search Terms Frito-Lay Proposed On July 3, 2013</u>

1. Genetic* Modif* W/40 Tostitos
2. Genetic* Modif* W/40 SunChips
3. Genetic* Modif* W/40 Sun Chips
4. Genetic* Modif* W/40 Bean Dip
5. Genetic* Modif* W/40 Scoops
6. Genetic* Modif* W/40 Artisan
7. (GM* NOT W/0 (GMT OR gmail OR GMAS)) W/40 Tostitos
8. (GM* NOT W/0 (GMT OR gmail OR GMAS)) W/40 SunChips
9. (GM* NOT W/0 (GMT OR gmail OR GMAS)) W/40 Sun Chips
10. (GM* NOT W/0 (GMT OR gmail OR GMAS)) W/40 Bean Dip
11. (GM* NOT W/0 (GMT OR gmail OR GMAS)) W/40 Scoops
12. (GM* NOT W/0 (GMT OR gmail OR GMAS)) W/40 Artisan
13. Natural W/40 Tostitos
14. Natural W/40 SunChips
15. Natural W/40 Sun Chips
16. Natural W/40 Bean Dip
17. Natural W/40 Scoops
18. Natural W/40 Artisan
19. Label W/40 Tostitos
20. Label W/40 SunChips
21. Label W/40 Sun Chips
22. Label W/40 Bean Dip
23. Label W/40 Scoops
24. Label W/40 Artisan
25. Bacillus Thuringiensis W/40 Tostitos
26. Bacillus Thuringiensis W/40 SunChips
27. Bacillus Thuringiensis W/40 Sun Chips
28. Bacillus Thuringiensis W/40 Bean Dip
29. Bacillus Thuringiensis W/40 Scoops
30. Bacillus Thuringiensis W/40 Artisan
31. BT W/40 Tostitos
32. BT W/40 SunChips
33. BT W/40 Sun Chips
34. BT W/40 Bean Dip
35. BT W/40 Scoops
36. BT W/40 Artisan
37. Complain* W/40 Tostitos
38. Complain* W/40 SunChips

39. Complain* W/40 Sun Chips
40. Complain* W/40 Bean Dip
41. Complain* W/40 Scoops
42. Complain* W/40 Artisan
43. *Engineer* W/40 Tostitos
44. *Engineer* W/40 SunChips
45. *Engineer* W/40 Sun Chips
46. *Engineer* W/40 Bean Dip
47. *Engineer* W/40 Scoops
48. *Engineer* W/40 Artisan
49. FDA W/40 Tostitos
50. FDA W/40 SunChips
51. FDA W/40 Sun Chips
52. FDA W/40 Bean Dip
53. FDA W/40 Scoops
54. FDA W/40 Artisan
55. Food and Drug Administration W/40 Tostitos
56. Food and Drug Administration W/40 SunChips
57. Food and Drug Administration W/40 Sun Chips
58. Food and Drug Administration W/40 Bean Dip
59. Food and Drug Administration W/40 Scoops
60. Food and Drug Administration W/40 Artisan
61. Genome W/40 Tostitos
62. Genome W/40 SunChips
63. Genome W/40 Sun Chips
64. Genome W/40 Bean Dip
65. Genome W/40 Scoops
66. Genome W/40 Artisan
67. Reformulat* W/40 Tostitos
68. Reformulat* W/40 SunChips
69. Reformulat* W/40 Sun Chips
70. Reformulat* W/40 Bean Dip
71. Reformulat* W/40 Scoops
72. Reformulat* W/40 Artisan
73. Study W/40 Tostitos
74. Study W/40 SunChips
75. Study W/40 Sun Chips
76. Study W/40 Bean Dip
77. Study W/40 Scoops
78. Study W/40 Artisan

79. Survey W/40 Tostitos
80. Survey W/40 SunChips
81. Survey W/40 Sun Chips
82. Survey W/40 Bean Dip
83. Survey W/40 Scoops
84. Survey W/40 Artisan

**Search Terms Added On September 30, 2013 In Response To Concepts Plaintiffs Described During August 28, 2013 Meet & Confer**

85. Bioengineering AND Study
86. GM W/40 Study
87. Genetic* Modif* W/40 Study
88. Natural AND Bioengineer
89. Natural W/40 Engineer
90. Natural W/40 Study
91. Inquir* W/40 GM
92. Inquir* W/40 Natural
93. Monsanto
94. Round-up Ready
95. Bacillus Thuringiensis
96. BT W/40 Natural
97. Complain* W/40 GM
98. Complain* W/40 Natural
99. Confus* W/40 GM
100.    Confus* W/40 Natural

**Additional Search Terms Proposed In Response To Plaintiffs' October 30, 2013 Letter**

101.    (Genetic W/40 engineer*) AND Artisan
102.    (Genetic W/40 engineer*) AND Bean Dip
103.    (Genetic W/40 engineer*) AND Scoops
104.    (Genetic W/40 engineer*) AND Sun Chips
105.    (Genetic W/40 engineer*) AND SunChips
106.    (Genetic W/40 engineer*) AND Tostitos
107.    (Natural W/40 bioengineer*) AND Artisan
108.    (Natural W/40 bioengineer*) AND Bean Dip
109.    (Natural W/40 bioengineer*) AND Scoops
110.    (Natural W/40 bioengineer*) AND Sun Chips
111.    (Natural W/40 bioengineer*) AND SunChips
112.    (Natural W/40 bioengineer*) AND Tostitos
113.    (Natural W/40 biotech*) AND Artisan

3

114. (Natural W/40 biotech*) AND Bean Dip
115. (Natural W/40 biotech*) AND Scoops
116. (Natural W/40 biotech*) AND Sun Chips
117. (Natural W/40 biotech*) AND SunChips
118. (Natural W/40 biotech*) AND Tostitos
119. (Natural W/40 genetic*) AND Artisan
120. (Natural W/40 genetic*) AND Bean Dip
121. (Natural W/40 genetic*) AND Scoops
122. (Natural W/40 genetic*) AND Sun Chips
123. (Natural W/40 genetic*) AND SunChips
124. (Natural W/40 genetic*) AND Tostitos
125. (Natural W/40 GM) AND Artisan
126. (Natural W/40 GM) AND Bean Dip
127. (Natural W/40 GM) AND Scoops
128. (Natural W/40 GM) AND Sun Chips
129. (Natural W/40 GM) AND SunChips
130. (Natural W/40 GM) AND Tostitos
131. (Natural W/40 GMO) AND Artisan
132. (Natural W/40 GMO) AND Bean Dip
133. (Natural W/40 GMO) AND Scoops
134. (Natural W/40 GMO) AND Sun Chips
135. (Natural W/40 GMO) AND SunChips
136. (Natural W/40 GMO) AND Tostitos
137. (Natural W/40 report) AND Artisan
138. (Natural W/40 report) AND Bean Dip
139. (Natural W/40 report) AND Scoops
140. (Natural W/40 report) AND Sun Chips
141. (Natural W/40 report) AND SunChips
142. (Natural W/40 report) AND Tostitos
143. (Natural W/40 research) AND Artisan
144. (Natural W/40 research) AND Bean Dip
145. (Natural W/40 research) AND Scoops
146. (Natural W/40 research) AND Sun Chips
147. (Natural W/40 research) AND SunChips
148. (Natural W/40 research) AND Tostitos
149. (Natural W/40 survey) AND Artisan
150. (Natural W/40 survey) AND Bean Dip
151. (Natural W/40 survey) AND Scoops
152. (Natural W/40 survey) AND Sun Chips
153. (Natural W/40 survey) AND SunChips

4

154. (Natural W/40 survey) AND Tostitos
155. Bacillus
156. Bioengin* W/40 Artisan
157. Bioengin* W/40 Bean Dip
158. Bioengin* W/40 Scoops
159. Bioengin* W/40 Sun Chips
160. Bioengin* W/40 SunChips
161. Bioengin* W/40 Tostitos
162. Bioengineer* W/40 research
163. Bioengineer* W/40 survey
164. Bioengineer*W/40 report
165. Biotech* W/40 Artisan
166. Biotech* W/40 Bean Dip
167. Biotech* W/40 report
168. Biotech* W/40 research
169. Biotech* W/40 Scoops
170. Biotech* W/40 study
171. Biotech* W/40 Sun Chips
172. Biotech* W/40 SunChips
173. Biotech* W/40 survey
174. Biotech* W/40 Tostitos
175. Complain* W/40 bioengineer*
176. Complain* W/40 biotech*
177. Complain* W/40 genetic* modif*
178. Complain* W/40 GMO
179. Confus* W/40 bioengineer*
180. Confus* W/40 biotech*
181. Confus* W/40 genetic* modif*
182. Confus* W/40 GMO
183. DNA W/40 Artisan
184. DNA W/40 Bean Dip
185. DNA W/40 Scoops
186. DNA W/40 Sun Chips
187. DNA W/40 SunChips
188. DNA W/40 Tostitos
189. Genetic* Modif* W/40 report
190. Genetic* Modif* W/40 research
191. Genetic* Modif* W/40 survey
192. Genetic* W/40 Artisan
193. Genetic* W/40 Bean Dip

5

194. Genetic* W/40 Scoops
195. Genetic* W/40 Sun Chips
196. Genetic* W/40 SunChips
197. Genetic* W/40 Tostitos
198. GMO W/40 report
199. GMO W/40 research
200. GMO W/40 survey
201. (gm NOT W/0 (SVP GM OR GM/VP OR VP/GM OR Division GM OR GM's OR Vice President GM OR SVP/GM)) W/40 report
202. (gm NOT W/0 (SVP GM OR GM/VP OR VP/GM OR Division GM OR GM's OR Vice President GM OR SVP/GM)) W/40 research
203. (gm NOT W/0 (SVP GM OR GM/VP OR VP/GM OR Division GM OR GM's OR Vice President GM OR SVP/GM)) W/40 survey
204. Inquir* W/40 bioengineer*
205. Inquir* W/40 biotech*
206. Inquir* W/40 genetic* modif*
207. Inquir* W/40 GMO
208. Report W/40 Artisan
209. Report W/40 Bean Dip
210. Report W/40 Scoops
211. Report W/40 Sun Chips
212. Report W/40 SunChips
213. Report W/40 Tostitos
214. Research W/40 Artisan
215. Research W/40 Bean Dip
216. Research W/40 Scoops
217. Research W/40 Sun Chips
218. Research W/40 SunChips
219. Research W/40 Tostitos
220. Transgen* W/40 Artisan
221. Transgen* W/40 Bean Dip
222. Transgen* W/40 Scoops
223. Transgen* W/40 Sun Chips
224. Transgen* W/40 SunChips
225. Transgen* W/40 Tostitos
226. Willingness to pay W/40 Natural
227. Willingness to pay W/40 Organic

# APPENDIX K

 MILBERG LLP

NEW YORK
LOS ANGELES
DETROIT

Henry Kelston
Direct Dial: 646-733-5747
hkelston@milberg.com

November 21, 2013

<u>VIA E-MAIL</u>

Jason R. Meltzer
Gibson, Dunn & Crutcher
1050 Connecticut Avenue, N.W.
Washington, DC  20036-5306

> **Re:   Frito-Lay North America, Inc. "All Natural" Litigation,
> Case No. 12-CV-408 (RRM)(RLM)**

Jason,

We have reviewed the search terms in Exhibit B to your letter of November 14, 2013. We are greatly concerned that the listed terms do not address many of the issues raised in Ariana Tadler's October 30, 2013 letter to Andrew Tulumello.

