**MILBERG LLP**
ARIANA J. TADLER
HENRY J. KELSTON
One Penn Plaza
New York, New York 10119-0165
Telephone:     (212) 594-5300
Facsimile:     (212) 868-1229
atadler@milberg.com
hkelston@milberg.com

**REESE LLP**
MICHAEL R. REESE
GEORGE V. GRANADE
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone:     (212) 643-0500
Facsimile:     (212) 253-4272
mreese@reesellp.com
ggranade@reesellp.com

*Interim Co-Lead Class Counsel*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ) | Case No. 12-MD-02413-RRM-RLM |
| ) | |
| ) | **MEMORANDUM OF LAW IN SUPPORT** |
| *Frito-Lay North America, Inc. "All Natural"* ) | **OF PLAINTIFFS' UNOPPOSED MOTION** |
| *Litigation* ) | **FOR PRELIMINARY APPROVAL OF** |
| ) | **SETTLEMENT, PROVISIONAL** |
| ) | **CERTIFICATON OF SETTLEMENT** |
| ) | **CLASS, AND APPROVAL OF NOTICE** |
| ) | **PLAN** |
| ) | |
| ) | |

# TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ........................................................................................ 1

II.   FACTUAL AND PROCEDURAL HISTORY .................................................................. 3

   A.   Summary of Plaintiffs' Claims ............................................................................... 3

   B.   Procedural History and Settlement Negotiations.................................................... 3

III.  THE SETTLEMENT ......................................................................................................... 7

   A.   Certification of the Class ....................................................................................... 8

   B.   Past Labeling Change and Injunctive Relief ......................................................... 8

   C.   Notice and Class Action Administrator.................................................................. 9

   D.   Class Counsel Fees .............................................................................................. 10

   E.   Awards to the Class Representatives.................................................................... 10

IV.   THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT ............ 10

   A.   The Settlement Is Procedurally Fair:  The Settlement is the Result of Good Faith, Arm's-
        Length Negotiations by Well-Informed, Highly-Experienced Counsel with the Assistance
        of a Mediator Conducted after Significant Discovery........................................... 11

   B.   The Settlement Is Substantively Fair ................................................................... 13

      1.   The complexity, expense and likely duration of litigation (*Grinnell* factor 1).............. 14

      2.   The reaction of the class to the settlement (*Grinnell* factor 2) ...................................... 14

      3.   The stage of the proceedings and the amount of discovery completed (*Grinnell* factor 3)
           15

      4.   The risks of establishing liability, damages and of maintaining the class action through
           the trial (*Grinnell* factors 4, 5 and 6) ........................................................................... 15

      5.   The ability of Defendants to withstand a greater judgment (*Grinnell* factor 7) ........... 16

      6.   The range of reasonableness of the settlement in light of the best possible recovery and
           in light of all the attendant risks of litigation (*Grinnell* factors 8 and 9)....................... 17

V.    THE COURT SHOULD PROVISIONALLY CERTIFY THE CLASS ............................. 18

   A.   The Class Meets All Rule 23(a) Prerequisites................................................... 19

      1.   Numerosity Under Rule 23(a)(1).................................................................................... 19

      2.   Commonality Under Rule 23(a)(2)................................................................................. 19

i

3. Typicality Under Rule 23(a)(3) .................................................................. 20

4. Adequacy of Representation Under Rule 23(a)(4) ...................................... 21

B. The Class Meets the Requirements of Rule 23(b)(2) ........................................ 22

VI. THE COURT SHOULD APPROVE THE PROPOSED NOTICE PLAN ...................... 22

A. The Notice Plan .................................................................................................. 23

B. The Proposed Notice is Adequate and Appropriate .......................................... 24

VII. THE COURT SHOULD SCHEDULE THE FAIRNESS HEARING ............................ 25

VIII. CONCLUSION ................................................................................................ 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ackerman v. Coca-Cola Co.*,
    No. 09 CV 395 (DLI)(RML), 2013 U.S. Dist. LEXIS 184232 (E.D.N.Y. July
    17, 2013) ............................................................................................................22

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) .........................................................................................18

*In re Bear Stearns Cos., Inc. Sec., Deriv., and ERISA Litig.*,
    909 F. Supp. 2d 259 (S.D.N.Y. 2012)..............................................................12

*Blessing v. Sirius XM Radio, Inc.*,
    507 F. App'x. 1 (2d Cir. 2012) .........................................................................11

*by Goldberger v. Integrated Res., Inc.*,
    209 F.3d 43 (2d Cir. 2000)................................................................................12

*Charron v. Pinnacle Grp. N.Y. LLC*,
    874 F. Supp. 2d 179 (S.D.N.Y. 2012)..............................................................16

*Charron v. Wiener*,
    731 F.3d 241 (2d Cir. 2013).............................................................11, 12, 21

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974)................................................................... *passim*

*Diaz v. Residential Credit Solutions, Inc.*,
    299 F.R.D. 16 (E.D.N.Y. 2014) .......................................................................21

*Dupler v. Costco Wholesale Corp.*,
    705 F. Supp. 2d 231 (E.D.N.Y. 2010) .............................................................14

*Ebin v. Kangadis Food, Inc.*,
    297 F.R.D. 561 (S.D.N.Y. 2014) .....................................................................20

*Enriquez v. Cherry Hill Mkt. Corp.*,
    993 F. Supp. 2d 229 (E.D.N.Y. 2014) .............................................................20

*Fogarazzao v. Lehman Bros., Inc.*,
    232 F.R.D. 176 (E.D.N.Y. 2005) .....................................................................20

*Handschu v. Special Servs. Div.*,
    787 F.2d 828 (2d Cir. 1986)..............................................................................24

*Jermyn v. Best Buy Stores, L.P.*,
  No. 08-cv-214, 2012 U.S. Dist. LEXIS 90289 (S.D.N.Y. June 27, 2012) .............................23

*Lilly v. Jamba Juice Co.*,
  No. 13-cv-02998, 2015 U.S. Dist. LEXIS 57637 (N.D. Cal. May 1, 2015)...............17, 18, 22

*Marisol A. v. Giuliani*,
  126 F.3d 372 (2d Cir. 1997)..........................................................................................19, 21

*McReynolds v. Richards-Cantave*,
  588 F.3d 790 (2d Cir. 2009)..........................................................................................11, 13

*In re Metlife Demutualization Litig.*,
  689 F. Supp. 2d 297 (E.D.N.Y. 2010) ................................................................................11

*Moore v. Margiotta*,
  581 F. Supp. 649 (E.D.N.Y. 1984) .....................................................................................21

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
  187 F.R.D. 465 (S.D.N.Y. 1998) ........................................................................................11

*In re Painewebber Ltd. Pshps. Litig.*,
  171 F.R.D. 104 (S.D.N.Y. 1997) ........................................................................................16

