**MILBERG LLP**
ARIANA J. TADLER
HENRY J. KELSTON
One Penn Plaza, 50th Floor
New York, New York 10119-0165
Telephone:     (212) 594-5300
Facsimile:     (212) 868-1229
atadler@milberg.com
hkelston@milberg.com

**REESE LLP**
MICHAEL R. REESE
GEORGE V. GRANADE
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone:     (212) 643-0500
Facsimile:     (212) 253-4272
mreese@reesellp.com
ggranade@reesellp.com

*Class Counsel*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ) | Case No. 12-MD-02413-RRM-RLM |
| ) | |
| ) | |
| ) | **MEMORANDUM OF LAW IN SUPPORT** |
| *Frito-Lay North America, Inc. "All Natural"* ) | **OF PLAINTIFFS' UNOPPOSED MOTION** |
| *Litigation* ) | **FOR FINAL APPROVAL OF** |
| ) | **SETTLEMENT** |
| ) | |
| ) | |
| ) | |
| ) | |
| ) | |

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ...........................................................................................iii

I.   PRELIMINARY STATEMENT ..................................................................... 1

II.  FACTUAL AND PROCEDURAL HISTORY ................................................ 3

III. THE TERMS OF THE SETTLEMENT........................................................... 4

    **A.** Defendant Has Changed Product Labeling and Agrees To Injunctive Relief............ 4

    **B.** Defendant Agrees to Class Certification for Settlement Purposes Only.................... 5

    **C.** Defendant Will Pay the Notice and Class Action Administrator................................ 5

    **D.** Defendant Will Pay Court-Ordered Attorneys' Fees and Expenses ......................... 5

    **E.** Defendant Will Pay Court-Ordered Awards to the Class Representatives ................ 6

IV.  NOTICE TO THE CLASS ............................................................................ 6

V.   THE SETTLEMENT SHOULD BE FINALLY APPROVED ........................................ 7

    **A.** The Settlement Meets the Standards for Final Approval of a Class Action Settlement in the Second Circuit .................................................................. 8

    **B.** The Settlement Is Procedurally Fair: the Settlement is the Result of Good Faith, Arm's-Length Negotiations by Well-Informed, Highly-Experienced Counsel with the Assistance of a Mediator Conducted after Significant Discovery........................ 8

    **C.** The Settlement Is Substantively Fair: The *Grinnell* Factors Weigh in Favor of Granting Final Approval ........................................................................... 10

        **1.** The complexity, expense and likely duration of litigation (*Grinnell* factor 1) 11

        **2.** The reaction of the class to the settlement (*Grinnell* factor 2) ...................... 11

        **3.** The stage of the proceedings and the amount of discovery completed (*Grinnell* factor 3) ......................................................................... 12

        **4.** The risks of establishing liability, damages and of maintaining the class action through the trial (*Grinnell* factors 4, 5 and 6)................................. 13

        **5.** The ability of Defendants to withstand a greater judgment (*Grinnell* factor 7) ..................................................................................... 14

      **6.** The range of reasonableness of the settlement in light of the best possible recovery and in light of all the attendant risks of litigation (*Grinnell* factors 8 and 9) ........................................................................................................... 15

**VI.** THE COURT SHOULD CONFIRM CERTIFICATION OF THE CLASS FOR SETTLEMENT PURPOSES ............................................................................... 16

    **A.** The Class Meets All Rule 23(a) Prerequisites ........................................... 17

        **1.** Numerosity Under Rule 23(a)(1) .................................................. 17

        **2.** Commonality Under Rule 23(a)(2) ............................................... 18

        **3.** Typicality Under Rule 23(a)(3) ..................................................... 18

        **4.** Adequacy of Representation Under Rule 23(a)(4) ........................ 19

    **B.** The Class Meets the Requirements of Rule 23(b)(2) ................................. 20

**VII.** THE NOTICE TO THE CLASS SATISFIES THE REQUIREMENTS OF RULE 23 AND DUE PROCESS ............................................................................... 21

    **A.** The Method of Notice is Appropriate ...................................................... 22

    **B.** The Notice Plan is Adequate and Appropriate ......................................... 22

**VIII.** CONCLUSION .................................................................................................. 25

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ackerman v. Coca-Cola Co.*,
    No. 09 CV 395 (DLI)(RML), 2013 U.S. Dist. LEXIS 184232
    (E.D.N.Y. July 17, 2013) ......................................................................................... 21

*In re "Agent Orange" Prod. Liab. Litig..*,
    818 F.2d 145 (2d Cir. 1987) ..................................................................................... 21

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) .................................................................................................. 16

*In re Am. Bank Note Holographics*,
    127 F. Supp. 2d 418 (SDNY 2001) ........................................................................... 11

*Babcock v. C. Tech Collections, Inc.*,
    No. 1:14-CV-3124, 2017 U.S. Dist. LEXIS 44548 (E.D.N.Y. Mar. 27, 2017) .......... 11, 13

*In re Bear Stearns Cos., Inc. Sec., Deriv., & ERISA Litig.*,
    909 F. Supp. 2d 259 (S.D.N.Y. 2012) ........................................................................ 9

*Blessing v. Sirius XM Radio, Inc.*,
    507 F. App'x. 1 (2d Cir. 2012) .................................................................................. 8

*Charron v. Pinnacle Grp. N.Y. LLC*,
    874 F. Supp. 2d 179 (S.D.N.Y. 2012), *aff'd sub nom.*, 731 F.3d 241
    (2d Cir. 2013) ............................................................................................................ 14

*Charron v. Wiener*,
    731 F.3d 241 (2d Cir. 2013) .............................................................................. 8, 10, 19

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974) .............................................................................. *passim*

*Diaz v. Residential Credit Sols., Inc.*,
    299 F.R.D. 16 (E.D.N.Y. 2014) ................................................................................ 19

*Dupler v. Costco Wholesale Corp.*,
    705 F. Supp. 2d 231 (E.D.N.Y. 2010) ...................................................................... 11

*Ebbert v. Nassau Cty.*,
    No. CV 05-5445, 2011 U.S. Dist. LEXIS 150080 (E.D.N.Y. Dec. 22, 2011) .......... 11

*Ebin v. Kangadis Food, Inc.*,
 297 F.R.D. 561 (S.D.N.Y. 2014) ........................................................................................18

*Elkind v. Revlon Consumer Prods. Corp.*,
 No. CV 14-2484, 2017 U.S. Dist. LEXIS 24512 (E.D.N.Y. Feb. 17, 2017) ............................9

*Enriquez v. Cherry Hill Mkt. Corp.*,
 993 F. Supp. 2d 229 (E.D.N.Y. 2014) ................................................................................18

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
 No. 12-MD-2389, 2015 U.S. Dist. LEXIS 152668 (S.D.N.Y. Nov. 9, 2015),
 *aff'd*, 674 F. App'x 37 (2d Cir. 2016) ..............................................................................14

