**MILBERG LLP**
ARIANA J. TADLER
HENRY J. KELSTON
One Penn Plaza, 50th Floor
New York, New York 10119-0165
Telephone:     (212) 594-5300
Facsimile:     (212) 868-1229
atadler@milberg.com
hkelston@milberg.com

**REESE LLP**
MICHAEL R. REESE
GEORGE V. GRANADE
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone:     (212) 643-0500
Facsimile:     (212) 253-4272
mreese@reesellp.com
ggranade@reesellp.com

*Class Counsel*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| ) | Case No. 12-MD-02413-RRM-RLM |
| ) | |
| ) | |
| ) | **MEMORANDUM OF LAW IN SUPPORT** |
| *Frito-Lay North America, Inc. "All Natural"* ) | **OF PLAINTIFFS' MOTION FOR** |
| *Litigation* ) | **AWARDS OF ATTORNEYS' FEES,** |
| ) | **EXPENSES, AND CASE CONTRIBUTION** |
| ) | **AWARDS** |
| ) | |
| ) | |
| ) | |
| ) | |

# TABLE OF CONTENTS

**I.**  Preliminary Statement ............................................................................................. 1

**II.**  The Mediated Attorneys' Fee Request Amount Provided Under the Settlement Agreement is Fair and Reasonable and Should be Approved ........................................................... 4

**A.**  Negotiated Fee Agreements are Favored and the Mediated Attorneys' Fee Request Amount Was Mediated Only After Agreement on Substantive Terms ....................................... 4

**B.**  The Mediated Attorneys' Fee Will Not Reduce the Value of the Settlement. ................... 5

**C.**  The Mediated Attorneys' Fee Request Amount is Fair and Reasonable Under the Lodestar Method and is Actually Less Than Plaintiffs' Counsel's Lodestar ............................................. 7

   **1.**  The Mediated Fee Request is Fair and Reasonable Under the Lodestar Method ........... 7

     a.  Plaintiffs' Counsel's Hours are Reasonable ................................................... 8

     b.  Plaintiffs' Counsel's Hourly Rates are Reasonable .......................................... 9

**D.**  The Mediated Attorneys' Fee Request Amount is Fair and Reasonable Under a *Goldberger* Analysis ........................................................................................................ 10

   **1.**  Plaintiffs' Counsel Expended Significant Time and Labor in This Litigation [*Goldberger* Factor 1: The Time and Labor Expended by Counsel] .................................... 11

   **2.**  The Underlying Litigation was Large and Involved Complex Factual and Legal Issues [*Goldberger* Factor 2: The Magnitude and Complexities of the Litigation] ......................... 12

   **3.**  Plaintiffs' Counsel Faced Significant Risks at Every Stage of the Litigation [*Goldberger* Factor 3: The Risk of the Litigation] ................................................................. 13

   **4.**  There was a High Quality of Representation [*Goldberger* Factor 4: The Quality of Representation] .......................................................................................................... 17

   **5.**  The Mediated Fee Request is Fair and Reasonable in Relation to the Settlement [*Goldberger* Factor 5: The Requested Fee in Relation to the Settlement] ............................ 18

   **6.**  Public Policy Favors Approving Class Counsel's Mediated Fee Request [*Goldberger* Factor 6: Public Policy Considerations] ................................................................ 20

**III.**  The Court Should Approve the Mediated Reimbursement of Plaintiffs' Counsel's Costs and Expenses ....................................................................................................... 21

**IV.**     The Court Should Approve the Mediated Proposed Awards to the Class Representative Plaintiffs ....................................................................................................................... 22

**V.**     Conclusion ....................................................................................................................... 25

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Am. Bank Note Holographics, Inc., Sec. Litig.*,
    127 F. Supp. 2d 418 (S.D.N.Y. 2001)......................................................................14

*Anyoku v. World Airways (In re Nigeria Charter Flights Litig.)*,
    No. 04-MD-1613, 2011 U.S. Dist. LEXIS 155180 (E.D.N.Y. Aug. 25, 2011).....13, 20, 21, 22

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
    No. 02 Civ. 5575 (SWK), 2006 U.S. Dist. LEXIS 17588 (S.D.N.Y. Apr. 6,
    2006) .......................................................................................................................15

*Babcock v. C. Tech Collections, Inc.*,
    No. 1:14-CV-3124 (MDG), 2017 U.S. Dist. LEXIS 44548 (E.D.N.Y. Mar. 27,
    2017) ....................................................................................................................6, 12

*Bellifemine v. Sanofi-Aventis U.S. LLC*,
    No. 07-cv-2207 (JGK), 2010 U.S. Dist. LEXIS 79679 (S.D.N.Y. Aug. 6,
    2010) .......................................................................................................................23

*Blessing v. Sirius XM Radio Inc.*,
    507 F. App'x 1 (2d Cir. 2012) ..............................................................................3, 5

*Blum v. Stenson*,
    465 U.S. 886 (1984)..................................................................................................9

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974).....................................................................................14

*In re Colgate-Palmolive Co. ERISA Litig.*,
    36 F. Supp. 3d 344, 354 (S.D.N.Y. 2014) ..............................................................23

*In re Cont'l Ill. Sec. Litig.*,
    962 F.2d 566 (7th Cir. 1992) ....................................................................................5

*Dupler v. Costco Wholesale Corp.*,
    705 F. Supp. 2d 231 (E.D.N.Y. 2010) ...............................................................12, 23

*Ebbert v. Nassau Cty.*,
    No. CV 05-5445 (AKT), 2011 U.S. Dist. LEXIS 150080 (E.D.N.Y. Dec. 22,
    2011) .......................................................................................................16, 17, 19

*Ersler v. Toshiba Am. Inc.*,
    No. CV-07-2304(SMG), 2009 U.S. Dist. LEXIS 14374 (E.D.N.Y. 2009) ......................12, 19

*Escobar v. Del Monaco Bros. Indus.*,
    No. 14-CV-3091 (ADS)(SIL), 2017 U.S. Dist. LEXIS 123588 (E.D.N.Y. Aug.
    3, 2017) ................................................................................................................................9

*In re Excess Value Ins. Coverage Litig.*,
    598 F. Supp. 2d 380 (S.D.N.Y. 2005), *aff'd sub nom.*, 222 F. App'x 87 (2d
    Cir. 2007) ...........................................................................................................................19

*Fleisher v. Phoenix Life Ins. Co.*,
    No. 11-cv-8405 (CM), 2015 U.S. Dist. LEXIS 121574 (S.D.N.Y. Sept. 9,
    2015) .............................................................................................................................19, 21

*Foti v. NCO Fin. Sys.*,
    No. 04 Civ. 0707, 2008 U.S. Dist. LEXIS 16511 (S.D.N.Y. Feb. 19, 2008) ......................6, 7

*Goldberger v. Integrated Resources, Inc.*,
    209 F.3d 43 (2d Cir. 2000)................................................................................. *passim*

*Hall v. Prosource Techs., LLC*,
    No. 14-CV-2502 (SIL), 2016 U.S. Dist. LEXIS 53791 (E.D.N.Y. Apr. 11,
    2016) ...................................................................................................................................18

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983).........................................................................................................4, 5

*Hernandez v. Immortal Rise, Inc.*,
    306 F.R.D. 91 (E.D.N.Y. 2015) ...........................................................................................22

*Jermyn v. Best Buy Stores, L.P.*,
    No. 08 Civ. 214, 2012 U.S. Dist. LEXIS 90289 (S.D.N.Y. 2012) ......................12, 14, 16, 20