We urge Defendant not to proceed with the document search process until the parties come to an agreement on an acceptable search protocol.

Sincerely,

Henry J. Kelston

cc:   Ariana J. Tadler
Michael R. Reese

# APPENDIX L

 **MILBERG** LLP

NEW YORK
LOS ANGELES
DETROIT

Henry Kelston
Direct Dial: 646-733-5747
hkelston@milberg.com

November 26, 2013

<u>VIA E-MAIL</u>

Jason R. Meltzer
Gibson, Dunn & Crutcher
1050 Connecticut Avenue, N.W.
Washington, DC  20036-5306

  **Re:** **Frito-Lay North America, Inc. "All Natural" Litigation,**
    **Case No. 12-CV-408 (RRM)(RLM)**

Jason,

  By letter dated October 30, 2013, Plaintiffs detailed serious concerns about the adequacy of the search terms Defendant has used, and is currently using, to identify documents potentially relevant to this litigation, specifically: (i) the inclusion of certain significant keywords only within search terms that also require the occurrence of a specific product name; (ii) the failure to include known variants of significant keywords; and (iii) the omission of certain critical terms.

  Plaintiff had previously raised these and other issues with Defendant on at least three occasions, dating back to August 28, 2013.  On September 30, 2013, Defendant informed Plaintiffs that it would add sixteen search terms to its original list of 84 terms, purportedly to address Plaintiffs' concerns.  Plaintiffs responded on October 1, stating that the proposed additional terms were grossly inadequate to address the issues, and followed with a letter on October 7 providing concrete examples of the unsolved problems.  Plaintiffs provided further descriptions and examples of the problems in a letter on October 25, 2013, again during a meet-and-confer that same day, and, in response to Defendant's request for yet more explication, in another letter on October 30, 2013.

  On November 14, 2013, in response to Plaintiffs' October 30 letter, Defendant sent a list of 127 additional search terms that it "will agree to run … upon entry of a case management stipulation and order extending the case schedule for three months."  After analyzing the 127 proposed additional terms along with the 100 terms Defendant had previously used, Plaintiffs informed Defendant, on November 21, 2013, that the terms do not address many of the issues Plaintiffs had raised and urged Defendant not to proceed with the search process until the partices agree on an acceptable search protocol.  During a telephonic meet-and-confer yesterday, Defendant again asked Plaintiffs to provide concrete examples of the defects in Defendant's search term list.

November 26, 2013
Page 2

This letter supplements our prior communications, and is intended to provide further examples of the inadequacies Plaintiffs have identified in Defendant's search term list. The issues have not changed. Unfortunately, Defendant's most recent list of additional terms exacerbates the problems more than it solves them, as we explain below. In addition, Defendant has omitted seven of the eight specific search terms proposed in Plaintiffs' letter of October 30, 2013, which we believe are essentuial to a fair and appropriate search given the issues in the case.

As we have previously stated, Plaintiffs' efforts to identify areas of concern do not relieve Defendant of its legal obligations to ensure that a reasonable search is made for relevant documents in its possession, custody or control. For example, as we have raised in the past, we believe that Defendant in good faith must supplement search terms suggested by Plaintiffs with any variants of those terms that are known to be used by people within Frito Lay and/or consistent with the culture at Frito-Lay. Yet, based on the additional terms you have added to the list, we do not believe that this had been taken into account. Rather, our review suggests that every search term Defendant has added to its original list has been suggested by Plaintiffs. Again, we believe, as in most businesses, there is likely certain nomenclature used at Frito-Lay to refer to projects, products and/or topics that is specific to Frito-Lay, and that such nomenclature should be added to the terms we have suggested to ensure a more complete search. We are also concerned about the omission of many of the terms suggested by Plaintiffs without explanation.

Plaintiffs' analysis of Defendant's aggregated search term list, attached as Exhibit B to your letter of November 14, 2013, reveals the following:

Keywords Tied to Product Names

While purporting to offer additional search terms to mitigate this problem, Defendant continues to add terms that exacerbate the problem: 96 of the 127 additional terms proposed by Defendant on November 14, 2013 include specific product names as a required element.

Examples:

- Except for "bioengineer" and "engineer", "natural" appears with variants of GMO only in terms that require a product name, all of which were added on November 14, 2013. We discussed this issue with Defendant in the meet-and-confer on August 28, and offered specific terms to address the issue in Meagan Keenan's letter of October 25, 2013. The fact that terms like "natural w/40 GM*" and "natural w/40 biotech*" still would not be found by Defendant's search unless the document also contained a specific product name is problematic and undermines the adequacy of any search.

- "Natural" appears with "report", "research" and "survey" only in terms that require a product name (added on November 14, 2013). "Consumer Survey re: Natural", for example, would not be found unless the document also contained one of the specified product names.

**Milberg LLP**

November 26, 2013
Page 3

- "DNA" and "transgen*" appear only in terms that require a product name (all added on November 14, 2013). "DNA" near "corn," for example, would not be found.

- "Label" appears only in terms that require a product name. "Label" near "natural", for example, would not be found.

<u>Variants of Terms Omitted</u>

Plaintiffs' letter of October 30, 2013 listed variants for the terms GMO, study, BT, and opinion, and stated that the list should be supplemented by changes based on Defendant's knowledge of terms actually used within Frito-Lay. Nevertheless, Defendant's November 14 search term list does not include a single variant other than those provided by Plaintiffs and, in fact, omits many of Plaintiffs' suggested terms.

Examples:

- "GMO" is combined in terms with "complain*", "confus*", and "inquir*", but not "opinion", "analy*", "result*", "expect*", "perce*" or "belie*".

- "Natural" is combined in terms with "bioengineer," but not with "DNA" or "transgen*".

- "Inquir*" is combined in terms with "GM," "bioengineer*", "biotech*", "genetic* modif*" and "GMO", but not "genetic*", "DNA", or "transgen*".

- "Biotech*" is combined in terms with "study", "research", "report" and "survey", but not "result" or "analysis".

- Suggested variants "opinion", "analy*", "expect*", "perce*", and "belie*" do not appear in any terms.

<u>Specific Search Terms Omitted</u>

The following terms proposed by Plaintiffs are omitted from Defendant's list:

- (Consumer OR shopper OR purchaser OR user) w/40 natural
- Premium w/40 natural
- Corn w/40 BT *(with variants)*
- Corn w/40 GMO *(with variants)*
- Corn w/20 (specify or specification)
- (Polic* OR standard* OR guideline *O R practice* O R plan*) w/40 GMO *(with variants)*
- (Polic* OR standard* OR guideline* OR practice* OR plan*) AND natural AND label

**Milberg LLP**

November 26, 2013
Page 4

In fact, the words "premium", "corn" and "consumer", among others suggested by Plaintiff, are inexplicably omitted entirely from Defendant's search terms.  We hope that this was a mere oversight and will be corrected.

In view of Defendant's failure to remedy these problems despite repeated requests from Plaintiffs over a period of months, Plaintiffs believe that it is essential that the parties agree on a process to define a reasonable search term list for Defendant to employ by January 15, 2014.  This process should include the participation of a person or persons familiar with relevant terminology used at Frito-Lay, and knowledgeable about the design of search protocols (including search term syntax).  We will also need a date certain by which the application of any search and the processing of responsive documents will be completed.

We look forward to discussing this subject further during the meet-and-confer call tomorrow.

Sincerely,

Henry J. Kelston

cc:     Ariana J. Tadler
        Michael R. Reese

**Milberg LLP**

# APPENDIX M

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Tel 202.955.8500
www.gibsondunn.com

Jason R. Meltzer
Direct: +1 202.955.8676
Fax: +1 202.530.9514
JMeltzer@gibsondunn.com

December 16, 2013

VIA UPS AND ELECTRONIC MAIL

Henry J. Kelston, Esq.
Milberg LLP
One Pennsylvania Plaza
New York, NY 10119

Re:   *Frito-Lay North America, Inc. "All Natural" Litigation*, No. 12-MD-2413-RRM-RLM (E.D.N.Y.)

Dear Henry:

I write on behalf of Frito-Lay North America, Inc. ("Frito-Lay") in response to your letter dated November 26, 2013 (the "November 26 Letter"), and in response to the parties' meet & confer held on November 27, 2013, regarding search terms.

In letters dated October 23, 2013 and November 14, 2013, Frito-Lay laid out the history of its efforts to confer with Plaintiffs regarding the scope of their document requests, and Plaintiffs' delays and failures to respond, including Plaintiffs' failure to respond to Frito-Lay's requests to confer set forth in Frito-Lay's document responses (served on April 19, 2013), and Plaintiffs' failure for 7 weeks to respond to Frito-Lay's initial list of proposed search terms (sent on July 3, 2013). The letters also noted Plaintiffs' unfamiliarity with Frito-Lay's July 3, 2013 search term list during the parties' first search term meet & confer held on August 28, 2013, and Plaintiffs' failure to provide a full list of additional concepts or terms until October 30, 2013. Frito-Lay also described how Plaintiffs' October 30, 2013 search term proposal included more than 150 additional search terms, most of which were completely unrelated to the products at issue in this case. Frito-Lay also described its tremendous efforts to search for and produce documents, which now include spending over $1 million to review documents and producing more than 235,000 pages from more than 40 custodians.