*Parsons v. Ryan*,
  754 F.3d 657 (9th Cir. 2014) ..............................................................................................22

*Passafiume v. NRA Group, L.L.C.*,
  274 F.R.D. 424 (E.D.N.Y. 2010) ...................................................................................13, 14

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
  986 F. Supp. 2d 207 (E.D.N.Y. 2013) .................................................................................14

*Penn. Pub. Sch. Empls. Ret. Sys. v. Morgan Stanley & Co.*,
  772 F.3d 111 (2d Cir. 2014)................................................................................................19

*In re Quaker Oats Labeling Litig.*,
  No. 5:10-cv-00502-RS (N.D. Cal. filed July 29, 2014)..................................................17, 18

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*,
  237 F.R.D. 26 (E.D.N.Y. 2006) ..........................................................................................13

*Robidoux v. Celani*,
  987 F.2d 931 (2d. Cir. 1993)..........................................................................................19, 20

*In re Scotts EZ Seed Litig.*,
  304 F.R.D. 397 (S.D.N.Y. 2015) ........................................................................................19

iv

*Sykes v. Mel S. Harris & Assocs. LLC*,
   780 F.3d 70 (2d Cir. 2015)..................................................................................19, 22

*In re Telik, Inc. Sec. Litig.*,
   576 F. Supp. 2d 570 (S.D.N.Y. 2008)..........................................................................11

*In re Traffic Exec. Asso.—E. Railroads*,
   627 F.2d 631 (2d Cir. 1980)........................................................................................13

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011)................................................................................................19

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005)..................................................................................10, 24

*Waterford Twp. Police & Fire Ret. Sys. v. Smithtown Bancorp, Ins.*,
   No. 10-CV-864 (SLT) (RER), 2015 U.S. Dist. LEXIS 73276 (E.D.N.Y. Apr.
   17, 2015) .....................................................................................................................13

*Willix v. Healthfirst, Inc.*,
   No. 07-cv-1143, 2011 U.S. Dist. LEXIS 21102 (E.D.N.Y. Feb. 18, 2011) ..........................15

**Statutes**

California Business & Professions Code §§ 17200 et seq...............................................................3

California Business & Professions Code §§ 17500 et seq...............................................................3

California Civil Code §§ 1750 et seq............................................................................................3

Florida Deceptive and Unfair Trade Practices Act ........................................................................5

Magnuson–Moss Warranty Act (15 U.S.C. § 2301 et seq.) ..................................................1, 3, 20

New York General Business Law § 349 and § 350 .......................................................................3

**Other Authorities**

Fed. R. Civ. P. 23(c)(2)(A) ...................................................................................................22, 23

Fed. R. Civ. P. 23(e) ........................................................................................................2, 22, 24

Fed. R. Civ. P. 23(e)(1) ................................................................................................................22

Fed. R. Civ. P. 23(e)(2) ................................................................................................................25

Fed. R. Civ. P. 23(g) ......................................................................................................................2

Fed. R. Civ. P. 23(b)(2)..........................................................................................................7, 22, 23

Fed. R. Civ. P. 9(b) ..................................................................................................4

Fed. R. Civ. P. 23 .....................................................................................................2

Fed. R. Civ. P. 23(a) ..............................................................................18, 19, 20, 22

Fed. R. Civ. P. 23(a)(1) ...........................................................................................19

Fed. R. Civ. P. 23(a)(2) ...........................................................................................19

Fed. R. Civ. P. 23(a)(3) ...........................................................................................20

Fed. R. Civ. P. 23(a)(4) ...........................................................................................21

Fed. R. Civ. P. 23(b) ..........................................................................................18, 22

Fed. R. Civ. P. 23(c)(2)(B) ......................................................................................23

Fed. R. Civ. P. 30(b)(6) .............................................................................................5

Plaintiffs Julie Gengo, Chris Shake, Valarie Zuro, and Deborah Lawson ("Plaintiffs") respectfully submit this memorandum of law in support of Plaintiffs' Unopposed Motion for Preliminary Approval of Settlement, Provisional Certification of Settlement Class, and Approval of Notice Plan.[1]

## I.   PRELIMINARY STATEMENT

Plaintiffs allege that defendant Frito-Lay North America, Inc. ("Defendant" or "Frito-Lay") falsely and deceptively labeled and marketed as "Made with All Natural Ingredients" various Tostitos, SunChips, and Fritos Bean Dip products (collectively, the "Products")[2] when, in fact, the Products were made from unnatural, genetically-modified organisms ("GMOs"). Plaintiffs asserted claims under consumer protection statutes and the common law of New York, California, and Florida, and the Magnuson–Moss Warranty Act (15 U.S.C. § 2301 et seq.). *See* Amended Consolidated Class Action Complaint (Dkt. 51).

At the outset, Plaintiffs' main objective in filing the lawsuit was to remedy the alleged deceptions in Frito-Lay's marketing and labeling of the Products.  Through this litigation and Settlement Agreement, Plaintiffs have obtained significant relief for the Class: Frito-Lay has removed the "Made with All Natural Ingredients" claim from the Products, and has agreed not to label the Products as "natural" as long as the Products continue to include GMO ingredients.  In addition, Frito-Lay has agreed not to label the Products as "natural" under any circumstances for the next five years, unless the ingredients in the Products are approved for use in products identified as "natural" by a federal agency or controlling regulatory body.  This provision

---

[1] The Parties' Class Action Settlement Agreement ("Settlement Agreement") is attached to the Joint Declaration of Ariana J. Tadler and Michael R. Reese In Support of Plaintiffs' Unopposed Motion ("Joint Decl.") as Exhibit 1. Capitalized terms shall have the meaning that the Settlement Agreement ascribes to them.

[2] *See* Joint Decl. Ex. 1, Settlement Agreement, at ¶ 1.20 for list of the Products.

protects the Class against the potentially misleading use of a "natural" claim on the Products for *any* reason, not just the presence of GMOs in the Products. Frito-Lay has further agreed not to place an affirmative "non-GMO" claim on the Products at any time unless the claim is certified by an independent third-party certification organization.

The labeling change made by Frito-Lay and the very broad protections of the injunctive provisions represent significant and valuable benefits to an extremely large class. Tostitos and SunChips are two of Frito-Lay's largest brands, with sales exceeding $1.5 billion. Given the breadth of this injunctive relief, and for reasons more fully described in section IV(B)(4), Plaintiffs have determined that the benefits of this Settlement outweigh the risks of continued litigation to pursue what would potentially be nominal monetary damages for the Class Members.

This settlement was achieved with the assistance of former United States District Judge Richard J. Holwell (Ret.), after mediation sessions over a period of ten months. Before mediation, the Parties conducted extensive discovery, which occasioned protracted and contentious discovery negotiations and motion practice. The settlement takes into account the substantial risks the Parties would face if the litigation continued.