*Flores v. Mamma Lombardi's of Holbrook, Inc.*,
 104 F. Supp. 3d 290, 303 (E.D.N.Y. 2015) .......................................................................14

*Fogarazzao v. Lehman Bros., Inc.*,
 232 F.R.D. 176 (E.D.N.Y. 2005) ......................................................................................19

*Foti v. NCO Fin. Sys., Inc.*,
 No. 04-cv-00707, 2008 U.S. Dist. LEXIS 16511 (E.D.N.Y. Feb. 20, 2008) ........................10

*In re Global Crossing Sec. & ERISA Litig.*,
 225 F.R.D. 436 (S.D.N.Y. 2004) ......................................................................................10

*Goldberger v. Integrated Res., Inc.*,
 209 F.3d 43 (2d Cir. 2000)..............................................................................................10

*Guttmann v. Ole Mexican Foods, Inc.*,
 No. 14-cv-04845-HSG, 2016 U.S. Dist. LEXIS 100534
 (N.D. Cal. Aug. 1, 2016)................................................................................................15

*Handschu v. Special Servs. DIv.*,
 787 F.2d 828 (2d Cir. 1986)............................................................................................23

*Hecht v. United Collection Bureau, Inc.*,
 691 F.3d 218 (2d Cir. 2012)............................................................................................21

*Hughes v. Ester C Co.*,
 317 F.R.D. 333 (E.D.N.Y. 2016) ......................................................................................18

*Karic v. Major Auto. Cos.*,
 No. 09 CV 5708, 2016 U.S. Dist. LEXIS 57782 (E.D.N.Y. Apr. 27, 2016) ........................16

*Kurtz v. Kimberly-Clark Corp.*,
 No. 14-CV-1142, 2017 U.S. Dist. LEXIS 44576 (E.D.N.Y. Mar. 27, 2017) ........................18

*Lilly v. Jamba Juice Co.*,
No. 13-cv-02998, 2015 U.S. Dist. LEXIS 58451 (N.D. Cal. May 1, 2015) ..........................15

*In re Luxottica Grp. S.P.A. Sec. Litig.*,
233 F.R.D. 306 (E.D.N.Y. 2006) ...........................................................................12

*Maley v. Del Global Techs. Corp.*,
186 F. Supp. 2d 357 (S.D.N.Y. 2002) .....................................................................12

*Marisol A. v. Giuliani*,
126 F.3d 372 (2d Cir. 1997) ............................................................................17, 19

*McAnaney v. Astoria Fin. Corp.*,
No. 04-CV-1101, 2011 U.S. Dist. LEXIS 114768 (E.D.N.Y. Feb. 11, 2011) .....................12

*McReynolds v. Richards-Cantave*,
588 F.3d 790 (2d. Cir. 2009) .......................................................................8, 9, 10

*In re MetLife Demutulization Litig.*,
689 F. Supp. 2d 297 (E.D.N.Y 2010) ...........................................................8, 12, 23

*In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*,
241 F.R.D. 185 (S.D.N.Y. 2007) ..........................................................................20

*Moore v. Margiotta*,
581 F. Supp. 649 (E.D.N.Y. 1984) .......................................................................20

*Mullane v. Central Hanover Bank & Trust Co.*,
339 U.S. 306 (1950) ........................................................................................22

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
187 F.R.D. 465 (S.D.N.Y. 1998) ...........................................................................9

*Pa. Pub. Sch. Empls. Ret. Sys. v. Morgan Stanley & Co.*,
772 F.3d 111 (2d Cir. 2014) ...............................................................................17

*In re PaineWebber Ltd. P'ships Litig.*,
171 F.R.D. 104 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997) .....................12, 13, 14

*Parsons v. Ryan*,
754 F.3d 657 (9th Cir. 2014) ..............................................................................20

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
986 F. Supp. 2d 207 (E.D.N.Y. 2013), *rev'd on other grounds*, 827 F.3d 223
(2d Cir. 2016) ................................................................................................12

*In re Quaker Oats Labeling Litig.*,
   No. 5:10-cv-00502-RS, 2014 U.S. Dist. LEXIS 104817 (N.D. Cal. July 29,
   2014) ........................................................................................................15, 16, 21

*Robidoux v. Celani*,
   987 F.2d 931 (2d. Cir. 1993)...........................................................................17, 18

*In re Scotts EZ Seed Litig.*,
   304 F.R.D. 397 (S.D.N.Y. 2015) ..........................................................................18

*Spread Enters., Inc. v. First Data Merch. Servs. Corp.*,
   298 F.R.D. 54 (E.D.N.Y. 2014) ............................................................................17

*Sykes v. Mel S. Harris & Assocs. LLC*,
   780 F.3d 70 (2d Cir. 2015)........................................................................18, 20, 21

*In re Telik, Inc. Sec. Litig.*,
   576 F. Supp. 2d 570 (S.D.N.Y. 2008).....................................................................9

*United States v. New York*,
   No. 13-cv-4165, 2014 U.S. Dist. LEXIS 35274 (E.D.N.Y. Mar. 17, 2014)...........22

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011).......................................................................................18, 20

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005)................................................................................8, 22

*Willix v. Healthfirst, Inc.*,
   No. 07-cv-1143, 2011 U.S. Dist. LEXIS 21102 (E.D.N.Y. Feb. 18, 2011) ............13

**Statutes**

Magnuson-Moss Warranty Act.........................................................................................19

Rule 23.............................................................................................................................24

Rule 23(a).............................................................................................................. *passim*

Rule 23(a)(1).....................................................................................................................17

Rule 23(a)(2).....................................................................................................................18

Rule 23(a)(3).....................................................................................................................18

Rule 23(a)(4).....................................................................................................................19

Rule 23(b)...................................................................................................................16, 20

Rule 23(b)(2).................................................................................................................16, 20, 21

Rule 23(c)(2)(A) ...........................................................................................................21

Rule 23(c)(2)(B)............................................................................................................21

Rule 23(e)......................................................................................................................21, 22

Rule 23(e)(1).................................................................................................................21, 23

Rule 23(e)(2).................................................................................................................8

Rule 23(h)(1)................................................................................................................23

*USA Today* ..................................................................................................................22

Plaintiffs Julie Gengo, Chris Shake, Valarie Zuro, and Deborah Lawson ("Plaintiffs") respectfully submit this memorandum of law in support of Plaintiffs' Unopposed Motion for Final Approval of Settlement.[1]

## I.  PRELIMINARY STATEMENT

As discussed in detail in the Joint Declaration of Ariana J. Tadler and Michael R. Reese In Support of (1) Plaintiffs' Motion for Final Approval of Settlement and (2) Plaintiffs' Motion for Awards of Attorneys' Fees, Expenses, and Case Contribution Awards ("Joint Decl.") (filed concurrently herewith), Plaintiffs' Counsel achieved a favorable Settlement on behalf of the Class after more than five years of work, including substantial investigation and voluminous discovery, vigorously contested litigation, and extensive arm's-length negotiations under the guidance of an experienced and respected neutral mediator.