*Logan v. World Luxury Cars*,
    15-CV-248 (RRM)(PK), 2017 U.S. Dist. LEXIS 157979 (E.D.N.Y. Sep. 25,
    2017) .....................................................................................................................................8

*Massiah v. MetroPlus Health Plan, Inc.*,
    No. 11-CV-05669 BMC, 2012 U.S. Dist. LEXIS 166383 (E.D.N.Y. Nov. 20,
    2012) ...................................................................................................................................23

*McAnaney v. Astoria Fin. Corp.*,
    No. 04-CV-1101 (JFB) (WDW), 2011 U.S. Dist. LEXIS 114768 (E.D.N.Y.
    Feb. 11, 2011) .....................................................................................................................22

*McBean v. City of New York*,
    233 F.R.D. 377 (S.D.N.Y. 2006) ...........................................................................................5

*In re MetLife Demutualization Litig.*,
689 F. Supp. 2d 297 (E.D.N.Y. 2010) .......................................................11, 13, 14

*Millea v. Metro-N. R.R. Co.*,
658 F.3d 154 (2d Cir. 2011).............................................................................8

*In re NTL, Inc. Sec. Litig.*,
2007 U.S. Dist. LEXIS 13661 (S.D.N.Y. Mar. 1, 2017) ........................................11

*Padro v. Astrue*,
No. 11-CV-1788 (CBA) (RLM), 2013 U.S. Dist. LEXIS 150494 (E.D.N.Y.
Oct. 17, 2013) .............................................................................................13

*Peoples v. Annucci*,
No. 11-cv-2694 (SAS), 2016 U.S. Dist. LEXIS 43556 (S.D.N.Y. Mar. 31,
2016) ..........................................................................................................5

*In re Prudential Sec. Litig.*,
985 F. Supp. 410 (S.D.N.Y. 1997) ...................................................................8, 9

*Pucciarelli v. Lakeview Cars, Inc.*,
16-CV-4751 (RRM) (RER), 2017 U.S. Dist. LEXIS 98641 (E.D.N.Y. June
23, 2017) .................................................................................................7, 8, 11

*Saucedo v. On the Spot Audio Corp.*,
No. 16 CV 00451 (CBA) (CLP), 2016 U.S. Dist. LEXIS 177680 (E.D.N.Y.
Dec. 21, 2016)..........................................................................................7, 8

*Schleifer v. Berns*,
17 Civ. 1649 (BMC), 2017 U.S. Dist. LEXIS 146469 (E.D.N.Y. Sep. 11,
2017) .........................................................................................................10

*Shapiro v. JPMorgan Chase & Co.*,
Nos. 11 Civ. 8331 (CM) (MHD) and 11 Civ. 7961 (CM), 2014 U.S. Dist.
LEXIS 37872, at *85 (S.D.N.Y. Mar. 21, 2014). ........................................ *passim*

*Siddiky v. Union Square Hosp. Grp.*,
No. 15 Civ. 9705(JCF), 2017 U.S. Dist. LEXIS 75301 (S.D.N.Y. May 17,
2017) .........................................................................................................23

*In re Sinus Buster Prods. Consumer Litig.*,
No. 12-CV-2429 (ADS)(AKT), 2014 U.S. Dist. LEXIS 158415 (E.D.N.Y.
Nov. 10, 2014) .....................................................................................6, 13, 15, 16

*Steinberg v. Nationwide Mut. Ins. Co.*,
612 F. Supp. 2d 219 (E.D.N.Y. 2009) .......................................................9, 12, 13

*Sykes v. Mel Harris & Assocs.*,
    LLC, No. 09 Civ. 8486 (DC), 2016 U.S. Dist. LEXIS 74566 (S.D.N.Y. May
    24, 2016) ......................................................................................................................22

*In re Telik, Inc. Sec. Litig.*,
    576 F. Supp. 2d 570 (S.D.N.Y. 2008) ...................................................................9

*United States v. City of New York*,
    No. 13-CV-3123 (NGG) (RLM), 2016 U.S. Dist. LEXIS 78755 (E.D.N.Y.
    June 15, 2016) ...................................................................................................6

*van Oss v. N.Y. State*,
    No. 10 Civ. 7524 (SAS), 2012 U.S. Dist. LEXIS 91684 (S.D.N.Y. June 26,
    2012) ...............................................................................................................7

*Velez v. Novartis Pharms. Corp.*,
    No. 04 Civ. 09194 (CM), 2010 U.S. Dist. LEXIS 125945 (S.D.N.Y. Nov. 30,
    2010) ...............................................................................................................19

*In re Visa Check/Mastermoney Antitrust Litig.*,
    297 F. Supp. 2d 503 (E.D.N.Y. 2003) .................................................................21

*Willix v. Healthfirst, Inc.*,
    No. 07-cv-1143, 2011 U.S. Dist. LEXIS 21102 (E.D.N.Y. Feb. 18, 2011) ...........................13

*Woburn Ret. Sys. v. Salix Pharm., Ltd.*,
    No. 14-CV-8925 (KMW), 2017 U.S. Dist. LEXIS 132515 (S.D.N.Y. Aug. 18,
    2017) ...............................................................................................................9

**Statutes**

California Consumer Legal Remedies Act, Cal. Civ. Code § 1780(e) ...........................................5

**Other Authorities**

5 *Newberg on Class Actions*, §§ 17:7-17:8 (5th ed. 2015) ...........................................................23

Rule 23 .................................................................................................................................15

Rule 23(f) ..............................................................................................................................15

Plaintiffs[1] Julie Gengo, Chris Shake, Valarie Zuro, and Deborah Lawson respectfully submit this memorandum of law in support of Plaintiffs' Motion for Awards of Attorneys' Fees, Expenses, and Case Contribution Awards (the "Motion").

## I.     Preliminary Statement

As discussed in detail in the Joint Declaration of Ariana J. Tadler and Michael R. Reese In Support of (1) Plaintiffs' Motion for Final Approval of Settlement and (2) Plaintiffs' Motion for Awards of Attorneys' Fees, Expenses, and Case Contribution Awards ("Joint Decl.") (filed concurrently herewith), Plaintiffs' Counsel achieved a favorable Settlement on behalf of the Class after more than five years of work, including substantial investigation, voluminous discovery, vigorously contested litigation, and lengthy arm's-length negotiations under the guidance of an experienced and respected neutral mediator, former United States District Judge Richard J. Holwell (Ret.), over a period of ten months.

Plaintiffs alleged that Defendant Frito-Lay falsely and deceptively labeled and marketed various Tostitos, SunChips, and Fritos Bean Dip products as "Made with All Natural Ingredients" when, in fact, the Products were made from unnatural, genetically-modified organisms ("GMOs"). From the outset, Plaintiffs' main objective in filing the lawsuit was to remedy the alleged deceptions in Frito-Lay's marketing and labeling of the Products. *See* Joint Decl., ¶ 5.