In our November 14, 2013 letter (the "November 14 Letter"), after considering the more than 150 additional search term variants proposed in Plaintiffs' October 30, 2013 letter (the "October 30 Letter") with the assistance of technology and analytics teams, Frito-Lay proposed an additional 127 terms to run. *See* November 14 Letter, Exhibit B. The November 14 Letter explained that the proposed terms included in Plaintiffs' October 30 Letter were extremely overbroad, and that most of the proposed terms had no connection or

# GIBSON DUNN

December 16, 2013
Page 2

limitations relating to the products, or even the product lines, at issue in the case. The November 14 Letter further explained that the 127 additional terms that Frito-Lay proposed were still extraordinarily overbroad, and in most cases would result in Frito-Lay reviewing many documents completely unrelated to any of the issues in the case. Nevertheless, in the interest of working to complete the discovery process and put an end to these issues once and for all, Frito-Lay said that it would run the terms, subject to a reservation of rights to seek to recoup the attendant unnecessary costs from Plaintiffs and their counsel to the fullest extent permitted by law.

On November 21, 2013, Plaintiffs sent us a three-sentence response letter stating that they were concerned that the list did not did not address all of the issues raised in their October 30 Letter, and urging Frito-Lay not to proceed with the proposed terms. On November 26, 2013, Frito-Lay received a longer response from Plaintiffs, essentially rejecting all of the terms proposed in Frito-Lay's November 14 Letter, and instead declaring that all of the terms in Plaintiffs' October 30 Letter were appropriate.

On November 27, 2013, the parties met and conferred regarding the list of search terms in Frito-Lay's November 14 Letter. Plaintiffs asked Frito-Lay to explain why certain search terms mentioned in their October 30 Letter were not included. Plaintiffs also indicated that the "W/40" limitations included in Frito-Lay's November 14 search term list were unnecessary, and that "W/20" limitations between keywords should suffice to cover the concepts Plaintiffs were looking for. Frito-Lay then proceeded to explain the problems with and unreasonableness of many of Plaintiffs' proposed search terms. Frito-Lay also agreed to prepare a written response to Plaintiffs' November 26, 2013 Letter including these reasons, which it provides through this letter.

## (A) Omission of Search Terms Not Tied to Product Names or Product Lines

The November 26 Letter claims that 96 of the 127 proposed additional terms in Frito-Lay's November 14 Letter "exacerbate" problems with the search terms because they "include specific product names as a required element." As an initial matter, this is simply incorrect. None of the additional terms included specific product names. Rather, they broadly include the names of the product lines (i.e., "Tostitos," "SunChips," or "Bean Dip"), untethered to the significantly narrower list of the actual product names at issue in the case. Furthermore, these broad product line keywords do not have any proximity requirements (i.e., "W/20") to the other keywords in the search terms, but rather merely ensure that at least one of the product lines is mentioned somewhere in the same document by using the connector term "AND." This is a more than reasonable element of each term for a company that manufactures more than dozens upon dozens of different brands and thousands of different products.

# GIBSON DUNN

December 16, 2013
Page 3

Similarly, Frito-Lay's additional terms proposed in the November 14 Letter included a large number of terms completely untethered to even the broad product lines at issue, such as: "Bacillus," "Biotech W/40 of Study," "Biotech* W/40 survey," "Complain* W/40 Biotech*," Complain* W/40 Bioengineer*," "Complain* W/40 Biotech*," "Complain* W/40 Genetic* Modif*," "Complain* W/40 GMO," "Confus* W/40 Bioengineer*," "Confus* W/40 Biotech*," "Confus* W/40 Genetic* Modif*," "Confus* W/40 GMO," "GMO W/40 Report," "GMO W/40 Research," "GMO W/40 Survey," "(gm NOT W/0 (SVP GM OR GM/VP OR VP/GM OR Division GM OR GM's OR Vice President GM OR SVP/GM)) W/40 Report," "(gm NOT W/0 (SVP GM OR GM/VP OR VP/GM OR Division GM OR GM's OR Vice President GM OR SVP/GM)) W/40 Research," and "(gm NOT W/0 (SVP GM OR GM/VP OR VP/GM OR Division GM OR GM's OR Vice President GM OR SVP/GM)) W/40 Survey." None of these terms was linked to specific products or product lines.

In addition, the plainly overbroad terms that Frito-Lay agreed to add on September 30, 2013 in response to Plaintiffs' suggested "concepts" described during the parties' August 28, 2013 meet & confer, were similarly untethered to any product lines, and included: "Bioengineering AND study," "GM W/40 Study," "Genetic* Modif* W/40 Study," "Natural AND Bioengineer," "Natural W/40 Engineer," "Natural W/40 Study," "Inquir* W/40 GM," "Inquir* W/40 Natural," "Monsanto," "Round-up Ready," "Bacillus Thuringiensis," "BT W/40 Natural," "Complain* W/40 GM," "Complain* W/40 Natural," "Confus* W/40 GM," and "Confus* W/40 Natural." None of these terms was linked to specific products or product lines. Frito-Lay's agreement to use all of these overbroad terms, without any limitations based on the products—or even the product lines—at issue in this case, represented a tremendous concession.

Nevertheless, in the interest of bringing closure to document issues, Frito-Lay would also be willing to run the following overbroad terms: "Natural W/20 (gm NOT W/0 (SVP GM OR GM/VP OR VP/GM OR Division GM OR GM's OR Vice President GM OR SVP/GM))," "Natural W/20 GMO," and "Natural W/20 biotech*." In addition, in response to Plaintiffs' concern stated in the November 26 Letter that the terms "Transgen*" and "DNA" were not included untethered to product lines, Frito-Lay also would be willing to run the overbroad terms "Natural W/20 Transgen*" and "Natural W/20 DNA." We sincerely hope that Plaintiffs understand the over-breadth and burden of these additional concessions.

With respect to Plaintiffs' position in their November 26 Letter that the terms "Natural" and "Report," "Research" and "Survey" should be included, untethered to product lines, however, we must draw a line. These terms are sweepingly overbroad and nowhere near reasonably designed to lead to relevant documents. As we discussed during the

# GIBSON DUNN

December 16, 2013
Page 4

November 27, 2013 meet & confer, these terms would necessitate the review of many thousands of documents completely unrelated to this case. Accordingly, Frito-Lay will not agree to run them absent a limitation based on product lines, as Frito-Lay had previously proposed. *See* November 14 Letter. In addition, as noted above, Frito-Lay has already agreed to run "Natural W/40 Study," "Inquir* W/40 Natural," "Complain* W/40 Natural," and "Confus* W/40 Natural." These overbroad terms, untethered to any product lines, combined with the proposed inclusion of "Natural w/40" of "Report," "Research," and "Survey," in the same document as the product lines at issue, are far more than reasonable in attempting to collect documents addressing Plaintiffs' desired concepts.

Similarly, Plaintiffs' proposal of "Label W/40 Natural," which was raised for the first time in Plaintiffs' November 26 Letter, untethered to any product or product line in this case, is extremely overbroad and would result in reviewing many thousands of utterly irrelevant documents. Plaintiffs never indicated their desire for this term at any time until November 26, 2013. The search terms in Frito-Lay's original list sent on July 3, 2013 also more than adequately covered this concept, and included: "Label W/40 Tostitos," "Label W/40 SunChips," "Label W/40 Sun Chips," "Label W/40 Bean Dip," "Label W/40 Scoops," "Label W/40 Artisan," "Natural W/40 SunChips," "Natural W/40 Sun Chips," "Natural W/40 Bean Dip," "Natural W/40 Scoops," and "Natural W/40 Artisan." Plaintiffs' request for this overbroad term at this late date is unreasonable.

## (B) Omission of Overbroad Variants of Certain Keywords

Similarly, certain of Plaintiffs' proposed "variants" of keywords purporting to cover consumer confusion or complaints regarding the term "natural," are also extremely overbroad and not designed to capture documents relevant to the claims or defenses of any party. These include: "Opinion," "Analy*," "Expect*," "Perce*" and "Belie*." *See* November 26 Letter; October 30 Letter. Frito-Lay's proposed list already included terms extensively covering the concepts Plaintiffs are looking for, such as: "Confus* W/40 Natural," "Complain* W/40 Natural," "Inquir* W/40 Natural," "Natural W/40 Study," "GM W/40 Study," "Confus* W/40 GM," "Complain* W/40 GM," "Inquir* W/40 GM," "Inquir* W/40 bioengineer*," "Inquir* W/40 biotech*," "Inquir* W/40 genetic* modif*," and "Inquir* W/40 GMO." These extremely overbroad terms, untethered to specific products or product lines, were added as a compromise by Frito-Lay despite the significant costs associated with their use. In addition, terms like "Research" and "Report" W/40 of each of the product lines (i.e., "Tostitos," "SunChips," and "Bean Dip,") were offered, as well as terms like "Natural W/40 Research," "Natural W/40 Report" and "Natural W/40 Survey" when those terms appear in any document mentioning any of the challenged product lines. These are just further examples of Frito-Lay's efforts to accommodate Plaintiffs' requests, despite the fact that using the broad product lines as limiters still generates numerous

# GIBSON DUNN

December 16, 2013
Page 5

irrelevant hits.  The additional variants Plaintiffs propose are not reasonably tailored to find documents relevant to the claims or defense of any party, and would result in Frito-Lay reviewing hundreds of thousands of additional documents unrelated to this case.

**(C) Omission of Specific Overbroad Terms**

Plaintiffs' November 26 Letter also inquires why the following terms were omitted: "Consumer OR Shopper OR Purchaser OR User) W/40 Natural," "Premium W/40 Natural," "Corn W/40 BT *(with variants)*," "Corn W/40 GMO *(with variants)*, "Corn W/20 (Specify or Specification)," "(Polic* OR Standard* OR Guideline* OR Practice* OR Plan*) W/40 GMO *(with variants)*," and "(Polic* OR Standard* OR Guideline* OR Practice* OR Plan*) AND natural AND label."  The answer should be apparent from the terms themselves, which are all extraordinarily overbroad, not tailored to the products or product lines at issues, and seeking concepts already covered by the terms included in Frito-Lay's list.  For example, "consumer w/40 natural," "purchaser w/40 natural" and "user w/40 Natural" are nowhere nearly reasonably tailored to capture relevant documents.  Nor are "premium w/40 of natural," "corn w/40 of GMO *(with variants)*," or any of the other terms.  These terms would guarantee reviewing hundreds of thousands of documents not related to any issues in this case.  They are at best an extraordinarily overbroad fishing expedition, and at worst an attempt to harass Frito-Lay and make it incur completely unnecessary costs.