Accordingly, Plaintiffs respectfully request that the Court grant preliminary approval of the Settlement so that notice can be provided to the members of the Class and a Fairness Hearing can be scheduled to consider final approval of the Settlement. *See* Fed. R. Civ. P. 23(e). Plaintiffs also respectfully request provisional certification of the proposed Class, to be appointed as representatives for the Class, and for their counsel to be appointed as Class Counsel. *See* Fed. R. Civ. P. 23(g). Plaintiffs further request approval of the proposed notice

program as it meets the requirements of due process and satisfies the requirements under Rule 23.

## II.     FACTUAL AND PROCEDURAL HISTORY

### A.     Summary of Plaintiffs' Claims

Plaintiffs alleged Defendant caused consumers to believe its Products were "natural," when in fact they were not.  (Amended Consolidated Class Action Complaint (Dkt. 51)). Defendant claimed on the front of each package that the Products were "Made With All Natural Ingredients" when, in fact, the corn used to make the Products is genetically modified; in other words, it comes from plants whose DNA has been altered through the application of sophisticated, laboratory-based techniques involving the insertion of DNA from non-plant species so that the corn plants would exhibit traits of pest-resistance and herbicide tolerance that corn does not naturally possess.  Plaintiffs allege that claiming that GMO products are "natural", or specifically in the case of Frito-Lay – that the Products are "made with natural ingredients" despite containing GMO corn—is false, deceptive, and misleading.

### B.     Procedural History and Settlement Negotiations[3]

On December 14, 2011, Plaintiff Julie Gengo filed a class action complaint in the Central District of California, alleging that Frito-Lay violated California Business & Professions Code §§ 17500 et seq., California Business & Professions Code §§ 17200 et seq., California Civil Code §§ 1750 et seq., Magnuson-Moss Act 15 U.S.C. §§ 2301 et seq., and breached the California common law of express warranty.  On December 28, 2011, Plaintiff Valarie Zuro filed a similar complaint, also in the Central District of California alleging the same violations against Frito-Lay.  On January 27, 2012, Plaintiff Chris Shake filed a complaint in the Eastern District of New York alleging that Frito-Lay and its parent company, PepsiCo, Inc. ("PepsiCo") violated the

---

[3] Factual support for this section is provided in the Joint Declaration filed concurrently herewith.

New York General Business Law § 349 and § 350, and breached the New York common law of express warranty. A consolidated complaint was filed on July 3, 2012 in the Eastern District of New York.

A number of follow-on suits were filed in various district courts around the country. Defendant Frito-Lay and former defendant PepsiCo moved before the Judicial Panel on Multidistrict Litigation to centralize all of the actions for coordinated proceedings. The JPML centralized the pending actions before this Court. This Court consolidated all of the actions in the MDL for pre-trial proceedings in orders dated January 25, 2013 and August 9, 2013. Milberg LLP and Reese Richman LLP were appointed as Interim Co-Lead Class Counsel.[4]

On April 4, 2013, following letter-briefs to the Court, the Court held a pre-motion conference and set a schedule for the briefing of Defendants' Motion to Dismiss, and denied Defendants' request to stay discovery in the interim (Dkt. 13). Defendants served their opening brief on April 19, 2013 (Dkt. 23), along with a Motion for Judicial Notice (Dkt. 25), which Plaintiffs opposed on May 31, 2013 (Dkts. 27, 28). Defendants served reply papers on June 26, 2013 (Dkts. 29, 30) and at that time the complete bundled motions were filed with the Court.

On August 29, 2013, the Court dismissed PepsiCo as a defendant and dismissed Plaintiffs' nationwide Magnusson Moss claim but denied the vast majority of Defendant's motion. The Court ruled that neither preemption nor the primary jurisdiction doctrine applied, and that Plaintiffs' complaint was more than met the pleading requirements of Rule 9(b).

The Amended Consolidated Complaint, the operative complaint in the litigation, was filed by Plaintiffs' Interim Co-Lead Class Counsel on December 3, 2013, adding Lisa Summerlin

---

[4] On March 9, 2015, Reese Richman LLP filed a notice that it had changed its name to Reese LLP (Dkt. 90).

as a plaintiff[5] and adding allegations that Frito-Lay and PepsiCo violated the Florida Deceptive and Unfair Trade Practices Act and breached the Florida common law of express warranty and intentional misrepresentation.  (PepsiCo was named by Plaintiffs in the Amended Consolidated Complaint despite having been dismissed as a defendant in order to preserve claims against it for possible appeal.)

In the interim, the Parties had begun extensive discovery.  Plaintiffs served three separate sets of document requests, to which Frito-Lay responded with twelve separate document productions totaling over 324,000 pages.  Plaintiffs served Requests for Admission on both PepsiCo (prior to its dismissal as a defendant) and Frito-Lay.  Plaintiffs responded to multiple document requests from Frito-Lay, producing over 1,400 pages, and each named Plaintiff responded to interrogatories from Frito-Lay as well.

Plaintiffs Julie Gengo and Valarie Zuro were deposed in San Francisco, California. Plaintiff Chris Shake was deposed in New York, New York.  The deposition of Plaintiff Deborah Lawson was postponed shortly before it was scheduled to occur in Florida in December 2014, as the Parties agreed to enter mediation.

Between August 2013 and January 2014, the Parties engaged in protracted and highly contentious discovery disputes concerning the adequacy of Frito-Lay's efforts to search for and produce relevant documents, Frito-Lay's objections to Plaintiffs' notice for a Rule 30(b)(6) deposition, and Frito-Lay's requests for records of Plaintiffs' purchases from various retailers. The Parties devoted hundreds of hours (at least 500 hours by Interim Co-Lead Class Counsel

---

[5] By Order dated December 2, 2013, the Court granted Plaintiffs' motion for the withdrawal of Ms. Summerlin, addition of Deborah Lawson as Plaintiff, and Leave to File an Amended Consolidated Complaint Reflecting Change of Plaintiff.

alone) to discovery disputes resulting in more than twenty letters, dozens of emails and numerous "meet and confer" sessions.

In late January 2014, both parties sought relief from the Court regarding the dispute over the adequacy of Frito-Lay's search and production protocol—Plaintiffs via a motion to compel and Defendant via a motion for protective order. After responsive filings and telephone conferences and a four-hour in-person hearing before Magistrate Judge Mann in March 2014, Plaintiffs' proposed search protocol was adopted by the Court with minimal changes. The Parties engaged in further negotiations and then executed the detailed steps of the search protocol; Frito-Lay began producing additional documents on August 5, 2014. At the Court's suggestion, depositions of Frito-Lay employees were deferred until Frito-Lay's document production was substantially complete. By the end of October 2014, Frito-Lay had made twelve separate productions of 36,670 documents totaling over 324,000 pages. In late 2014, Plaintiffs scheduled and took five depositions of mid-level and senior Frito-Lay employees in Dallas, Texas.