Plaintiffs alleged that Frito-Lay North America, Inc. ("Defendant" or "Frito-Lay") falsely and deceptively labeled and marketed various Tostitos, SunChips, and Fritos Bean Dip products as "Made with All Natural Ingredients" when, in fact, the Products were made from unnatural, genetically-modified organisms ("GMOs"). *See* Joint Decl., ¶ 5. From the outset, Plaintiffs' main objective in filing the lawsuit was to remedy the alleged deceptions in Frito-Lay's marketing and labeling of the Products. The Products are purchased by tens of millions of consumers each year in virtually every supermarket and convenience store in the country. Annual sales exceed $1.5 billion. Given the importance of the Products to Frito-Lay, and the prominence of the "Made With All Natural Ingredients" in the marketing and labeling of the Products, Plaintiffs did not

---

[1] The Parties' Class Action Settlement Agreement ("Settlement Agreement") was attached as Exhibit 1 to ECF No. 100-2 (the Joint Declaration of Ariana J. Tadler and Michael R. Reese In Support of Plaintiffs' Unopposed Motion Plaintiffs' Unopposed Motion for Preliminary Approval of Settlement, Provisional Certification of Settlement Class, and Approval of Notice Plan). Unless otherwise indicated, all capitalized terms have the same meaning that the Settlement Agreement ascribes to them.

expect this litigation to be quick or easy or inexpensive; indeed, it was intense, complex, and resource-intensive. *See* Joint Decl., ¶ 6.

Through this hard-fought litigation, and the resulting mediated Settlement Agreement, Plaintiffs have obtained significant relief for the Class: Frito-Lay has removed the "Made with All Natural Ingredients" claim from the Products, and has agreed not to label the Products as "natural" as long as the Products continue to include GMO ingredients and, further, not to label the Products as "natural" under any circumstances for the next five years, unless the ingredients in the Products are approved for use in products identified as "natural" by a federal agency or controlling regulatory body. This provision protects the Class against the potentially misleading use of a "natural" claim on the Products for *any* reason, not just the presence of GMOs in the Products. Frito-Lay has further agreed not to place an affirmative "non-GMO" claim on the Products at any time unless the claim is certified by an independent third-party certification organization. *See* Joint Decl., ¶ 7.

The labeling changes made by Frito-Lay and the very broad protections provided by the injunctive provisions represent significant and valuable benefits to the Class. Considering that this broad injunctive relief achieves Plaintiffs' primary objective in the litigation, and considering the risks of establishing liability, damages, and maintaining the class action through a trial, Plaintiffs have determined that the benefits of this Settlement outweigh the risks of continued litigation. The potential benefits of continued litigation would be injunctive relief plus potentially nominal monetary damages for Class members. But, even if Plaintiffs succeed at trial, it is unlikely that the injunctive relief obtained would be broader than that obtained in the Settlement and could, in fact, be narrower. *See* Joint Decl., ¶ 8.

Notably, Frito-Lay acknowledges that the litigation was an important factor in its decision to modify the challenged labeling policies and practices. *See* Joint Decl., ¶ 9.

This Settlement was achieved with the assistance of an independent, neutral mediator, former United States District Judge Richard J. Holwell (Ret.) (District Court of the Southern District of New York), after mediation sessions over a period of ten months. The Parties reached the mediated Settlement after conducting significant investigation, research, and extensive discovery and protracted and contentious discovery negotiations and motion practice. The Settlement takes into account the substantial risks the Parties would face if the litigation continued. *See* Joint Decl., ¶ 10.

Although the Court-ordered October 17, 2017 deadline for Class Members to file objections to the Settlement has not yet passed, as of the date of this Motion, Class Counsel are unaware of any objections to the Settlement. To the extent that any objections are submitted before the October 17, 2017 deadline, Plaintiffs may address those objections in a supplemental filing no later than November 4, 2017, seven calendar days before the November 11, 2017 Fairness Hearing. ECF No. 107, ¶ 16. *See* Joint Decl., ¶ 13.

Plaintiffs respectfully request that this Court: (1) grant final approval of the Settlement as fair, reasonable, and adequate; (2) confirm certification of the Class for the purpose of the Settlement and continuing the appointment of Plaintiffs Julie Gengo, Chris Shake, Valarie Zuro, and Deborah Lawson as representatives of the Class and Milberg LLP and Reese LLP as Class Counsel; and (3) enter the Final Judgment and Order in the forms substantially similar to the previously-filed Exhibits F and G to the Settlement Agreement (ECF No. 100-2).

## II.    FACTUAL AND PROCEDURAL HISTORY

A detailed description of the procedural and factual history of the litigation, the efforts of Plaintiffs' Counsel and the specific provisions and benefits of the Settlement are explained in the

accompanying Joint Declaration, filed concurrently with this brief. In the interest of brevity, it is not repeated here, but incorporated by reference.

## III.  THE TERMS OF THE SETTLEMENT

The Settlement provides that, in exchange for Frito-Lay's agreement to make changes to the labeling, marketing, or advertising of the Products, Class Members will release all claims against Frito-Lay and the other Released Persons that were or could have been asserted relating to the use of the word "natural" in describing the Products or presence of GMOs in the Products, except for claims of personal injury or wrongful death.

### A.  Defendant Has Changed Product Labeling and Agrees To Injunctive Relief

During the course of the litigation, Frito-Lay removed the "Made with All Natural Ingredients" claim from the Products. Frito-Lay acknowledges that the litigation was an important factor in its decision to modify the labeling and marketing challenged in this lawsuit.[2]

As part of the Settlement, Frito-Lay has agreed to further modify its labeling policies and practices for the Products. Specifically, the Settlement Agreement provides for the following:

- Frito-Lay will refrain from labeling, marketing, or advertising the Products as "Made With All Natural Ingredients" or "natural" unless the FDA issues express guidance, or federal or state legislation is enacted authorizing use of a "natural" claim on a product containing GMO ingredients. *See* Settlement Agreement, ¶ 4.1.1.

- Frito-Lay will not make a non-GMO claim on the Products unless the claim is certified by an independent third-party certification organization. *See* Settlement Agreement, ¶ 4.1.2.

- Frito-Lay will modify its main FAQ page at http://www.fritolay.com/faq and FAQ Nutrition Page at http://www.fritolay.com/nutrition/nutrition-faq.html to direct consumers looking for non-GMO ingredients to appropriate Frito-Lay products. *See* Settlement Agreement, ¶ 4.1.3.

---

[2] *See* Settlement Agreement, ¶ 5.1.

- In addition, to protect consumers against the potentially misleading use of a "natural" claim on the Products for reasons *other than* the presence of GMOs in the Products, for a period of five years, Frito Lay will not label the Products as "natural" unless the ingredients are approved or determined as acceptable for products identified as "natural" by a federal agency or controlling regulatory body. *See* Settlement Agreement, ¶ 4.1.1.2.