The Products are purchased by tens of millions of consumers each year in virtually every supermarket and convenience store in the country. Given the importance of the Products to Frito-Lay, and the prominence of the "Made With All Natural Ingredients" in the marketing and

---

[1] The Parties' Class Action Settlement Agreement ("Settlement Agreement") was attached as Exhibit 1 to ECF No. 100-2. Unless otherwise indicated, all capitalized terms have the same meaning that the Settlement Agreement ascribes to them.

labeling of the Products, Plaintiffs did not expect this litigation to be quick or easy or inexpensive; indeed, it was intense, complex and resource-intensive. *See* Joint Decl., ¶ 6. But through this hard-fought litigation, and the resulting mediated Settlement Agreement, Plaintiffs have accomplished their prime objective: Frito-Lay has removed the "Made with All Natural Ingredients" claim from the Products, and has agreed not to label the Products as "natural" as long as the Products continue to include GMO ingredients. In addition, Frito-Lay has agreed not to label the Products as "natural" under any circumstances for the next five years, unless the ingredients in the Products are approved for use in products identified as "natural" by a federal agency or controlling regulatory body. This provision protects the Class against the potentially misleading use of a "natural" claim on the Products for *any* reason, not just the presence of GMOs in the Products. Frito-Lay has further agreed not to place an affirmative "non-GMO" claim on the Products at any time unless the claim is certified by an independent third-party certification organization. *See* Joint Decl., ¶ 7.

Notably, Frito-Lay acknowledges that the litigation was an important factor in its decision to modify the challenged labeling policies and practices. The labeling changes made by Frito-Lay and the very broad protections of the injunctive provisions represent significant and valuable benefits to an extremely large class. Considering the breadth of this injunctive relief against the risks of establishing liability, damages, and maintaining the class action through a trial, Plaintiffs have determined that the benefits of this Settlement outweigh the risks of continued litigation to pursue what would potentially be nominal monetary damages for Class Members. *See* Joint Decl., ¶¶ 8-9.

The Parties reached the mediated Settlement after conducting significant investigation, research, and extensive discovery after protracted and contentious discovery negotiations and

motion practice. The Settlement takes into account the substantial risks the Parties would face if the litigation continued. *See* Joint Decl., ¶¶ 10, 39-41.

After agreement on the substantive terms of the Settlement, the Parties also reached mediated amounts for attorneys' fees and expenses to be sought by Plaintiffs' Counsel and, if awarded by the Court, paid by Frito-Lay. *Id.,* ¶¶ 11, 41, 46. In accordance with this mediated agreement, Class Counsel now hereby move for $1,900,000 in attorneys' fees, $200,000 in costs and expenses, and payments to named plaintiffs of $5,000 each to Julie Gengo, Valarie Zuro, and Christopher Shake and $2,500 to Deborah Lawson for their participation in the Litigation as plaintiffs on behalf of the class and their contributions to the success of the lawsuit in obtaining substantial benefits for the Class. Defendant does not oppose or object to these applications.[2] Although the Court-ordered October 17, 2017 deadline for Class Members to file objections to the Settlement have not yet passed, as of the date of this Motion, Class Counsel are unaware of any objections to the fee and expense request or the requested Plaintiff Case Contribution Awards.[3] *See* Joint Decl., ¶ 13.

As the record before this Court demonstrates,[4] the favorable outcome in this case is the result of Plaintiffs' Counsel's long and diligent efforts. The amounts requested in fees and

---

[2] Settlement Agreement, Paragraphs 10.1 and 10.3. *See also Blessing v. Sirius XM Radio Inc.*, 507 F. App'x 1, 4 (2d Cir. 2012) (noting that a clear-sailing provision, without more, does not provide grounds for vacating a fee and upholding fee award by District Court that was agreed to by the parties, stating that "the fee was negotiated only after settlement terms had been decided and did not, as the district court found, reduce what the class ultimately received").

[3] To the extent that any objections are submitted before the October 17, 2017 deadline, Plaintiffs may address those objections in a supplemental filing no later than November 4, 2017, seven calendar days before the November 11, 2017 Fairness Hearing. ECF No. 107, ¶ 16.

[4] The Joint Declaration is an integral part of this submission. Plaintiffs respectfully refer the Court to the Joint Declaration for a detailed description of the factual and procedural history of the Litigation, the claims asserted, the work Plaintiffs' Counsel performed, the settlement negotiations, and the numerous risks and uncertainties the Litigation presented.

expenses for Plaintiffs' Counsel fairly and reasonably compensate them for nearly six years of work devoted to this case, as well as their unreimbursed expenses. In fact, they are less than Plaintiffs' Counsel's total combined lodestar and their total unreimbursed expenses. *See* Joint Decl., ¶¶ 12, 55-56, 117-118, 127-131.

Plaintiffs and their counsel created a substantial benefit for the Class. For all of the reasons given herein, the Court should grant Plaintiffs' Motion.

## II.     The Mediated Attorneys' Fee Request Amount Provided Under the Settlement Agreement is Fair and Reasonable and Should be Approved

Plaintiffs' Counsel seek compensation for their work litigating this matter over more than five years. *See* Joint Decl., ¶¶ 15-42. The mediated amount of $1,900,000 in fees that Class Counsel seek is less than Plaintiffs' Counsel's combined lodestar and, if paid from a common fund, would be supported by the traditional factors for analyzing the fairness and reasonableness of a common fund fee request in this Circuit as promulgated in *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 47 (2d Cir. 2000). For the reasons stated below, Class Counsel respectfully request that the Court issue an order granting their request for payment of $1,900,000 in fees.

### A.     Negotiated Fee Agreements are Favored and the Mediated Attorneys' Fee Request Amount Was Mediated Only After Agreement on Substantive Terms

The fees and expenses Class Counsel are applying for were agreed to by the Parties after extensive negotiation and with the assistance of Judge Holwell (Ret.) as mediator after the Parties had reached agreement on all substantive terms.[5] *See* Joint Decl., ¶¶ 11, 46. Such

---

[5] The Settlement Agreement states that "Class Counsel shall make an application to the Court for an award of attorneys' fees in the amount of $1,900,000 plus up to $200,000 in costs and expenses, to be paid by Frito-Lay. Defendant shall not oppose or object to the application by class counsel for attorneys' fees in the amount of $1,900,000 plus up to $200,000 in costs and expenses, as these figures have been agreed to by the Parties after extensive negotiation and with

negotiated fees are favored, and courts have endorsed such negotiated fee and expense awards. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("Ideally, of course, litigants will settle the amount of a fee."); *Blessing v. Sirius XM Radio Inc.*, 507 F. App'x 1, 4 (2d Cir. 2012) (upholding fee award by District Court that was agreed to by the parties, stating that "the fee was negotiated only after settlement terms had been decided and did not, as the district court found, reduce what the class ultimately received"); *In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 568-70 (7th Cir. 1992) (market factors, best known by the negotiating parties themselves, should determine the quantum of attorneys' fees); *McBean v. City of New York*, 233 F.R.D. 377, 386 (S.D.N.Y. 2006) (involvement of judicial mediator weighs strongly in favor of approval of negotiated fee); *Shapiro v. JPMorgan Chase & Co.*, Nos. 11 Civ. 8331 (CM) (MHD) and 11 Civ. 7961 (CM), 2014 U.S. Dist. LEXIS 37872, at *85 (S.D.N.Y. Mar. 21, 2014) ("That the Attorneys' Fee Payment was later separately negotiated weighs in favor of its reasonableness.").

The fact that the Parties were able to avoid a "second major litigation," *Hensley*, 461 U.S at 437, as to the fees and expenses, through extensive negotiations, weighs in favor of the award.[6]

## B. The Mediated Attorneys' Fee Will Not Reduce the Value of the Settlement.

The requested fee and expenses sought here will not affect the benefits available for the Class. Where the settlement in a class action provides injunctive relief only, payment of

---

the assistance of Judge Holwell (Ret.) as mediator. The Parties recognize that the Court shall have the final authority to award the amount of fees and expenses. The Parties represent that the agreed upon fees and expenses were mediated after agreement on substantive terms with Judge Holwell (Ret.)." Settlement Agreement, Paragraph 10.1.