To the extent that Plaintiffs attempt to justify their requests for these terms on their inability to identify Frito-Lay's guidelines with respect to "made with all natural ingredients" labeling in the more than 235,000 pages already produced (as Plaintiffs suggested during the November 27, 2013 meet & confer), Frito-Lay directs Plaintiffs to FL-00084240, FL-00088286, and FL-00085752, as just a few examples of such guidelines.  Further, to the extent that Plaintiffs seek additional documents to aid their understanding regarding the corn used in the products, Frito-Lay indicated during the November 27, 2013 meet & confer that it will be providing approved variety lists for the corn that it was willing to accept from farmers during 2009, 2010 and 2011, under separate cover.

**(D) Special Nomenclature**

The November 26 Letter also states that Plaintiffs believe there is special or magical nomenclature at Frito-Lay that should be added to the terms Frito-Lay originally proposed and the additional terms Plaintiffs suggested.  Plaintiffs have to date received more than 235,000 pages of documents from Frito-Lay.  If they have identified any specific nomenclature that they believe should be added that is not adequately captured by the existing search term list, they should let us know immediately, and Frito-Lay will consider it.  Otherwise, Frito-Lay believes that the original terms it ran are more than reasonable, and that

# GIBSON DUNN

December 16, 2013
Page 6

the additional terms it has proposed running are already extremely overbroad. Frito-Lay is not aware of any additional nomenclature necessary or appropriate to further supplement its existing terms.

### (E) Frito-Lay's Revised Proposal

Further to the parties' November 27, 2013 meet & confer, the additional terms that Frito-Lay has indicated in this letter that it would agree to run, and Plaintiffs' statement during the November 27, 2013 meet & confer that "W/20" limitations would suffice to search for the concepts that Plaintiffs seek, a revised list of additional proposed search terms is enclosed in Exhibit A hereto. As was the case with the terms proposed in our November 14 Letter, the additional terms in Exhibit A will result in Frito-Lay spending hundreds of thousands of dollars to review numerous documents that will without question have no relevance to this litigation. Please be advised that Frito-Lay reserves its rights to seek to recoup these unnecessary expenses from Plaintiffs and their counsel to the maximum extent permitted by law. At this point, Frito-Lay has accommodated and incorporated several rounds of comments from Plaintiffs into its search methodology. The methodology is sound, overly comprehensive, and more than reasonable.

Please let us know if Plaintiffs have any additional questions or concerns with respect to the list of terms included in Exhibit A. It may well be that, if Plaintiffs continue to identify new issues, we will need Magistrate Mann to intervene.

Sincerely,

Jason R. Meltzer

cc: Ariana J. Tadler, Esq.
Michael R. Reese, Esq.
Andrew S. Tulumello, Esq.

Exhibit A

**Search Terms Frito-Lay Proposed On July 3, 2013**

1.      Genetic* Modif* W/40 Tostitos
2.      Genetic* Modif* W/40 SunChips
3.      Genetic* Modif* W/40 Sun Chips
4.      Genetic* Modif* W/40 Bean Dip
5.      Genetic* Modif* W/40 Scoops
6.      Genetic* Modif* W/40 Artisan
7.      (GM* NOT W/0 (GMT OR gmail OR GMAS)) W/40 Tostitos
8.      (GM* NOT W/0 (GMT OR gmail OR GMAS)) W/40 SunChips
9.      (GM* NOT W/0 (GMT OR gmail OR GMAS)) W/40 Sun Chips
10.     (GM* NOT W/0 (GMT OR gmail OR GMAS)) W/40 Bean Dip
11.     (GM* NOT W/0 (GMT OR gmail OR GMAS)) W/40 Scoops
12.     (GM* NOT W/0 (GMT OR gmail OR GMAS)) W/40 Artisan
13.     Natural W/40 Tostitos
14.     Natural W/40 SunChips
15.     Natural W/40 Sun Chips
16.     Natural W/40 Bean Dip
17.     Natural W/40 Scoops
18.     Natural W/40 Artisan
19.     Label W/40 Tostitos
20.     Label W/40 SunChips
21.     Label W/40 Sun Chips
22.     Label W/40 Bean Dip
23.     Label W/40 Scoops
24.     Label W/40 Artisan
25.     Bacillus Thuringiensis W/40 Tostitos
26.     Bacillus Thuringiensis W/40 SunChips
27.     Bacillus Thuringiensis W/40 Sun Chips
28.     Bacillus Thuringiensis W/40 Bean Dip
29.     Bacillus Thuringiensis W/40 Scoops
30.     Bacillus Thuringiensis W/40 Artisan
31.     BT W/40 Tostitos
32.     BT W/40 SunChips
33.     BT W/40 Sun Chips
34.     BT W/40 Bean Dip
35.     BT W/40 Scoops
36.     BT W/40 Artisan
37.     Complain* W/40 Tostitos
38.     Complain* W/40 SunChips

39.     Complain* W/40 Sun Chips
40.     Complain* W/40 Bean Dip
41.     Complain* W/40 Scoops
42.     Complain* W/40 Artisan
43.     *Engineer* W/40 Tostitos
44.     *Engineer* W/40 SunChips
45.     *Engineer* W/40 Sun Chips
46.     *Engineer* W/40 Bean Dip
47.     *Engineer* W/40 Scoops
48.     *Engineer* W/40 Artisan
49.     FDA W/40 Tostitos
50.     FDA W/40 SunChips
51.     FDA W/40 Sun Chips
52.     FDA W/40 Bean Dip
53.     FDA W/40 Scoops
54.     FDA W/40 Artisan
55.     Food and Drug Administration W/40 Tostitos
56.     Food and Drug Administration W/40 SunChips
57.     Food and Drug Administration W/40 Sun Chips
58.     Food and Drug Administration W/40 Bean Dip
59.     Food and Drug Administration W/40 Scoops
60.     Food and Drug Administration W/40 Artisan
61.     Genome W/40 Tostitos
62.     Genome W/40 SunChips
63.     Genome W/40 Sun Chips
64.     Genome W/40 Bean Dip
65.     Genome W/40 Scoops
66.     Genome W/40 Artisan
67.     Reformulat* W/40 Tostitos
68.     Reformulat* W/40 SunChips
69.     Reformulat* W/40 Sun Chips
70.     Reformulat* W/40 Bean Dip
71.     Reformulat* W/40 Scoops
72.     Reformulat* W/40 Artisan
73.     Study W/40 Tostitos
74.     Study W/40 SunChips
75.     Study W/40 Sun Chips
76.     Study W/40 Bean Dip
77.     Study W/40 Scoops
78.     Study W/40 Artisan

79.   Survey W/40 Tostitos
80.   Survey W/40 SunChips
81.   Survey W/40 Sun Chips
82.   Survey W/40 Bean Dip
83.   Survey W/40 Scoops
84.   Survey W/40 Artisan

**Search Terms Added On September 30, 2013 In Response To Concepts Plaintiffs Described During August 28, 2013 Meet & Confer**

85.   Bioengineering AND Study
86.   GM W/40 Study
87.   Genetic* Modif* W/40 Study
88.   Natural AND Bioengineer
89.   Natural W/40 Engineer
90.   Natural W/40 Study
91.   Inquir* W/40 GM
92.   Inquir* W/40 Natural
93.   Monsanto
94.   Round-up Ready
95.   Bacillus Thuringiensis
96.   BT W/40 Natural
97.   Complain* W/40 GM
98.   Complain* W/40 Natural
99.   Confus* W/40 GM
100.  Confus* W/40 Natural

**Revised Additional Search Terms Proposed In Response To Plaintiffs' October 30, 2013 And November 26 Letters, And The Parties' November 27, 2013 Meet & Confer**

101.  Natural W/20 GMO
102.  Natural W/20 (gm NOT W/0 (SVP GM OR GM/VP OR VP/GM OR Division GM OR GM's OR Vice President GM OR SVP/GM))
103.  Natural W/20 biotech*
104.  Natural W/20 transgen*
105.  Natural W/20 DNA
106.  (Genetic W/20 engineer*) AND Artisan
107.  (Genetic W/20 engineer*) AND Bean Dip
108.  (Genetic W/20 engineer*) AND Scoops
109.  (Genetic W/20 engineer*) AND Sun Chips
110.  (Genetic W/20 engineer*) AND SunChips
111.  (Genetic W/20 engineer*) AND Tostitos

3

112.   (Natural W/20 bioengineer*) AND Artisan
113.   (Natural W/20 bioengineer*) AND Bean Dip
114.   (Natural W/20 bioengineer*) AND Scoops
115.   (Natural W/20 bioengineer*) AND Sun Chips
116.   (Natural W/20 bioengineer*) AND SunChips
117.   (Natural W/20 bioengineer*) AND Tostitos
118.   (Natural W/20 genetic*) AND Artisan
119.   (Natural W/20 genetic*) AND Bean Dip
120.   (Natural W/20 genetic*) AND Scoops
121.   (Natural W/20 genetic*) AND Sun Chips
122.   (Natural W/20 genetic*) AND SunChips
123.   (Natural W/20 genetic*) AND Tostitos
124.   (Natural W/20 report) AND Artisan
125.   (Natural W/20 report) AND Bean Dip
126.   (Natural W/20 report) AND Scoops
127.   (Natural W/20 report) AND Sun Chips
128.   (Natural W/20 report) AND SunChips
129.   (Natural W/20 report) AND Tostitos
130.   (Natural W/20 research) AND Artisan
131.   (Natural W/20 research) AND Bean Dip
132.   (Natural W/20 research) AND Scoops
133.   (Natural W/20 research) AND Sun Chips
134.   (Natural W/20 research) AND SunChips
135.   (Natural W/20 research) AND Tostitos
136.   (Natural W/20 survey) AND Artisan
137.   (Natural W/20 survey) AND Bean Dip
138.   (Natural W/20 survey) AND Scoops
139.   (Natural W/20 survey) AND Sun Chips
140.   (Natural W/20 survey) AND SunChips
141.   (Natural W/20 survey) AND Tostitos
142.   Bacillus
143.   Bioengin* W/20 Artisan
144.   Bioengin* W/20 Bean Dip
145.   Bioengin* W/20 Scoops
146.   Bioengin* W/20 Sun Chips
147.   Bioengin* W/20 SunChips
148.   Bioengin* W/20 Tostitos
149.   Bioengineer* W/20 research
150.   Bioengineer* W/20 survey
151.   Bioengineer*W/20 report