Plaintiffs also pursued significant third-party discovery during this time. Plaintiffs subpoenaed PepsiCo, resulting in a document production that led to protracted negotiations about the adequacy of PepsiCo's search and production protocol. Plaintiffs also issued subpoenas to trade organizations with relevant evidence, including the Grocery Manufacturers Association and the International Food Information Council, both of which produced documents in response. Plaintiffs also sought detailed sales and pricing information for the Products through subpoenas to The Nielsen Company (U.S.) LLC, and Information Resources, Inc. Finally, anticipating a possible challenge to the ascertainability of the class, Plaintiffs issued subpoenas to nineteen third-party retailers  seeking information about the identities of individuals who purchased the

Products during the relevant time period, resulting in the production of over one gigabyte of data identifying hundreds of thousands of potential class members.

The Parties also engaged in extended negotiations regarding Frito-Lay's document requests for documents concerning Plaintiffs' purchases of "consumable" items at various retailers.   Ultimately, those negotiations failed and Frito-Lay filed a motion to compel, which Plaintiffs opposed. The motion was later terminated as moot.

On December 8, 2014, at the request of the Parties, the Court ordered a stay of all proceedings to enable the parties to engage in mediation.   At the time the stay was entered, deposition notices were outstanding for four senior employees or former employees of Frito-Lay and PepsiCo.   In addition, the Parties were negotiating search terms and custodians for additional document productions by Frito-Lay.

The Parties held an all-day mediation session with Judge Holwell on December 17, 2014 but were unable to reach agreement on settlement terms.   The Parties reconvened with Judge Holwell on December 22, 2014.   Over the next ten months, Plaintiffs and Frito-Lay continued their negotiations directly and with the assistance of Judge Holwell.   An in-person mediation session was held on April 14, 2015.   On September 9, 2015, after another in-person mediation session with Judge Holwell, the Parties reached agreement on the terms of this Settlement.

Plaintiffs now move for preliminary approval of the Settlement as outlined in the Settlement Agreement.

## III.    THE SETTLEMENT

The Settlement Agreement defines the Class, describes the Injunctive Relief to which the Parties agreed, and proposes a plan for disseminating notice to the Class.

A.      **Certification of the Class**

Under the Settlement Agreement, the Parties agree to seek provisional certification of the

Class, pursuant to Federal Rule of Civil Procedure 23(b)(2), defined as follows:

> All consumers in the United States and all U.S. territories (including, but not limited to, the Commonwealth of Puerto Rico, the U.S. Virgin Islands, Guam, American Samoa, the Northern Mariana Islands, and the other territories and possessions of the United States), who purchased one or more of the Products from January 1, 2010 until the date of the preliminary approval of the settlement of this litigation."

Excluded from the Class are:  (a) persons or entities who purchased the Products for the purpose

of resale or distribution; (b) persons who are employees, directors, officers, and agents of

Defendant or its parent or subsidiary companies; (b) governmental entities; (c) persons who

timely and properly exclude themselves from the Class as provided in the Settlement Agreement;

and (d) any judicial officer hearing this Litigation, as well as their immediate family members

and employees.

B.      **Past Labeling Change and Injunctive Relief**

During the course of the litigation, Frito-Lay removed the "Made with All Natural

Ingredients" claim from the Products.   Frito-Lay acknowledges that the litigation was an

important factor in its decision to modify the labeling and marketing challenged in this lawsuit.[6]

As part of the Settlement, Frito-Lay has agreed to further modify its labeling policies and

practices for the Products. Specifically, the Settlement Agreement provides for the following:

- Frito-Lay will refrain from labeling, marketing, or advertising the Products as "Made With All Natural Ingredients" or "natural" unless the FDA issues express guidance, or federal or state legislation is enacted authorizing use of a "natural" claim on a product containing GMO ingredients.  *See* Settlement Agreement, ¶ 4.1.1.

---

[6]  *See* Joint Decl. Ex. 1, Settlement Agreement, at ¶ 5.1.

- Frito-Lay will not make a non-GMO claim on the Products unless the claim is certified by an independent third-party certification organization. *See* Settlement Agreement, ¶ 4.1.2.

- Frito-Lay will modify its main FAQ page at http://www.fritolay.com/faq and FAQ Nutrition Page at http://www.fritolay.com/nutrition/nutrition-faq.html to direct consumers looking for non-GMO ingredients to appropriate Frito-Lay products. *See* Settlement Agreement, ¶ 4.1.3.

- In addition, to protect consumers against the potentially misleading use of a "natural" claim on the Products for reasons *other than* the presence of GMOs in the Products, for a period of five years, Frito Lay will not label the Products as "natural" unless the ingredients are approved or determined as acceptable for products identified as "natural" by a federal agency or controlling regulatory body. *See* Settlement Agreement, ¶ 4.1.1.2.

### C.     Notice and Class Action Administrator

The Settlement Agreement proposes that the Court appoint Dahl Administration, LLC to administer the notice process, and outlines the methods of providing notice of the Settlement to the Class, including the opportunity to request exclusion or to object to the Settlement. The Settlement Agreement provides two forms by which the Class Action Administrator will disseminate notice of the Settlement Agreement to the Class: a Long Form Notice and a Summary Notice. *See* Settlement Agreement, Exhibits A & B.

The Settlement Agreement contemplates the Class Action Administrator providing notice of the Settlement to the Class through three means: (1) implementation of a multi-platform internet and social media campaign to circulate general information about the Settlement; (2) publication of the Summary Notice in *People* magazine and *USA Today*; and (3) creation of a Class Settlement Website that contains Settlement information and important case-related documents. In addition, the Class Settlement Website will include procedural information regarding the status of the Court-approval process. *See* Settlement Agreement, ¶ 6.3.1.

The Settlement Agreement specifies that Defendant will pay the actual cost of class notice, up to $215,000. *See* Settlement Agreement, ¶ 6.1.

### D.       Class Counsel Fees

Class Counsel will apply for $1,900,000 for fees and $200,000 in costs and expenses. Frito-Lay will pay up to these amounts, as awarded by the Court. These figures were agreed to by the Parties with the assistance of Judge Holwell as mediator after extensive negotiation and after agreement on all other substantive terms. The Parties recognize that the Court shall have the final authority to award the amount of fees and expenses.

### E.       Awards to the Class Representatives

Class Counsel will apply for awards of $5,000 to Julie Gengo, Valarie Zuro, and Christopher Shake (each of whom sat for depositions) and $2,500 for Deborah Lawson (who was not deposed). The Parties acknowledge the Court shall have the final authority to determine the amount of the awards up to these amounts in recognition of their service as plaintiffs in this action and the time expended by each of them. Frito-Lay will pay up to these amounts, as awarded by the Court.