**B.    Defendant Agrees to Class Certification for Settlement Purposes Only**

For purposes of settlement only, the Parties seek confirmation of certification of the Class pursuant to Federal Rules of Civil Procedure 23 (a) and (b)(2). Defendant agreed to certification of the Class for purposes of achieving settlement and does not consent to certification of the Class (or to the propriety of class treatment) for any purpose other than to effectuate the Settlement.

**C.    Defendant Will Pay the Notice and Class Action Administrator**

The Settlement Agreement specifies that Defendant will pay the actual cost of class notice, up to $215,000. *See* Settlement Agreement, ¶ 6.1. The Court approved the designation of Dahl Administration, LLC to serve as the Court-appointed class action administrator. Preliminary Approval Order, ¶ 9.

**D.    Defendant Will Pay Court-Ordered Attorneys' Fees and Expenses**

The Settlement Agreement provides that Class Counsel may apply for $1,900,000 for fees and $200,000 in costs and expenses. Frito-Lay will pay up to these amounts, as awarded by the Court. These figures were agreed to by the Parties with the assistance of Judge Holwell as mediator after extensive negotiation and after agreement had been reached on all other substantive terms. The Parties recognize that the Court shall have the final authority to award the amount of fees and expenses. *See* Settlement Agreement, ¶ 10.1.

### E. Defendant Will Pay Court-Ordered Awards to the Class Representatives

The Settlement Agreement also provides that Defendant will not oppose an application for awards of up to $5,000 each to named plaintiffs Julie Gengo, Valarie Zuro, and Christopher Shake (each of whom sat for depositions) and up to $2,500 for Deborah Lawson (whose deposition was cancelled a few days before it was to take place). The Parties acknowledge the Court shall have the final authority to determine the amount of the awards up to these amounts in recognition of their service as plaintiffs in this action and the time expended by each of them. Defendant will pay up to these amounts, as awarded by the Court. *See* Settlement Agreement, ¶ 10.3.

## IV. NOTICE TO THE CLASS

The Notice Plan is being implemented in accordance with the terms the Court approved. (Preliminary Approval Order, ¶ 9). As discussed in the filing in connection with preliminary approval, the Parties developed a notice program with the assistance of Dahl Administration, LLC, a company that specializes in the development and implementation of notice and settlement administration, which in Dahl's expert opinion, provides the best notice practicable under the circumstances to the members of the Class and complies with Rule 23(c)(2)(B).[3]

Implementation of the Notice Plan is ongoing. Dahl will file affidavits or declarations concerning implementation of the Notice Plan on or before the Court-ordered November 7, 2017 deadline. Preliminary Approval Order, ¶¶ 18, 25g.

---

[3] The Notice Plan was described in the Affidavit of Jeffrey D. Dahl with Respect to Settlement Notice Plan, attached to the Settlement Agreement as Exhibit C (ECF No. 100-2) ("Dahl Affidavit").

## V.    THE SETTLEMENT SHOULD BE FINALLY APPROVED

The Settlement is fair, adequate, and reasonable. It provides substantial non-monetary benefits to the Class. The Settlement provides the primary relief sought by the Class—the assurance that the Products will not be labeled, marketed or advertised as "natural" unless the use of "natural" claims on products containing GMOs is expressly authorized by FDA guidance or state or federal legislation. The Settlement accomplishes this while avoiding both the uncertainty and the delay that would be associated with further litigation. It represents a fair compromise of the Parties' respective positions in the Litigation and enables each Party to put an end to the Litigation, thus avoiding its costs and risks. Finally, the Settlement was reached through arm's-length negotiations as part of a supervised mediation process. Class Counsel, who have significant experience in litigating class actions, support the Settlement as fair, reasonable, and adequate and providing reasonable relief to the Class.

Class Counsel worked steadfastly to litigate this matter and reach the Settlement. *See* Joint Decl., ¶¶ 15-46, 69. While Plaintiffs and Class Counsel believe the claims resolved have merit, they also recognize that there is significant expense and risk associated with continuing to prosecute the claims through trial and appeal. *Id.,* ¶ 69. Class Counsel has taken those uncertainties into account as well as the delays inherent in such litigation. *Id.* In the process of investigating and litigating this case, Class Counsel have conducted significant research on the various consumer protection statutes at issue as well as the overall legal landscape to determine the likelihood of success and the reasonable parameters for which like settlements have been approved. *Id.* They believe the Settlement provides significant relief to the Class. Accordingly, Class Counsel have determined that the Settlement is fair, reasonable, and adequate, and in the best interests of the Class. *Id.*

### A. The Settlement Meets the Standards for Final Approval of a Class Action Settlement in the Second Circuit

In the Second Circuit, "[t]here is a 'strong judicial policy in favor of settlements, particularly in the class action context.'" *MetLife*, 689 F. Supp. 2d 297, 330 (E.D.N.Y. 2010) (quoting *McReynolds v. Richards-Cantave*, 588 F.3d 790, 803 (2d. Cir. 2009)); *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (same). "[C]lass action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation." *MetLife*, 689 F. Supp. 2d at 330.

"A district court's approval of a settlement is contingent on a finding the settlement is 'fair, reasonable, and adequate.'" *Blessing v. Sirius XM Radio, Inc.*, 507 F. App'x. 1, 3 (2d Cir. 2012) (quoting Fed. R. Civ. P. 23(e)(2). The "fair, reasonable and adequate" standard effectively requires parties to show that a settlement is both: (1) procedurally fair and (2) substantively fair. *See Charron v. Wiener*, 731 F.3d 241, 247 (2d Cir. 2013) (citations omitted); *accord McReynolds v. Richards-Cantave*, 588 F.3d 790, 803–04 (2d Cir. 2009). In recognition of the "strong judicial policy in favor of settlements, particularly in the class action context," courts evaluating settlement agreements adopt a presumption of both their procedural and substantive fairness. *See McReynolds*, 588 F.3d at 803 (citing *Wal-Mart*, 396 F.3d at 116). As set forth in Sections "B" and "C" below, the Settlement is both procedurally and substantively fair, reasonable, and adequate and thus should be approved.

### B. The Settlement Is Procedurally Fair: the Settlement is the Result of Good Faith, Arm's-Length Negotiations by Well-Informed, Highly-Experienced Counsel with the Assistance of a Mediator Conducted after Significant Discovery

A proposed settlement is entitled to a "presumption of fairness" where, as here, the process leading to the proposed settlement was fairly conducted by highly qualified counsel who sought to obtain the best possible result for their clients (and, in the case of Class Counsel, the

Class). *See McReynolds*, 588 F.3d at 803; *Elkind v. Revlon Consumer Prods. Corp.*, No. CV 14-2484, 2017 U.S. Dist. LEXIS 24512, at *48-49 (E.D.N.Y. Feb. 17, 2017) (finding that "the neutral third party's involvement in settlement discussions, the extent of discovery, and the factual and legal analysis which took place [there] persuade[d] the Court that the settlement agreement was the product of serious, informed settlement negotiations between qualified counsel" which was entitled to a presumption of fairness); *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998) ("So long as the integrity of the arms' length negotiation process is preserved . . . a strong initial presumption of fairness attaches to the proposed settlement, and great weight is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation."); *see also In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 575 (S.D.N.Y. 2008) ("[A] class action settlement enjoys a 'presumption of correctness' where it is the product of arm's-length negotiations conducted by experienced, capable counsel.").