[6] Some of the consumer protection statutes at issue include provisions for costs and attorneys' fees to a prevailing plaintiff in an action under those statutes. *See, e.g.*, California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1780(e) ("The court shall award court costs and attorney's fees to a prevailing plaintiff in litigation filed pursuant to this section."). By agreeing to the mediated fees here, the Parties avoided a dispute over this and other issues.

attorneys' fees and costs "cannot reduce the value of the settlement." *Peoples v. Annucci*, No. 11-cv-2694 (SAS), 2016 U.S. Dist. LEXIS 43556, at *18 (S.D.N.Y. Mar. 31, 2016). Consequently, courts recognize that reduction of a negotiated fee would benefit only the defendant in such circumstances. *See, e.g.*, *Foti v. NCO Fin. Sys.*, No. 04 Civ. 0707, 2008 U.S. Dist. LEXIS 16511, at *21 (S.D.N.Y. Feb. 19, 2008) (finding proposed amount of fees to be fair in case where class settlement was not a monetary common fund, and attorneys' fees were not to "come out of the pocket of class members"; the court noted that "were the Court to reduce the agreed-upon amount of attorneys' fees, the only beneficiary would be [defendant] -- not the class.").

Even where a class settlement includes monetary benefits, courts in this Circuit often approve reasonable fee requests when the award will be paid separately and does not impact the relief provided to class members. "In a case where the requested attorneys' fees will be paid directly by defendant rather than drawn from a common fund, 'the Court's fiduciary role in overseeing the award is greatly reduced, because there is not conflict of interest between attorneys and class members.'" *Babcock v. C. Tech Collections, Inc.*, No. 1:14-CV-3124 (MDG), 2017 U.S. Dist. LEXIS 44548, at *24 (E.D.N.Y. Mar. 27, 2017) (quoting *Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 243 (E.D.N.Y. 2010)). *See also United States v. City of New York*, No. 13-CV-3123 (NGG) (RLM), 2016 U.S. Dist. LEXIS 78755, at *13 (E.D.N.Y. June 15, 2016) (noting that "the $9.5 million in attorneys' fees are not being taken from the class common fund at all. Instead, the attorneys' fees here were negotiated separately from the class recovery and are being paid directly by Defendant."); *In re Sinus Buster Prods. Consumer Litig.*, No. 12-CV-2429 (ADS)(AKT), 2014 U.S. Dist. LEXIS 158415, at *33 (E.D.N.Y. Nov. 10, 2014) ("In addition, where, as here, 'the attorneys' fees are to be paid directly by defendant and,

thus, money paid to the attorneys is entirely independent of money awarded to the class, the Court's fiduciary role in overseeing the award is greatly reduced, because there is no conflict of interest between attorneys and class members.'") (quoting *Dupler*, 705 F. Supp. 2d at 243).

### C. The Mediated Attorneys' Fee Request Amount is Fair and Reasonable Under the Lodestar Method and is Actually Less Than Plaintiffs' Counsel's Lodestar

#### 1. The Mediated Fee Request is Fair and Reasonable Under the Lodestar Method

"In class actions where the only relief obtained is injunctive in nature, 'courts often use a lodestar calculation because there is no way to gauge the net value of the settlement or any percentage thereof.'" *van Oss v. N.Y. State*, No. 10 Civ. 7524 (SAS), 2012 U.S. Dist. LEXIS 91684, at *5 (S.D.N.Y. June 26, 2012) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998)). "[W]here a settlement is not monetary in nature . . . at least one court has determined that the 'lodestar' method . . . is the 'most useful starting point' in determining an appropriate fee award," *Foti*, 2008 U.S. Dist. LEXIS 16511, at *19-20 (citing *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, No. CV-04-2195 (CPS), 2006 U.S. Dist. LEXIS 89226, at *28 (E.D.N.Y. Dec. 11, 2006)).

The lodestar method confirms the fairness and reasonableness of the mediated $1,900,000 fee amount. "Courts employ the 'lodestar' method in calculating reasonable attorneys' fees, multiplying the number of hours reasonably spent by counsel on the matter by a reasonable hourly rate." *Saucedo v. On the Spot Audio Corp.*, No. 16 CV 00451 (CBA) (CLP), 2016 U.S. Dist. LEXIS 177680, at *47 (E.D.N.Y. Dec. 21, 2016); *see also Pucciarelli v. Lakeview Cars, Inc.*, 16-CV-4751 (RRM) (RER), 2017 U.S. Dist. LEXIS 98641, at *3 (E.D.N.Y. June 23, 2017) ("The lodestar figure is the product of the attorney's reasonable hourly rate and the number of hours reasonably expended in the litigation.") (citing *Millea v. Metro-N. R.R. Co.*,

658 F.3d 154, 166 (2d Cir. 2011)). "Once that initial computation has been made, the district court may, in its discretion, increase the lodestar by applying a multiplier based on other less objective factors, such as the risk of the litigation and the performance of the attorneys." *Pucciarelli*, 2017 U.S. Dist. LEXIS 98641, at *3 (quoting *Goldberger*, 209 F.3d at 47).

The lodestar calculation has been described by the Second Circuit as a "presumptively reasonable fee." *Millea*, 658 F.3d at 166 ("Both this Court and the Supreme Court have held that the lodestar . . . creates a 'presumptively reasonable fee.'"). "When assessing whether legal fees are reasonable, the Court determines the "presumptively reasonable fee" for an attorney's services by looking to what a reasonable client would be willing to pay." *Saucedo*, 2016 U.S. Dist. LEXIS 177680, at *48 (citing *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 183-84 (2d Cir. 2007) ("*Arbor Hill*")); *see also Logan v. World Luxury Cars*, 15-CV-248 (RRM)(PK), 2017 U.S. Dist. LEXIS 157979, at *22 (E.D.N.Y. Sep. 25, 2017) ("A reasonable hourly rate is the rate a 'reasonable, paying client would be willing to pay.'"). A lodestar cross-check confirms that the negotiated requested fee is fair and reasonable and should be approved.

### a.    Plaintiffs' Counsel's Hours are Reasonable

The first step under the lodestar method is to determine whether the number of hours devoted by counsel are reasonable. *In re Prudential Sec. Litig.*, 985 F. Supp. 410, 416 (S.D.N.Y. 1997). To date, Plaintiffs' Counsel have spent over 7,700 hours on the investigation, prosecution, and settlement of this complex action over the course of more than five years. *See* Joint Decl., ¶¶ 55-56, and Exhibit 1 to Exhibits A-C. Given the magnitude and duration of the litigation, and the many disputed issues throughout its course, the time Plaintiffs' Counsel spent prosecuting this Litigation on behalf of the Class is reasonable.

### b. Plaintiffs' Counsel's Hourly Rates are Reasonable

The second step of the lodestar analysis is the examination of counsel's hourly rate. *In re Prudential*, 985 F. Supp. at 416. The hourly billing rate to be applied is the hourly rate that is normally charged in the community where the counsel practices, that is, the "market rate." *See Blum v. Stenson*, 465 U.S. 886, 895 (1984). "When an application for attorneys' fees seeks to recover for services that 'were performed many years before the award is made, the rates used by the court . . . should be 'current rather than historic hourly rates.''" *Escobar v. Del Monaco Bros. Indus.*, No. 14-CV-3091 (ADS)(SIL), 2017 U.S. Dist. LEXIS 123588, at *5-6 (E.D.N.Y. Aug. 3, 2017) (quoting *Gierlinger v. Gleason*, 160 F.3d 858, 882 (2d Cir. 1998)).