4

152. Biotech* W/20 Artisan
153. Biotech* W/20 Bean Dip
154. Biotech* W/20 report
155. Biotech* W/20 research
156. Biotech* W/20 Scoops
157. Biotech* W/20 study
158. Biotech* W/20 Sun Chips
159. Biotech* W/20 SunChips
160. Biotech* W/20 survey
161. Biotech* W/20 Tostitos
162. Complain* W/20 bioengineer*
163. Complain* W/20 biotech*
164. Complain* W/20 genetic* modif*
165. Complain* W/20 GMO
166. Confus* W/20 bioengineer*
167. Confus* W/20 biotech*
168. Confus* W/20 genetic* modif*
169. Confus* W/20 GMO
170. DNA W/20 Artisan
171. DNA W/20 Bean Dip
172. DNA W/20 Scoops
173. DNA W/20 Sun Chips
174. DNA W/20 SunChips
175. DNA W/20 Tostitos
176. Genetic* Modif* W/20 report
177. Genetic* Modif* W/20 research
178. Genetic* Modif* W/20 survey
179. Genetic* W/20 Artisan
180. Genetic* W/20 Bean Dip
181. Genetic* W/20 Scoops
182. Genetic* W/20 Sun Chips
183. Genetic* W/20 SunChips
184. Genetic* W/20 Tostitos
185. GMO W/20 report
186. GMO W/20 research
187. GMO W/20 survey
188. (gm NOT W/0 (SVP GM OR GM/VP OR VP/GM OR Division GM OR GM's OR Vice President GM OR SVP/GM)) W/20 report
189. (gm NOT W/0 (SVP GM OR GM/VP OR VP/GM OR Division GM OR GM's OR Vice President GM OR SVP/GM)) W/20 research

190. (gm NOT W/0 (SVP GM OR GM/VP OR VP/GM OR Division GM OR GM's OR Vice President GM OR SVP/GM)) W/20 survey
191. Inquir* W/20 bioengineer*
192. Inquir* W/20 biotech*
193. Inquir* W/20 genetic* modif*
194. Inquir* W/20 GMO
195. Report W/20 Artisan
196. Report W/20 Bean Dip
197. Report W/20 Scoops
198. Report W/20 Sun Chips
199. Report W/20 SunChips
200. Report W/20 Tostitos
201. Research W/20 Artisan
202. Research W/20 Bean Dip
203. Research W/20 Scoops
204. Research W/20 Sun Chips
205. Research W/20 SunChips
206. Research W/20 Tostitos
207. Transgen* W/20 Artisan
208. Transgen* W/20 Bean Dip
209. Transgen* W/20 Scoops
210. Transgen* W/20 Sun Chips
211. Transgen* W/20 SunChips
212. Transgen* W/20 Tostitos
213. Willingness to pay W/20 Natural
214. Willingness to pay W/20 Organic

# APPENDIX N

 **MILBERG** LLP

Henry Kelston
Direct Dial: 646-733-5747
hkelston@milberg.com

December 31, 2013

<u>VIA E-MAIL</u>

Jason R. Meltzer
Gibson, Dunn & Crutcher
1050 Connecticut Avenue, N.W.
Washington, DC  20036-5306

> Re:    **Frito-Lay North America, Inc. "All Natural" Litigation,
> Case No. 12-CV-408 (RRM)(RLM) – Defendant's Search Protocol**

Jason,

We write in response to your letter of December 16, 2013 regarding Defendant's search protocol.

First, your letter contains several false and misleading statements, some of which we have corrected in the past:

- Your statement that "Plaintiffs' fail[ed] to respond to Frito-Lay's requests to meet and confer set forth in Frito-Lay's document responses" misleadingly implies that Frito-Lay made a good faith attempt to confer with Plaintiffs when, in fact, Frito-Lay merely inserted a boilerplate request to meet and confer in 16 of its 25 Responses to Plaintiffs' Requests for Production.  Frito-Lay never contacted Plaintiffs to arrange the "requested" conference.

- As we have noted previously, your statement that Frito-Lay provided an "initial list of proposed search terms" on July 3, 2013 is false.  Your letter of that date said: "We have collected documents from the custodians listed in Exhibit A, and run them against the list of search terms included in Exhibit B hereto. We are in the process of reviewing the resulting document population[.]" Thus, the letter made perfectly clear that the document collection and search protocol had already been designed and executed, unilaterally, by Frito-Lay.  Notwithstanding the purposeful request made by Plaintiffs' Counsel, early in this litigation, to meet and confer before discovery was underway to address search protocol, the search terms disclosed on July 3, 2013 were not "proposed;" they were a *fait accompli.*

- Your letter also repeats Defendant's narrative about Plaintiffs not responding to Defendant's July 3rd disclosure of search terms and ongoing document review until

December 31, 2013
Page 2

August 17th, but omits the highly relevant fact that the July 3rd letter also stated that Frito-Lay expected to make its document production based on the search terms by the end of July. Plaintiffs then planned to assess the search terms in light of the documents actually produced, as clearly Defendant already had its process underway. However, with no notice or explanation, Frito-Lay failed to produce the documents until August 28th, just three days before the Court-ordered deadline for Frito-Lay to substantially complete its document production.

- Your letter repeats Defendant's allegation that I was "unfamiliar" with Frito-Lay's search term list during the meet-and-confer on August 28, 2013. It was during that conversation, in fact, that I described important categories of relevant documents that were not covered by Defendant's search terms. When Defendant claimed, inaccurately, that the concepts I described were covered by specific search terms on the list, I rechecked those terms. Your letter of September 30th describes some of those categories, and your letters of September 30th and December 16th both confirm that Frito-Lay developed additional search terms in response to the concerns I expressed during the August 28th meet and confer. Thus, Defendant's repeated assertion that I was "unfamiliar" with Frito-Lay's search term list during the August 28th conference is demonstrably false as well as highly unprofessional.

- Plaintiffs did not, as you write, propose "150 search term variants" on October 30, 2013. Plaintiffs proposed eight specific search terms and four categories of variants (synonyms or closely related terms) that should have been included in the list from the outset. (Throughout this process, Defendant has failed to include common variants of key terms, such as biotech* and bioengin*, unless specifically requested by Plaintiffs.) At the same time, Defendant has failed to use the Boolean "or" to express its search terms; for example, instead of using the term [Natural w/40 Tostitos or SunChips or Sun Chips or Bean Dip or Scoops or Artisan], Defendant lists six separate terms [Natural w/40 Tostitos], [Natural w/40 SunChips], etc. Thus, the excessive length of Defendant's search term list is of Defendant's own making, and is not a measure either of its quality or the burden its execution purportedly imposes on Defendant.

- Plaintiffs did not state during the November 27, 2013, meet-and-confer that the "w/40" connector used in Frito-Lay's search terms was "unnecessary" or that a connector of "w/20" would suffice in all search terms. Plaintiffs stated that the decision to use "w/40" was Defendant's alone and that Plaintiffs were open to the possibility that use of a lower number, like 20, might be adequate for some terms, subject to discussion and agreement.

Defendant's practice of repeating false and misleading narratives does not render those narratives any truer; it is a waste of time and resources, and a distraction from the parties' efforts to resolve ongoing disputes, to which we now turn our attention.

**Milberg LLP**

December 31, 2013
Page 3

### The search term list proposed by Defendant on December 16, 2013 is patently inadequate.

On September 30, 2013, in response to the concerns Plaintiffs' expressed about the inadequacy of Defendant's original list of 84 search terms during the meet-and-confer on August 28th, Defendant added 16 terms to its list. Defendant has described all of the search terms added on September 30th as "plainly overbroad," and has described its agreement to add the terms as "a tremendous concession." Defendant's claim of overbreadth has been exposed as groundless: Defendant has produced a total of 352 documents as a result of the addition of the sixteen search terms.[1]

That Defendant's most recent list of proposed search terms – Defendant's fourth attempt to design an adequate search protocol – is inadequate is clearly demonstrated by comparing the search terms with language from one of the documents in Defendant's most recent production.

Document FL_00175542 contains the following language:



1.

2.

3.

Any one of these quotations would make a document highly relevant to Plaintiffs' claims and responsive to Plaintiffs' document requests. It cannot reasonably be disputed that a search protocol that fails to locate a document containing *all three* quotations is inadequate.

Defendant's list of search terms proposed on December 16, 2013 -- which includes newly proposed terms in addition to Defendant's original 84 search terms, and the 16 terms added on September 30, 2013, and the terms proposed on November 14, 2013 – would not locate *any* of the above quotations in a document.[2]

---

[1] The difficulty of predicting whether a search term will result in a large number of irrelevant "hits" is precisely the reason that Plaintiffs asked Defendant to provide a "hit count" for the search terms Defendant claims are overly broad, and offered to work with Defendant to narrow terms resulting in excessive hits. Defendant has failed to provide a "hit count" but continues to assert, without evidence, that Plaintiffs' suggested terms would "guarantee" that Defendant would be required to review "hundreds of thousands of documents not related to any issues in this case."

[2]



**Milberg LLP**

December 31, 2013
Page 4

It would not be difficult for a party engaged in a good faith search to locate relevant documents to design search terms far more effective than Defendant's proposed list.  In fact, after concluding that Defendant is either unable or unwilling to fulfill its obligation under the Federal Rules to conduct a reasonable search, Plaintiffs did a large part of that work and gave Defendant a detailed roadmap to create an effective search term list.  Every one of the above statements would be found by the search terms Plaintiffs suggested in Ariana Tadler's letter of October 30, 2013:

Statement 1 would be found by [natural w/40 perce*].

Statement 2 would be found by [natural w/40 consumer].

Statement 3 would be found by [natural w/40 research].

Defendant refused to adopt these and many other terms Plaintiffs proposed, calling Plaintiffs' suggested terms "at best an extraordinarily overbroad fishing expedition, and at worst an attempt to harass Frito-Lay and make it incur completely unnecessary costs."

Defendant's refusal or inability to design an effective search protocol, one that would locate a document containing the above statements and other relevant documents, is a clear failure to conduct the reasonably diligent search required by the Federal Rules.  Plaintiffs have repeatedly and consistently objected to Defendant's search protocol since August 17, 2013,[3] and the parties have held numerous meet-and-confers on the subject.  Four months have elapsed since Defendant initially claimed that it had "comprehensively responded" to Plaintiffs' document requests and that its document production was substantially complete.  Yet, even after four attempts, Defendant has failed by a wide margin to design an adequate search protocol.  Plaintiffs have lost confidence that Defendant is willing and able to do so.

Plaintiffs are available and willing to confer with Defendant in an effort to resolve this problem.  However, Defendant will need to provide sufficient assurances to Plaintiffs that it will alter the process by which it has designed search terms in the past, and fulfill its discovery

---

[3] *See* Letter from Henry J. Kelston to Jason R. Meltzer dated August 17, 2013; Letter from Henry J. Kelston to Andrew Tulumello dated October 1, 2013; Letter from Henry J. Kelston to Andrew Tulumello dated October 7, 2013; Letter from Meagan Keenan to Andrew Tulumello dated October 25, 2013; Letter from Ariana Tadler to Andrew Tulumello dated October 30, 2013; Letter from Henry J. Kelston to Jason R. Meltzer dated November 21, 2013.