## IV.    THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT

Class Counsel worked steadfastly to litigate this matter and reach the Settlement. *See* Joint Decl. While Plaintiffs and Class Counsel believe the claims resolved have merit, they also recognize that there is significant expense and risk associated with continuing to prosecute the claims through trial and appeal. *Id.* Class Counsel has taken those uncertainties into account as well as the delays inherent in such litigation. *Id.* In the process of investigating and litigating this case, Class Counsel have conducted significant research on the various consumer protection statutes at issue as well as the overall legal landscape to determine the likelihood of success and the reasonable parameters for which like settlements have been approved. *Id.* They believe the

Settlement provides significant relief to the Class. Accordingly, Class Counsel have determined that the Settlement is fair, reasonable, adequate, and in the best interests of the Class. *Id.*

In the Second Circuit, there is a "strong judicial policy in favor of settlements, particularly in the class action context." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); "[C]lass action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation." *In re Metlife Demutualization Litig.*, 689 F. Supp. 2d 297, 330 (E.D.N.Y. 2010).

"A district court's approval of a settlement is contingent on a finding the settlement is 'fair, reasonable, and adequate.'" *Blessing v. Sirius XM Radio, Inc.*, 507 F. App'x. 1, 3 (2d Cir. 2012) (quoting Fed. R. Civ. P. 23(e)(2). The "fair, reasonable and adequate" standard effectively requires parties to show that a settlement is both: (1) procedurally fair and (2) substantively fair. *See Charron v. Wiener*, 731 F.3d 241, 247 (2d Cir. 2013) (citations omitted); *accord McReynolds v. Richards-Cantave*, 588 F.3d 790, 803–04 (2d Cir. 2009). In recognition of the "strong judicial policy in favor of settlements, particularly in the class action context," courts evaluating settlement agreements adopt a presumption of both their procedural and substantive fairness. *See McReynolds*, 588 F.3d at 803 (citing *Wal-Mart Stores, Inc. v. Visa U.S.A.*, Inc., 396 F.3d 96, 116 (2d Cir. 2005)). The Settlement here is both procedurally and substantively fair.

A.   **The Settlement Is Procedurally Fair: The Settlement is the Result of Good Faith, Arm's-Length Negotiations by Well-Informed, Highly-Experienced Counsel with the Assistance of a Mediator Conducted after Significant Discovery**

A proposed settlement is entitled to a "presumption of fairness" where, as here, the process leading to the proposed settlement was fairly conducted by highly qualified counsel who sought to obtain the best possible result for their clients (and, in the case of Class Counsel, the Class). *See McReynolds*, 588 F.3d at 803; *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187

F.R.D. 465, 474 (S.D.N.Y. 1998) ("So long as the integrity of the arms' length negotiation process is preserved . . . a strong initial presumption of fairness attaches to the proposed settlement, and great weight is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation."); *see also In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 575 (S.D.N.Y. 2008) ("[A] class action settlement enjoys a 'presumption of correctness' where it is the product of arm's-length negotiations conducted by experienced, capable counsel.").

Here, counsel for the Parties have a substantial amount of experience in litigating class actions as well as negotiating class settlements.  As detailed above, before agreeing to a Settlement, Class Counsel conducted extensive investigation, engaged in discovery, and weighed the risks of continued litigation. It was through this process that Class Counsel was able to obtain an understanding of the strengths and weaknesses of their case and Defendant's case and to evaluate and negotiate the Settlement.  *See* Joint Declaration.

The participation of an experienced mediator in settlement negotiations further establishes a settlement's fairness.  *See In re Bear Stearns Cos., Inc. Sec., Deriv., and ERISA Litig.*, 909 F. Supp. 2d 259, 265 (S.D.N.Y. 2012) (finding the arm's-length negotiation element "amply satisfied" where the parties, "represented by highly experienced and capable counsel, engaged in extensive arms' length negotiations, which included multiple sessions mediated by . . . an experienced and well-regarded mediator of complex . . . cases.").  The fairness of the settlement here is bolstered by the fact that the Parties engaged in mediation with the assistance of former United States District Judge Richard J. Holwell, serving as mediator.

The Settlement is procedurally fair.

**B.      The Settlement Is Substantively Fair**

To demonstrate the substantive fairness of a settlement, a party must show that as many of the nine factors the Second Circuit U.S. Court of Appeals set out in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) ("*Grinnell*"), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000), as possible weigh in favor of approving the settlement.  *Charron*, 731 F.3d at 247 (citations omitted).

The nine *Grinnell* factors are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement … in light of the best possible recovery; and (9) the range of reasonableness of the settlement … to a possible recovery in light of all the attendant risks of litigation.

*McReynolds*, 588 F.3d at 804 (quoting *Grinnell*, 495 F.2d at 463).  These factors favor preliminary approval of the Settlement.

However, "'[i]n the context of a motion for preliminary approval of a class action settlement, the standards are not so stringent as those applied when the parties seek final approval.'"  *Passafiume v. NRA Group, L.L.C.*, 274 F.R.D. 424, 430 (E.D.N.Y. 2010).  "It is at most a determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness."  *In re Traffic Exec. Asso.—E. Railroads*, 627 F.2d 631, 634 (2d Cir. 1980).

In fact, some *Grinnell* factors, "particularly the reaction of the class to the settlement, are impossible to weight prior to notice and a hearing."  *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.,* 237 F.R.D. 26, 34 (E.D.N.Y. 2006); *Waterford Twp. Police & Fire Ret. Sys. v. Smithtown*

*Bancorp, Ins*., No. 10-CV-864 (SLT) (RER), 2015 U.S. Dist. LEXIS 73276, at *20 (E.D.N.Y. Apr. 17, 2015) ("[A]t preliminary approval, it is not necessary to exhaustively consider the [*Grinnell*] factors applicable to final approval."):

> Therefore, a full fairness analysis is unnecessary at this stage. [citation omitted]. Preliminary approval is appropriate where it is the result of serious, informed, non-collusive negotiations, where there are no grounds to doubt its fairness and no other obvious deficiencies (such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys), and where the settlement appears to fall within the range of possible approval.

*Passafiume*, 274 F.R.D. at 430-31. Even though the Court need not, at the preliminary approval stage, assess the final approval factors, a review of those factors demonstrates that this Settlement merits preliminary approval.

### 1. The complexity, expense and likely duration of litigation (*Grinnell* factor 1)

Consumer class action lawsuits, like this action, are complex, expensive, and lengthy. *See, e.g., Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 239 (E.D.N.Y. 2010). As described above, Plaintiffs filed this action almost five years ago. Since then, the action has prompted multiple motions to transfer, a motion for dismissal, private mediation, extensive discovery and multiple disputes over its scope. Should this Court not approve the Settlement, this lengthy and contentious litigation would resume, with disputes likely occurring over remaining discovery, class certification, summary judgment motions, and expert testimony. Moreover, the benefits of reverting to litigation and the likelihood of success would be uncertain.