Here, counsel for the Parties have a substantial amount of experience in litigating class actions as well as negotiating class settlements. See Joint Decl., ¶¶ 94-96. As detailed above, before agreeing to a Settlement, Class Counsel conducted extensive investigation, engaged in discovery, and weighed the risks of continued litigation. It was through this process that Class Counsel was able to obtain a thorough understanding of the strengths and weaknesses of their case and Defendant's case and to evaluate and negotiate the Settlement.

The fairness of the settlement here is bolstered by the fact that the Parties engaged in mediation with the assistance of former United States District Judge Richard J. Holwell, serving as mediator. See Joint Decl., ¶¶ 39-41. The participation of an experienced mediator in settlement negotiations further establishes a settlement's fairness. *See Elkind*, 2017 U.S. Dist.

LEXIS 24512, at *48-49; *In re Bear Stearns Cos., Inc. Sec., Deriv., & ERISA Litig.*, 909 F. Supp. 2d 259, 265 (S.D.N.Y. 2012) (finding the arm's-length negotiation element "amply satisfied" where the parties, "represented by highly experienced and capable counsel, engaged in extensive arms' length negotiations, which included multiple sessions mediated by . . . an experienced and well-regarded mediator of complex . . . cases.").

### C. The Settlement Is Substantively Fair: The *Grinnell* Factors Weigh in Favor of Granting Final Approval

To demonstrate the substantive fairness of a settlement, a party must show that as many of the nine factors the Second Circuit U.S. Court of Appeals set out in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) ("*Grinnell*"), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000), as possible weigh in favor of approving the settlement. *Charron*, 731 F.3d at 247 (citations omitted).

The nine *Grinnell* factors are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement . . . in light of the best possible recovery; and (9) the range of reasonableness of the settlement . . . to a possible recovery in light of all the attendant risks of litigation.

*McReynolds*, 588 F.3d at 804 (quoting *Grinnell*, 495 F.2d at 463). The Court need not find that each of the nine factors is satisfied; rather, a court considers the totality of these factors in light of the particular circumstances. *Foti v. NCO Fin. Sys., Inc.*, No. 04-cv-00707, 2008 U.S. Dist. LEXIS 16511, at *16 (E.D.N.Y. Feb. 20, 2008) (*citing In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 456 (S.D.N.Y. 2004)). These factors favor approval of the Settlement as fair, reasonable, and adequate.

### 1. The complexity, expense and likely duration of litigation (*Grinnell* factor 1)

Consumer class action lawsuits, like this action, are complex, expensive, and lengthy. *See, e.g., Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 239 (E.D.N.Y. 2010). As described above, Plaintiffs filed this action almost six years ago. Since then, the action has prompted multiple motions to transfer, a motion for dismissal, private mediation, extensive discovery, and multiple disputes over its scope. Should this Court not approve the Settlement, this lengthy and contentious litigation would resume, with disputes likely occurring over remaining discovery, class certification, summary judgment motions, and expert testimony. Moreover, the benefits of reverting to litigation and the likelihood of success would be uncertain.

### 2. The reaction of the class to the settlement (*Grinnell* factor 2)

It is still somewhat premature to address this factor. The deadline for Class Members to file objections to the Settlement is October 17, 2017. Preliminary Approval Order, ¶¶ 11, 12, 25c-d. Although this deadline has not yet passed, as of the date of this motion, Class Counsel are unaware of any objections to the Settlement.[4] *See* Joint Decl., ¶ 13.

"'It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy. . . . In fact, the lack of objections may well evidence the fairness of the [s]ettlement.'" *Ebbert v. Nassau Cty.*, No. CV 05-5445, 2011 U.S. Dist. LEXIS 150080, at *26 (E.D.N.Y. Dec. 22, 2011) (quoting *In re Am. Bank Note Holographics,* 127 F. Supp. 2d 418, 425 (S.D.N.Y. 2001)); *Babcock v. C. Tech Collections, Inc*., No. 1:14-CV-3124, 2017 U.S. Dist. LEXIS 44548, at *30 (E.D.N.Y. Mar. 27, 2017) (quoting

---

[4] To the extent that any objections are submitted before the October 17, 2017 deadline, Plaintiffs may address those objections in a supplemental filing no later than November 7, 2017, seven calendar days before the November 14, 2017 Fairness Hearing. Preliminary Approval Order, ¶¶ 16, 25f.

*Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 357, 362-63 (S.D.N.Y. 2002) (same); *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997) ("'the absence of objectants may itself be taken as evidencing the fairness of a settlement.'") (citation omitted), *aff'd*, 117 F.3d 721 (2d Cir. 1997); *see also In re Luxottica Grp. S.P.A. Sec. Litig.*, 233 F.R.D. 306, 311-12 (E.D.N.Y. 2006).

A relatively small number of objections compared to the overall size of the Class would weigh in favor of the proposed Settlement. *McAnaney v. Astoria Fin. Corp.,* No. 04-CV-1101, 2011 U.S. Dist. LEXIS 114768, at *18 (E.D.N.Y. Feb. 11, 2011) ("small number of objections is convincing evidence of strong support by class members"); *MetLife,* 689 F. Supp. 2d at 372 (collecting cases in which a relatively small number of objectors indicated a fair and favorable settlement which warranted approval).

### 3. The stage of the proceedings and the amount of discovery completed (*Grinnell* factor 3)

The third *Grinnell* factor—the stage of the proceedings and the amount of discovery completed—considers "whether Class Plaintiffs had sufficient information on the merits of the case to enter into a settlement agreement . . . and whether the Court has sufficient information to evaluate such a settlement." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 986 F. Supp. 2d 207, 224 (E.D.N.Y. 2013) (citations omitted), *rev'd on other grounds*, 827 F.3d 223 (2d Cir. 2016).

Here, after the Court's August 29, 2013 Order on the motion to dismiss, the Parties engaged in significant discovery, including interrogatories, requests for admission, document production and litigation of multiple motions to compel. See Joint Decl., ¶¶ 27-37. Defendant has produced—and Plaintiffs have reviewed—approximately 325,000 pages of documents to date, including more than 18,000 produced consequent to Magistrate Judge Mann's order

granting Plaintiffs' Motion to Compel additional discovery. *Id.*, ¶¶ 28, 75. Plaintiffs also subpoenaed and obtained documents from PepsiCo and several third-party retailers of the Products and deposed five Frito-Lay witnesses in Dallas, Texas, near Frito-Lay headquarters. *Id.*, ¶¶ 34-35. Thus, Plaintiffs had sufficient information to evaluate the terms of the proposed settlement.