The current hourly rates of Plaintiffs' Counsel are reflected in the declarations submitted by Plaintiffs' Counsel. Applying Plaintiffs' Counsel's current hourly rates to the hours expended in this Litigation yields a lodestar value of well over $4 million. *See* Joint Decl., ¶¶ 55-56, 109, and Exhibit 1 to Exhibits A-C. Plaintiffs' Counsel's hourly rates are competitive market hourly rates in their respective legal communities for cases of this sort and are the same regular current rates charged for their services in non-contingent matters and/or which have been used in the lodestar cross-check accepted by courts in other class litigation. For example, the hourly rates for partners in Plaintiffs' Counsel's submission ranges from $625 to $875 per hour. *See* Joint. Decl., ¶¶ 59, 109-110.

A recent decision in this Circuit approved partners' hourly billing rates up to $995 per hour. *Woburn Ret. Sys. v. Salix Pharm., Ltd.*, No. 14-CV-8925 (KMW), 2017 U.S. Dist. LEXIS 132515, at *15 (S.D.N.Y. Aug. 18, 2017) ("The lodestar value of counsel's work . . . reflects the various hourly billing rates for partners, which ranged from $700 to $995 at Bernstein Litowitz, $715 to $980 at Robbins Geller, and $550 to $695 at Hach Rose[.]"). *See also Steinberg v. Nationwide Mut. Ins. Co.*, 612 F. Supp. 2d 219, 224 (E.D.N.Y. 2009) (approving hourly rates up

to $790 in 2009); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 589 (S.D.N.Y. 2008) (approving hourly rates to $750 in 2008). Plaintiffs' Counsel's hourly rates here appropriately reflect the reputation, experience, care, and success records of Plaintiffs' Counsel. No time spent by Plaintiffs' Counsel in the preparation of this fee petition is included as part of their lodestar herein. *See* Joint Decl., ¶ 109 and ¶ 5 of Exhibits A-C.

Again, the negotiated fees requested by Plaintiffs' Counsel here are substantially less than a straight lodestar calculation would call for and includes no multiplier, *i.e.* Plaintiffs' Counsel's fee request amounts to *less* than their straight time, without any enhancement.

Accordingly, the negotiated and requested $1,900,000 in fees is fair and reasonable.

### D. The Mediated Attorneys' Fee Request Amount is Fair and Reasonable Under a *Goldberger* Analysis

Even though in this case the negotiated fee request will not be awarded from a "common fund" created for the Class, the traditional criteria in this Circuit for determining a reasonable common fund fee support the negotiated fee requested here. The six factors for analyzing the reasonableness of a common fund fee request in this Circuit as promulgated by *Goldberger v. Integrated Resources, Inc.* are: "'(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . . ; (4) the quality of the representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Goldberger*, 209 F.3d at 50 (quoting *In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 724 F. Supp. 160, 163 (S.D.N.Y. 1989)). *See Schleifer v. Berns*, 17 Civ. 1649 (BMC), 2017 U.S. Dist. LEXIS 146469, at *6 (E.D.N.Y. Sep. 11, 2017) ("The Second Circuit has made clear that district courts should be guided by the traditional [*Goldberger*] criteria in determining a reasonable . . . fee") (internal quotations omitted). These factors support the approval of Class Counsel's attorneys' fee request of $1,900,000.

1. **Plaintiffs' Counsel Expended Significant Time and Labor in This Litigation [*Goldberger* Factor 1: The Time and Labor Expended by Counsel]**

Over the course of more than five years, Plaintiffs' Counsel have dedicated over 7,700 hours to the investigation, prosecution, and settlement of this complex action on behalf of the Class. (*See* Joint Decl., ¶¶ 55-56, and Exhibit 1 to Exhibits A-C).

As discussed more fully in the Joint Declaration, Plaintiffs' Counsel's efforts included, for example: (1) extensive work identifying and investigating potential claims and drafting and filing the initial complaints and Amended Consolidated Class Action Complaint with this Court; (2) briefing and arguing a motion for coordination and transfer before the Judicial Panel on Multi-District Litigation; (3) opposing Defendants' comprehensive motion to dismiss; (4) extensive discovery, including the review of over 324,000 pages of documents and numerous depositions; (5) protracted and highly contentious discovery negotiations concerning the adequacy of Frito-Lay's efforts to search for and produce relevant documents in response to three separate sets of document requests, to which Frito-Lay responded with twelve separate document productions (6) producing over 1,400 pages of documents in response to requests from Frito-Lay (each named Plaintiff responded to interrogatories from Frito-Lay as well); (7) engaging in multiple mediation sessions with Judge Holwell; and (8) drafting the Settlement Agreement and related documents. *See* Joint Decl., ¶¶ 15-53.

"Fees representing multiples above the lodestar are often awarded to reflect the risk and contingent nature of the litigation, the result obtained, and the quality of the attorney's work." *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 359 (E.D.N.Y. 2010); *see also Pucciarelli*, 2017 U.S. Dist. LEXIS 98641, at *4-5 ("When applying the lodestar method, courts generally apply a multiplier to take into account the contingent nature of the fee, the risks of non-payment, the quality of representation, and the results achieved."); *In re NTL, Inc. Sec. Litig.*,

2007 U.S. Dist. LEXIS 13661, at *30 (S.D.N.Y. Mar. 1, 2017) (noting that "[i]n the "usual" case, the multiplier applied to the lodestar typically is positive, to account for the contingent nature of the engagement and the risk of such a case.").

Here, however, there is no multiplier; rather the mediated fee request of $1,900,000 is substantially *less* than counsel's straight time, without any enhancement. *See Jermyn v. Best Buy Stores, L.P.*, No. 08 Civ. 214, 2012 U.S. Dist. LEXIS 90289, at *26-27 (S.D.N.Y. 2012) (finding that a "negative" lodestar multiplier was "further indication of the reasonableness of the negotiated fee"); *Ersler v. Toshiba Am. Inc.*, No. CV-07-2304(SMG), 2009 U.S. Dist. LEXIS 14374, at *21 (E.D.N.Y. 2009) ("Here, although there was no guarantee *any* fee would be awarded when plaintiffs' counsel took on this action, counsel seek no multiplier above and beyond the presumptively reasonable fee amount."); *Babcock*, 2017 U.S. Dist. LEXIS 44548, at *28 (approving counsel's fee request, finding that the fees sought by counsel were "less than their lodestar" and "seeks no multiplier"). This factor weighs in favor of approving Class Counsel's attorneys' fee request.

### 2. The Underlying Litigation was Large and Involved Complex Factual and Legal Issues [*Goldberger* Factor 2: The Magnitude and Complexities of the Litigation]

Consumer class action lawsuits, like this action, are complex, expensive, and lengthy. *See, e.g., Dupler*, 705 F. Supp. 2d at 239; *Steinberg*, 612 F. Supp. 2d at 223 (finding this factor to support the fee request in a consumer class action). Plaintiffs filed their first action over five years ago. *See* Joint Decl., ¶ 17. Since then, the Litigation, which covered numerous Products, has prompted multiple motions to transfer, a successfully opposed request by defendant for a stay of discovery, a motion for dismissal, private mediation, extensive discovery and multiple disputes over its scope. *Id.*, ¶¶ 15-46. Should this Court not approve the Settlement, this lengthy and contentious litigation would resume, with disputes likely occurring over remaining

discovery, class certification, summary judgment motions, and expert testimony. Moreover, the benefits of reverting to litigation and the likelihood of success would be uncertain. *See*, *e.g.*, *In re Sinus Buster*, 2014 U.S. Dist. LEXIS 158415, at *20 (finding this factor to weigh in favor of settlement, where "[i]f the litigation continued, the parties would have to undergo the time and expense of deposition discovery, contest motions for class certification, and a likely motion for summary judgment by the Defendants. . . . Further, the Defendants and the Plaintiffs would likely have to obtain experts to establish both liability and damages. A trial consisting of a 'battle of experts' as would be complex and lengthy, with an uncertain outcome.").