**Milberg LLP**

December 31, 2013
Page 5


obligations by a date certain in the near future.  Absence such assurances from Defendant by
January 15, 2014, Plaintiffs intend to seek relief from the Court.


Sincerely,

Henry J. Kelston


cc:   Ariana J. Tadler
      Michael R. Reese


**Milberg LLP**

# APPENDIX O



CONFIDENTIAL



CONFIDEN



CONFIDENTIAL





CONFIDENTIAL



CONFIDENTIAL



CONFIDENTIAL



CONFIDENTIAL



CONFIDENTIAL



CONFIDENTIAL



CONFIDENTIAL



CONFIDENTIAL



CONFIDENTIA



CONFIDENTIA



CONFIDENTIAL



CONFIDENTIAL



CONFIDENTIAL



CONFIDENTIAL



CONFIDENTIAL



CONFIDENTIAL

# APPENDIX P

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Tel 202.955.8500
www.gibsondunn.com

Andrew S. Tulumello
Direct: +1 202.955.8657
Fax: +1 202.530.9678
ATulumello@gibsondunn.com

January 21, 2014

<u>VIA UPS AND ELECTRONIC MAIL</u>

Michael R. Reese, Esq.
Reese Richman LLP
875 Avenue of the Americas, 18th Floor
New York, NY 10001

Henry J. Kelston, Esq.
Milberg LLP
One Pennsylvania Plaza
New York, NY 10119

Re:   <u>*Frito-Lay North America, Inc. "All Natural" Litigation*, No. 12-MD-2413-RRM-RLM (E.D.N.Y.)</u>

Dear Counsel:

We write on behalf of Frito-Lay North America, Inc. ("Frito-Lay") in response to Mr. Kelston's letter dated December 31, 2013 regarding search terms.

We have endeavored—for months—to cooperate with you on our search methodology in response to plaintiffs' document requests, all with the aim of completing a diligent, good-faith, and reasonable search for the production of documents.

We first proposed terms to you on July 3, 2013 (when our initial document production deadline was in August, 2013) *that you did not respond to for 7 weeks*. Beginning in August 2013, with our document review and production already well underway, plaintiffs expressed concerns with the search terms. We met-and-conferred with you in August, incorporated your feedback, and added additional search terms to address concepts you believed were not adequately addressed.

On October 25, 2013, and again on October 30, 2013, we received from you a demand to search an extraordinarily broad list of terms, which would impose substantial additional search burdens on the company. Nonetheless, we have incorporated even *that* additional feedback (where reasonable) and have included additional terms into our production. At this point, we have incurred more than $1 million in document review costs,

Beijing · Brussels · Century City · Dallas · Denver · Dubai · Hong Kong · London · Los Angeles · Munich
New York · Orange County · Palo Alto · Paris · San Francisco · São Paulo · Singapore · Washington, D.C.

# GIBSON DUNN

January 21, 2014
Page 2

and we still have much work to do to complete our review and production based upon the terms we have agreed to employ.

Nonetheless, plaintiffs—despite repeated pledges that they would be reasonable, that they understood Frito-Lay has the independent responsibility to implement a good-faith search protocol, and that they would be "collaborative" on discovery—have essentially declared that, unless Frito-Lay adopts each and every term proposed by plaintiffs (no matter how poorly that term is defined, or how broadly it sweeps), plaintiffs will take the position that Frito-Lay has not satisfied its discovery obligations.

Our client cannot agree to this process any longer. Our client has spent substantial monetary resources and personnel hours to produce documents in response to your requests. Frito-Lay has searched the custodial files of the personnel involved in the Made With All Natural Ingredients campaign—48 in total to date. Frito-Lay has supplied the corn varieties used during the class period; voluminous marketing information about the products and the "made with all natural ingredients" label; the internal guidelines used by the company when making the "made with all natural ingredient" statements; internal e-mails and presentations from the personnel involved in the "made with all natural ingredients" label; financial information about the products, including revenues, units, pounds, and profit information year-by-year, and information about consumer reaction. All of this is plainly more than reasonable.

Indeed, even though our document production is not complete, you have told us that you already have concluded you have sufficient information to take the depositions of significant Frito-Lay officials, including Cathy Dial (Senior Director, Consumer Relations), Pam Forbus (Vice President, Consumer Insights), and Kari Ryan (Former Director, Regulatory). In addition, you have asked for and we have scheduled Rule 30(b)(6) deposition witnesses on the Topics of: (1) why the use of ingredients that may be bioengineered is consistent with a "made with all natural ingredients" label; (2) marketing decisions that led to the use of "made with all natural ingredients" statements on the products; (3) consumer insights studies relating to "natural" or GMOs; and (5) projections, sales and financial performance information for the products. We have scheduled all of these depositions (with the exception of Ms. Ryan, who is no longer with the Company) for February 6, 7, 12, 13, and 25.

The remaining disagreements about search terms at this point all involve search terms that would impose an undue burden on Frito-Lay. Taken together, they will in fact *double* the volume of documents we must review, while the expected yield from these terms is minimal.

# GIBSON DUNN

January 21, 2014
Page 3

On December 16, 2013, Frito-Lay sent a letter including a revised list of new search terms to plaintiffs, including a series of terms with "w/20" or "within 20" connectors (which plaintiffs had previously offered instead of w/40 connectors).

In response, on December 31, 2013 (New Year's Eve), plaintiffs sent Frito-Lay a letter describing Frito-Lay's proposed search terms as "patently inadequate," withdrawing their offer to allow Frito-Lay to use "W/20" connectors, and threatening to "seek relief from the Court" by January 15, 2014, if they did not receive "sufficient assurances . . . that [Frito-Lay] will alter the process by which it has designed search terms in the past." *See* Letter from Henry J. Kelston to Jason R. Meltzer (Dec. 31, 2013). Plaintiffs did not provide any detail as to what would constitute "sufficient assurances," nor did they offer any proposal that would attempt to conclude or progress the parties' back-and-forth on this matter. The December 31, 2013 letter also attempted to "reconstruct" the chronology of events and multiple portions of the record regarding parties' communications on search terms, which Frito-Lay documented at length in real time and concurrent with the parties' communications on these issues.

Plaintiffs' December 31, 2013 letter also made a number of arguments regarding Frito-Lay's search protocol that underscore the reasonableness and thoroughness of Frito-Lay's approach. For example, the one document identified in the December 31 letter ███████████—a document that purportedly reflects the fact that Frito-Lay is "either unable or unwilling to fulfill its obligation under the Federal Rules to conduct a reasonable search"—*was produced* to plaintiffs as a result of Frito-Lay's inclusion of the term "natural W/40 study." That plaintiffs have proposed *additional* terms that *also* would hit on this document—"natural W/40 perce*," "natural W/40 consumer," and "natural W/40 research"—does not in any way mean that these proposed terms are reasonable. As your own letter makes clear, these terms would be *cumulative* of "natural W/40 study" and other terms Frito-Lay has already utilized, and the letter ignores the broader and more fundamental problem of the *large number of additional and purely irrelevant documents Frito-Lay would need to review when using plaintiffs' terms. See* Letter from Jason R. Meltzer to Henry J. Kelston (Dec. 16, 2013).

Plaintiffs also have sought to downplay the burden and expense that Frito-Lay has incurred. Plaintiffs suggest that Frito-Lay produced only 353 documents resulting from the additional 16 terms that Frito-Lay added on September 30, 2013, to address concepts that plaintiffs believed had not been fully addressed. But to *identify* those 353 documents, Frito-Lay reviewed an additional _25,483_ documents (hits plus family members) resulting from the additional 16 terms, which reflects how *patently* overbroad the terms plaintiffs proposed in fact are.

# GIBSON DUNN

January 21, 2014
Page 4

Frito-Lay (with the benefit of extensive technical expertise at Gibson Dunn and a national outside vendor) has designed and implemented a document collection and review protocol that more than satisfies its discovery obligations.  Frito-Lay has made reasonable, good-faith efforts to accommodate plaintiffs' input on multiple occasions.

In the interest of reaching a final compromise, Frito-Lay attaches as Exhibit A its final offer for proposed search terms.  The list of terms is identical to the list offered in Frito-Lay's December 16, 2013 letter, but includes "W/40" connectors for the additional proposed terms.  Frito-Lay will not agree to adopt all the search terms plaintiffs have demanded, given their significant overbreadth.  Exhibit B, which identifies the "hit count" for the search terms plaintiffs have requested, supports Frito-Lay's determination that such terms are unreasonable.  Those terms would require Frito-Lay to review an additional _292,429_ documents—over and above the documents generated by Frito-Lay's proposal in Exhibit A—more than double the number of documents that Frito-Lay would be required to review.  The Company's obligation is to engage in a diligent, reasonable, good-faith search.  Frito-Lay has plainly done that.

Although Frito-Lay has worked hard to satisfy plaintiffs' demands and remains hopeful that this discovery dispute can be resolved without involving the Court, if plaintiffs do not agree that the search terms in Exhibit A are acceptable as a final list, we will have reached an impasse.  Accordingly, Frito-Lay requests to meet and confer with plaintiffs pursuant to Local Rule 37.3(a) regarding a motion for a protective order that it intends to file regarding the search terms it will utilize.

Sincerely,

Drew Tulumello /CBL

Andrew S. Tulumello

Attachments

cc: Ariana J. Tadler, Esq.
    Jason R. Meltzer, Esq.