### 2. The reaction of the class to the settlement (*Grinnell* factor 2)

It is premature to address this factor.

### 3. The stage of the proceedings and the amount of discovery completed (*Grinnell* factor 3)

The third *Grinnell* factor—the stage of the proceedings and the amount of discovery completed—considers "whether Class Plaintiffs had sufficient information on the merits of the case to enter into a settlement agreement . . . and whether the Court has sufficient information to evaluate such a settlement."  *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 986 F. Supp. 2d 207, 224 (E.D.N.Y. 2013) (citations omitted).

Here, after the Court's August 29, 2013 Order on the motion to dismiss, the Parties engaged in significant discovery, including interrogatories, requests for admission, document production and litigation of multiple motions to compel.  Defendant has produced approximately 325,000 pages of documents to date, including more than 18,000 produced consequent to Magistrate Judge Mann's order granting Plaintiffs' Motion to Compel additional discovery.  Plaintiffs also subpoenaed and obtained documents from PepsiCo and several third-party retailers of the Products and deposed five Frito-Lay witnesses in Dallas, Texas, near Frito-Lay headquarters.  Thus, Plaintiffs had sufficient information to evaluate the terms of the proposed settlement.

### 4. The risks of establishing liability, damages and of maintaining the class action through the trial (*Grinnell* factors 4, 5 and 6)

The fourth, fifth and sixth *Grinnell* factors—the risks of effecting class certification, establishing or incurring liability, damages and burdens of prosecuting the class action through the trial—naturally weigh in favor of approving the Settlement Agreement.  "Litigation inherently involves risks."  *Willix v. Healthfirst, Inc.*, No. 07-cv-1143, 2011 U.S. Dist. LEXIS 21102, at *11 (E.D.N.Y. Feb. 18, 2011) (citation omitted).

This expensive and protracted litigation would continue on, with no guaranteed or inevitable favorable outcome.  Although Plaintiffs believe that they could succeed in certifying a

class here, they also recognize that they face several obstacles to obtaining and maintaining class certification. First, it may be difficult (although not impossible) to quantify the precise amount of damages suffered by the class. Plaintiffs recognize the challenge of quantifying the claim's effect across more than twenty separate products, where the time periods in which the challenged claim appeared on the Product packaging vary not only among the Products but also among the various package sizes in which each Product was sold. So it may be difficult (although not impossible) to quantify the precise amount of damages suffered by the class. The variations in the labeling dates also may create difficulties in ascertaining class members, as consumers may have difficulty recalling which variety and which package size they purchased during a particular time period. Class Counsel is also mindful of the inherent problems of proof related to the claims and defenses to the claims asserted in the Litigation.

### 5. The ability of Defendants to withstand a greater judgment (*Grinnell* factor 7)

The seventh *Grinnell* factor—the ability of a defendant to withstand a greater judgment—has, in practice, transformed into an acknowledgement that it is more important that a class receive some relief than possibly "yet more" relief. *Charron v. Pinnacle Grp. N.Y. LLC*, 874 F. Supp. 2d 179, 201 (S.D.N.Y. 2012).

Should Plaintiffs succeed at trial, damages could be calculated under various theories, including purchase price, premium price and/or statutory damages. According to PepsiCo's 2014 Annual Report, Frito-Lay's revenues exceeded $14 billion in 2014. As such, Plaintiffs have no reason to believe that Frito Lay could not withstand a judgment under any of these theories. However, while evidence that the defendant will not be able to pay a larger award at trial tends to weigh in favor of approval of a settlement, the fact that a defendant is able to pay more than it offers in settlement does not, standing alone, indicate that the settlement is

unreasonable or inadequate. *In re Painewebber Ltd. Pshps. Litig.*, 171 F.R.D. 104, 129 (S.D.N.Y. 1997).

The Settlement Agreement, as discussed above, affords the Class substantial non-monetary benefits. The Settlement Agreement provides the primary relief sought by the Class—the assurance that the Products will not be labeled, marketed or advertised as "natural" unless the use of "natural" claims on products containing GMOs is expressly authorized by FDA guidance or state or federal legislation. Moreover, by resolving the Class' claims, the Settlement Agreement removes the Class' costs of maintaining litigation.

### 6. The range of reasonableness of the settlement in light of the best possible recovery and in light of all the attendant risks of litigation (*Grinnell* factors 8 and 9)

The relief provided by the Settlement Agreement is within the range of reasonableness, in light of the best possible recovery and in light of all the attendant risks of litigation. Courts have consistently approved injunction-only settlement agreements that resolve deceptive and false food labeling class actions. *See, e.g., Lilly v. Jamba Juice Co.*, No. 13-cv-02998, 2015 U.S. Dist. LEXIS 57637 (N.D. Cal. May 1, 2015); Final Order Approving Class Action Settlement, *In re Quaker Oats Labeling Litig.*, No. 5:10-cv-00502-RS (N.D. Cal. filed July 29, 2014). In doing so, these courts have emphasized that the relief obtained in these settlements—"complete relabeling of . . . challenged products"—"provides meaningful injunctive relief . . . within the range of possible recoveries by the Class." *See Lilly*, 2015 U.S. Dist. LEXIS 57637 at *4; Final Order Approving Class Action Settlement at 4, *In re Quaker Oats Labeling Litig.*, No. 5:10-cv-00502-RS, *supra*.

Frito-Lay acknowledges, for purposes of settlement, that the litigation was an important factor in its decision to modify the labeling and marketing challenged in this lawsuit. *See* Settlement Agreement at ¶ 5.1. The Settlement Agreement provides the primary relief sought in

the Litigation – *i.e.,* injunctive relief that prohibits and restricts the Products from being labeled, marketed or advertised as "natural" unless the use of "natural" claims on products containing GMOs is expressly authorized by FDA guidance or state or federal legislation.  The Settlement prohibits the labeling, marketing or advertising of the Products as "natural" for a period of five years unless the ingredients are expressly approved or determined as acceptable for products identified as "natural" by a federal agency or controlling regulatory body.  The Settlement also prohibits the placement of an affirmative "non-GMO" claim on the Products unless the claim is certified by an independent third-party certification organization.  *See* Settlement Agreement, ¶¶ 3-4.  This relief constitutes a "complete relabeling of . . . challenged products," and amounts to "meaningful injunctive relief . . . within the range of possible recoveries by the Class."  *See Lilly*, 2015 U.S. Dist. LEXIS 57637, at *8; Final Order Approving Class Action Settlement at 4, *In re Quaker Oats Labeling Litig.*, No. 5:10-cv-00502-RS, *supra* at 17.  Thus, consideration of the range of reasonableness of the settlement in light of the best possible recovery and in light of all the attendant risks of litigation weighs staunchly in favor of approving the Settlement.