### 4. The risks of establishing liability, damages and of maintaining the class action through the trial (*Grinnell* factors 4, 5 and 6)

The fourth, fifth, and sixth *Grinnell* factors—the risks of effecting class certification, establishing or incurring liability, damages and burdens of prosecuting the class action through the trial—naturally weigh in favor of approving the Settlement Agreement. "'Litigation inherently involves risks' both in establishing liability and damages." *Babcock v. C. Tech Collections, Inc.*, No. 1:14-CV-3124, 2017 U.S. Dist. LEXIS 44548, at *16 (E.D.N.Y. Mar. 27, 2017) (quoting *In re PaineWebber*, 171 F.R.D. at 126); *Willix v. Healthfirst, Inc.*, No. 07-cv-1143, 2011 U.S. Dist. LEXIS 21102, at *11 (E.D.N.Y. Feb. 18, 2011) (citation omitted) (same).

In the absence of a settlement, this expensive and protracted litigation would continue on, with no guaranteed or inevitable favorable outcome. Although Plaintiffs believe that they could succeed in obtaining the certification of a class here, they also recognize that they face several obstacles to obtaining and maintaining class certification. First, it may be difficult (although not impossible) to quantify the precise amount of monetary damages suffered by the class. Plaintiffs recognize the challenge of quantifying the effect of the "Made With All Natural Ingredients" claim across more than twenty separate products, where the time periods during which the challenged claim appeared on the Product packaging vary not only among the Products but also among the various package sizes in which each Product was sold. The variations in the labeling dates also may create difficulties in ascertaining class members, as consumers may have

difficulty recalling which variety and which package size they purchased during a particular time period. Class Counsel is also mindful of the inherent problems of proof related to the claims and defenses asserted in the Litigation. *See* Joint Decl., ¶ 76.

### 5. The ability of Defendants to withstand a greater judgment (*Grinnell* factor 7)

The seventh *Grinnell* factor—the ability of a defendant to withstand a greater judgment—has, in practice, transformed into an acknowledgement that it is more important that a class receive some relief than possibly "yet more" relief. *Charron v. Pinnacle Grp. N.Y. LLC*, 874 F. Supp. 2d 179, 201 (S.D.N.Y. 2012), *aff'd sub nom.*, 731 F.3d 241 (2d Cir. 2013). "Courts have recognized that a Defendant's ability to pay is much less important than the other *Grinnell* factors, especially where the other factors weigh in favor of approving settlement." *Flores v. Mamma Lombardi's of Holbrook, Inc.*, 104 F. Supp. 3d 290, 303 (E.D.N.Y. 2015) (citations omitted).

According to PepsiCo's 2016 Annual Report, Frito-Lay's net revenues exceeded $15.5 billion in 2016. As such, Plaintiffs have no reason to believe that Frito-Lay could not withstand a monetary judgment. But the fact that a defendant is able to pay more than it offers in settlement does not, standing alone, indicate that a settlement is unreasonable or inadequate. See Joint Decl., ¶ 77. *Flores*, 104 F. Supp. 3d at 303 (citations omitted) ("defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair."); *In re Facebook, Inc. IPO Sec. & Derivative Litig.*, No. 12-MD-2389, 2015 U.S. Dist. LEXIS 152668, at *15 (S.D.N.Y. Nov. 9, 2015) (same), *aff'd*, 674 F. App'x 37 (2d Cir. 2016); *In re PaineWebber*, 171 F.R.D. at 129.

6. **The range of reasonableness of the settlement in light of the best possible recovery and in light of all the attendant risks of litigation (*Grinnell* factors 8 and 9)**

The relief provided by the Settlement Agreement is within the range of reasonableness, in light of the best possible recovery and in light of all the attendant risks of litigation. Courts have consistently approved injunction-only settlement agreements that resolve deceptive and false food labeling class actions. *See, e.g., Guttmann v. Ole Mexican Foods, Inc.*, No. 14-cv-04845-HSG, 2016 U.S. Dist. LEXIS 100534 (N.D. Cal. Aug. 1, 2016); *Lilly v. Jamba Juice Co.*, No. 13-cv-02998, 2015 U.S. Dist. LEXIS 58451 (N.D. Cal. May 1, 2015); *In re Quaker Oats Labeling Litig.*, No. 5:10-cv-00502-RS, 2014 U.S. Dist. LEXIS 104817 (N.D. Cal. July 29, 2014).

Should Plaintiffs succeed at trial, the injunctive relief obtained is unlikely to be broader than that obtained in the Settlement and could, in fact, be narrower. The Settlement Agreement provides the primary relief sought by the Class—the labeling and marketing of the Products have been modified and, as long as the Products contain GMOs, they will not be labeled, marketed or advertised as "natural" unless the use of "natural" claims on products containing GMOs is expressly authorized by FDA guidance or state or federal legislation. Further, and providing even broader benefit to the Class, the Products will not be labeled as "natural" under any circumstances for the next five years, unless the ingredients in the Products are approved for use in products identified as "natural" by a federal agency or controlling regulatory body. *See* Joint Decl., ¶ 79.

Frito-Lay acknowledges, for purposes of settlement, that the litigation was an important factor in its decision to modify the labeling and marketing challenged in this lawsuit. *See* Settlement Agreement, ¶ 5.1. The Settlement Agreement provides the primary relief sought in the Litigation – *i.e.,* injunctive relief that prohibits and restricts the Products from being labeled,

marketed or advertised as "natural" unless the use of "natural" claims on products containing GMOs is expressly authorized by FDA guidance or state or federal legislation. The Settlement prohibits the labeling, marketing or advertising of the Products as "natural" for a period of five years unless the ingredients are expressly approved or determined as acceptable for products identified as "natural" by a federal agency or controlling regulatory body. The Settlement also prohibits the placement of an affirmative "non-GMO" claim on the Products unless the claim is certified by an independent third-party certification organization. *See* Settlement Agreement, §§ 3-4. This relief constitutes a "complete relabeling of . . . challenged products," and amounts to "meaningful injunctive relief . . . within the range of possible recoveries by the Class." *See In re Quaker Oats*, 2014 U.S. Dist. LEXIS 104817, *8. Thus, consideration of the range of reasonableness of the settlement in light of the best possible recovery and in light of all the attendant risks of litigation weighs strongly in favor of approving the Settlement. *Karic v. Major Auto. Cos.*, No. 09 CV 5708, 2016 U.S. Dist. LEXIS 57782, at *23 (E.D.N.Y. Apr. 27, 2016) (finding settlement reasonable where "proposed settlement provides a meaningful benefit to the Class Members."). *See* Joint Decl., ¶¶ 80.

Collectively and independently, the *Grinnell* factors warrant a conclusion that the Settlement is fair, adequate, and reasonable. Plaintiffs respectfully request that the Court grant final approval of the settlement.