### 3. Plaintiffs' Counsel Faced Significant Risks at Every Stage of the Litigation [*Goldberger* Factor 3: The Risk of the Litigation]

The fairness and reasonableness of the requested fee is also supported by an evaluation of the litigation risks undertaken by Plaintiffs' Counsel in prosecuting this consumer class action. "Litigation inherently involves risks." *Willix v. Healthfirst, Inc.*, No. 07-cv-1143, 2011 U.S. Dist. LEXIS 21102, at *11 (E.D.N.Y. Feb. 18, 2011) (citation omitted). Class Counsel's evaluation is accorded considerable weight in view of "the unique ability of class and defense counsel to assess the potential risks and rewards of litigation." *Padro v. Astrue*, No. 11-CV-1788 (CBA) (RLM), 2013 U.S. Dist. LEXIS 150494, at *21 (E.D.N.Y. Oct. 17, 2013) (quoting *Newberg on Class Actions* § 11:47 (4th ed.)).

As this Court has noted, "[t]he risk of the litigation is often cited as the first, and most important, *Goldberger* factor." *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d at 361. *See Anyoku v. World Airways (In re Nigeria Charter Flights Litig.)*, No. 04-MD-1613, 2011 U.S. Dist. LEXIS 155180, at *26 (E.D.N.Y. Aug. 25, 2011) ("Courts of this Circuit have recognized the risk of litigation to be perhaps the foremost factor to be considered in determining the award of appropriate attorneys' fees."); *Steinberg*, 612 F. Supp. 2d at 223 ("Courts in the Second

Circuit have recognized that the attendant risks of a particular case are a critical factor to be considered in setting an award of attorneys' fees."); *Goldberger*, 209 F.3d at 54 ("We have historically labeled the risk of success as 'perhaps the foremost factor' to be considered in determining whether to award an enhancement.") (citing *In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 226, 236 (2d Cir. 1987) (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 471 (2d Cir. 1974) ("*Grinnell I*")).

The Second Circuit has recognized that the risk associated with a case undertaken on a contingent fee basis is an important factor in determining an appropriate fee award:

> No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success.

*Grinnell I*, 495 F.2d at 470. "Little about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation." *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d at 361 (citation omitted); *see also In re Am. Bank Note Holographics, Inc., Sec. Litig.*, 127 F. Supp. 2d 418, 432-33 (S.D.N.Y. 2001) (finding it "appropriate to take this [contingent-fee] risk into account in determining the appropriate fee to award.").

Plaintiffs' Counsel undertook this litigation purely on a contingency basis notwithstanding the considerable risk confronting them, including nonpayment after prosecuting the case for over five years. *Jermyn*, 2012 U.S. Dist. LEXIS 90289, at *28 ("this factor recognizes the risk of non-payment in cases prosecuted on a contingency basis where claims are not successful. This can justify higher fees."); *see also Shapiro*, 2014 U.S. Dist. LEXIS 37872, at *73-76 ("It is well settled that class actions are notoriously complex and difficult to litigate. . . . Clearly, Co-lead Counsel undertook enormous financial risks in representing Customers on a contingency basis.").

In the absence of this Settlement, this expensive and protracted litigation would continue on, with no guaranteed or inevitable favorable outcome for the Class. In particular, Plaintiffs faced risks of establishing liability, establishing damages, and maintaining a class action through trial. *See* Joint Decl., ¶¶ 76, 121. While Plaintiffs' Counsel believe that the Class satisfied all the necessary prerequisites of Rule 23 and would have been certified, class motions in cases of this magnitude are heavily contested and would have likely involved expert testimony from both sides. *See* Joint Decl., ¶ 121. Plaintiffs bear the risk of class certification and, even if successful, withstanding interlocutory appeal under Rule 23(f). *See In re Sinus Buster*, 2014 U.S. Dist. LEXIS 158415, at *25 ("Were the Court to reject the settlement, the parties would likely contest certification, which would present a possibility of decertification. A settlement therefore avoids the risk of decertification and thus weighs in favor of approval."); *Shapiro*, 2014 U.S. Dist. LEXIS 37872, at *40 ("The possibility of decertification thus favors settlement."); *In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, No. 02 Civ. 5575 (SWK), 2006 U.S. Dist. LEXIS 17588, at *41 (S.D.N.Y. Apr. 6, 2006) ("[E]ven the process of class certification would have subjected Plaintiffs to considerably more risk than the unopposed certification that was ordered for the sole purpose of the Settlement.").

Although Plaintiffs believe that they could succeed in obtaining the certification of a class here, they also recognize that they face several obstacles to obtaining and maintaining class certification. First, it may be difficult (although not impossible) to quantify the precise amount of damages suffered by the class (whereas the achieved injunctive relief is broad). Plaintiffs recognize the challenge of quantifying the effect of the challenged "natural" claim across more than twenty separate products, where the time periods in which that claim appeared on the Product packaging vary not only among the Products but also among the various package sizes

in which each Product was sold. So it may be difficult (although not impossible) to quantify the precise amount of damages suffered by the class. The variations in the labeling dates also may create difficulties in identifying certain class members, as consumers may have difficulty recalling which variety and which package size they purchased during a particular time period. Plaintiffs' Counsel is also mindful of certain potential challenges as to the proof of their claims and to rebutting defenses to the claims asserted in the Litigation. *See* Joint Decl., ¶ 76, 121. While Plaintiffs remain confident in their ability to prove their claims and to effectively rebut Defendants' defenses, they recognize that their ability to prove liability is far from certain. One cannot predict how a jury will weigh competing experts' testimony, especially after listening to multiple complex models for determining damages. *See Shapiro*, 2014 U.S. Dist. LEXIS 37872, at *38 ("Proof of damages in complex class actions is always complex and difficult and often subject to expert testimony."). In other words, the crucial element of damages would likely be reduced at trial to a "battle of the experts." *See In re Sinus Buster*, 2014 U.S. Dist. LEXIS 158415, at *23-24 ("Here, as described above, proof of liability and damages would require both parties to retain separate experts. Trial would be largely a "battle of the experts," where it would be difficult to predict whose testimony would be credited and accepted by the jury); *Ebbert v. Nassau Cty.*, No. CV 05-5445 (AKT), 2011 U.S. Dist. LEXIS 150080, at *31 (E.D.N.Y. Dec. 22, 2011) ("On liability and damages, this case likely would have ended up in a classic 'battle of the experts.' With that comes the inherent risk that a jury could be swayed by an expert for the Defendants who could minimize the amount of the Plaintiffs' losses.").

Accordingly, this factor weighs in favor of approving Class Counsel's mediated $1,900,000 fee request, particularly where, while they prosecuted the case on a contingent basis,

"the requested amount falls below Class Counsel's combined lodestar for their work on the case." *Jermyn*, 2012 U.S. Dist. LEXIS 90289, at *28.