## Exhibit A

### Search Terms Frito-Lay Proposed On July 3, 2013

### These Terms Were Supplied in a Letter Asking Plaintiffs for Any Input "As Soon As Possible" (*see* Letter from Jason R. Meltzer to Michael R. Reese dated July 3, 2013)

1.  Genetic* Modif* W/40 Tostitos
2.  Genetic* Modif* W/40 SunChips
3.  Genetic* Modif* W/40 Sun Chips
4.  Genetic* Modif* W/40 Bean Dip
5.  Genetic* Modif* W/40 Scoops
6.  Genetic* Modif* W/40 Artisan
7.  (GM* NOT W/0 (GMT OR gmail OR GMAS)) W/40 Tostitos
8.  (GM* NOT W/0 (GMT OR gmail OR GMAS)) W/40 SunChips
9.  (GM* NOT W/0 (GMT OR gmail OR GMAS)) W/40 Sun Chips
10. (GM* NOT W/0 (GMT OR gmail OR GMAS)) W/40 Bean Dip
11. (GM* NOT W/0 (GMT OR gmail OR GMAS)) W/40 Scoops
12. (GM* NOT W/0 (GMT OR gmail OR GMAS)) W/40 Artisan
13. Natural W/40 Tostitos
14. Natural W/40 SunChips
15. Natural W/40 Sun Chips
16. Natural W/40 Bean Dip
17. Natural W/40 Scoops
18. Natural W/40 Artisan
19. Label W/40 Tostitos
20. Label W/40 SunChips
21. Label W/40 Sun Chips
22. Label W/40 Bean Dip
23. Label W/40 Scoops
24. Label W/40 Artisan
25. Bacillus Thuringiensis W/40 Tostitos
26. Bacillus Thuringiensis W/40 SunChips
27. Bacillus Thuringiensis W/40 Sun Chips
28. Bacillus Thuringiensis W/40 Bean Dip
29. Bacillus Thuringiensis W/40 Scoops
30. Bacillus Thuringiensis W/40 Artisan
31. BT W/40 Tostitos
32. BT W/40 SunChips
33. BT W/40 Sun Chips
34. BT W/40 Bean Dip

35. BT W/40 Scoops
36. BT W/40 Artisan
37. Complain* W/40 Tostitos
38. Complain* W/40 SunChips
39. Complain* W/40 Sun Chips
40. Complain* W/40 Bean Dip
41. Complain* W/40 Scoops
42. Complain* W/40 Artisan
43. *Engineer* W/40 Tostitos
44. *Engineer* W/40 SunChips
45. *Engineer* W/40 Sun Chips
46. *Engineer* W/40 Bean Dip
47. *Engineer* W/40 Scoops
48. *Engineer* W/40 Artisan
49. FDA W/40 Tostitos
50. FDA W/40 SunChips
51. FDA W/40 Sun Chips
52. FDA W/40 Bean Dip
53. FDA W/40 Scoops
54. FDA W/40 Artisan
55. Food and Drug Administration W/40 Tostitos
56. Food and Drug Administration W/40 SunChips
57. Food and Drug Administration W/40 Sun Chips
58. Food and Drug Administration W/40 Bean Dip
59. Food and Drug Administration W/40 Scoops
60. Food and Drug Administration W/40 Artisan
61. Genome W/40 Tostitos
62. Genome W/40 SunChips
63. Genome W/40 Sun Chips
64. Genome W/40 Bean Dip
65. Genome W/40 Scoops
66. Genome W/40 Artisan
67. Reformulat* W/40 Tostitos
68. Reformulat* W/40 SunChips
69. Reformulat* W/40 Sun Chips
70. Reformulat* W/40 Bean Dip
71. Reformulat* W/40 Scoops
72. Reformulat* W/40 Artisan
73. Study W/40 Tostitos
74. Study W/40 SunChips

75.  Study W/40 Sun Chips
76.  Study W/40 Bean Dip
77.  Study W/40 Scoops
78.  Study W/40 Artisan
79.  Survey W/40 Tostitos
80.  Survey W/40 SunChips
81.  Survey W/40 Sun Chips
82.  Survey W/40 Bean Dip
83.  Survey W/40 Scoops
84.  Survey W/40 Artisan

**Search Terms Added On September 30, 2013 In Response To Concepts Plaintiffs Described During August 28, 2013 Meet & Confer And That Yielded 353 Produced Documents But Required the Review of 25,483 Documents**

85.  Bioengineering AND Study
86.  GM W/40 Study
87.  Genetic* Modif* W/40 Study
88.  Natural AND Bioengineer
89.  Natural W/40 Engineer
90.  Natural W/40 Study
91.  Inquir* W/40 GM
92.  Inquir* W/40 Natural
93.  Monsanto
94.  Round-up Ready
95.  Bacillus Thuringiensis
96.  BT W/40 Natural
97.  Complain* W/40 GM
98.  Complain* W/40 Natural
99.  Confus* W/40 GM
100. Confus* W/40 Natural

**Revised Additional Search Terms Frito-Lay Has Proposed In Response To Plaintiffs' October 30, 2013, November 26, and December 31 Letters, And The Parties' November 27, 2013 Meet & Confer**

101. Natural W/40 GMO
102. Natural W/40 (gm NOT W/0 (SVP GM OR GM/VP OR VP/GM OR Division GM OR GM's OR Vice President GM OR SVP/GM))
103. Natural W/40 biotech*

3

104. Natural W/40 transgen*
105. Natural W/40 DNA
106. (Genetic W/40 engineer*) AND Artisan
107. (Genetic W/40 engineer*) AND Bean Dip
108. (Genetic W/40 engineer*) AND Scoops
109. (Genetic W/40 engineer*) AND Sun Chips
110. (Genetic W/40 engineer*) AND SunChips
111. (Genetic W/40 engineer*) AND Tostitos
112. (Natural W/40 bioengineer*) AND Artisan
113. (Natural W/40 bioengineer*) AND Bean Dip
114. (Natural W/40 bioengineer*) AND Scoops
115. (Natural W/40 bioengineer*) AND Sun Chips
116. (Natural W/40 bioengineer*) AND SunChips
117. (Natural W/40 bioengineer*) AND Tostitos
118. (Natural W/40 genetic*) AND Artisan
119. (Natural W/40 genetic*) AND Bean Dip
120. (Natural W/40 genetic*) AND Scoops
121. (Natural W/40 genetic*) AND Sun Chips
122. (Natural W/40 genetic*) AND SunChips
123. (Natural W/40 genetic*) AND Tostitos
124. (Natural W/40 report) AND Artisan
125. (Natural W/40 report) AND Bean Dip
126. (Natural W/40 report) AND Scoops
127. (Natural W/40 report) AND Sun Chips
128. (Natural W/40 report) AND SunChips
129. (Natural W/40 report) AND Tostitos
130. (Natural W/40 research) AND Artisan
131. (Natural W/40 research) AND Bean Dip
132. (Natural W/40 research) AND Scoops
133. (Natural W/40 research) AND Sun Chips
134. (Natural W/40 research) AND SunChips
135. (Natural W/40 research) AND Tostitos
136. (Natural W/40 survey) AND Artisan
137. (Natural W/40 survey) AND Bean Dip
138. (Natural W/40 survey) AND Scoops
139. (Natural W/40 survey) AND Sun Chips
140. (Natural W/40 survey) AND SunChips
141. (Natural W/40 survey) AND Tostitos
142. Bacillus
143. Bioengin* W/40 Artisan

144. Bioengin* W/40 Bean Dip
145. Bioengin* W/40 Scoops
146. Bioengin* W/40 Sun Chips
147. Bioengin* W/40 SunChips
148. Bioengin* W/40 Tostitos
149. Bioengineer* W/40 research
150. Bioengineer* W/40 survey
151. Bioengineer*W/40 report
152. Biotech* W/40 Artisan
153. Biotech* W/40 Bean Dip
154. Biotech* W/40 report
155. Biotech* W/40 research
156. Biotech* W/40 Scoops
157. Biotech* W/40 study
158. Biotech* W/40 Sun Chips
159. Biotech* W/40 SunChips
160. Biotech* W/40 survey
161. Biotech* W/40 Tostitos
162. Complain* W/40 bioengineer*
163. Complain* W/40 biotech*
164. Complain* W/40 genetic* modif*
165. Complain* W/40 GMO
166. Confus* W/40 bioengineer*
167. Confus* W/40 biotech*
168. Confus* W/40 genetic* modif*
169. Confus* W/40 GMO
170. DNA W/40 Artisan
171. DNA W/40 Bean Dip
172. DNA W/40 Scoops
173. DNA W/40 Sun Chips
174. DNA W/40 SunChips
175. DNA W/40 Tostitos
176. Genetic* Modif* W/40 report
177. Genetic* Modif* W/40 research
178. Genetic* Modif* W/40 survey
179. Genetic* W/40 Artisan
180. Genetic* W/40 Bean Dip
181. Genetic* W/40 Scoops
182. Genetic* W/40 Sun Chips
183. Genetic* W/40 SunChips

5

184. Genetic* W/40 Tostitos
185. GMO W/40 report
186. GMO W/40 research
187. GMO W/40 survey
188. (gm NOT W/0 (SVP GM OR GM/VP OR VP/GM OR Division GM OR GM's OR Vice President GM OR SVP/GM)) W/40 report
189. (gm NOT W/0 (SVP GM OR GM/VP OR VP/GM OR Division GM OR GM's OR Vice President GM OR SVP/GM)) W/40 research
190. (gm NOT W/0 (SVP GM OR GM/VP OR VP/GM OR Division GM OR GM's OR Vice President GM OR SVP/GM)) W/40 survey
191. Inquir* W/40 bioengineer*
192. Inquir* W/40 biotech*
193. Inquir* W/40 genetic* modif*
194. Inquir* W/40 GMO
195. Report W/40 Artisan
196. Report W/40 Bean Dip
197. Report W/40 Scoops
198. Report W/40 Sun Chips
199. Report W/40 SunChips
200. Report W/40 Tostitos
201. Research W/40 Artisan
202. Research W/40 Bean Dip
203. Research W/40 Scoops
204. Research W/40 Sun Chips
205. Research W/40 SunChips
206. Research W/40 Tostitos
207. Transgen* W/40 Artisan
208. Transgen* W/40 Bean Dip
209. Transgen* W/40 Scoops
210. Transgen* W/40 Sun Chips
211. Transgen* W/40 SunChips
212. Transgen* W/40 Tostitos
213. Willingness to pay W/40 Natural
214. Willingness to pay W/40 Organic

## Exhibit B

Below are the hit counts for the search terms proposed by plaintiffs that are unduly burdensome and poorly designed.  These figures represent the total hits for each term and do not exclude documents that also hit on other search terms within this list.  These search terms hit on a total of 155,551 unique documents not captured by the search terms in Exhibit A, and 292,429 documents including families (i.e., those other documents attached to or imbedded in the "hit").