Collectively and independently, the *Grinnell* factors warrant a conclusion that the Settlement is fair, adequate, and reasonable.  Plaintiffs respectfully request that the Court grant preliminary approval of the settlement.

## V.    THE COURT SHOULD PROVISIONALLY CERTIFY THE CLASS

A court may certify a settlement class upon finding that the action underlying the settlement satisfies all Rule 23(a) prerequisites and the requirements of Rule 23(b).  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619–22 (1997).  As set forth more fully below, the proposed settlement class satisfies all of the prerequisites of Rule 23(a) and (b)(2) and, consequently, Plaintiffs respectfully ask the Court to certify the Class preliminarily, for settlement purposes.

### A.     The Class Meets All Rule 23(a) Prerequisites

Rule 23(a) has four prerequisites for certification of a class:  (i) numerosity; (ii) commonality; (iii) typicality; and (iv) adequate representation.  The Class meets each of these four prerequisites and, consequently, satisfies Rule 23(a).

### 1.     Numerosity Under Rule 23(a)(1)

Under the numerosity prerequisite of Rule 23(a), plaintiffs must show that their proposed class is "so numerous that joinder of all [its] members is impracticable."  Fed. R. Civ. P. 23(a)(1).  The Second Circuit U.S. Court of Appeals has consistently treated this prerequisite liberally, explaining that numerosity will be found where a proposed class is "obviously numerous."  *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997); *see also Robidoux v. Celani*, 987 F.2d 931, 935 (2d. Cir. 1993).  Though no magic number of class members exists for meeting the numerosity prerequisite, courts "presume [the prerequisite is met] for classes larger than forty members."  *Penn. Pub. Sch. Empls. Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 120 (2d Cir. 2014).

Here, the Class is "obviously numerous."  Marisol A., 126 F.3d at 376.  Sales of the Products exceed $1.5 billion annually.  Accordingly, the Class here clearly meets the numerosity prerequisite of Rule 23(a).

### 2.     Commonality Under Rule 23(a)(2)

Under the commonality prerequisite of Rule 23(a), plaintiffs must show that "questions of law or fact common to the [proposed] class" exist.  Fed. R. Civ. P. 23(a)(2).  The U.S. Supreme Court has clarified that this prerequisite will be found where a proposed class' members have brought claims that all centrally "depend upon [the resolution of] a common contention."  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).  The Second Circuit U.S. Court of Appeals has construed this instruction liberally, holding that plaintiffs need only allege injuries

19

"derive[d] from defendants' . . . unitary course of conduct. . . ." *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 84 (2d Cir. 2015).

Here, Class Members bring claims that centrally depend on the resolution of a common contention—whether the Products' labeling would mislead a reasonable consumer. *See In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 409-410 (S.D.N.Y. 2015); *Ebin v. Kangadis Food, Inc.*, 297 F.R.D. 561, 568 (S.D.N.Y. 2014). Thus, the commonality prerequisite of Rule 23(a) is satisfied here.

### 3.   Typicality Under Rule 23(a)(3)

Under the typicality prerequisite of Rule 23(a), plaintiffs must show that their proposed class representatives' claims "are typical of the [class'] claims." Fed. R. Civ. P. 23(a)(3). The Second Circuit U.S. Court of Appeals has interpreted this prerequisite to require plaintiffs to show that "the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented. . . ." *Robidoux*, 987 F.2d at 936–37 (citations omitted). District courts in the Second Circuit, moreover, have repeatedly found this prerequisite easily satisfied, particularly in consumer class action cases. *See Enriquez v. Cherry Hill Mkt. Corp.*, 993 F. Supp. 2d 229, 233 (E.D.N.Y. 2014); *Fogarazzao v. Lehman Bros., Inc.*, 232 F.R.D. 176, 180 (E.D.N.Y. 2005) ("The typicality requirement is not demanding." (internal citations and quotation marks omitted)).

Here, the claims of the Class Representatives are typical of the Class' claims. The Plaintiffs and the rest of the Class, all purchasers of the Products, challenge the use of "natural" labeling on the Products, which Plaintiffs contend were made from corn containing GMOS and which Plaintiffs contend is misleading and violates the Magnuson-Moss Warranty Act,[7]

---

[7] Plaintiffs' Magnuson-Moss claims have been dismissed but remain subject to possible appeal.

20

California, Florida, and New York deceptive trade practices statutes and the common law. Again, as with the numerosity and commonality prerequisites, the typicality prerequisite is met.

### 4. Adequacy of Representation Under Rule 23(a)(4)

Finally, under the adequate representation prerequisite of 23(a), plaintiffs must show that their proposed class representatives will "fairly and adequately protect the interests of the [proposed] class." Fed. R Civ. P. 23(a)(4). To do this, plaintiffs must demonstrate that: (1) their class representatives do not have conflicting interests with other class members; and (2) their class counsel is "qualified, experienced and generally able to conduct the litigation." *Marisol A.*, 126 F.3d at 378.

Courts under the purview of the Second Circuit U.S. Court of Appeals have consistently applied a lenient standard for meeting both of the adequate representation prerequisites. *E.g., Diaz v. Residential Credit Solutions, Inc.*, 299 F.R.D. 16, 20–21 (E.D.N.Y. 2014). For the first requirement (adequacy of class representatives), Second Circuit courts have required that plaintiffs merely show that "no fundamental conflicts exist" between a class' representative(s) and its members. *See Charron*, 731 F.3d at 249. For the second requirement (adequacy of class counsel), courts in the Second Circuit generally presume it met, only finding it not met in instances where class counsel represents other clients whose interests are inherently at odds with the class' interests or also acts as a class representative. *See, e.g., Moore v. Margiotta*, 581 F. Supp. 649, 652 (E.D.N.Y. 1984).

Here, the adequate representation prerequisite is satisfied. The Plaintiffs have no fundamental conflicts with other Class Members' interests, as they seek the same type of relief (injunctive relief) and assert the same legal claims, as other Class Members. They have diligently served as class representatives throughout this litigation, providing discovery responses and sitting for their depositions. Similarly, Class Counsel are qualified, experienced

21

and able to conduct the litigation and have extensive experience in class action litigation and consumer advocacy. *See* Joint Declaration. Thus, the adequate representation prerequisite is met.

> **B.      The Class Meets the Requirements of Rule 23(b)(2)**

For certification, in addition to satisfying all Rule 23(a) prerequisites, a settlement class must satisfy Rule 23(b). Fed. R. Civ. P. 23(b). The Class, as a class seeking injunctive relief, meets all Rule 23(b)(2) requirements, and the Court should preliminarily certify it.