## VI. THE COURT SHOULD CONFIRM CERTIFICATION OF THE CLASS FOR SETTLEMENT PURPOSES

A court may certify a settlement class upon finding that the action underlying the settlement satisfies all Rule 23(a) prerequisites and the requirements of Rule 23(b). *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619–22 (1997). As set forth more fully below, the proposed settlement class satisfies all of the prerequisites of Rule 23(a) and (b)(2). In its August

24, 2017 Memorandum & Order, the Court previously certified the Class under Rule 23(b)(2), for settlement purposes only, while providing Class Members who do not wish to participate in the Settlement the right to submit written requests to be "excluded from" or to "opt-out" of the Settlement. Plaintiffs respectfully ask the Court to confirm certification of the Class for settlement purposes.

### A. The Class Meets All Rule 23(a) Prerequisites

Rule 23(a) has four prerequisites for certification of a class: (i) numerosity; (ii) commonality; (iii) typicality; and (iv) adequate representation. The Class meets each of these four prerequisites and, consequently, satisfies Rule 23(a).

### 1. Numerosity Under Rule 23(a)(1)

Under the numerosity prerequisite of Rule 23(a), plaintiffs must show that their proposed class is "so numerous that joinder of all [its] members is impracticable." Fed. R. Civ. P. 23(a)(1). The Second Circuit has consistently treated this prerequisite liberally, explaining that numerosity will be found where a proposed class is "obviously numerous." *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997); *see also Robidoux v. Celani*, 987 F.2d 931, 935 (2d. Cir. 1993). Though no magic number of class members exists for meeting the numerosity prerequisite, courts "presume [the prerequisite is met] for classes larger than forty members." *Pa. Pub. Sch. Empls. Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 120 (2d Cir. 2014); *Spread Enters., Inc. v. First Data Merch. Servs. Corp.*, 298 F.R.D. 54, 67 (E.D.N.Y. 2014) ("a court may also make common sense assumptions without the need for precise quantification of the class.") (citation omitted).

Here, the Class is "obviously numerous." *Marisol A.*, 126 F.3d at 376. The Products are purchased by consumers each year in virtually every supermarket and convenience store in the

country. Annual sales exceed $1.5 billion. Accordingly, the Class here clearly meets the numerosity prerequisite of Rule 23(a). *See* Joint Decl., ¶¶ 6, 83.

### 2. Commonality Under Rule 23(a)(2)

Under the commonality prerequisite of Rule 23(a), plaintiffs must show that "questions of law or fact common to the [proposed] class" exist. Fed. R. Civ. P. 23(a)(2). The Supreme Court has clarified that this prerequisite will be found where a proposed class' members have brought claims that all centrally "depend upon [the resolution of] a common contention." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). The Second Circuit has construed this instruction liberally, holding that plaintiffs need only allege injuries "derive[d] from defendants' . . . unitary course of conduct. . . ." *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 84 (2d Cir. 2015).

Here, Class Members bring claims that centrally depend on the resolution of a common contention—whether the Products' labeling would mislead a reasonable consumer. *See In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 409-10 (S.D.N.Y. 2015); *Ebin v. Kangadis Food, Inc.*, 297 F.R.D. 561, 568 (S.D.N.Y. 2014) ; *Kurtz v. Kimberly-Clark Corp.*, No. 14-CV-1142, 2017 U.S. Dist. LEXIS 44576, at *97-106 (E.D.N.Y. Mar. 27, 2017); *Hughes v. Ester C Co.*, 317 F.R.D. 333, 344-46 (E.D.N.Y. 2016). Thus, the commonality prerequisite of Rule 23(a) is satisfied here.

### 3. Typicality Under Rule 23(a)(3)

Under the typicality prerequisite of Rule 23(a), plaintiffs must show that their proposed class representatives' claims "are typical of the [class'] claims." Fed. R. Civ. P. 23(a)(3). The Second Circuit has interpreted this prerequisite to require plaintiffs to show that "the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented. . . ." *Robidoux*, 987 F.2d at 936–37 (citations omitted). Courts within the Second

Circuit, moreover, have repeatedly found this prerequisite easily satisfied, particularly in consumer class action cases. *See Enriquez v. Cherry Hill Mkt. Corp.*, 993 F. Supp. 2d 229, 233 (E.D.N.Y. 2014); *Fogarazzao v. Lehman Bros., Inc.*, 232 F.R.D. 176, 180 (E.D.N.Y. 2005) ("The typicality requirement is not demanding." (internal citations and quotation marks omitted)).

Here, the claims of the representative Plaintiffs are typical of the Class' claims. The Plaintiffs and the rest of the Class purchased the Products and challenge the use of "natural" labeling on the Products, which Plaintiffs contend were made from corn containing GMOs and which Plaintiffs contend is misleading and violates the Magnuson-Moss Warranty Act,[5] California, Florida, and New York deceptive trade practices statutes and the common law. *See* Joint Decl., ¶¶ 85, 17, 19, 21. Again, as with the numerosity and commonality prerequisites, the typicality prerequisite is met.

### 4. Adequacy of Representation Under Rule 23(a)(4)

Finally, under the adequate representation prerequisite of 23(a), plaintiffs must show that their proposed class representatives will "fairly and adequately protect the interests of the [proposed] class." Fed. R Civ. P. 23(a)(4). To do this, plaintiffs must demonstrate that: (1) their class representatives do not have conflicting interests with other class members; and (2) their class counsel is "qualified, experienced and generally able to conduct the litigation." *Marisol A.*, 126 F.3d at 378.

Courts in the Second Circuit have consistently applied a lenient standard for meeting both of the adequate representation prerequisites. *Diaz v. Residential Credit Sols., Inc.*, 299 F.R.D. 16, 20–21 (E.D.N.Y. 2014). For the first requirement (adequacy of class representatives), Second

---

[5] Plaintiffs' Magnuson-Moss claims have been dismissed but remain subject to possible appeal.

Circuit courts have required that plaintiffs merely show that "no fundamental conflicts exist" between a class' representative(s) and its members. *See Charron*, 731 F.3d at 249. For the second requirement (adequacy of class counsel), courts in the Second Circuit generally presume it met, only finding it not met in instances where class counsel represents other clients whose interests are inherently at odds with the class' interests or also acts as a class representative. *Moore v. Margiotta*, 581 F. Supp. 649, 652 (E.D.N.Y. 1984); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 241 F.R.D. 185, 199 n.99 (S.D.N.Y. 2007) ("[i]n the absence of proof to the contrary, courts presume that class counsel is competent and sufficiently experienced to prosecute vigorously the action on behalf of the class.") (citations omitted).

Here, the adequate representation prerequisite is satisfied. The Plaintiffs have no fundamental conflicts with other Class Members' interests, as they seek the same type of relief (injunctive relief) and assert the same legal claims, as other Class Members. They have diligently served as class representatives throughout this litigation, providing discovery responses and sitting for their depositions. Similarly, Class Counsel are qualified, experienced and able to conduct the litigation and have extensive experience in class action litigation and consumer advocacy. *See* Joint Decl., ¶¶ 86, 94-96. Thus, the adequate representation prerequisite is met.