### 4. There was a High Quality of Representation [*Goldberger* Factor 4: The Quality of Representation]

"As a consideration, the Court also looks to the quality of the representations on behalf of the . . . Class Members." *Ebbert*, 2011 U.S. Dist. LEXIS 150080, at *46. "To make that determination, courts review, among other things, the backgrounds of the lawyers involved in the lawsuit and the recovery obtained." *Id.* Here, the fairness and reasonableness of Class Counsel's requested attorneys' fees are further supported by Plaintiffs' Counsel's significant experience and qualifications for litigating the complex issues and claims presented in this case. Plaintiffs' Counsel and their firms possess decades of experience in class action litigation, particularly in consumer class actions. *See* Joint Decl., ¶¶ 94-96. Plaintiffs' Counsel include attorneys and firms with national prominence and with reputations as attorneys who zealously pursue meritorious cases through trial and appeals. Plaintiffs' Counsel's experience and qualifications enabled them to successfully litigate this case for more than five years while grappling with the numerous complicated factual and legal issues that this case presented, and ultimately, achieve a significant result for the Class, all in the absence of contemporaneous compensation and reimbursement of expenses.

Here, the proposed Settlement provides the primary relief sought by the Class—the labeling and marketing of the Products have been modified and, as long as the Products contain GMOs, they will not be labeled, marketed or advertised as "natural" unless the use of "natural" claims on products containing GMOs is expressly authorized by FDA guidance or state or federal legislation. The Settlement prohibits the labeling, marketing or advertising of the Products as "natural" for a period of five years unless the ingredients are expressly approved or

determined as acceptable for products identified as "natural" by a federal agency or controlling regulatory body. The Settlement also prohibits the placement of an affirmative "non-GMO" claim on the Products unless the claim is certified by an independent third-party certification organization. *See* Joint Decl., ¶ 123. The substantial experience of Plaintiffs' Counsel in prosecuting consumer protection class action cases was an important factor in achieving this broad, multi-faceted injunctive relief.

Another consideration for assessing the quality of the services rendered is the quality of the opposing counsel in the case. *See Hall v. Prosource Techs., LLC*, No. 14-CV-2502 (SIL), 2016 U.S. Dist. LEXIS 53791, at *49 (E.D.N.Y. Apr. 11, 2016) ("[T]he quality of opposing counsel is also important in evaluating the quality of [class counsel's] work.")) (citing *Tiro v. Pub. House Invs., LLC*, No. 11 Civ. 7679, 2013 U.S. Dist. LEXIS 129258, at *42-43 (S.D.N.Y. Sept. 10, 2013). Defendants are represented by highly experienced counsel at Gibson, Dunn & Crutcher LLP. *See* Joint Decl., ¶ 124. The ability of Plaintiffs' Counsel to obtain this settlement for the Class in the face of such formidable legal opposition further reflects favorably on the quality of their work.

The quality of the representation supports the fairness and reasonableness of the requested fee award.

> **5. The Mediated Fee Request is Fair and Reasonable in Relation to the Settlement [*Goldberger* Factor 5: The Requested Fee in Relation to the Settlement]**

The mediated fee request is fair and reasonable in relation to the Settlement. The Parties had already mediated and agreed on the substantive terms of the Settlement before mediating and agreeing on amounts for Class Counsel's fee and expense requests; thus, the mediator and the Parties knew when negotiating the fees and expenses that the proposed Settlement would provide non-monetary benefits to the Class, not a common fund, and took this into consideration when

mediating an appropriate fee and expense request to be paid by Defendant separate and apart from the relief provided to the Class. The requested fee is substantially less than the accrued lodestar and does not affect the benefits available for the Class.

While it is difficult to place a monetary value on an injunction-only settlement resolving deceptive and false food labeling class actions and expert opinions would undoubtedly vary, in light of the sales volume of the Products, the labeling changes made by Frito-Lay and the very broad protections of the injunctive provisions represent significant and valuable benefits to an extremely large class. *See* Joint Decl., ¶ 125. These non-monetary benefits obtained for members of the Class should be considered in determining the appropriate fee to award counsel. *See Fleisher v. Phoenix Life Ins. Co*., No. 11-cv-8405 (CM), 2015 U.S. Dist. LEXIS 121574, at *34-35 (S.D.N.Y. Sept. 9, 2015) (including the "substantial" non-monetary benefits in the valuation of the relief provided by the settlement); *Velez v. Novartis Pharms. Corp.*, No. 04 Civ. 09194 (CM), 2010 U.S. Dist. LEXIS 125945, at *13 (S.D.N.Y. Nov. 30, 2010) (considering both monetary and non-monetary relief in calculating value of settlement); *In re Excess Value Ins. Coverage Litig.*, 598 F. Supp. 2d 380, 388 (S.D.N.Y. 2005) (considering the value of injunctive relief obtained in determining the appropriate fee, while noting that "[t]he value of the Structural Changes is more difficult to quantify"), *aff'd sub nom.*, 222 F. App'x 87 (2d Cir. 2007). *See also Ersler*, 2009 U.S. Dist. LEXIS 14374, at *20 ("Moreover, the attorneys' fees are separate and apart from the settlement payments to class members; i.e., the award of fees and costs will not reduce the recovery of the class."); *Ebbert*, 2011 U.S. Dist. LEXIS 150080, at *45-46 (noting that the attorneys' fees "were not drawn from the settlement fund but rather were separate and apart from the settlement payments to class members and were consented to by the defendants in those cases.").

The Parties and the mediator were all aware of these facts when the fees and expenses were negotiated and, in their opinions, a $1,900,000 fee is fair and reasonable in relation to the Settlement.

### 6. Public Policy Favors Approving Class Counsel's Mediated Fee Request [*Goldberger* Factor 6: Public Policy Considerations]

"Public policy favors the award of reasonable attorneys' fees in class action settlements." *Jermyn*, 2012 U.S. Dist. LEXIS 90289, at *31. The relatively small claims of the vast majority of the members of the Class, when taken separately, would not justify the expense of litigation. Courts in this Circuit have recognized "the importance of private enforcement actions and the corresponding need to incentivize attorneys to pursue such actions on a contingency fee basis." *Shapiro*, 2014 U.S. Dist. LEXIS 37872, at *82 (quoting *In re Initial Public Offering Sec. Litig.*, 671 F. Supp. 2d 467, 515-16 (S.D.N.Y. 2009)); *see also Anyoku*, 2011 U.S. Dist. LEXIS 155180, at *29-30 ("The fees awarded must be reasonable, but they must also serve as an inducement for lawyers to make similar efforts in the future. In order to attract well-qualified plaintiffs' counsel who are able to take a case to trial, and who defendants understand are able and willing to do so, it is necessary to provide appropriate financial incentives.") (internal citations omitted).

Here, the proposed Settlement provides substantial non-monetary benefits to the public. The Settlement provides the primary relief sought by the Class—the assurance that the Products will not be labeled, marketed or advertised as "natural" unless the use of "natural" claims on products containing GMOs is expressly authorized by FDA guidance or state or federal legislation. This factor favors approving Plaintiffs' Counsel's requested attorneys' fees as fair and reasonable.

The *Goldberger* factors support approval of Class Counsel's request for attorneys' fees.

### III. The Court Should Approve the Mediated Reimbursement of Plaintiffs' Counsel's Costs and Expenses

Plaintiffs' Counsel also request $200,000 in costs and expenses. Similar to the fee request, the $200,000 in costs and expenses that Class Counsel seek here was negotiated by the Parties at arm's-length with the assistance of a mediator after they had agreed on the substantive terms of the Settlement. The amount is fair and reasonable—in fact, it is less than Plaintiffs' Counsel's actual unreimbursed costs and expenses—and should be approved. These costs were integral to the prosecution of this case, including costs associated with mediation as part of the process of reaching a resolution of the Litigation. *See* Joint Decl., ¶¶ 127-131.