| No. | Term | Hits With Family | Hits |
|---|---|---|---|
| 1. | (gm* NOT W/0 (GMT OR GMAIL)) W/40 analy* | 17,112 | 7,379 |
| 2. | (gm* NOT W/0 (GMT OR GMAIL)) W/40 Bean Dip | 9 | 5 |
| 3. | (gm* NOT W/0 (GMT OR GMAIL)) W/40 report | 8,466 | 4,673 |
| 4. | (gm* NOT W/0 (GMT OR GMAIL)) W/40 research | 6,964 | 3,828 |
| 5. | (gm* NOT W/0 (GMT OR GMAIL)) W/40 result | 3,115 | 1,465 |
| 6. | (gm* NOT W/0 (GMT OR GMAIL)) W/40 Scoops | 153 | 71 |
| 7. | (gm* NOT W/0 (GMT OR GMAIL)) W/40 study | 2,604 | 1,268 |
| 8. | (gm* NOT W/0 (GMT OR GMAIL)) W/40 survey | 1,742 | 800 |
| 9. | biotech* | 7,184 | 4,208 |
| 10. | biotech* W/40 analy* | 725 | 363 |
| 11. | Biotech* W/40 analysis | 343 | 166 |
| 12. | biotech* W/40 result | 85 | 45 |
| 13. | Consumer W/40 natural | 32,498 | 15,153 |
| 14. | corn W/20 specification | 3,720 | 1,574 |
| 15. | corn W/20 specify | 779 | 331 |
| 16. | corn W/40 (gm* NOT W/0 (GMT OR GMAIL)) | 7,788 | 4,263 |
| 17. | corn W/40 bacillus | 0 | 0 |
| 18. | corn W/40 bioengin* | 30 | 22 |
| 19. | corn W/40 biotech* | 395 | 224 |
| 20. | corn W/40 BT | 506 | 237 |
| 21. | corn W/40 DNA | 280 | 91 |
| 22. | corn W/40 genetic* | 2,852 | 979 |
| 23. | corn W/40 GMO | 2,832 | 1,540 |
| 24. | corn W/40 Monsanto | 0 | 0 |
| 25. | corn W/40 Roundup | 131 | 63 |
| 26. | corn W/40 Round-up | 4,837 | 2,430 |
| 27. | corn W/40 transgen* | 1,100 | 242 |
| 28. | expect* AND natural | 99,160 | 43,003 |
| 29. | expect* AND organic | 37,404 | 13,976 |
| 30. | expect* W/40 biotech* | 163 | 96 |
| 31. | Genetic* Modif* W/40 analy* | 611 | 377 |
| 32. | Genetic* Modif* W/40 result | 156 | 101 |
| 33. | genetic* W/40 analy* | 1,672 | 916 |

| No. | Term | Hits With Family | Hits |
|-----|------|------------------|------|
| 34. | genetic* W/40 report | 401 | 240 |
| 35. | genetic* W/40 research | 2,261 | 1,254 |
| 36. | genetic* W/40 result | 629 | 352 |
| 37. | genetic* W/40 study | 1,154 | 718 |
| 38. | genetic* W/40 survey | 102 | 70 |
| 39. | GM W/40 analy* | 7,348 | 2,611 |
| 40. | GM W/40 survey | 338 | 99 |
| 41. | GMO W/40 analy* | 1,729 | 881 |
| 42. | GMO W/40 belie* | 356 | 283 |
| 43. | GMO W/40 expect* | 1,111 | 481 |
| 44. | GMO W/40 opinion | 51 | 41 |
| 45. | GMO W/40 Perce* | 969 | 447 |
| 46. | GMO W/40 result | 200 | 120 |
| 47. | GMO W/40 study | 134 | 86 |
| 48. | GMO W/40 Tostitos | 0 | 0 |
| 49. | guideline* AND natural AND label | 15,420 | 6,147 |
| 50. | guideline* W/40 (gm* NOT W/0 (GMT OR GMAIL)) | 3,694 | 1,744 |
| 51. | guideline* W/40 bioengin* | 8 | 6 |
| 52. | guideline* W/40 biotech* | 101 | 44 |
| 53. | guideline* W/40 DNA | 168 | 48 |
| 54. | guideline* W/40 genetic* | 364 | 129 |
| 55. | guideline* W/40 GMO | 444 | 219 |
| 56. | guideline* W/40 transgen* | 108 | 13 |
| 57. | Inquir* W/40 DNA | 7 | 4 |
| 58. | Inquir* W/40 genetic* | 32 | 24 |
| 59. | Inquir* W/40 transgen* | 1 | 1 |
| 60. | label W/40 natural | 24,275 | 10,123 |
| 61. | Natural AND (gm* NOT W/0 (GMT OR GMAIL)) | 52,727 | 28,114 |
| 62. | Natural AND bioengineered | 61 | 38 |
| 63. | Natural AND bioengineering | 47 | 32 |
| 64. | Natural AND biotech* | 2,992 | 1,652 |
| 65. | Natural AND DNA | 6,212 | 2,741 |
| 66. | Natural AND genetic* | 11,884 | 4,726 |
| 67. | Natural AND GMO | 7,998 | 3,865 |
| 68. | Natural AND transgen* | 1,726 | 547 |
| 69. | Natural W/40 (gm* NOT W/0 (GMT OR GMAIL)) | 5,373 | 3,252 |
| 70. | Natural W/40 analy* | 19,735 | 7,961 |
| 71. | Natural W/40 belie* | 12,289 | 5,872 |
| 72. | Natural W/40 bioengin* | 13 | 7 |
| 73. | Natural W/40 bioengineered | 6 | 3 |
| 74. | Natural W/40 bioengineering | 6 | 3 |
| 75. | Natural W/40 biotech* | 219 | 69 |

| No. | Term | Hits With Family | Hits |
|---|---|---|---|
| 76. | Natural W/40 genetic* | 1,858 | 913 |
| 77. | Natural W/40 perce* | 23,549 | 8,774 |
| 78. | Natural W/40 report | 9,247 | 5,305 |
| 79. | Natural W/40 research | 13,272 | 7,035 |
| 80. | Natural W/40 result | 6,208 | 3,029 |
| 81. | Natural W/40 survey | 2,520 | 1,038 |
| 82. | opinion W/40 biotech* | 34 | 25 |
| 83. | perce* W/40 biotech* | 190 | 95 |
| 84. | plan* AND natural AND label | 59,335 | 25,382 |
| 85. | plan* W/40 (gm* NOT W/0 (GMT OR GMAIL)) | 40,068 | 19,291 |
| 86. | plan* W/40 bioengin* | 81 | 42 |
| 87. | plan* W/40 biotech* | 1,100 | 693 |
| 88. | plan* W/40 DNA | 2,184 | 886 |
| 89. | plan* W/40 genetic* | 3,492 | 1,777 |
| 90. | plan* W/40 GMO | 3,988 | 1,669 |
| 91. | plan* W/40 transgen* | 228 | 130 |
| 92. | Polic* AND natural AND label | 16,505 | 7,733 |
| 93. | Polic* W/40 (gm* NOT W/0 (GMT OR GMAIL)) | 9,779 | 5,883 |
| 94. | Polic* W/40 bioengin* | 37 | 20 |
| 95. | Polic* W/40 biotech* | 321 | 167 |
| 96. | Polic* W/40 DNA | 124 | 83 |
| 97. | Polic* W/40 genetic* | 683 | 374 |
| 98. | Polic* W/40 GMO | 1,187 | 597 |
| 99. | Polic* W/40 transgen* | 60 | 38 |
| 100. | practice* AND natural AND label | 17,054 | 7,760 |
| 101. | practice* W/40 (gm* NOT W/0 (GMT OR GMAIL)) | 9,457 | 4,418 |
| 102. | practice* W/40 bioengin* | 8 | 4 |
| 103. | practice* W/40 biotech* | 191 | 125 |
| 104. | practice* W/40 DNA | 316 | 156 |
| 105. | practice* W/40 genetic* | 1,093 | 432 |
| 106. | practice* W/40 GMO | 645 | 373 |
| 107. | practice* W/40 transgen* | 78 | 23 |
| 108. | prefer* AND natural | 78,252 | 34,238 |
| 109. | prefer* AND organic | 33,933 | 11,319 |
| 110. | Premium W/40 natural | 19,115 | 7,466 |
| 111. | purchaser W/40 natural | 403 | 146 |
| 112. | result* W/40 biotech* | 313 | 149 |
| 113. | Roundup W/40 natural | 128 | 101 |
| 114. | Round-up W/40 natural | 3,433 | 1,968 |
| 115. | shopper W/40 natural | 6,518 | 2,193 |
| 116. | standard* AND natural AND label | 40,153 | 21,192 |
| 117. | standard* W/40 (gm* NOT W/0 (GMT OR GMAIL)) | 13,967 | 7,374 |

3

| No. | Term | Hits With Family | Hits |
|---|---|---|---|
| 118. | standard* W/40 bioengin* | 19 | 10 |
| 119. | standard* W/40 biotech* | 275 | 185 |
| 120. | standard* W/40 DNA | 355 | 178 |
| 121. | standard* W/40 genetic* | 1,094 | 497 |
| 122. | standard* W/40 GMO | 1,471 | 862 |
| 123. | standard* W/40 transgen* | 96 | 28 |
| 124. | analy* W/40 biotech* | 725 | 363 |
| 125. | belie* W/40 biotech* | 156 | 82 |
| 126. | bioengin* W/40 analy* | 39 | 7 |
| 127. | bioengin* W/40 report | 3 | 2 |
| 128. | bioengin* W/40 research | 13 | 11 |
| 129. | bioengin* W/40 result | 0 | 0 |
| 130. | bioengin* W/40 study | 1 | 1 |
| 131. | bioengin* W/40 survey | 7 | 7 |
| 132. | Bioengineering AND analy* | 113 | 52 |
| 133. | Bioengineering AND report | 37 | 20 |
| 134. | Bioengineering AND research | 131 | 55 |
| 135. | Bioengineering AND result | 23 | 15 |
| 136. | Bioengineering AND survey | 46 | 19 |
| 137. | DNA W/40 analy* | 1,572 | 846 |
| 138. | DNA W/40 report | 667 | 199 |
| 139. | DNA W/40 research | 759 | 383 |
| 140. | DNA W/40 result | 169 | 101 |
| 141. | DNA W/40 study | 706 | 295 |
| 142. | DNA W/40 survey | 61 | 45 |
| 143. | transgen* W/40 analy* | 82 | 49 |
| 144. | transgen* W/40 report | 366 | 29 |
| 145. | transgen* W/40 research | 81 | 55 |
| 146. | transgen* W/40 result | 102 | 26 |
| 147. | transgen* W/40 study | 122 | 40 |
| 148. | transgen* W/40 survey | 53 | 28 |
| 149. | user W/40 natural | 3,468 | 1,776 |
| 150. | willingness to pay AND natural | 1,174 | 292 |
| 151. | willingness to pay AND organic | 1,046 | 175 |