Rule 23(b)(2) reads: "A class action may be maintained if . . . the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole . . . ." *Id.* The Second Circuit U.S. Court of Appeals has interpreted this to mean that class-wide injunctive relief must provide benefit to all class members (even if in different ways). *Sykes*, 780 F.3d at 99 (citing *Wal-Mart Stores, Inc.*, 131 S. Ct. at 2555–61; *see also Parsons v. Ryan*, 754 F.3d 657, 688 (9th Cir. 2014) (holding the same).

Plaintiffs here seek only class-wide injunctive relief. Like the class members in *Sykes*, this relief would, in remedying the Products' labeling, benefit each Class Member at once. Equitable relief in the form of an injunction would be an appropriate remedy. *See Ackerman v. Coca-Cola Co.*, No. 09 CV 395 (DLI)(RML), 2013 U.S. Dist. LEXIS 184232, at *71 (E.D.N.Y. July 17, 2013). Accordingly, the Class should be found to meet Rule 23(b)(2); and, as the Class also satisfies the Rule 23(a) prerequisites, the Class should be preliminarily certified for injunctive relief.

## VI.     THE COURT SHOULD APPROVE THE PROPOSED NOTICE PLAN

Rule 23(e) provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by" a proposed settlement. Fed. R. Civ. P. 23(e)(1). In addition,

courts have discretion over whether to require that settling parties provide notice of a proposed settlement of a Rule 23(b)(2) action to a class. *See* Fed. R. Civ. P. 23(c)(2)(A) (leaving notice at the discretion of the court for Rule 23(b)(2) actions); *see, e.g., Lilly*, 2015 U.S. Dist. LEXIS 57637 at *6; *see also Jermyn v. Best Buy Stores, L.P.*, No. 08-cv-214, 2012 U.S. Dist. LEXIS 90289, at *33 (S.D.N.Y. June 27, 2012) (action alleging misleading advertising of electronics).

For a Rule 23(b)(2) class such as the one in this Settlement, Rule 23(c)(2)(A) states that "the court may direct appropriate notice to the class." Here, the Parties have developed a notice program with the assistance of Dahl Administration, LLC, a company that specializes in the development and implementation of notice and settlement administration.[8] In Dahl's expert opinion, the proposed Notice Plan provides the best notice practicable under the circumstances to the members of the Class and is compliant with Rule 23(c)(2)(B). Dahl Aff. ¶¶ 33-34.

Plaintiffs request that the Notice plan be approved.

### A.    The Notice Plan

The Notice Plan includes:  (a) comprehensive web-based notice using paid banner ads on targeted websites; (b) additional web-based notice using "keyword" searches displaying banner ads; (c) social media ads targeting relevant interest areas; (d) publication of the Summary Notice in *People* magazine and *USA Today*; (e) a dedicated, informational website through which Class Members can obtain more detailed information about the Settlement and access case documents, including the Long Form Notice; and (f) a toll-free telephone helpline by which Class Members can obtain additional information about the Settlement and request the Long Form Notice. *See* Dahl Aff. The Notice Plan has been designed to obtain over 124.7 million individual print and

---

[8] The Notice Plan is described in the Affidavit of Jeffrey D. Dahl with Respect to Settlement Notice Plan ("Dahl Aff."), attached to the Settlement Agreement as Exhibit C. *See* Dahl Aff. and supporting exhibits for more details on the sufficiency and proposed implementation of the Notice Plan.

digital impressions targeted to achieve sufficient scale and impression frequency to reach more than 75% of the estimated approximately 70 million Class Members.  (*Id.*)  Coverage and exposure will be further increased by the website, and the toll-free helpline.  (*Id.*)

### B.     The Proposed Notice is Adequate and Appropriate

The Court is given broad power over which procedures to use for providing notice so long as those procedures are consistent with the standards of reasonableness imposed by the due process clause. *Handschu v. Special Servs. Div.*, 787 F.2d 828, 833 (2d Cir. 1986) (the District Court "has virtually complete discretion as to the manner of giving notice to class members.").

"There are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements; the settlement notice must 'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'" *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 114 (2d. Cir. 2005).

In Dahl's expert opinion, the proposed Notice Plan meets the notice guidelines established by the Federal Judicial Center's Manual for Complex Litigation, 4th Edition (2004), as well the Federal Judicial Center's Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide (2010), and is consistent with notice programs approved previously by both State and Federal Courts.  Dahl Aff. ¶ 34.

This proposed method for providing notice to the Class is reasonable and should be approved. Notice to the Class will be achieved shortly after entry of the Preliminary Approval Order.  The Notice will be provided to Class Members so they have sufficient time to decide whether to participate in the settlement, object, or opt-out.

The Notice Plan provides sufficient detail.  It defines the Class, explains Class Members' rights, releases, and applicable deadlines, and describes in detail the injunctive terms of the

Settlement.  It plainly indicates the time and place of the hearing to consider approval of the Settlement, and the method for objecting to or opting out of the Settlement. It details the provisions for payment of attorneys' fees and expenses and case contribution awards to the class representatives, and provides contact information for Class Counsel.

Here, the Notice Plan provides numerous methods for Class Members to learn of the Settlement.  It requires: publication in *People* magazine and *USA Today*; postings and/or advertisements on Facebook; and the creation of a website to disseminate in-depth information. *See* Notice Plan.  The Notice informs Class Members of the Fairness Hearing, elements of the Settlement, and certification of the Class.  *Id.*  Accordingly, Plaintiffs respectfully request approval of the proposed Notice Plan.

## VII.   THE COURT SHOULD SCHEDULE THE FAIRNESS HEARING

Finally, the Court should schedule the time, date, and place of a Fairness Hearing to decide whether the settlement is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  In so doing, the Court would determine whether to grant final approval to the Settlement, as well as address Class Counsel's request for attorneys' fees, costs, and expenses and for awards to the Class Representatives, consider any objections and exclusions, and determine whether to dismiss the Litigation with prejudice.

Plaintiffs' proposed deadlines for filings in advance of the Fairness Hearing are set forth in paragraph 25 of the proposed Preliminary Approval Order submitted herewith.

## VIII.  CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court:  (1) provisionally approve the Settlement; (2) certify the Class for the purpose of the Settlement; (3) approve the form and manner of notice to the Class; and (4) set a date and time for the Fairness Hearing.

Respectfully submitted,

Dated: November 10, 2015                    **MILBERG LLP**

                                            By: _____
                                            Ariana J. Tadler
                                            Henry J. Kelston
                                            One Penn Plaza
                                            New York, New York 10119-0165

                                            **REESE LLP**

                                            By:   *s/ Michael R. Reese*
                                            Michael R. Reese
                                            George V. Granade
                                            100 West 93rd Street, 16th Floor
                                            New York, New York 10025

                                            ***Interim Co-Lead Class Counsel***