**B.      The Class Meets the Requirements of Rule 23(b)(2)**

For certification, in addition to satisfying all Rule 23(a) prerequisites, a settlement class must also satisfy Rule 23(b). Fed. R. Civ. P. 23(b). The Class, as a class seeking injunctive relief, meets all Rule 23(b)(2) requirements, and the Court should certify it for purposes of this Settlement.

Rule 23(b)(2) reads: "A class action may be maintained if . . . the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole . . . ." *Id.*

The Second Circuit has interpreted this to mean that class-wide injunctive relief must provide benefit to all class members (even if in different ways). *Sykes*, 780 F.3d at 99 (citing *Dukes*, 564 U.S. at 356-67); *see also Parsons v. Ryan*, 754 F.3d 657, 688 (9th Cir. 2014) (holding the same).

Plaintiffs here seek class-wide injunctive relief. Like the class members in *Sykes*, this relief would, in remedying the Products' labeling, benefit each Class Member at once. Equitable relief in the form of an injunction would be an appropriate remedy. *See Ackerman v. Coca-Cola Co.*, No. 09 CV 395 (DLI)(RML), 2013 U.S. Dist. LEXIS 184232, at *71 (E.D.N.Y. July 17, 2013). Accordingly, the Class should be found to meet Rule 23(b)(2); and, as the Class also satisfies the Rule 23(a) prerequisites, the Class should be certified for injunctive relief.

## VII. THE NOTICE TO THE CLASS SATISFIES THE REQUIREMENTS OF RULE 23 AND DUE PROCESS

Rule 23(e) provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by" a proposed settlement. Fed. R. Civ. P. 23(e)(1).

For a Rule 23(b)(2) class such as the one in this Settlement, Rule 23(c)(2)(A) states that "the court may direct appropriate notice to the class." Here, the Parties developed a notice program with the assistance of Dahl Administration, LLC, a company that specializes in the development and implementation of notice and settlement administration, which in Dahl's expert opinion, provides the best notice practicable under the circumstances to the members of the Class and complies with Rule 23(c)(2)(B).[6] *See, e.g., In re Quaker Oats Labeling Litig.*, 2014 U.S. Dist. LEXIS 104817, *6.

---

[6] The Notice Plan was described in the Affidavit of Jeffrey D. Dahl with Respect to Settlement Notice Plan, attached to the Settlement Agreement as Exhibit C (ECF No. 100-2). It and its supporting exhibits provide more details on the sufficiency and proposed implementation of the Notice Plan.

### A.     The Method of Notice is Appropriate

"Constructive notice by publication may be sufficient to satisfy due process 'as to persons whose whereabouts or interest c[an] not be determined through due diligence.'" *Hecht v. United Collection Bureau, Inc.*, 691 F.3d 218, 224 (2d Cir. 2012) (quoting *In re "Agent Orange" Prod. Liab. Litig.,* 818 F.2d 145, 168 (2d Cir. 1987) (citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 317-318 (1950)).

As discussed in the Dahl affidavit filed in connection with preliminary approval, the notice to the Class includes: (a) comprehensive web-based notice using paid banner ads on targeted websites; (b) additional web-based notice using "keyword" searches displaying banner ads; (c) social media ads targeting relevant interest areas; (d) publication of the Summary Notice in *People* magazine and *USA Today*; (e) a dedicated, informational website through which Class Members can obtain more detailed information about the Settlement and access case documents, including the Long Form Notice; and (f) a toll-free telephone helpline by which Class Members can obtain additional information about the Settlement and request the Long Form Notice. *See* Dahl Aff. The Notice Plan has been designed to obtain over 124.7 million individual print and digital impressions targeted to achieve sufficient scale and impression frequency to reach more than 75% of the estimated approximately 70 million Class Members. (*Id.*) Coverage and exposure will be further increased by the website, and the toll-free helpline. (*Id.*)

The method used to provide notice to the Class has been reasonable and practicable under the circumstances. *See* Joint Decl., ¶¶ 99-100.

### B.     The Notice Plan is Adequate and Appropriate

"There are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements; the settlement notice must 'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that

are open to them in connection with the proceedings.'" *Wal-Mart*, 396 F.3d at 114; *United States v. New York*, No. 13-cv-4165, 2014 U.S. Dist. LEXIS 35274, at *17 (E.D.N.Y. Mar. 17, 2014) ("Notice need not be perfect, but need be only the best notice practicable under the circumstances, and every class member need not receive actual notice so long as class counsel acted reasonably in choosing the means likely to inform potential class members.").

The Court is given broad power over which procedures to use for providing notice so long as those procedures are consistent with the standards of reasonableness imposed by the due process clause. *MetLife*, 689 F. Supp. 2d at 345 (subject to the requirements that the notice is provided in a "reasonable manner," "the district court has virtually complete discretion as to the manner of giving notice to class members.") (quoting Fed. R. Civ. P. 23(e)(1) and (h)(1); *Handschu v. Special Servs. Div.*, 787 F.2d 828, 833 (2d Cir. 1986)).

As discussed in the Dahl affidavit filed in connection with preliminary approval, in Dahl's expert opinion, the Notice Plan meets the notice guidelines established by the Federal Judicial Center's Manual for Complex Litigation, 4th Edition (2004), as well the Federal Judicial Center's Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide (2010), and is consistent with notice programs approved previously by both State and Federal Courts. Dahl Aff. ¶ 34.

Notice to the Class commenced shortly after entry of the Preliminary Approval Order. The Notice is being provided to Class Members so they have sufficient time to decide whether to participate in the settlement, object, or opt-out. *See* Joint Decl., ¶ 102.

The Notice provides sufficient detail. It defines the Class, explains Class Members' rights, releases, and applicable deadlines, and describes in detail the injunctive terms of the Settlement. It plainly indicates the time and place of the hearing to consider approval of the

23

Settlement, and the method for objecting to or opting out of the Settlement. It details the provisions for payment of attorneys' fees and expenses and case contribution awards to the class representatives, and provides contact information for Class Counsel. *See* Joint Decl., ¶ 103.

As such, the Notice is adequate and meets the requirements of Rule 23 and due process.

## VIII.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court: (1) grant final approval of the Settlement as fair, reasonable, and adequate; (2) confirm certification of the Class for the purpose of the Settlement; and (3) enter the Final Judgment and Order in the forms substantially similar to the previously-filed Exhibits F and G to the Settlement Agreement (ECF No. 100-2).

Respectfully submitted,

Dated: October 3, 2017

**MILBERG LLP**


By: *s/ Ariana J. Tadler*_____
Ariana J. Tadler
atadler@milberg.com
Henry J. Kelston
hkelston@milberg.com
One Penn Plaza, 50th Floor
New York, New York 10119-0165
Tel: (212) 594-5300
Fax: (212) 868-1229

**REESE LLP**


By: *s/ Michael R. Reese*_____
Michael R. Reese
mreese@reesellp.com
George V. Granade
ggranade@reesellp.com
100 West 93rd Street, 16th Floor
New York, New York 10025
Tel: (212) 643-0500
Fax: (212) 253-4272

*Class Counsel*