"Courts routinely note that counsel is entitled to reimbursement . . . for reasonable litigation expenses." *Fleisher*, 2015 U.S. Dist. LEXIS 121574, at *76; *see also Anyoku*, 2011 U.S. Dist. LEXIS 155180, at *30 ("courts typically allow counsel to recover their reasonable out of pocket expenses"); *In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 525 (E.D.N.Y. 2003) (in awarding counsel reimbursement for $18,716,511.44 in costs and expenses, holding that "I see no reason to depart from the common practice in this circuit of granting expense requests.").

Although they are only seeking the mediated $200,000 in costs and expenses, Plaintiffs' Counsel actually incurred $252,652.23 in costs and expenses while prosecuting this Litigation. These expenses are detailed in Plaintiffs' Counsel's submitted declarations. Joint Decl., ¶¶ 127-128, and Exhibit 2 to Exhibits A-C. Over the more than five years of litigation, Plaintiffs' Counsel have, for example: filed hundreds of pages of pleadings; extensively litigated, taken, and responded to discovery; took and defended depositions; conducted extensive factual and legal research; incurred travel costs and significant expert and mediation costs. *Id.* A majority of Plaintiffs' Counsel's expenses are for discovery-related expenses. *Id.*

The requested expenses were reasonably incurred in the prosecution of this Litigation and have been adequately documented by Plaintiffs' Counsel and were incurred for the benefit of the Class. *See*, *e.g.*, *In re Visa Check/Mastermoney*, 297 F. Supp. 2d at 525 (awarding counsel reimbursement of costs and expenses, where "[t]he lion's share of these expenses reflects the costs of experts and consultants, litigation and trial support services, document imaging and copying, deposition costs, online legal research, and travel expenses."); *Anyoku*, 2011 U.S. Dist. LEXIS 155180, at *30 (finding reimbursement of $109,734.06 in expenses reasonable where "Counsel's disbursements consisted of court fees, deposition transcripts, travel and accommodation, working meal costs, photocopies, telephone charges and expert fees. Such expenses are reasonable and were necessary to the representation of the class.").

Class Counsel's request for reimbursement of $200,000 in costs and expenses incurred is fair and reasonable and should be approved.

## IV.    The Court Should Approve the Mediated Proposed Awards to the Class Representative Plaintiffs

Class Counsel also request that the Court award $5,000 each to Plaintiffs Julie Gengo, Valarie Zuro, and Christopher Shake and $2,500 to Plaintiff Deborah Lawson as compensation for their time and effort spent in the litigation. These awards are not opposed by Defendant and will not affect the benefits available for the Class.

"In the Second Circuit, the Courts have, with some frequency, held that a successful Class action plaintiff, may, in addition to his or her allocable share of the ultimate recovery, apply for and, in the discretion of the Court, receive an additional award, termed an incentive award." *McAnaney v. Astoria Fin. Corp.*, No. 04-CV-1101 (JFB) (WDW), 2011 U.S. Dist. LEXIS 114768, at *32-33 (E.D.N.Y. Feb. 11, 2011). Indeed, "service awards are common in class action cases and are important to compensate plaintiffs for the time and effort expended in

assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by plaintiffs." *Hernandez v. Immortal Rise, Inc.*, 306 F.R.D. 91, 101 (E.D.N.Y. 2015) (citation omitted) (approving awards of $2,500 and $7,500 to named plaintiffs as reasonable); *see also Sykes v. Mel Harris & Assocs.*, LLC, No. 09 Civ. 8486 (DC), 2016 U.S. Dist. LEXIS 74566, at *53-54 (S.D.N.Y. May 24, 2016) ("Courts acknowledge that service awards are important to compensate plaintiffs for the contributions they make to advance the prosecution of their case.")

The requested $5,000 and $2,500 awards for Plaintiffs are comparable to awards that have been approved in similar cases in the Second Circuit. *See*, *e.g.*, *Massiah v. MetroPlus Health Plan, Inc.*, No. 11-CV-05669 BMC, 2012 U.S. Dist. LEXIS 166383, at *21-23 (E.D.N.Y. Nov. 20, 2012) (collecting cases approving awards ranging from $5,000 to $30,000); *Dupler*, 705 F. Supp. 2d at 245-46 (awarding $25,000 to the lead plaintiff in a consumer class action and $5,000 to another plaintiff).[7]

The efforts of each representative Plaintiff on behalf of the Class confirm the appropriateness of the requested case contribution awards. Each performed important and valuable service for the benefit of the Class, participating in numerous interviews by Class Counsel, providing personal information concerning the Litigation, and remaining involved in

---

[7] *See Bellifemine v. Sanofi-Aventis U.S. LLC*, No. 07-cv-2207 (JGK), 2010 U.S. Dist. LEXIS 79679, at *20 (S.D.N.Y. Aug. 6, 2010) (awarding incentive payments to each of the named plaintiffs in the amount of $7,500); *Siddiky v. Union Square Hosp. Grp*., No. 15 Civ. 9705(JCF), 2017 U.S. Dist. LEXIS 75301, *21-22 (S.D.N.Y. May 17, 2017) (finding that plaintiffs' services merit the enhancement awards requested of $7,000 and $6,000 for plaintiffs); *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 354 (S.D.N.Y. 2014) (approving award of $5,000 to each named plaintiff because they "reviewed draft pleadings and motions, searched for and produced relevant documents, reviewed filings, and communicated regularly with Class Counsel"); 5 *Newberg on Class Actions*, §§ 17:7-17:8 (5th ed. 2015).

the litigation, mediation, and settlement processes.[8] Plaintiffs Julie Gengo, Valarie Zuro, and Christopher Shake each had their depositions taken by Defendant's Counsel, and Plaintiff Deborah Lawson prepared for a deposition that was noticed, but cancelled a few days before it was scheduled. Plaintiffs' actions have benefitted the Class to a significant degree, culminating in the Settlement. *See* Joint Decl., ¶ 133.  Plaintiffs respectfully request that the Court approve the case contribution awards.

---

[8] *See* declarations of Plaintiffs Julie Gengo, Valarie Zuro, Christopher Shake, and Deborah Lawson, attached as Exhibits D, E, F and G to the Joint Declaration.

**V.** **Conclusion**

For the reasons set forth above, Plaintiffs respectfully request that the Court grant their

Motion for Awards of Attorneys' Fees, Expenses, and Case Contribution Awards and (1) award

payments of $1,900,000 in fees and $200,000 in costs and expenses to Class Counsel; (2) award

payments of $5,000 each to Plaintiffs Julie Gengo, Chris Shake, and Valarie Zuro and $2,500 to

Plaintiff Deborah Lawson; and (3) enter the Final Judgment and Order in the forms substantially

similar to the previously-filed Exhibits F and G to the Settlement Agreement (ECF No. 100-2).

DATED: October 3, 2017           Respectfully submitted,

**MILBERG LLP**

By: */s/ Ariana J. Tadler*
Ariana J. Tadler
atadler@milberg.com
Henry J. Kelston
hkelston@milberg.com
One Penn Plaza, 50th Floor
New York, New York 10119-0165
Tel: (212) 594-5300
Fax: (212) 868-1229

**REESE LLP**

By: */s/ Michael R. Reese*
Michael R. Reese
mreese@reesellp.com
George V. Granade
ggranade@reesellp.com
100 West 93rd Street, 16th Floor
New York, New York 10025
Tel: (212) 643-0500
Fax: (212) 253-4272

*Class Counsel*